# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Greenbelt Division)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Plaintiff*, | ) | Case No. 03-cr-00457-PJM |
| | ) | |
| v. | ) | |
| | ) | |
| KENNETH JAMAL LIGHTY, | ) | **MEMORANDUM OF LAW IN** |
| | ) | **SUPPORT OF MOTION TO** |
| *Defendant*. | ) | **PERMIT JUROR CONTACT** |

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO PERMIT JUROR CONTACT

Kenneth Jamal Lighty ("Mr. Lighty") will soon be filing a petition for relief from his conviction and death sentence under 18 U.S.C. § 2255. In connection with this forthcoming petition, Mr. Lighty respectfully moves this Court to permit counsel and their representatives to contact and interview the jurors in his case. Juror interviews are essential to securing rights guaranteed to Mr. Lighty by the Fifth, Sixth and Eighth Amendments to the U.S. Constitution.

## INTRODUCTION

The relief sought in this motion is permission to contact jurors in Mr. Lighty's case. As the Court is aware, Section 2255 proceedings are the last opportunity to examine the constitutionality and legality of Mr. Lighty's conviction and death sentence and this Court is the forum in which Mr. Lighty must present all relevant facts. Despite *voir dire*, jury instructions, and other aspects of the trial process designed to protect a criminal defendant's right to a fair and impartial jury, juror misconduct inevitably occurs outside the record and often goes undetected in trial and appellate proceedings. *See, e.g., Fullwood v. Lee*, 290 F.3d 663 (4th Cir. 2002) (hearing

1

required in capital habeas case to determine, in part, extent to which juror was strongly influenced by pro-death penalty husband). As such, juror misconduct has been recognized as among those extra-record claims properly raised for the first time in post-conviction proceedings because the facts surrounding the misconduct often only come to light in such proceedings. *See, e.g., Williams v. True*, 39 F. App'x 830 (4th Cir. 2002) (affirming district court determination in habeas proceedings that juror's failure to disclose she had been married to investigator for several years, along with non-disclosure of other information – raised for the first time in petitioner's federal habeas petition – deprived petitioner of fair trial). Juror misconduct of virtually every kind is unearthed in post-conviction proceedings, and has formed the basis for post-conviction relief and further factual inquiry in both state and federal courts. Jurors have been found to bring newspapers and dictionaries into the jury room[1]; consult religious and other sources not in evidence and conduct experiments related to evidence[2]; share extraneous information, including information learned from exposure to news media coverage, amongst each other[3]; have inadvertent but prejudicial *ex parte* contacts with third parties and have been

---

[1] *See, e.g., Bauberger v. Haynes,* 2009 U.S. Dist. LEXIS 100216 (M.D.N.C. Oct. 29, 2009) (habeas relief from murder conviction granted where jury foreman borrowed dictionary from public library during recess in deliberations, brought it back to jury room, and read to other jurors definition of "malice"); *Novelo v. Yates*, 2009 U.S. Dist. LEXIS 73376 (C.D. Cal. June 18, 2009) (*adopted*, 2009 U.S. Dist. LEXIS 73384 (C.D. Cal. Aug. 13, 2009)) (hearing ordered in habeas case where juror told defendant's acquaintance about reading news accounts to arrive at verdict).

[2] *See, e.g., Fullwood v. Lee*, 290 F.3d 663 (4th Cir. 2002) (hearing required in capital habeas case to determine, in part, extent to which juror was strongly influenced by pro-death penalty husband); *Romine v. Head*, 253 F.3d 1349 (11th Cir. 2001) (death sentence reversed in habeas proceedings based in part on jurors' use of Bible in deliberations); *Nevers v. Killinger*, 169 F.3d 352 (6th Cir. 1999) (*overruled on other grounds*) (second degree murder conviction vacated in habeas proceedings where jurors watched movie containing footage of police brutality incident similar to instant offense, and heard news reports about case); *Doan v. Brigano*, 237 F.3d 722 (6th Cir. 2001) (habeas relief granted in murder case where juror approximated bruise with lipstick and concluded defendant must be lying about bruises at issue in case).

[3] *See, e.g., Wisehart v. Davis*, 408 F.3d 321 (7th Cir. 2005) (conviction and sentence vacated in capital habeas proceedings where juror told petitioner she learned during trial that petitioner submitted to a polygraph test); *Fullwood*, 290 F.3d 663 (hearing required in capital habeas case to determine, in part, whether jury considered extraneous evidence that defendant had been previously sentenced to death for same offense by different jury); *Roman v. Hedgepeth,* 2008 WL 4553091 (C.D. Cal. Oct. 8, 2008) (habeas relief from non-capital murder conviction

subjected to intimidation during proceedings[4]; and fail to answer questions truthfully during *voir dire*.[5]

In capital cases, post-conviction proceedings serve the crucial function of ensuring that an individual's capital conviction and death sentence are reliable and not the product of outside influence or bias on the part of jurors. *See, e.g., McFarland v. Scott*, 512 U.S. 849, 859 (1994) (stating that "Congress has recognized that federal habeas corpus has a particularly important role to play in promoting fundamental fairness in the imposition of the death penalty."). Here, consistent with that crucial function, Mr. Lighty seeks permission to utilize the vital investigatory tool of juror interviews to ensure misconduct on the part of jurors did not taint his capital trial proceedings. In so doing, he does not seek to infringe on either the jurors' deliberation process at trial or the jurors' privacy interests.

---

granted where jurors held transcript of defendant's police interrogation up to light, revealing two prior convictions and prior incarceration).

[4] *See, e.g., Church v. Sullivan*, 942 F.2d 1501 (10th Cir. 1991) (robbery conviction reversed in habeas case where head jailer's wife was heard asking jurors how defendants could have tied up and robbed an elderly couple); *Anderson v. Miller*, 2001 WL 1182832 (E.D.N.Y. Oct. 2, 2001) (habeas case remanded for evidentiary hearing to investigate allegations that jurors were intimidated); *Crawford v. State*, 191 P.3d 1136 (Kan. Ct. App. Sept. 12, 2008) (unpublished opinion) (murder case remanded in habeas proceedings for hearing where members of victim's family threatened to harm her and her son if she did not vote to convict).

[5] *See, e.g., Conaway v. Polk,* 453 F.3d 567 (4th Cir. 2006) (hearing ordered in capital habeas case where juror concealed familial relationship with co-defendant who cooperated with prosecution and testified against petitioner); *Williams*, 39 F. App'x 830 (affirming district court determination in habeas proceedings that juror's failure to disclose she had been married to investigator for several years, along with non-disclosure of other information, deprived petitioner of fair trial); *Green v. White*, 232 F.3d 671 (9th Cir. 2001) (habeas relief granted in murder case where juror concealed fact of previous felony conviction and other information); *Burton v. Johnson*, 948 F.2d 1150 (10th Cir. 1991) (murder conviction in which battering and abuse issues were prominent reversed in habeas case where juror in *voir dire* failed to disclose her own sexual abuse experience); *United States v. Sampson*, No. 01-10384-MLW, 2011 WL 5022335 (D. Mass. Oct. 20, 2011) (death sentence vacated in capital § 2255 proceedings where juror failed to disclose personal experience with abusive relationship and daughter's incarceration, details of which were similar to trial evidence); *McCurtis v. Michaels*, 2006 WL 3240762 (W.D. La. Oct. 3, 2006) (habeas petitioner granted new trial in sexual battery case where juror failed to disclose his wife was cousin of victim's boyfriend); *Beckworth v. State*, 2009 WL 1164994 (Ala. Crim. App. May 1, 2009) (post-conviction relief granted in capital case where juror failed to disclose he knew state's witness, had been previously employed by FBI, and had read and seen news reports about case); *McQuary v. State*, 241 S.W.3d 446 (Mo. Ct. App. 2007) (hearing ordered in post-conviction proceedings in drug distribution case where juror failed to disclose he knew key state witness); *State v. Dye*, 784 N.E.2d 469 (Ind. 2003) (post-conviction relief granted in capital case where juror failed to disclose her brother had been sentenced to death, two other brothers had been arrested, and she herself had been raped).

# ARGUMENT

**I.      Access to Jurors in Capital § 2255 Proceedings is Necessary to Protect the Constitutional Guarantees Afforded to a Prisoner Under Death Sentence.**

**A.      The Fifth and Sixth Amendments Protect Mr. Lighty's Right to a Fair and Impartial Jury.**

Through the Sixth Amendment, the Framers determined that providing the accused with a fair and impartial jury is crucial to the proper administration of our criminal justice system.  U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury . . ."). The Supreme Court has also recognized that the right to an impartial jury inheres in the Fifth Amendment: "In essence, the right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors. The failure to accord an accused a fair hearing violates even the minimal standards of due process." *Turner v. Louisiana*, 379 U.S. 466, 471-72 (1965) (quoting *Irvin v. Dowd*, 366 U.S. 717, 722 (1961) (citing *In re Oliver*, 333 U.S. 257 (1948); *Tumey v. Ohio*, 273 U.S. 510 (1927))); *see* U.S. Const. amend. V ("No person shall . . . be deprived of life . . . without due process of law").

Where juror impartiality has been tainted, the Supreme Court has been vigilant about ordering relief for the prejudiced party. In *Remmer v. United States*, the Court underscored the gravity of fair jury violations:  "In a criminal case, any private communication, contact, or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed *presumptively prejudicial*." 347 U.S. 227, 229 (1954) (emphasis added). It emphasized that the right to juror impartiality must be scrupulously guarded: "The integrity of jury proceedings must not be jeopardized by unauthorized invasions. The trial court should not decide and take final action ex parte on information such as was received in this case, but should determine the circumstances, the impact thereof upon the juror,

4

and whether or not it was prejudicial, in a hearing with all interested parties permitted to participate." *Id.* at 229-30.

A decade later, the Supreme Court weighed in again to protect the fair jury rights of an aggrieved defendant in *Parker v. Gladden*, 385 U.S. 363, 365 (1966). In light of evidence that the court bailiff had told jurors that the defendant in their case was "wicked" and "guilty," the Court found numerous trial violations of constitutional magnitude:

> the evidence developed against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross-examination, and of counsel . . . [the bailiff's] expressions were private talk, tending to reach the jury by outside influence . . . we believe that the unauthorized conduct of the bailiff involves such a probability that prejudice will result that it is deemed inherently lacking in due process, . . . it would be blinking reality not to recognize the extreme prejudice inherent in such statements . . . petitioner was entitled to be tried by 12, not 9 or even 10, impartial and unprejudiced jurors.

*Id.* at 364-66 (internal quotations omitted). Because of these violations, the Court reversed the decision of the state high court and granted petitioner post-conviction relief.

In sum, the Court has carefully protected a defendant's right to an impartial jury and has not hesitated to order new trials when that right has been breached. *See Sheppard v. Maxwell*, 384 U.S. 333, 363 (1966); *Irvin v. Dowd*, 366 U.S. 717, 729 (1961); *Mattox v. United States*, 146 U.S. 140, 153 (1892) (granting relief and ordering new trials where juries were not impartial).

**B.     For a Defendant Facing the Death Penalty, the Eighth Amendment Prohibition Against Cruel and Unusual Punishment also Requires that the Jury Be Fair and Unbiased.**

Where the defendant is on trial for his life, his right to an impartial jury is further protected by the Eighth Amendment's prohibition against cruel and unusual punishment. U.S. Const. amend. VIII ("Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted"). For nearly half a century, the Supreme Court has recognized that arbitrary and capricious infliction of the ultimate penalty contravenes this

prohibition. *See Furman v. Georgia*, 408 U.S. 238, 295-96, (1972) (Brennan, J., concurring); i*d.* at 310 (Stewart, J., concurring); *id.* at 313 (White, J., concurring); *Gregg v. Georgia*, 428 U.S. 153, 189 (1976); *Godfrey v. Georgia*, 446 U.S. 420, 428 (1980) ("if a State wishes to authorize capital punishment it has a constitutional responsibility to tailor and apply its law in a manner that avoids the arbitrary and capricious infliction of the death penalty"); *see also Caldwell v. Mississippi*, 472 U.S. 320, 340 (1985) (emphasizing "the Eighth Amendment's heightened 'need for reliability in the determination that death is the appropriate punishment in a specific case'") (quoting *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976)); *Penry v. Lynaugh*, 492 U.S. 302, 319 (1989) ("the sentence imposed at the penalty stage should reflect a reasoned moral response to the defendant's background, character, and crime") (quoting *California v. Brown*, 479 U.S. 538, 545 (1987) (O'Connor, J., concurring)).

Trial by a jury tainted by improper extraneous influences or misconduct necessarily produces unconstitutionally arbitrary decision-making. As the Court stated in *Wellons v. Hall*, "from beginning to end, judicial proceedings conducted for the purpose of deciding whether a defendant shall be put to death must be conducted with dignity and respect." 130 S.Ct. 727, 728 (2010). A jury's decision to impose death based on information not properly presented or admissible at trial circumvents any legislative or judicial attempt to guide their discretion, inviting wanton and capricious infliction of the death penalty. *Jones v. Kemp*, 706 F. Supp. 1534, 1559 (N.D. Ga. 1989) ("The use by deliberating jurors of [a Bible] . . . cannot be reconciled with the Eighth Amendment's requirement that any decision to impose death must be the result of discretion which is carefully and narrowly channeled"); *see also California v. Brown*, 479 U.S. 538, 543 (1987) ("to the extent that the instruction helps to limit the jury's consideration to matters introduced in evidence before it, it fosters the Eighth Amendment's need for reliability in

the determination that death is the appropriate punishment in a specific case" (internal quotation omitted)).

## II. The Imperative of Safeguarding a Defendant's Right to a Fair and Impartial Jury is Especially Pressing in the Capital § 2255 Context.

### A. Mr. Lighty's Interests Are Uniquely Weighty Given the Severity and Irrevocability of the Death Penalty.

The Supreme Court has long recognized that "it would not be safe to lay down any inflexible rule [of juror contact] because there might be instances in which such testimony of the juror could not be excluded without violating the plainest principles of justice." *McDonald v. Pless*, 238 U.S. 264, 269-70 (1915) (internal quotation marks omitted). The Court emphasized that such an instance would arise in "the gravest and most important cases." *Id.*

It is impossible to conceive of a case more serious than one in which the defendant is on trial for his life. As early as 1892, the Supreme Court declared that "[i]t is vital in capital cases that the jury should pass upon the case free from external causes tending to disturb the exercise of deliberate and unbiased judgment. Nor can any ground of suspicion that the administration of justice has been interfered with be tolerated." *Mattox v. United States*, 146 U.S. 140, 159 (1892). This imperative from *Mattox* has been reaffirmed numerous times. *See, e.g.*, *Lowenfield v. Phelps*, 484 U.S. 231, 238-39 (1988) ("we are naturally mindful in such cases that the qualitative difference between death and other penalties calls for a greater degree of reliability when the death sentence is imposed" (internal quotation omitted)); *California v. Ramos*, 463 U.S. 992, 998-99 (1983) ("the qualitative difference of death from all other punishments requires a correspondingly greater degree of scrutiny of the capital sentencing determination"); *Eddings v. Oklahoma*, 455 U.S. 104, 118 (1982) (O'Connor, J., concurring) ("Because sentences of death are qualitatively different from prison sentences . . . this Court has gone to extraordinary

measures to ensure that the prisoner sentenced to be executed is afforded process that will guarantee, as much as is humanly possible, that the sentence was not imposed out of whim, passion, prejudice, or mistake" (internal citations omitted)). The severity of the death penalty imposes the strictest possible requirements of reliability upon capital proceedings – both the defendant and the public have an overriding interest in ensuring that the jury has legitimately and fairly decided on death.

**B.      Capital § 2255 Proceedings Serve the Vital Function of Ensuring the Reliability and Validity of an Individual's Convictions and Death Sentence.**

The unique importance of habeas proceedings further bolsters Mr. Lighty's position. The most essential rights are at stake in habeas proceedings, because habeas corpus safeguards the fundamental liberty interest of the individual. *Slack v. McDaniel*, 529 U.S. 473, 483 (2000) ("The writ of habeas corpus plays a vital role in protecting constitutional rights"). Habeas relief is of such crucial importance that it is expressly recognized in the Constitution. U.S. Const. Art. 1, § 9, cl. 2. Of course, § 2255 relief is coextensive with habeas, and § 2255 proceedings play the same important role as petitions for the writ of habeas corpus. *Sanders v. United States*, 373 U.S. 1, 14 (1963) ("it conclusively appears from the historic context in which § 2255 was enacted that the legislation was intended simply to provide in the sentencing court a remedy *exactly commensurate* with that which had previously been available by habeas corpus" (quoting *Hill v. United States*, 368 U.S. 424, 427 (1962))(emphasis added)); *United States v. Hayman*, 342 U.S. 205, 219 (1952) ("the sole purpose [of § 2255] was to minimize the difficulties encountered in habeas corpus hearings by affording the *same rights* in another and more convenient forum") (emphasis added).

**C.      Counsel Has a Professional Obligation to Contact the Jurors.**

Supreme Court case law suggests that, in order to provide competent representation, counsel has a duty to contact members of the jury to investigate possible misconduct or bias. *See Williams (Michael) v. Taylor*, 529 U.S. 420, 440-43 (2000) (federal habeas claim of juror bias preserved only because state post-conviction counsel "was diligent in efforts to develop the facts supporting [it]"); *McCleskey v. Zant*, 499 U.S. 467, 498 (1991) ("petitioner must conduct a reasonable and diligent investigation aimed at including all relevant claims and grounds for relief in the first federal habeas petition").

The Supreme Court's observations about the importance of post-conviction counsel's investigation of juror misconduct are further supported by cases referencing the American Bar Association Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases ("ABA Guidelines"), which require counsel to interview jurors. The Guidelines, which the Supreme Court has invoked to assess the reasonableness of capital counsel's performance, *Rompilla v. Beard*, 545 U.S. 374, 387 n.7 (2005); *Wiggins v. Smith*, 539 U.S. 510, 524 (2003) (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)); *see also Williams (Terry) v. Taylor*, 529 U.S. 362, 396 (2000) (relying on ABA Standards for Criminal Justice), anticipate that counsel must contact jurors in preparation for post-conviction proceedings. *See* 10.15.1(E)(4) ("Post-conviction counsel should fully discharge the ongoing obligations imposed by these Guidelines, including the obligations to: . . . continue an aggressive investigation of all aspects of the case"); 10.15.1, Commentary ("As demonstrated by the high percentage of reversals and disturbingly large number of innocent persons sentenced to death, the trial record is unlikely to provide either a complete or accurate picture of the facts and issues in the case. This may be . . . because of juror misconduct"); 10.10.2, Commentary n.260 ("counsel investigating a capital case should be particularly alert to the possibility that, notwithstanding surface

appearances, one or more jurors were unqualified to sit at either phase of the trial and make every effort to develop the relevant facts, whether by interviewing jurors or otherwise. Such inquiries can be 'critical in discovering constitutional errors'") (quoting Hertz & Liebman, Federal Habeas Corpus Practice and Procedure at 489 n.40); 10.7, Commentary n.197 ("counsel must investigate the possibility that the defendant was judged at either the guilt or penalty phases by one or more jurors who were not impartial"). The upshot of these Guidelines provisions is that, without juror access, post-conviction counsel cannot provide effective representation.

**III. Mr. Lighty's Right to a Fair and Impartial Jury Cannot Be Properly Protected Without Post-Conviction Access to Jurors.**

    **A.** *Voir Dire* **and a Thorough Search of Public Records Cannot Are Not Sufficient Vehicles for Detecting Juror Bias or Misconduct.**

Post-conviction access to jurors is the only means by which Mr. Lighty can safely ensure that, as to the functioning of the jury, his capital trial was free from constitutional defect. It is no answer to say that the defendant achieved an impartial jury through *voir dire.* It is well-recognized that *voir dire* is not always sufficient. First, the corrupting influence can take place after jury selection. *See, e.g., Wellons*, 130 S.Ct. at 729; *Remmer*, 347 U.S. at 228; *Turner*, 379 U.S. at 467-68. Second, the effectiveness of *voir dire* is predicated on venire members' forthrightness: "the necessity of truthful answers by prospective jurors if this process is to serve its purpose is obvious." *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 555 (1984). Indeed, as Supreme Court capital habeas case precedent demonstrates, *voir dire* is not always an effective prophylactic against juror bias. *See Williams (Michael) v. Taylor*, 529 U.S. at 440-44 (2000) (ordering evidentiary hearing where empanelled juror concealed her previous marriage to and divorce from the state's lead-off witness; moreover, juror failed to disclose that one prosecutor had represented her in these divorce proceedings); *see also, e.g., Conaway*, 453

F.3d 567 (granting evidentiary hearing on juror bias claim by habeas petitioner in capital case where juror concealed familial relation to codefendant who cooperated with the prosecution and testified against petitioner); *Jackson v. Alabama State Tenure Comm'n*, 405 F.3d 1276, 1288-89 (11th Cir. 2005) (affirming district court's order of new trial in a civil discrimination suit where one juror never disclosed her prior conviction for murdering her child, despite being asked if she had any prior felony convictions); *Fields v. Woodford*, 309 F.3d 1095, 1101-06 (9th Cir. 2002) (granting evidentiary hearing to habeas petitioner in kidnapping/rape case where juror stated on *voir dire* that his wife had been victim of robbery but neglected to mention that she had been kidnapped and raped and the perpetrator never found).

Moreover, while some examination of public records may reveal possible juror biases or misrepresentations, neither public records (nor court personnel) will always reveal misconduct or the presence of improper extraneous influences. *See, e.g., Wellons*, 130 S.Ct. at 729; *Remmer*, 347 U.S. at 228. Furthermore, the Supreme Court has frowned upon the notion that trial counsel should be held responsible for searching out public records on every prospective or empanelled juror. *Williams (Michael)*, 529 U.S. at 443 ("we should be surprised, to say the least, if a district court familiar with the standards of trial practice were to hold that in all cases diligent counsel must check public records containing personal information pertaining to each and every juror").

Thus, *voir dire* or a public records search is not always sufficient to vindicate the capital defendant's fundamental right to a trial by an impartial jury. Post-conviction juror contact (structured pursuant to Court order) is required to discover juror bias or misconduct that may not be apparent or discoverable by any other means.

B.     **Federal Rule of Evidence 606(b) Anticipates Counsel's Ability to Contact Jurors.**

The Federal Rules of Evidence, specifically FRE 606(b),[6] strongly suggest that counsel should generally be permitted to contact jurors. FRE 606(b) explicitly allows juror testimony on the topics of extraneous influence or extra-judicial information. This allowance would make little sense if counsel were foreclosed in the first place from ever contacting jurors to inquire about misconduct or bias. Similarly, the Supreme Court's statement in *Smith v. Phillips*, 455 U.S. 209, 215 (1982), that "the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias" is predicated on counsel's ability to interview jurors. Without access to jurors, the availability of a hearing would be meaningless.

It should be noted that there is a difference between the proper goal of contacting jurors to determine whether they were influenced by extraneous matter – which habeas counsel intend to pursue here – and improper attempts to impeach a jury's verdict. The Supreme Court articulated this distinction in *Tanner v. United States*:

> By the beginning of this century, if not earlier, the near-universal and firmly established common-law rule in the United States flatly prohibited the admission of juror testimony to impeach a jury verdict . . . Exceptions to the common-law rule were recognized only in situations in which an extraneous influence . . . was alleged to have affected the jury. . . Lower courts used this external/internal distinction to identify those instances in which juror testimony impeaching a verdict would be admissible. The distinction was not based on whether the juror was literally inside or outside the jury room when the alleged irregularity took place; rather, the distinction was based on the nature of the allegation. . . There is little doubt that postverdict investigation into juror misconduct would in some instances lead to the invalidation of verdicts reached after irresponsible or improper juror behavior. Federal Rule of Evidence 606(b) is grounded in the common-law rule against admission of jury testimony to impeach a verdict and the exception for juror testimony relating to extraneous influences."

---

[6] FRE 606 provides in relevant part: "(b) Inquiry into validity of verdict or indictment. Upon an inquiry into the validity of a verdict . . . a juror may testify about (1) whether extraneous prejudicial information was improperly brought to the jury's attention, (2) whether any outside influence was improperly brought to bear upon any juror, or (3) whether there was a mistake in entering the verdict onto the verdict form."

483 U.S. 107, 117-21 (1987) (internal citations and quotation marks omitted). Thus, the Federal Rules of Evidence anticipate the need for juror contact in order to ferret out evidence of improper juror influences.

<strong>C. Concerns about Juror Inconvenience Are Tempered in the Capital § 2255 Context and Are Outweighed by the Need for Juror Access.</strong>

Any concerns about inconveniencing jurors or about undermining the legitimacy of a jury verdict are insufficient to outweigh a post-conviction petitioner's constitutional rights. Indeed, the Supreme Court has indicated that a § 2255 motion is a proper vehicle for ensuring that a defendant has been afforded a fair jury trial. *See Wellons*, 130 S.Ct. at 732 (vacating Eleventh Circuit's denial of an evidentiary hearing to federal habeas petitioner on claims of juror bias, remanding for further consideration); *Williams (Michael)*, 529 U.S. at 440-44 (2008) (granting § 2254 petitioner evidentiary hearing on juror bias claim); *see also*, *e.g.*, *United States v. Smith*, 62 F.3d 641, 650 n.5 (4th Cir. 1995) ("we have often recognized that a claim of jury tampering implicates the Sixth Amendment right to an impartial jury and therefore *is* cognizable on habeas corpus"). Similarly, notwithstanding general concerns about the sanctity of jury deliberations, cases in all twelve general circuit courts of appeal – many of them *non-capital* – have shown that counsel's post-verdict contact with jurors is entirely proper and sometimes necessary.[7] And

---

[7] *See United States v. Villar*, 586 F.3d 76 (1st Cir. 2009) (ordering inquiry into validity of verdict where defense counsel, hours after the verdict was delivered, received an e-mail from one juror raising the possibility of racial prejudice in deliberations – defendant's Fifth and Sixth Amendment rights outweighed the "no impeachment" rule of FRE 606(b)); *Bulger v. McClay*, 575 F.2d 407 (2d Cir. 1978) (affirming district court's grant of habeas relief where defense counsel questioned jurors as they left the courtroom and found out that one juror had changed his vote based on the contents of a newspaper article not in evidence); *Williams v. Price*, 343 F.3d 223 (3d Cir. 2003) (Alito, J.) (remanding for evidentiary hearing on habeas petition where defense counsel, based on post-trial affidavits obtained from jurors, contended that jurors had lied on *voir dire* about racial bias); *Keller v. Petsock*, 853 F.2d 1122 (3d Cir. 1988) (remanding for evidentiary hearing on habeas petition where juror visited defense counsel after trial and indicated that the tipstaff had misinformed jurors on their ability to communicate with the trial

13

judge); *United States v. Kum Seng Seo*, 300 F.2d 623 (3d Cir. 1962) (granting new trial where juror called defense counsel after trial and informed him that another juror had tainted deliberations with inadmissible evidence from a newspaper article); *Fullwood v. Lee*, 290 F.3d 663 (4th Cir. 2002) (remanding for evidentiary hearing on jury bias where defense counsel had interviewed jurors after resentencing proceeding and received post-trial affidavit that indicated one juror had been strongly influenced by her husband and also that the jury considered information not presented at trial); *United States v. Howard*, 506 F.2d 865 (5th Cir. 1975) (remanding for further hearing on new trial motion where defendant, after being convicted for possessing stolen goods, received an affidavit from one of the convicting jurors stating that the jury had considered extrinsic facts not introduced at trial); *Doan v. Brigano*, 237 F.3d 722 (6th Cir. 2001) (affirming denial of habeas relief in noncapital murder case because of harmless error; the defendant's attorney interviewed jurors after trial and received affidavit that one had conducted an experiment at home to test the veracity of defendant's testimony, informed other jurors of the result, and looked up "purposeful" and "intent" in the dictionary); *Moore v. Knight*, 368 F.3d 936 (7th Cir. 2004) (reversing district court's denial of habeas relief in a rape case; the defendant had his friend investigate claims of *ex parte* communications between judge and jury members and received two affidavits from jurors in question); *United States v. Swinton*, 75 F.3d 374 (8th Cir. 1996) (remanding on direct appeal for evidentiary hearing in bank fraud case where juror, after trial, contacted defendant and told him that jury had considered prior conviction evidence not introduced at trial); *United States v. Hall*, 85 F.3d 367 (8th Cir. 1996) (ordering evidentiary hearing in drug case where, after conviction but before sentencing, defense counsel received an affidavit from the jury foreperson stating the juror had overheard judge's comments concerning inadmissible other acts evidence); *United States v. Keating*, 147 F.3d 895 (9th Cir. 1998) (affirming district court's new trial order in financial fraud case; after conviction, defendant had an investigator interview the jurors, and four jurors admitted knowing of defendant's excluded prior state court conviction); *United States v. Humphrey*, 208 F.3d 1190 (10th Cir. 2000) (remanding for further hearings on juror misconduct claims; co-defendant's lawyer heard indirectly that one juror had made remarks about defendant's reputation during deliberations, but the district court did not sufficiently investigate); *Burton v. Johnson*, 948 F.2d 1150 (10th Cir. 1991) (affirming new trial order in murder case where attorney contacted jurors after trial and learned that some had concealed material information during *voir dire*); *United States v. Perkins*, 748 F.2d 1519 (11th Cir. 1984) (ordering new trial in obstruction of justice case; jurors contacted defense attorney after trial, reporting that they had been unduly pressured into delivering guilty verdict and that another juror had hid material information at *voir dire*); *United States v. Wilson*, 534 F.2d 375 (C.A.D.C. 1976) (affirming denial of hearing in support of new trial motion in drug case, but stating that "appellant counsel [should have] subpoena[ed] or depose[d]" juror who indicated that he had been unduly influenced in reaching the verdict); *United States v. Morrow*, 412 F.Supp.2d 146 (D.D.C. 2006) (denying new trial motion based on juror misconduct claims after evidentiary hearing; defendants' post-trial e-mail communication with one juror revealed that the jury had considered extraneous information not introduced at trial). In a number of these cases, a juror initially made contact with defense counsel and informed them of possible juror misconduct or bias. There is, however, no principled reason to distinguish between those cases in which a juror recognizes an issue and comes forward on his own and cases in which a juror does not. As the other cases in the list show, juror misconduct is not invariably reported by a jury member on his own initiative.

because juror contact has been found to be appropriate in non-capital cases, it must be appropriate in capital cases, where the stakes could not be higher.

To strike a balance between Mr. Lighty's constitutional rights and jurors' privacy interests, the Court may impose appropriate conditions on how juror interviews should be conducted. The Court could, for example, require that counsel obtain a juror's consent before conducting an interview. *See, e.g.*, *United States v. Brown*, 250 F.3d 907, 921 (5th Cir. 2001) (upholding district court order that required juror consent before release of juror's information); *United States v. Davila*, 704 F.2d 749, 754 n.8 (5th Cir. 1983) ("A valid argument may be made that any post-trial questioning of . . . should be conducted under the strict supervision and control of the court, with inquiry restricted to those matters found by the court as both relevant and proper under Federal Rules of Evidence 606(b)"). This will remove any inconvenience or discomfort to the jurors while allowing Mr. Lighty to fully vindicate his constitutional rights.

## IV.     The Local Rule of this Jurisdiction Does Not Require A Showing of Good Cause.

Unlike the local rules of other federal districts, this district's rule on juror access omits any requirement of good cause. *Compare* Local Civ. R. 107(16) ("Unless permitted by the presiding judge, no attorney or party shall directly or through an agent interview or question any juror, alternate juror or prospective juror with respect to that juror's jury service."), *with* F.R.Civ.P 39 and LRCrim24.2 (D. Ariz); LCvR 47.2 and LCrR 24.2 (D.D.C.); L.R. 47.2 (N.D. Ind.); LR47.5E and LR47.5M & W (E.D. La.); LR 47.2 (W.D.N.C.); Civ. Rule 47 and Crim. Rule 24 (E.D.Va.); L.R. 10 (W.D.Va.); LR Civ P 48.1 and LR Cr P 31.1 (S.D.W.Va.) (requiring leave of the court upon showing of good cause for counsel to contact jurors).  The existence of an express good cause requirement in other districts indicates that, had the judiciary wished to

limit juror contact in this district, it, too, would have imposed an express good cause requirement. It did not. The Court remains free to permit juror access based on the conditions it sees fit to impose. And, for the reasons set forth above, Mr. Lighty respectfully submits that the Court must permit access in order to ensure that his constitutional rights are preserved.

## CONCLUSION

For the foregoing reasons, Mr. Lighty respectfully asks this Court for permission to interview the jurors that were empanelled in his case.

Respectfully submitted,

Dated: September 5, 2012

/s/ Julie Brain
Julie Brain
Julie_brain@fd.org
Karl Schwartz
Karl_schwartz@fd.org
Capital Habeas Unit
Delaware Federal Defender Office
800 King Street
Suite 200
Wilmington, DE 19801
302-573-6010

Seth A. Rosenthal (D. Md. Bar No. 10780)
sarosenthal@venable.com
Gilead I. Light
gilight@venable.com
Molly T. Geissenhainer (D. Md. Bar No. 18390)
mtgeissenhainer@venable.com
VENABLE LLP
575 7th Street, NW
Washington, DC 20004-1601
202-344-4000

*Counsel for Kenneth Jamal Lighty*