IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | Criminal No. PJM 03-0457 |
| **V.** : | |
| **KENNETH JAMAL LIGHTY** : | |

...oooOooo...

## GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO PERMIT JUROR CONTACT

Comes now the United States of America, by and through undersigned counsel, and files this Response in Opposition to Defendant Lighty's Motion to Permit Juror Contact (Docket Entry 426).

I.  **PROCEDURAL BACKGROUND**

On October 8, 2003, a grand jury in the District of Maryland returned an indictment charging Kenneth Jamal Lighty, James Everett Flood III, and Lorenzo Anthony Wilson with kidnapping resulting in death, in violation of 18 U.S.C. § 1201(a) (Count One); conspiracy to kidnap, in violation of 18 U.S.C. § 1201(c); and three counts of use of a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c) (Counts Three, Four and Five). A notice of intent to seek a death sentence was filed against Kenneth Jamal Lighty only. As Wilson had made statements to law enforcement and a friend in which he implicated Flood and Lighty as the perpetrators of the crime, the government consent to a severance of his case. Flood and Lighty also moved for separate trials. The district court denied their motions, and later denied Lighty's motion to reconsider the denial. Flood and Lighty's joint trial commenced on September 6, 2006. The jury found both defendants guilty of all counts on October 21, 2005. JA 12.

After a lengthy penalty phase hearing, the jury recommended the death penalty as to Lighty on November 10, 2005. The district court sentenced Lighty to death and entered the

Judgment on March 10, 2006. The Fourth Circuit affirmed the conviction and sentence on August 11, 2010. United States v. Lighty, et al., 616 F.3d 321 (4th Cir. 2010)(hereinafter "Lighty."). The Supreme Court denied certiorari on October 17, 2011.

## II.     ANALYSIS

Lighty has asked this Court to permit his counsel to contact and interview the jurors in this case "to ensure that [his] constitutional rights were preserved during trial." Counsel state that their focus will be "on whether any improper extraneous matter may have influenced the jury's verdict." Lighty premises his request to contact the former jurors in this case based on general notions of an attorney's duty to investigate all claims related to the conviction and sentence citing the U.S. Constitution and cases where juror misconduct has come to light after a verdict and sentence.

Simply put, there is simply no free-standing duty and unrestricted right to investigate and have contact with jurors nearly seven years after they returned their verdicts - without a shred or hint of evidence of juror misconduct. To the contrary, and for good reason, the law is well settled that a defendant's right to such discovery is severely limited. In the absence of any showing whatsoever of a reason other than a fishing expedition, let alone an affirmative showing of good cause, the defendant's request must be denied.

There is no good cause for the request to contact jurors - but Lighty contends that there is no need to show good cause because this Court's Local Rule does not require it. See Local Civ. R. 107(16) ("Unless permitted by the presiding judge, no attorney or party shall directly or through an agent interview or question any juror, alternate juror or prospective juror with respect to that juror's jury service."). The absence of the words "good cause" is not meaningful here

because the clear mandate of the rule is to prohibit juror contact without the permission of the presiding judge.   Moreover, it is clear that Lighty seeks the Court's permission in advance of his filing of a habeas motion under 28 U.S.C. § 2255 where it is plainly written that discovery – any discovery – is permitted only upon a showing of good cause.   Rule 6, 28 U.S.C. § 2255 provides, in pertinent part:

DISCOVERY

> (a) Leave of Court Required. A judge may, **for good cause**, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery. If necessary for effective discovery, the judge must appoint an attorney for a petitioner who qualifies to have counsel appointed under 18 U.S.C. Sec. 3006A.
>
> (b) Requesting Discovery. A party requesting discovery must **provide reasons for the request**. The request must also include any proposed interrogatories and requests for admission, and must specify any requested documents.

(Emphasis in **bold** supplied).

Accordingly, Lighty's legal discussion opining about the need and duty to contact the jurors in this case is really nothing more than the request for a justified fishing expedition. This practice has been explicitly and repeatedly condemned on collateral review.  See Perillo v. Johnson, 79 F.3d 41, 444 (5th Cir. 1996); Ward v. Whitley, 21 F.3d 1355, 1367 (5th Cir. 1994); Deputy v. Taylor, 19 F.3d 1485, 1493 (3rd Cir. 1994); United States v. Wilson, 901 F.2d 378 (4th Cir. 1990).  Conclusory speculation as contained in Lighty's motion do not warrant discovery.

Devoid of a showing of good cause to invade the lives of the former jurors - private citizens who have done their duty in this case without any apparent malfeasance - Lighty resorts to a claim that a discovery order should issue so that his attorneys can discharge their duty to

3

investigate every imaginable constitutional error in this case.   He cites the American Bar Association's guidelines which "require counsel to interview jurors" in discussing the effectiveness of defense counsel in a criminal case.   Motion at page 9.   The Supreme Court has expressly stated that such guidelines are not controlling in determining constitutional reasonableness under Strickland v. Washington, 466 U.S. 668 (1984), the definitive case on ineffectiveness of counsel claims in collateral proceedings.   See also Bobby v. Van Hook, 558 US 4 (2009) (per curiam)( "the Court of Appeals . . . treated the ABA's 2003 Guidelines not merely as evidence of what reasonably diligent attorneys would do, but as inexorable commands with which all capital defense counsel '"must fully comply."'. . . Strickland stressed, however, that 'American Bar Association standards and the like' are 'only guides' to what reasonableness means, not its definition. . . . We have since regarded them as such.")  In fact, there is no constitutional right to counsel at all during collateral review.  See Coleman v. Thompson, 501 U.S. 722, 753-54 (1991).  Moreover, even the constitutional right to counsel does not require that a criminal defense attorney "leave no stone unturned and no witness unpursued."  Berryman v. Morton, 100 F.3d 1089, 1101 (3rd Cir. 1996).

     Indeed, the Fourth Circuit has expressly held that a defendant is not entitled to post-trial interviews with jurors absent showing of improper outside influence.  United States v. Gravely, 840 F.2d 1156, 1159 (4th Cir. 1988). The Court wrote:

> Requests to impeach jury verdicts by post-trial contact with jurors are disfavored. Tanner v. United States, 483 U.S. 107, 107 S.Ct. 2739, 97 L.Ed.2d 90 (1987). Fed.Rule Evid. 606(b) reflects that policy by prohibiting the interrogation of jurors except with regard to "whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror."

Defendant's request was properly denied because he made no threshold showing of improper outside influence. Big John, B.V. v. Indian Head Grain Co., 718 F.2d 143, 150 (5th Cir.1983). In Tanner, the Supreme Court indicated that in the absence of such a showing neither the sixth amendment nor Fed.Rule Evid. 606(b) requires an inquiry into possible external influence when a threshold showing of external influence has not been made. The trial court's decision not to allow such an inquiry was found not in error.  Tanner, 107 S.Ct. 2745, 2750–51. The alleged pressure could have been brought by one juror on another and if so the court will not take cognizance of it. United States v. Barber, 668 F.2d 778 (4th Cir.1982), cert. denied, 459 U.S. 829, 103 S.Ct. 66, 74 L.Ed.2d 67 (1982). Without a threshold showing of improper outside influence, defendant's request is a mere fishing expedition. The Fourth Circuit follows the view that the trial court may deal with such claims as it feels the particular circumstances require and only reverse for abuse of discretion. United States v. Duncan, 598 F.2d 839, 866 (4th Cir.1979), cert. denied, 444 U.S. 871, 100 S.Ct. 148, 62 L.Ed.2d 96 (1979). We perceive no abuse in the trial court's denial of the request to interview jurors. Defendant's suggested rule would allow a convicted defendant to interrogate the jury about occurrence of the not unlikely event of a juror publicly stating that contention was present in the jury room.

For these very reasons, this Court has already rejected in a different death penalty case the same arguments made here by counsel in support of its juror contact motion.  United States v. Higgs, 711 F.Supp. 2d 479, 554  (D.Md. 2010):

> Higgs would apparently have the Court find that, because of the severity and irreversibility of the death penalty, the Eighth Amendment requires a heightened standard for determining that death is the appropriate punishment, and for that reason it should permit him to conduct juror interviews. This theory finds no support in the law. While courts have surely required a heightened standard for determining that death is the appropriate punishment for certain crimes, see Woodson v. North Carolina, 428 U.S. 280, 305, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976), no authority supports the proposition that juror interviews may be undertaken post-trial in death-penalty cases in a hunt for facts that might demonstrate juror misconduct.
>
> Higgs argues that, under the American Bar Association Guidelines, "it is clear that, where permitted, post-conviction counsel have a duty to interview jurors." ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases, 10.15.1, commentary, pg. 123 (rev. ed.2003) (emphasis added). For good reason, however, post-trial interviews of jurors are highly restricted in this District pursuant to Local Rule 107.16, which states, "[u]nless

permitted by the presiding judge, no attorney or party shall directly or through an agent interview or question any juror, alternate juror, or prospective juror, with respect to that juror's service." L.R. 107.16 (emphasis added). This District takes the position that jurors should not have to account to interested parties, especially those who may be disposed to challenge the verdict and press the jurors to explain how and why they decided as they did. The Court, finding that the underlying claim is factually baseless, denied the request to interview jurors once before; it has no reason to modify its decision at this time.

Whatever duty of investigation counsel may have, it does not legally require a complete probing of every imaginable constitutionally-based claim against the judgment in an effort to stir up issues about a long -excused jury that simply are not present.

### III.    CONCLUSION

As Lighty has failed to make any showing whatsoever, much less a showing of "good cause," that the jurors in his case engaged in misconduct or were improperly exposed to outside influences,  Lighty's motion should be denied.

>Respectfully submitted,
>
>Rod J. Rosenstein
>United States Attorney
>
>By:_____/s/_____
>Sandra Wilkinson
>Deborah A. Johnston
>Assistant United States Attorneys
>36 South Charles Street, Fourth Floor
>Baltimore, Maryland 21201
>(410) 209-4800

This is to certify that on this October 3, 2012, a copy of the foregoing Government's Response was e-filed and emailed to counsel of record: Julie Brain at  julie_brain@fd.org

>_____/s/_____
>Sandra Wilkinson