# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Greenbelt Division)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 03-cr-00457-PJM |
| | ) | |
| v. | ) | |
| | ) | |
| KENNETH JAMAL LIGHTY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF PETITIONER'S MOTION FOR DISCOVERY REGARDING CLAIMS OTHER THAN CLAIM I IN HIS MOTION FOR RELIEF UNDER 28 U.S.C. § 2255

Pursuant to Rule 6 of the Rules on Motion Attacking Sentence Under Section 2255, the Federal Rules of Civil Procedure, the Federal Rules of Criminal Procedure, the Due Process Clause of the Fifth Amendment, the Eighth Amendment, and this Court's Order dated November 19, 2012 (ECF No. 449), Petitioner Kenneth Jamal Lighty ("Mr. Lighty") has contemporaneously filed a Motion for Discovery Regarding Claims Other Than Claim I in His Pending Motion for Relief under 28 U.S.C. § 2255 ("Motion"). As set forth below, Mr. Lighty has good cause for each of the discovery requests made in the Motion.

### INTRODUCTION

Mr. Lighty filed a Motion to Vacate, Set Aside or Correct Sentence and for a New Trial Pursuant to 28 U.S.C. § 2255 on October 16, 2012. On December 20, 2012, he filed an Amended Motion to Vacate, Set Aside or Correct Sentence and for a New Trial Pursuant to 28 U.S.C. § 2255. (ECF No. 451.) Claim I in the Amended Motion alleges that the Government impermissibly exercised its peremptory challenges against prospective female venire members

1

on the basis of their gender and their race; pursuant to the Court's Order, counsel for Mr. Lighty and Mr. Flood filed a joint motion for discovery with respect to that claim on December 20, 2012. (ECF No. 453.) Pursuant to the Court's Order, counsel for Mr. Lighty now seek leave to conduct certain limited and carefully circumscribed discovery in connection with the remainder of the claims in the Amended Motion. Mr. Lighty has the requisite good cause for obtaining the discovery requested, and the Motion should be granted.

## ARGUMENT

**I.      Mr. Lighty Is Entitled to Discovery upon a Showing of Good Cause.**

Rule 6 of the Rules on Motions Attacking Sentence Under Section 2255 permits the Court to authorize discovery for good cause under the Federal Rules of Criminal or Civil Procedure. Section 2255 Rule 6(a). It specifically contemplates the availability of document requests, interrogatories and depositions. Section 2255 Rule 6(b) ("The request must … include proposed interrogatories … and must specify any requested documents") & 6(c) (addressing deposition expenses).

"Good cause" exists "when a petition for habeas corpus establishes a prima facie case for relief. Specifically, discovery is warranted, 'where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief.'" *United States v. Roane*, 378 F.3d 382, 402-03 (4th Cir. 2004) (quoting *Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997) (citing *Harris v. Nelson*, 394 U.S. 286, 299 (1969)); *Quesinberry v. Taylor*, 162 F.3d 273, 279 (4th Cir. 1998) ("Good cause is shown if the petitioner makes a specific allegation that shows reason to believe that the petitioner may be able to demonstrate that he is entitled to relief."). When a petitioner establishes good cause, the Court must permit discovery. *McDaniel v. United States Dist. Ct.*, 127 F.3d 886, 888 (9th Cir.

1997) (where the petitioner has "presented specific allegations . . . [he] is entitled to discovery").

That is the purpose of Rule 6:

> [H]istory makes clear that [Rule 6's] purpose is to ensure that the facts underlying a habeas corpus claim are adequately developed, and that it is a court's obligation to allow discovery in cases in which a petitioner has provided a sufficient basis for believing that discovery may be necessary to adequately explore a petitioner's claim for relief. . . . a court may not deny a habeas corpus petitioner's motion for leave to conduct discovery if there is a sound basis for concluding that the requested discovery might allow him to demonstrate that he has been confined illegally.

*Johnston v. Love*, 165 F.R.D. 444, 445 (E.D. Pa. 1996)*; see also Gaitan-Campanioni v.*

*Thornburgh*, 777 F. Supp. 1355, 1356 (E.D. Tex. 1991) ("Although discovery is permitted only

by leave of court, the court should not hesitate to allow discovery, where it will help illuminate

the issues underlying the applicant's claim."). Rule 6's command that discovery be granted upon

a showing of good cause carries particular force in a capital case, where a court's "duty to search

for constitutional error with painstaking care is never more exacting." *Kyles v. Whitley*, 514 U.S.

419, 422 (1995).

## II.      Mr. Lighty Has Established Good Cause for His Discovery Requests.

Mr. Lighty has good cause for each of his discovery requests. He has placed before the

Court specific allegations that show that he "may, if the facts are fully developed, be able to

demonstrate that he is  . . . entitled to relief." *Bracy*, 520 U.S. at 908-09 (quoting *Harris*, 394

U.S. at 299).

### A.      Claim II:  Ineffective Assistance of Counsel at the Guilt Phase

Mr. Lighty's Motion seeks leave to utilize limited discovery procedures with respect to

four discrete portions of his claim that his trial counsel rendered constitutionally ineffective

assistance at the guilt phase. In his Amended § 2255 Motion, Mr. Lighty set forth extensive,

detailed factual allegations that, if proven, demonstrate his entitlement to relief on this claim. He

has alleged that his trial counsel committed numerous errors and omissions that, separately and cumulatively, entitle him to a new trial.

Claims of constitutionally ineffective assistance of trial counsel are governed by the standard established in *Strickland v. Washington*, 466 U.S. 668 (1984). In order to prevail, a petitioner must show (1) "that counsel's performance was deficient;" and (2) "that the deficient performance prejudiced the defense." *Id.* at 687. Counsel's performance is deficient if it "fell below an objective standard of reasonableness . . . under prevailing professional norms." *Id.* at 688. Prejudice is established by a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In assessing whether the requisite showing of prejudice has been made, a court must examine the cumulative effect of all of counsel's errors and omissions. *See, e.g., Hooks v. Workman*, 689 F.3d 1148, 1188 (10th Cir. 2012); *Malone v. Walls*, 538 F.3d 744, 762 (7th Cir. 2008); *Harris v. Housewright*, 697 F.2d 202, 206 (8th Cir. 1982).

Each of Mr. Lighty's discovery requests is designed to produce relevant, material evidence supporting a particular aspect of his ineffective assistance claim. First, Mr. Lighty seeks to discover evidence inculpating an alternate suspect in the Hayes homicide, Tony Mathis. Mr. Lighty has alleged in his Amended § 2255 Motion that his trial counsel failed to adequately investigate, discover and present available evidence that inculpated Mathis in the crime. (ECF No. 451 at 32-37.) It is well-established that trial counsel's failure to investigate and present evidence linking individuals other than the defendant to the charged crime may constitute ineffective assistance under *Strickland*. *See, e.g., Hash v. Johnson*, 845 F. Supp. 2d 711, 742-43 (W.D. Va. 2012) (finding ineffective assistance where counsel failed to develop evidence linking another suspect to the homicide with which defendant was charged); *Jones v. Wood*, 207 F.3d

4

557, 563 (9th Cir. 2000) (same); *Skinner v. Quarterman*, 528 F.3d 336, 344-45 (5th Cir. 2008) (granting certificate of appealability on claim that trial counsel was ineffective for failing to present evidence implicating alternate suspect).

Accordingly, Mr. Lighty seeks to depose Tamika Hampton, Mathis's former girlfriend and the mother of his children, whose testimony before the grand jury in the case reveals that she is in possession of a great deal of information that tends to incriminate Mathis in the Hayes homicide and others, that implicates him in a number of other violent crimes and that shows his violent character and general propensity to commit acts of violence against others. *See* Ex. 1, attached. Ms. Hampton also has extensive knowledge concerning the close relationship between Mathis, James Flood, Jr., and Eugene Scott, and the absence of any relationship between any of those individuals and either Mr. Lighty or Lorenzo Wilson. *Id.* Given that the Government's theory that the motive for the Hayes abduction was retaliation for the carjacking of Scott, the fact that Mr. Lighty had no relationship to Scott whereas Flood and Mathis were good friends of his undercuts the inference that Mr. Lighty was the main culprit and shooter and supports the inference that it was in fact Mathis and Flood who abducted and shot Hayes.

Mr. Lighty also seeks production of documents by the Government regarding the carjacking of James Flood Jr. shortly before the Hayes homicide. Antoine Forrest, who was present at the scene of Hayes's abduction, told a defense investigator before trial that he heard that Hayes was killed in retaliation for a robbery and beating committed against one of the abductors by Hayes's cousin and drug supplier, Francisco Brittingham. Nakita Carter, who is the mother of one of Flood's children, testified in the grand jury that, sometime between late October, 2001 and January, 2002, Flood was robbed and carjacked. *See* Ex. 2, attached. She was living with Flood's sister, Joyce Flood, at the time. Flood called the house and told his sister

5

that he had just been carjacked at a Shell gas station on St. Barnabas Road. When they found him, they saw that, not only had his white Chevrolet Caprice been taken, but also his shoes, his jacket, his keys and his wallet were all gone and he was standing outside in wet socks. Flood's sister, Joyce, also testified in the grand jury and confirmed Nakita Carter's account of the incident. See Ex. 3, attached. This information suggests that the motive for the homicide was to retaliate for a crime committed against Flood, Mathis's best friend, and had nothing to do with Mr. Lighty, which is exculpatory of Mr. Lighty and should have been presented at trial. Mr. Lighty therefore seeks information designed to determine the veracity of these allegations.

Mr. Lighty seeks to take the deposition of Caprecia Yarborough, the girlfriend of Eric Hayes at the time of his abduction. Ms. Yarborough confirmed to police that Mr. Hayes sold drugs in the area of the abduction that were supplied to him by his cousins, including Francisco Brittingham. See Ex. 4, attached. She also described a conversation she had with Mr. Hayes on the evening that he was abducted. She reported that Mr. Hayes told her that his friend, Antoine Forrest, who was with him when he was abducted, had just been released from jail after being charged with murder; that he believed that Antoine's phone was tapped; that he was scared and did not know what to do; and that she told him to call a cab and go home immediately. In a later statement to police Ms. Yarborough added that Mr. Hayes told her during their conversation that some guys were looking for Antoine, and that Mr. Hayes was repeatedly paged "911" by a cousin as they talked. See Ex. 5, attached. Additionally, prior to Mr. Lighty's trial, Antoine Forrest told a defense investigator that Ms. Yarborough knows all about the reasons for Mr. Hayes's abduction. Once again, this information suggests that the motive for the homicide had nothing to do with Mr. Lighty, which is exculpatory of Mr. Lighty and should have been

presented at trial. Mr. Lighty therefore seeks to establish the full extent of the information regarding the abduction that Ms. Yarborough possesses.

The second category of information that Mr. Lighty seeks to discover in connection with Claim II is evidence that mitigates the extraordinarily prejudicial impact of the erroneous introduction at trial of evidence of another homicide, namely the Afton Street shooting of Antoine Newbill. When they are informed that the Government intends to introduce evidence of another, separate offense in addition to the one being tried, defense counsel have "a duty to make all reasonable efforts to learn what they c[an] about the offense." *Rompilla v. Beard*, 545 U.S. 374, 385 (2005). "Counsel's obligation to rebut aggravating evidence extend[s] beyond arguing it ought to be kept out." *Id*. at 386 n.5. Counsel must also investigate whether there exist extenuating circumstances regarding the offense that make the evidence "less damning than the prosecution's characterization of the [incident] would suggest." *Id.* at 386, 386 n.5. Failure to fulfill this obligation constitutes deficient performance under *Strickland*. *Id.* at 389-90.

The discovery sought by Mr. Lighty in connection with this issue is carefully designed to produce information that is directly relevant and material to his evidentiary burden with respect to this ground for relief. After trial counsel lost their motion to exclude evidence of the Afton Street shooting, they seemingly failed to recognize that they could, and had to, present evidence to blunt the prejudicial force of the additional homicide. They sought no additional discovery other than that initially provided to them by the Government and failed to conduct any independent investigation of the crime whatsoever. Had they done so, it is already apparent that counsel could have presented significant evidence showing that the incident was part of a series of events that arose out of a dispute between Antonio Johnson and Lorenzo Wilson, not Mr. Lighty; that the evening before, Johnson and his friends had driven to Mr. Wilson and Mr.

Lighty's neighborhood and attempted to shoot them and others with them, *see* Ex. 6, attached; and that during the incident itself there were shots fired by both sides, not just by Wilson and the other individuals in the car. (ECF No. 451 at 43-50.) The discovery requested in connection with this incident is designed to uncover the full extent to the information that trial counsel could have obtained and utilized had they been performing as the reasonably competent advocates guaranteed by the Constitution.

Also with respect to Claim II, Mr. Lighty seeks discovery of information regarding key Government witness Charles Whitley's history of acting as an informant for law enforcement in exchange for benefits for himself. It is beyond dispute that evidence that a witness has a history of exchanging alleged information regarding the criminal dealings of others for benefits for himself is valuable impeachment evidence for the defense. *See Monroe v. Angelone*, 323 F.3d 286, 315-16 (4th Cir. 2003) (finding *Brady* violation where prosecution suppressed, inter alia, the informant history of a key witness showing she had history of trying to deal information and was " professional snitch"). Available evidence indicates that Charles Whitley has such a history. Detective Sean Chaney, the lead investigator in the case for the Prince George's County Police Department, wrote in a court document that an individual who gave information to police about this case on March 28, 2002, had "previously provided detailed information regarding other crimes of violence and narcotics trafficking." Ex. 7, attached. Only Charles Whitley gave information about this case to police on March 28, 2002.

Accordingly, Mr. Lighty seeks to discover relevant details about Mr. Whitley's history from five sources: the Government, the Prince George's County Police Department, the Prince George's County Detention Center, Detective Chaney and Charles Whitley himself. In light of

8

Detective Chaney's representation, each entity is highly likely to possess information responsive to the request and to Mr. Lighty's claim for relief.

The fourth and final category of information that Mr. Lighty seeks to discover in connection with Claim II is information that implicates Maurice Gray in the Afton Street homicide. Trial counsel's failure to discover and present this evidence violated both their duty to investigate alternate suspects, *see Hash*, 845 F. Supp. 2d at 742-43; *Jones*, 207 F.3d at 563; *Skinner,* 528 F.3d at 344-45, and their obligation to mitigate prior or separate offenses, *see Rompilla*, 545 U.S. at 389-90. Counsel had in their possession a Prince George's County Police Department Report that noted that law enforcement had obtained a search warrant to search Mr. Gray's home in Upper Marlboro, Maryland, on February 23, 2002, in connection with the Afton Street homicide. See Ex. 8, attached. Counsel were thus on notice that the Department had evidence amounting at least to probable cause to believe that Mr. Gray was implicated in the case. They nevertheless failed to seek discovery of the warrant affidavit or any other information regarding Mr. Gray's role in the offense. Mr. Lighty seeks that information now, in order to identify the evidence that his trial counsel could have discovered and presented and thereby establish the prejudice he suffered as a result of counsel's failure to do so.

## B. Claim IV: Prosecutorial Misconduct

Information sought with respect to Claim II, ineffective assistance of counsel at the guilt phase, is also directly relevant to Claim IV, prosecutorial misconduct. In Claim IV of his Amended § 2255 Motion, Mr. Lighty alleges prosecutorial misconduct on the part of the Government, including failure to disclose material impeaching information regarding Charles Whitley and his history of cooperation with law enforcement as an informant, (ECF No. 451 at 82-83), and failure to disclose material exculpatory information implicating Maurice Gray in the

9

Afton Street homicide, (ECF No. 451 at 84-85). The failure to disclose material exculpatory or impeachment evidence violates the Due Process Clause. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963); *Giglio v. United States*, 405 U.S. 150, 154 (1972). The information requested by Mr. Lighty in paragraphs 3 and 4 of his Motion is also plainly relevant to Mr. Lighty's burden of proof with respect to this claim.

**C.      Claim VI:  Ineffective Assistance of Counsel at the Penalty Phase**

Mr. Lighty's Motion seeks leave to issue a limited number of subpoenas duces tecum to obtain documentary evidence with respect to a discrete portion of his claim that his trial counsel rendered constitutionally ineffective assistance at the penalty phase. In his Amended § 2255 Motion, Mr. Lighty set forth extensive, detailed factual allegations that, if proven, demonstrate his entitlement to relief on this claim. He has alleged that his trial counsel committed numerous errors and omissions that, separately and cumulatively, entitle him to a new sentencing hearing. The discovery sought in connection with the guilt phase ineffective assistance claim is also directly relevant to this claim, as the prejudice that flowed from counsel's constitutionally inadequate performance at that stage affected not only the jury's guilt phase verdict, but also their sentencing decision.

Claims of constitutionally ineffective assistance of trial counsel at the penalty phase are governed by the same standard as those alleging ineffective assistance at the guilt phase, namely the standard established in *Strickland v. Washington*, 466 U.S. 668 (1984). In order to prevail, a petitioner must show (1) "that counsel's performance was deficient;" and (2) "that the deficient performance prejudiced the defense." *Id.* at 687. Counsel's performance is deficient if it "fell below an objective standard of reasonableness . . . under prevailing professional norms." *Id.* at 688. Prejudice is established by a showing that "there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Once again, in assessing whether the requisite showing of prejudice has been made, a court must examine the cumulative effect of all of counsel's errors and omissions. *See Hooks*, 689 F.3d at 1188; *Malone*, 538 F.3d at 762; *Harris*, 697 F.2d at 206.

Each of the subpoenas that Mr. Lighty seeks permission to serve is designed to produce relevant, material evidence supporting a particular aspect of this claim. Mr. Lighty has alleged that his trial counsel failed to conduct a constitutionally adequate investigation of available mitigating evidence. Counsel in a capital trial are required to conduct a thorough investigation of the defendant's background and life history in order to identify any mitigating evidence that may be present. *See, e.g., Wiggins v. Smith*, 539 U.S. 510, 524-25 (2003) (finding counsel constitutionally ineffective for failing to adequately investigate defendant's social history). Guideline 10.7.A of the American Bar Association Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases (2003) expressly states that counsel "have an obligation to conduct thorough and independent investigations relating to the issues of . . . penalty." The Commentary to that Guideline explains that "[a] multi-generational investigation extending as far as possible vertically and horizontally frequently discloses significant patterns of family dysfunction and may help establish or strengthen a diagnosis or underscore the hereditary nature of a particular impairment," and accordingly instructs that "[c]ounsel should use all appropriate avenues including signed releases, subpoenas, [and] court orders" to obtain all potentially relevant records regarding "the client, his or her siblings and parents, and other family members," including "juvenile dependency or family court records," "medical records," "criminal and correctional records" and "family birth, marriage, and death records."

11

Despite these clear directives, the penalty phase investigation conducted by Mr. Lighty's counsel fell woefully short of the constitutional minimum. Much of the information that counsel failed to gather could have been, and now has been, obtained through informal processes. Certain agencies, however, require a subpoena before disclosure of the records they maintain. Trial counsel could readily have secured and served such subpoenas before trial; Mr. Lighty now asks the Court to permit him to use the same procedure to obtain the relevant records now so that he may demonstrate the prejudice that he suffered as a result of trial counsel's failures.

Specifically, Mr. Lighty seeks to obtain his deceased mother's juvenile court records. The existence of a juvenile record for Denise Lighty is revealed by a document contained in her National Guard records; however, the court will not release those records to Mr. Lighty without a subpoena. Mr. Lighty also seeks to obtain the medical records of his birth at D.C. General Hospital and his stay in the hospital as a neonate thereafter due to his exposure to illegal drugs and alcohol in utero. Multiple sources confirm that Mr. Lighty was born and hospitalized at the facility, but informal attempts to locate the records have failed. In order to compile a complete family tree for Mr. Lighty and to trace his genetic lineage, the birth certificates of his deceased maternal great grandfather and his maternal grandmother are also sought. Even though Mrs. Westfield has provided written authorization for the release of her birth certificate, the Georgia Department of Health still will not release it to counsel without a subpoena. Additionally, Mr. Lighty seeks a complete copy of his own Maryland Division of Corrections file, as correctional records are a likely source of several different types of potentially mitigating information. And finally, Mr. Lighty seeks to obtain records maintained by Prince George's County Social Services regarding his grandmother and the woman who raised him, Nancy Westfield, including records of her service as a foster parent.

In addition, Mr. Lighty seeks to obtain in connection with his penalty phase ineffectiveness claim the same information that he seeks to obtain in connection with his guilt phase ineffectiveness claim. *See Section II.A., supra.* Evidence establishing Tony Mathis' responsibility for Mr. Hayes' murder, evidence undermining the Government's theory of the Afton Street homicide and evidence exposing Charles Whitley's history of cooperation with the Government, separately and in combination, would have appreciably altered the jury's consideration of Mr. Lighty's sentence.

Because each of Mr. Lighty's discovery requests seeks information that is relevant to the analysis in which the Court must now engage, Mr. Lighty has established good cause to proceed with discovery.

## CONCLUSION

Mr. Lighty has established good cause for each of his discovery requests because he has made at least a *prima facie* showing that he "may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *Bracy*, 520 U.S. at 908-09 (quoting *Harris*, 394 U.S. at 299). Accordingly, under Rule 6, Mr. Lighty is entitled to discovery to prove his claim.

Dated: February 11, 2013                                    Respectfully submitted,

/s/ Julie Brain
Julie Brain
JulieBrain1@yahoo.com
Attorney at Law
127 Church Street
2nd Floor
Philadelphia, PA 19106
(267) 639 0417

/s/ Karl Schwartz
Karl Schwartz
Karl_schwartz@fd.org
Capital Habeas Unit
Delaware Federal Defender Office
800 King Street
Suite 200
Wilmington, DE 19801
302-573-6010

/s/ Seth Rosenthal
Seth A. Rosenthal (D. Md. Bar No. 10780)
sarosenthal@venable.com
Molly T. Cusson (D. Md. Bar No. 18390)
mtcusson@venable.com
VENABLE LLP
575 7th Street, NW
Washington, DC  20004-1601
202-344-4000

*Counsel for Kenneth Jamal Lighty*