**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| KENNETH JAMAL LIGHTY, and | * | |
| JAMES FLOOD, | * | |
| | * | |
| Petitioners | * | CIVIL NO.  PJM-12-3065 |
| | * | |
| v. | * | CRIMINAL NO. PJM-03-0457 |
| | * | |
| UNITED STATES OF AMERICA, | * | |
| | * | |
| Respondent | * | |
| | * | |

**\*\*\*\*\*\*\***

**GOVERNMENT'S OMNIBUS RESPONSE
TO DEFENDANTS' 28 U.S.C. § 2255 MOTION,
BATSON/J.E.B. CLAIMS, AND DISCOVERY REQUESTS**

The United States of America, through its attorneys, Rod J. Rosenstein, United States Attorney for the District of Maryland, and James A. Crowell IV, Deborah A. Johnston, Sandra Wilkinson, Assistant United States Attorneys, respectfully submits the following response in opposition to the relief sought by the various motions filed by the Defendants pursuant to 28 U.S.C. § 2255, their *Batson /J.E.B.* [1] claims, and discovery requests.  As detailed below, the Court should dismiss the Defendants' motions because their claims lack merit and in their discovery requests have failed to establish the prima facie showing warranting discovery, and collectively threaten the just results from the proceedings against them.

---

[1] *Batson v. Kentucky*, 476 U.S. 79 (1986)(prosecutor may not exercise peremptory challenges to exclude potential jurors on the basis of race) and  *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127 (1994)(prosecutor may not exercise peremptory challenges to excuse potential juror on the basis of their sex).

## I.    INTRODUCTION

Pending before the Court are defendant Flood ("Flood") and defendant Lighty ("Lighty")'s petitions for relief under 28 U.S.C. § 2255. One of the claims raised by Flood is ineffective assistance of counsel based upon trial counsel's failure to raise a *Batson/J.E.B.* challenge. *See* Flood Petition (Docket No. 396) at 3. Lighty has raised three separate *Batson/J.E.B* claims. In Claim One, he contends that he is entitled to a new trial based on the Government's unconstitutional exercise of its peremptory challenges. *See* Docket No. 451 at 5. Lighty also claims ineffective assistance of trial and appellate counsel for failing to contest the Government's exercise of its peremptory challenges at the trial and appellate level. *See* Docket No. 451 at 54, 175.

Also pending before the court is the Defendants' joint motion for discovery seeking discovery of all notes, documents relating to any and all capital cases prosecuted by the prosecutors in this case, the depositions or written interrogatories of the prosecutors, all court documents relating to the jury selection, including juror questionnaires, and the strike lists and related documents in four other capital cases prosecuted in the District of Maryland. *See* Docket No. 453 at 2-4. In support of their motion for discovery, the Defendants filed a 43 page memorandum, in essence, arguing the merits of their claim as a basis for discovery. *See* Docket No. 454.

Consistent with the order in which the Defendants argue the merits of their *Batson/J.E.B.* claim in their discovery request and various petitions under § 2255, the Government herein 1) asks the Court to dismiss Lighty's first *Batson/J.E.B.* claim; 2) opposes on the merits all *Batson/J.E.B.* claims raised by both defendants; and, 3) opposes the Defendants' motion for discovery.

## II.    PROCEDURAL HISTORY

On October 8, 2003, a grand jury in the District of Maryland returned an indictment charging defendants, Lighty, Flood and Lorenzo Anthony Wilson with kidnapping resulting in the death of Eric Hayes, in violation of 18 U.S.C. § 1201(a) (Count One); conspiracy to kidnap, in violation of 18 U.S.C. § 1201(c) (Count Two); and three counts of using a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c) (Counts Three, Four and Five). SJA 32-37[2].    On December 28, 2004, the Government filed a notice of intent to seek a death sentence for defendant Lighty only.   SJA 9.

Flood and Lighty's joint trial commenced on September 6, 2005.[3]   The jury found both of the Defendants guilty of all counts on October 21, 2005.   SJA 20.   After hearing evidence of aggravating and mitigating factors relating to Lighty, the jury, on November 10, 2005, returned a verdict of death on Count One.   JA 3440-41.   On February 28, 2006, the district court sentenced Lighty to death on Count One (kidnapping) and multiple terms of imprisonment on the remaining counts.   The judgment was affirmed by the Fourth Circuit, which rejected claims of error and also affirmed the Court's denial of a motion for new trial based upon newly discovered evidence. *United States v. Lighty*, 616 F.3d 321 (4th Cir. 2010).   On December 13, 2010, the Supreme Court denied Flood's petition for certiorari. *Flood v. United States*, 131 S.Ct.846 (2010).   On October 17, 2011, the Supreme Court denied Lighty's petition. *Lighty v. United States*, 132 S.Ct. 451 (2011).

---

[2] Cites to "SJA" and "JA" are to the Supplemental Joint Appendix and Joint Appendix filed in connection with the direct appeal of this case, copies of which are available to the Court upon request.

[3] With the government's consent, the Court severed the charges against Wilson, who had made statements to law enforcement which implicated Lighty and Flood.

On October 16, 2012 (364 days after the Supreme Court denied the petition for writ of certiorari), Lighty filed a 166-page Motion for Relief (Docket No. 434), asserting 9 claims for relief including a claim of ineffective assistance of counsel, which included 14 separate allegations. Because Flood also raised a *Batson/J.E.B.* claim in his 2255 petition, the Court determined that it would consider those claims together and separate from the other claims by Lighty.  On November 20, 2012, the Court issued an order requiring Lighty to file any amended 2255 motion and any motion for discovery within 30 days.  The order also set forth times for the government's response and any briefing on the Batson/J.E.B. claim separate from the other claims.  On December 20, 2012, Lighty filed a 184 page amended claim (Docket No. 451) and a joint motion for discovery (Docket No. 453) which was supported by a 43 page memorandum of law (Docket No. 454).  Flood filed a motion to amend his petition to incorporate the factual allegations set forth in the Lighty amended claim.

## III.    MOTION TO DISMISS LIGHTY'S *BATSON/J.E.B.* CLAIM

As noted above, in his petition,  Lighty has set forth three separate claims for relief based upon *a Batson/J.E.B.* violation.  In his first *Batson/J.E.B.* claim, he argues that he is entitled to direct relief as a result of the Government's alleged discriminatory exercise of its peremptory challenges. *See* Doc 451 at 5.  This claim is procedurally barred and should be dismissed[4].

### A.    Procedural Default Doctrine

A collateral attack is more limited than an appeal, and the doctrine of procedural default

---

[4] Because Lighty's second and third claims and Flood's only claim allege ineffective assistance of counsel for failure to raise a *Batson/J.E.B.* challenge before the trial or appellate courts, the government does not move to dismiss them as procedurally barred but rather addresses those claims below under the *Strickland* ineffective assistance of counsel standard.

generally bars consideration of any claim that the movant omitted to appropriately raise on appeal. *Massaro v. United States*, 538 U.S. 500, 504; *Bousley v. United States*, 523 U.S. 614, 622 (1998); *United States v. Frady*, 456 U.S. 152, 165 (1981); *and see United States v. DeFusco*, 949 F.2d 114, 120 (4th Cir.1991). This doctrine applies even in death penalty cases. *See Battle v. United States*, 419 F.3d 1292, 1298 (11th Cir. 2005) (finding a procedural competency claim waived).

On the other hand, a claim of ineffective assistance of counsel should be raised in a collateral attack rather than a direct appeal, absent a record that conclusively demonstrates ineffectiveness. *United States v. King*, 119 F.3d 290, 295 (4th Cir.1997); *United States v. Williams*, 977 F.2d 866, 871 (4th Cir.1992). For claims other than ineffective assistance, a court may consider the merits of a procedurally-defaulted claim in two limited instances. The first exception to the default doctrine lies when a movant demonstrates actual innocence. *See Schlup v. Delo*, 513 U.S. 298, 327-30 (1995). The second exception lies if the movant can establish cause and prejudice. *Id.* at 314-15; *see also Wainwright v. Sykes*, 433 U.S. 72, 84 (1977); *United States v. Mikalajunas*, 186 F.3d 490, 492-95 (4th Cir. 1999).

The first exception to the procedural default doctrine, where the movant establishes his "actual innocence," *Bousley*, 523 U.S. at 622, applies "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). To establish actual innocence, the movant must show, "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley*, 523 U.S. at 623 (quoting *Schlup*, 513 U.S. at 327-28) (internal quotations omitted). "Actual innocence" refers to "factual innocence, not mere legal insufficiency." *Id.* at 623-34 (quoting *Sawyer*, 505 U.S. 333, 339 (1992)) (internal quotations omitted). The Court has described

5

such cases as "extraordinary'" and presenting "a fundamental miscarriage of justice." *McCleskey v. Zant*, 499 U.S. 467, 494 (1991). In capital cases, the Supreme Court has held that a habeas petitioner who defaults a claim, may raise it after first establishing by clear and convincing evidence that – but for the claimed constitutional error at his sentencing hearing – "no reasonable juror would have found him eligible for the death penalty." *Sawyer*, 505 U.S. at 336. In this case, Lighty has not set forth a claim of actual innocence.

The second exception to the procedural default doctrine lies for cause and prejudice. "Cause" exists only in those cases in which a factor external to the defense prevented counsel from raising a claim at the appropriate juncture. *Murray*, 477 U.S. at 488. Cause does not exist when a "reasonably diligent search" would have revealed the facts underlying the claim. *Claim Iv. Lee*, 252 F.3d 676, 687 (4th Cir. 2001) (citing *Murphy v. Netherland*, 116 F.3d 97 (4th Cir. 1997)).

A petitioner may not establish cause "by pointing to evidence that the petitioner 'knew about or could have discovered' through a 'reasonable investigation.'" *Basden v. Lee*, 290 F.3d 602, 618 (4th Cir.2002) (quoting *McCleskey*, 499 U.S. at 497-98); *see also Rose*, 252 F.3d at 687. "[A]ttorney error short of ineffective assistance of counsel . . . does not constitute cause." *See McCleskey*, 499 U.S. at 493. Thus, counsel's simple "failure to consider [an] argument" will not establish cause. *Rose v. Lee*, 252 F.3d at 687, 688. For example, the professional judgment of appellate counsel includes the determination of which colorable claims to raise – counsel is not ineffective for failing to raise every colorable claim. *Jones v. Barnes*, 463 U.S. 745, 753-54 (1983); *see also Smith v. Robbins*, 528 U.S. 259, 288 (2000) (noting difficulty of proving claim of ineffective assistance of appellate counsel). Moreover, the legal novelty of a claim constitutes cause only where the argument was previously unavailable. The fact that legal developments may have

6

eased counsel's burdens in raising a claim following appeal will not establish cause. *Wallace v. Lockhart*, 12 F.3d 823, 826 (8th Cir. 1994) (citing *Smith v. Murray*, 477 U.S. 527, 537 (1986)).

Assuming a defendant shows cause, he must still demonstrate prejudice to obtain review of a defaulted claim. *See Schlup*, 513 U.S. at 327-30; *McCleskey*, 499 U.S. at 493-94. To establish "prejudice," a defendant must show not merely that the claimed errors resulted in a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with errors of constitutional dimension. *Frady*, 456 U.S. at 170; *Mickens v. Taylor*, 240 F.3d 348, 356 (4th Cir. 2001).

### B.      Lighty's *Batson/J.E.B.* Claim is Procedurally Defaulted.

In Claim One of his amended petition (Docket No. 451) , as well as in his memorandum in support of his discovery motion (Docket No. 454),  Lighty reviews the Government's use of peremptory juror strikes and concludes that he has established a prima facie case of gender discrimination on the basis of the record. *See* Docket No.  451 at 5-31 and Docket No. 454 at 4-39. This information, however, was available to trial and appellate counsel.  While Lighty relies to a very limited extent on some extra-record information, all the record-based facts of jury selection were available to him at trial and in preparing his appeal, but he still chose not to raise this argument.  As such, he has defaulted the issue to the extent that he bases it on previously-known facts.  Likewise, the claim is not one of legal novelty as the *J.E.B.* decision was issued in 1994. Consequently, in the absence of a successful ineffective assistance of counsel claim,  defendant Lighty is not entitled to now raise a record-based discrimination claim. *See Massaro*, 538 U.S. at 504; *DeFusco*, 949 F.2d at 120.

Moreover, in his amended petition, defendant Lighty has failed to set forth any facts to

establish that counsel's decision to not challenge the government's exercise of its peremptory challenges "fell below an objective standard of reasonableness." *See Strickland v. Washington*, 466 U.S. 668, 687-688 (1984.)  Rather, in a single conclusory paragraph of his amended petition, Lighty concludes that "counsel's failure to challenge the Government's use of peremptory strikes to exclude women from Lighty's jury constituted ineffective assistance of counsel."   Docket No. 451 at 54. Given the failure to set forth any factual basis that experienced trial and appellate counsel's decisions were objectively unreasonable, the defendant has not establish the necessary "cause" to permit the litigation of the present record-based jury selection claim independent of the ineffective assistance of counsel claim. *See Murray*, 477 U.S. at 488; *Rose*, 252 F.3d at 687-88.  Having failed to demonstrate cause and prejudice, independent of his ineffective assistance of counsel claim, Lighty's first claim for relief based upon an alleged *Batson/J.E.B.* violation should be dismissed.

Moreover, as set forth below, the Defendants' collective *Batson/J.E.B* claims fail under the *Strickland* standard, because they cannot satisfy either prong of the *Strickland* standard, *i.e.*, that counsel's actions in failing to raise the issue were objectively unreasonable, or that any prejudice resulted because the Government did not discriminate against women in the exercise of its peremptory challenges.

Accordingly, the Court should dismiss Lighty's Claim One as procedurally defaulted.

**IV.    THE TRIAL PROSECUTORS PROPERLY EXERCISED THEIR PEREMPTORY JURY CHALLENGES IN A NON-DISCRIMINATORY FASHION**

The Defendants argue that they are entitled to a new trial because in the exercise of its peremptory challenges the Government discriminated against women, and their attorneys were ineffective for failing to raise this issue at trial and on appeal.  As set forth in the preceding section, the Government has moved to dismiss the direct claim as it is procedurally barred, because there was

8

no objection to the Government's strikes during the trial, and similarly, the issue was not raised on appeal.

If the Court decides to look past the patent procedural bar to this claim and considers the Defendants' stated merits, as explained below, the Defendants' request for relief should be denied. In sum, even a cursory review of their petitions makes clear that the Defendants have failed to establish a prima facie case of discrimination. Even assuming, *arguendo*, the Defendants could make a prima facie case, as set forth below and in the attached Declaration of Deborah A. Johnston (hereinafter "the Declaration"), the unambiguous record reveals that the Government exercised its peremptory challenges for gender and race neutral reasons and therefore the *Batson/J.E.B.* claims are wholly without merit. *See generally* Resp. Exhibit One. For the same reasons, the Defendants' ineffective assistance of counsel claims must also fail, as Lighty and Flood have not established any unreasonable conduct by their trial and appellate attorneys in failing to raise the meritless claims identified here.

**A.**      **Defendants' Claim of Discriminatory Use of Peremptory Challenges Is Without Merit**

In *Batson v. Kentucky*, the Supreme Court recognized the prohibition against litigants using peremptory challenges "solely on account of race." 476 U.S. at 89. In *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 128-29 (1994), the Supreme Court extended *Batson*'s holding and found that a gender-based exercise of a peremptory challenge violates the Equal Protection Clause of the Constitution. As the Supreme Court detailed in *Rice v. Collins*, the *Batson* decision established the procedure for determining whether a party has improperly relied on race during jury selection:

A defendant's *Batson* challenge . . . requires a three-step inquiry. First, the trial

court must determine whether the defendant has made a prima facie showing that the prosecutor exercised a peremptory challenge on the basis of race. Second, if the showing is made, the. . . prosecutor [must] present a race-neutral explanation for striking the juror in question. . . . "[T]he second step . . . does not demand an explanation that is persuasive, or even plausible"; so long as the reason is not inherently discriminatory, it suffices. Third, the Court must then determine whether the defendant has carried his burden of proving purposeful discrimination. This final step involves evaluating "the persuasiveness of the justification" proffered by the prosecutor, but "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike."

546 U.S. 333, 338 (2006). As detailed below, the defendants have failed to present adequate evidence as to any of these steps. Consequently, the Court should deny all claims based upon the submissions.

### 1.   The Defendants Have Failed to Establish a Prima Facie Case of Gender or Race Discrimination

Under *Batson*, a defendant may establish a prima facie case of discrimination by showing that: (1) the defendant is a member of a distinct racial group; (2) the prosecutor has used the challenges to remove from the venire members of the defendant's race; and (3) other facts and circumstances surrounding the proceeding raise an inference that the prosecutor discriminated in his or her selection of the jury pool. *Batson*, 476 U.S. at 96-97. The Supreme Court has modified *Batson* to allow defendants of races different than the excused jurors to have standing to raise *Batson* challenges. *See Powers v. Ohio,* 499 U.S. 400, 415 (1991). Given the fact that the defendants and the victim are males, and Lighty and Flood allege discrimination against women they patently cannot satisfy the first two elements of a prima facie case. *See Keel v. French,* 162 F.3d 263, 271 (4th Cir. 1998) ("First, neither the defendant nor the victim is of the same race as the jury. While the defendant need not be a member of the same race as the excused jurors in order to raise a *Batson* challenge, that *Keel* and the jurors are of different races eliminates the argument that the jurors

10

sympathize with the defendant because they share the same race.") (internal citations omitted). Therefore, to establish a prima facie case here, the Defendants must show other facts and circumstances surrounding the proceeding sufficient to raise an inference of purposeful intent by the Government to discriminate based on all of the relevant evidence. *United States v. Joe*, 928 F.2d 99, 102( 4th Cir. 1991) (*citing Batson*, 476 U.S. at 96).

As the Fourth Circuit has noted "[t]hough statistics are not utterly bereft of analytical value, they are, at best, manipulable and untrustworthy absent a holistic view of the circumstances to which they apply." *Allen v. Lee*, 366 F.3d 319, 330 (4th Cir. 2004). Rather, the defendant must come forward with something beyond mere raw data. *United States v. Tipton*, 90 F.3d 861, 881, n.11 (4th Cir. 1996) (rejecting a gender-discrimination claim where the defendants produced no evidence to support their argument other than "raw figures" of four men versus eight women stricken).

Lighty and Flood assert that their statistical analysis establishes a prima facie case. This purported evidence, however, is insufficient to establish a prima facie case of gender discrimination. Rather than establishing an "inference of purposeful discrimination" in this case, a fair statistical analysis of the full record establishes the opposite – an inference of no purposeful discrimination.

The jury pool consisted of 64 qualified veniremembers, 52 for the jury and an additional 12 for the alternate pool. The Court instructed counsel that the jury would be selected from the first 52 jurors, and counsel therefore were required to exercise their 20 peremptory challenges in that pool. Both parties received three additional strikes to use against the additional veniremembers who made up the alternate pool. However, in the event of duplicate strikes or a party not using all of its strikes, any remaining veniremembers from the jury pool would be moved into the alternate pool. The first 52 jurors consisted of 29 men and 23 women. The government only exercised 19 of its 20

11

strikes to exclude 4 men and 15 women, leaving a jury pool of 25 men and 8 women, including one African-American woman and one Asian woman.  The defendant struck 11 men (one  was also struck by the government) and 9 women (two were also struck by the government).  Given the duplication and the location of the parties' strikes, the jurors were selected from the first 37 jurors (consisting of 17 females and 20 males). In that group, there were four females who would have been seated if the defendant had not challenged them.  This would have resulted in a jury of seven men (58.3%) and five woman (41.6%), a ratio entirely consistent with the composition of the pool.[5]

Contrary to the Defendants' assertions, this data clearly suggests that the Government was not acting with any intent, let alone a "purposeful intent," to discriminate based upon gender. Indeed,  if the government were acting with a purposeful intent to exclude prospective jurors based upon gender or race, it would have used its remaining strike to exclude another female from the venire.  The various statistical permutations  presented by the defendant are not only misleading, under the controlling precedent set forth in *Tipton,* they are inadequate to make a prima facie case of discrimination.  *See also Keel,* 162 F.3d at 271-72 (defendant failed to establish prima facie case based upon the states use of nearly 70% of its peremptory challenges to strike African-American veniremembers).

In an effort to bolster his raw data, Lighty analyzes the Government strikes.  *See* Docket No. 451 at 13-24.  However, in his petition, Lighty explicitly acknowledged that the Government did not strike female jurors, including African-Americans, who expressed "manifestly pro-law enforcement

---

[5] With regard to the alternate jurors, the alternate jury pool consisted of seven females (including two African-Americans), the government struck two Caucasian females and one African-American female, leaving an alternate pool of four females and five males.  The defendants struck two Caucasian females and one Caucasian male.

and pro-death penalty views." *See* Docket No. 451 at 32.  This admission by defendant Lighty is singularly fatal to his *Batson/J.E.B.* claim, as it unambiguously demonstrates that the Government was not discriminating against women but rather was looking for jurors who would be inclined to convict the Defendants and sentence defendant Lighty to death.  Consequently, Lighty's pleading – six years removed from the trial – fails to present sufficient facts to establish a prima facie case of purposeful discrimination.  Accordingly, his claim should be dismissed without further inquiry of the Court.  *See Allen*, 366 F.3d at 329 ("Only after the defendant makes a showing sufficient to raise an 'inference of purposeful discrimination' is the State required 'to come forward with a neutral explanation for challenging black jurors) (*citing Batson* 476 U.S. at 96-97).

Accordingly, given the Defendants' patent failure to demonstrate a prima facie case, the Court's analysis of this claim should end, and this portion of the petitions should be dismissed without further inquiry.  *See United States v. McMillon*, 14 F.3d 948, 952 (4th Cir.1994) ("We will not examine whether the defendant has met his burden in establishing a prima facie case where the prosecutor articulates [legitimate] reasons for [the] strikes").

### 2. The Government Had  Legitimate, Non-discriminatory Bases for its Peremptory Strikes

Assuming, *arguendo*, that Lighty had made a prima facie showing of discrimination and the Court desired to proceed to the second stage of the *Batson* inquiry, the Declaration establishes that the Government did not discriminate against women in the exercise of its peremptory challenges. As set forth above, the Government fully anticipated the jury would include several women if Lighty and Flood had not stricken seven of the eight females remaining in the pool of 52 and four females remaining in the group of 37 from which the jury was actually selected after the parties exercised their challenges.

In the second stage of a *Batson* inquiry the duty of the prosecutor was described by the Supreme Court, "[A]lthough the prosecutor must present a comprehensible reason '[t]he second step of this process does not demand an explanation that is persuasive or even plausible'; so long as the reason is not inherently discriminatory, it suffices." *Rice*, 546 U.S. at 338 (*citing Purkett v. Elem*, 514 US 765, 767-68 (1995)).  In *Rice*, the Supreme Court reversed the Ninth Circuit's granting of habeas relief, holding the state trial court's finding that the prosecutors reason (the juror rolled her eyes, unobserved by the trial court) was non-discriminatory and reasonable.  *Rice*, 546 U.S. at 340-41.  The Fourth Circuit recently reiterated this standard, explaining, "The second step only requires that the government provide a race neutral reason for the exercise of its peremptory challenge. The government need not provide 'an explanation that is persuasive, or even plausible,' so long as discriminatory intent is not inherent in the explanation." *United States v. Dinkins* 691 F.3d 358, 380(4th Cir. 2012)(discussing the employment as a racial neutral factor)(citing *Purkett v. Elem,* 514 U.S. at 768); *see also United States v. Grimmond*, 137 F.3d 823, 834-35( 4th Cir. 1998) (affirming jurors age of 65 as a nondiscriminatory explanation, stating, "[t]he government's explanation need not be persuasive, or even plausible as long as it is neutral." ); *Jones v. Plaster,* 57 F.3d 417, 420 (4th Cir. 1995) ("To satisfy this burden, the party need offer only a legitimate reason for exercising the strike, i.e., one that does not deny equal protection; the reason *need not be worthy of belief* or *related to the issues to be tried* or *to the prospective juror's ability to provide acceptable jury service*." (emphasis added)).  The Government's reason for exercising a peremptory challenge does not need to rise to the level of a challenge for cause; it must be, however, a clear and reasonably specific statement of the reasons for exercising the challenge.  *Macmillan*, 14 F.3d at 952.

Critically, because neither Lighty nor Flood ever raised a *Batson/J.E.B.* challenge at trial,

14

the Government's rationale was not placed on the record at the time of jury selection. The attached Declaration, however, sets forth the ample neutral reasons for not only each female stricken but for each of the Government's strikes. Resp. Exhibit One. As detailed more fully in the Declaration, the Government's detailed rationale, below, establishes the lack of any discriminatory intent and articulates the neutral and non-discriminatory basis for each strike.

As to Jurors 21, 88, and 145, there were neutral reasons – separate and apart from their death penalty views – which justified their exclusions. All three served on juries which returned not guilty verdicts.

Juror 21 was stricken, because she previously served on a jury which returned a not guilty verdict; her nephew was in serious trouble with law enforcement; and, her sister was a drug user.

Setting aside her death penalty views, Juror 88 was stricken, because she: had previously sat on a criminal trial and returned a "not guilty" verdict; majored in criminal justice in school; lived in Temple Hills where the murder occurred; did not list her employment on the questionnaire; and wanted "positive physical evidence," which the government did not have in this case.

Similarly, Juror 145 previously served on a jury which returned a "not guilty" verdict and also worked as a paralegal for 15 years. *See United States v. Rudas*, 905 F.2d 38, 41 (2d Cir.1990) (holding that veniremember's prior service on hung jury was legitimate reason for peremptory strike).

Likewise, Jurors 40, 83, 117, 172, 193 and 196 were stricken primarily for reasons unrelated to the death penalty.

Apart from her views on the death penalty, the government struck Juror 40, the mother of a 17 year old son, because her brother was convicted of possession with intent to distribute drugs

and served six years in prison.

The Government struck Juror 83, the mother of one son, because she appeared to be arrogant during the voir dire process. In particular, government trial counsel reasonably inferred that because Juror 83 described her job and her failure to be hired by the FBI as a Special Agent, she might not participate in jury deliberations well with other jurors. Because this case was investigated by the FBI, government trial counsel was concerned about her potential animosity toward the FBI witnesses.

Juror 117 was stricken because the Government believed the juror was not being candid and had a strong concern she was too interested in being a juror to use her jury duty for her student thesis project. The Government's concerns about Juror 117 were supported by her failure to disclose her employment as a school teacher, which the Government considered odd given this type of job requires a commitment to the students that are being taught, and a long time away from them and work could be a hardship. Moreover, she also unduly emphasized her own education (she had a BS degree in sociology/child psychology) and stated that she was working on a master's degree in criminal justice with "courts and law was my major."

Juror 172 worked in the mental health field, including at Clifton Perkins, the hospital for criminals found not criminally responsible due to mental disease. She stated she believed that "one needs to know all factions of a defendant's life and upbringing and psychiatric history to give him a fair trial." The Government reasonably believed that Juror 172 would want a complete psychiatric history, which was not required, before ever voting for a death sentence.

Juror 193 had difficulty staying awake during the voir dire and was observed looking at the two young defendants throughout the questioning. Most importantly, she had a vacation planned for

16

October 25 through October 30, 2005, but the defense objected to excusing her for cause.  Contrary to any improper motive, the Government exercised an peremptory challenge to allow her to go on her vacation and to avoid the possibility that she would be angry and impatient with the Government during the course of the trial and blame any delays on the Government.[6]

The Government struck Juror 196, who identified herself as "a minister of the gospel," because in addition to her death penalty concerns, she spent 29 years in the ministry, which to the Government was an indication that she might be reluctant to pass judgment on another.  She also volunteered in prisons and had a son-and-son in law with criminal charges.  *See United States v. Johnson*, 54 F.3d 1150, 1163 (4th Cir. 1995)(striking juror because her husband had been involved in criminal conduct racially neutral reason); s*ee also Chandler v. Greene*, 145 F.3d 1323, 1998 WL 279344, *6 (4th Cir.1998)  (prosecutor's explanation that juror was stricken because he appeared "remarkably non communicative" during voir dire was non-discriminatory reason).

Jurors 1,77, 84, 90, 121, and 196, expressed views about the death penalty that reasonably formed the basis of the Government's non-discriminatory decisions to strike them.  *See Brown v. Dixon,* 891 F.2d 490, 496-98 (4th Cir.1989) (holding that the prosecutor may properly use peremptory challenges to create a jury inclined to impose the death penalty).   While the Government's belief that a juror has reservations about capital punishment might not support a challenge for cause under *Witherspoon v. Illinois*, 391 U.S. 510 (1968), it can still form a legitimate basis for a peremptory strike.  *Brown*, 891 F.2d at 497.

---

[6] As previously described, on the morning of jury selection the court revisited the hardship claims of six jurors. With the consent of the parties the court excused four of the jurors. The defense objected to the removal of this juror so she remained in the pool. The final juror was determined not to have a hardship as the juror's planned travel was after the anticipated end of the trial.

The stricken jurors made statements that sensibly raised substantial doubts about their willingness and ability to impose a death verdict. For example, Juror 40 explained that a death sentence should not be imposed if a defendant has mental problems or is coerced by an older individual (such as the Washington area sniper). She also thought the death penalty was handed down "too lightly" and that "men and women are sentenced too soon without thinking everything through." Juror 77 stated that the "death penalty should only be applied where a criminal is so violent as to pose a danger to society in general," and stated she would want proof of "future dangerousness" to vote for the death penalty. *See* Resp. Exhibit One. She stated, "It's an extreme punishment to be applied in extreme cases." *Id*.

Juror 84 expressed a preference for "hard labor." Juror 90 limited the death penalty to "horrendous crimes" (stating "I believe that there are some crimes that are so horrendous that the death penalty would probably be appropriate.") Her description of an appropriate crime was "when a child is kidnapped, raped and murdered," which clearly was not the case here.

Juror 121 stated that she wanted proof "beyond a shadow of doubt," which is not the legal standard. Specifically, she said, "I'm not against it if the evidence suggested that that was beyond a shadow of a doubt the correct punishment."

In sum, despite the Defendants' conclusory allegations of improper motive, as detailed more expansively in Exhibit One, the Government had neutral and non-discriminatory reasons for its strikes.

18

### 3.    The Defendants Have Not Carried Their Burden of Proving Purposeful Discrimination

Under the *Batson* standard, the third step of the analysis requires the Court to determine if the defendant has proven purposeful discrimination. *Hernandez v. New York,* 500 U.S. 352, 358-59 (1991).  The defendant carries the ultimate burden of persuasion which never shifts to the Government. *Rice*, 126 S.Ct. at 974.  Here, in an attempt to meet their burden, the Defendants argue that government counsel exercised their challenges in a discriminatory manner, because five years earlier, they also struck women in the capital case of *United States v. Higgs*, PJM-98-0520.

In a misdirected and legally flawed effort to meet his burden, Lighty cites the Supreme Court's decisions in *Miller-El v. Cockerill*, 537 U.S. 322 (2003) (*Miller-El-I*) and *Miller-El v. Dretke*, 545 U.S. 231 (2005) (*Miller-El-II*).  Rather than assisting Lighty, these rulings demonstrate his utter failure to sustain his burden of proving purposeful discrimination.  Prior to *Batson*, the only way for defendants to prove a constitutional violation in jury selection  was to establish that a prosecutor or his office discriminated in case after case.  *Swain v. Alabama*, 380 U.S. 202, 224 (1965).  In *Miller-El-I*, the Supreme Court, in remanding for further fact finding,  explained that evidence of the prosecutor's office history of past bias against African-Americans was relevant to the "extent it casts doubt on the legitimacy of the motives underlying the State's action in the petitioner's case." *Miller-El-I*, 537 U.S. at 347.

In *Miller-El-II*, the Supreme Court considered a variety of circumstances in finding that the prosecutors had stricken veniremen on the basis of race.  545 U.S. at 266.  The Court relied on six indicia of discrimination: the prosecution struck 91 percent of the eligible black veniremen (*Id*. at 241); the prosecution proffered reasons for striking black veniremembers – who expressed a willingness to impose the death penalty – that applied equally to non-black jurors (*Id*. at 249); the

19

prosecution repeatedly "shuffled" potential jurors when confronted with eligible black veniremembers (*Id*. at 253-54); the prosecution used different scripts to question black and white veniremembers (*Id*. at 262); the prosecutors made written notes about the races of veniremembers in a case tried before the publication of *Batson* (*Id*. at 264); and, the prosecutors' office had a systematic policy of excluding black veniremembers (*Id*.).

In *Miller-El-II*, the Supreme Court reminded lower courts of their responsibility to "assess the plausibility of [a prosecutor's stated] reason in light of all evidence with a bearing on it." 545 U.S. at 251-52 (citing *Batson*, 476 U.S. at 96-97). The *Miller-El-II* Court rejected the prosecutor's credibility on the basis of a constellation of facts: the number of stricken black veniremembers; a side-by-side comparison of stricken black veniremembers and white jurors; the repeated use of a "jury shuffle" to favor the selection of white jurors; the use of disparate voir dire questions to vet black and white veniremembers (including inquiries the Supreme Court characterized as "trickery"); and, evidence that the prosecutor's office had once had a written policy of discrimination. *Id.* at 241-264.

*Miller-El-II* is clearly distinguishable from this case. Simply, the conduct cited by the Supreme Court in *Miller-El-II* did not occur here. There was no written office policy of discrimination. The Government did not ask different questions of male and female jurors. Indeed, the Court conducted almost all of the questioning. The Government was not able to use a jury shuffle to favor selection of male jurors. Rather, the Court selected the order in which jurors were qualified and selected. The Government did not strike 90% of the female venire. Rather, after the Government exercised its challenges, eight females of the original 52 member pool remained and five of the females were among the first 37 jurors from which the jurors were actually selected. As

set forth more fully in the attached Declaration, the Government applied its reasoning to prospective male jurors as well as female jurors.  *See* Resp. Exhibit One at 8.  Even under *Miller-El-II*, Lighty has clearly failed to meet his burden of proving intentional gender discrimination.  Similarly, the Defendants' ineffective assistance of counsel claim for failing to raise a *Batson* challenge necessarily fail.

Lighty also fails in his attempt to rely on the *Swain* doctrine and his argument that the jury composition in the *Higgs* trial in some way demonstrates a practice of gender discrimination by trial counsel.  First, Lighty was tried five years after Higgs, and the passage of time between the two trials undermines any attempt to demonstrate regular practice by counsel.  Lighty compares the outcome and composition between the Haynes[7], Higgs and Lighty trials in a futile attempt to establish a practice of gender discrimination.  Indeed a comparison of these three cases demonstrates the lack of any gender discrimination much less a pattern of discrimination. In the *Haynes* trial, which commenced in April 2000, the jury included four women.  In the *Higgs* case, the Government was prepared to accept four female jurors as well – women whom Higgs excused for his own reasons under the Court's blind strike procedure.  Likewise, in this case, there were four female jurors (95, 110, 114 and 120), who would have been members of the jury but Lighty and Flood excused them for their own reasons under the Court's blind strike procedure.  Indeed, because the same procedure was used in *Lighty*, the gender composition of that jury does not reflect the number of female veniremembers the prosecution would have accepted, but for the Defendant's exercise of

---

[7] Willis Mark Haynes was the co-defendant of Dustin Higgs. He was tried prior to Higgs. In his case the jury, which included four females was unable to reach a unanimous verdict. As a result, Haynes received multiple life sentences.

challenges.  For all of these reasons, Lighty's attempt to show a standard practice under *Swain* fails.[8]

Further evidence the Government's lack of discriminatory purpose in its strikes is revealed by a careful review of the Government's objections during jury selection to some of the defense motions to excuse  prospective females for cause.  If the Government were intent upon excluding females from the jury it would have acquiesced to the Defendants' motions to strike females for cause.  *See, e.g.,* Trial Transcript, September 14, 2005, p.149-50.  Moreover, the Government did not exercise all of its peremptory challenges.  Thus, the unambiguous record makes clear that the Defendants have failed to establish any purposeful discrimination by the  Government.

### B.        The Defendants Cannot Establish Ineffective Assistance of Counsel

For the Defendants' claim of ineffective assistance of counsel to prevail, they must establish that:  (1) counsel committed errors so serious that their performance fell "below an objective standard of reasonableness;" and (2) "the deficient performance prejudiced [the Defendants'] defense."  *Strickland*, 466 U.S. at 687-88.  The two prongs of the *Strickland* test are referred to as the "performance prong" and the "prejudice prong."  *Fields v. Attorney Gen. of Md.*, 956 F.2d 1290, 1297 (4th Cir. 1992).  Petitioner bears a heavy burden here, *see Strickland*, 466 U.S. at 689-90, and

---

[8] Without any factual basis, the Defendants hypothesize that because the Haynes jury did not return a death sentence, the government must have determined it was due to the female jurors and therefore the government decided to discriminate against females. This is simply untrue. Government counsel did change their strategy after the Haynes trial.  In the Haynes case, significant time was spent presenting evidence to support the aggravating factor of future dangerousness.  Based upon the Haynes sentencing experience, where the jury did not unanimously find future dangerousness, government counsel withdrew the future dangerousness aggravating factor in the subsequent Higgs trial and never alleged future dangerousness in the Lighty case. By so doing, the government focused the jury on the defendant's criminal conduct and his history rather than predicting his future conduct.

correctly so because this "intrusive post-trial inquiry" must not threaten a reliable result.  *See Id.* (noting that "it is all too tempting" to "second guess counsel's assistance after conviction or adverse sentence."); *Harrington v. Richter*, 131 S. Ct. 770, 788 (U.S. 2011).

Here, to prevail on their ineffective assistance of counsel claim, the Defendants must show both that their attorney's performance was objectively unreasonable and that they were prejudiced by that deficient performance.  *See Strickland*, 466 U.S. at 687-688.  Given there was no discrimination by the Government, however, the Defendants cannot satisfy either of the *Strickland* requirements.  Indeed, counsel was certainly not ineffective for failing to press a futile motion.  A petitioner must satisfy both prongs of the test, though where a petitioner cannot show the prejudice component, the Court need not determine whether counsel's performance was deficient.  *Id.* at 687 and 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."); *Fields*, 956 F.2d at 1297.

To establish deficiency, the first prong under *Strickland*, a defendant must show that his counsel engaged in objectively unreasonable behavior, a standard weighed by "prevailing professional norms." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).  Counsel must have made errors "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.  This is a difficult threshold for a defendant to meet because there is a strong presumption that counsel's conduct was within the wide range of professional norms.  *Id.* at 689; *see*, *e.g.*, *United States v. Terry*, 366 F.3d 312, 316-18 (4th Cir. 2004); *Matthews v. Evatt*, 105 F.3d 907, 919 (4th Cir. 1997)(quoting *Strickland*, "[j]udicial scrutiny of counsel's performance must be highly deferential" and "every effort [should] be made to

eliminate the distorting effects of hindsight").

To demonstrate prejudice, the second element under *Strickland*, a defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The Supreme Court has noted that "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. The mere possibility that the result would have been different will not suffice. *See Hoots v. Allsbrook*, 785 F.2d 1214, 1220 (4th Cir. 1986).

The defendants have not presented any evidence to show that their counsels' performance fell below an objective standard of reasonableness and therefore cannot demonstrate any prejudice. As the unambiguous record reveals, the Defendants were represented by able and experienced trial counsel. For all the reasons herein, the trial outcome satisfies the reliability concerns the Supreme Court stressed in the *Strickland* analysis. 466 U.S. at 697. Accordingly, because an ineffective assistance of counsel claim is dismissible purely on the grounds that the a petitioner is unable to show actual prejudice, *see Id*., the Defendants claim can be dismissed by this Court on such grounds.

## V.     The Defendants Are Not Entitled to Discovery on their *Batson/J.E.B.* Claims

Because the Defendants' *Batson/J.E.B.* claims, set forth above, fail, they are not entitled to any post-conviction relief. Consequently, because the defendants cannot establish good cause for their requested discovery, they should not be permitted to go on a fishing expedition through the Government's files in hopes of establishing their claim. The Government's response obviates the need to dispute, much less conduct, discovery. *See Hall v. United States*, 30 F. Supp. 2d 883, 899 (E.D. Va. 1998) ("'Petitioners are not entitled to go on a fishing expedition through the government's files in hopes of finding some damaging evidence.'").

24

### A.   A Showing of Good Cause is Required for Discovery in a Section 2255 Proceeding

A habeas petitioner, unlike a traditional civil litigant, is not entitled to discovery as a matter of course.  *Bracy v. Gramley*, 520 U.S. 899, 904 (1997).  Discovery in this setting can occur only with leave of the court, upon a showing of good cause.  *See* Rule 6(a) of the Rules Governing § 2255 Cases.  In other words, a defendant "may invoke the processes of discovery . . . if, and to the extent that, the judge in the exercise of discretion and for good cause shown, grants leave to do so, but not otherwise."  *Hall*, 30 F. Supp.2d at 899.  Good cause, under Supreme Court and Fourth Circuit precedent, exists when there is "reason to believe that [the defendant] may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief."  *See Bracy*, 520 U.S. at 908-09 (citing *Harris v. Nelson*, 394 U.S. 286, 295 (1969)); *United States v. Roane*, 378 F.3d 382, 402-03 (4th Cir. 2004)(affirming denial of multiple discovery requests).  In *Roane*,  the Fourth Circuit rejected the defendants' argument that the trial judge erred by  granting summary judgement on some claims without first permitting discovery.  *Roane*, 378 F.3d at 403-04.  Particularly applicable here, a request for discovery must rely on specific factual allegations:  discovery will not be allowed so that the petitioner can "explore [his] case in search of its existence."  *See Rich v. Calderon*, 187 F.3d 1064, 1067 (9th Cir.1999); *accord, United States v. Wilson*, 901 F.2d 378, 381 (4th Cir. 1990). Putting aside that they are not entitled to their requested discovery, the Defendants have failed to provide any, let alone legally sufficient, specificity as to their discovery requests.

"District courts enjoy nearly unfettered discretion to control the timing and scope of discovery."  *Hinkle v. City of Clarksburg*, 81 F.3d 416, 426 (4th Cir. 1996); *see United States v. Roane*, 378 F.3d at 403 (reviewing, for abuse of discretion, the denial of discovery in a § 2255 case).  Given the record before the Court, the Defendants have failed to demonstrate their entitlement or

need for discovery in this matter. Accordingly, the Court should exercise its broad discretion and deny the Defendants' discovery request related to their *Batson/J.E.B.* claims.

### B.      The Defendants Have Failed to Establish Good Cause for Discovery

In their request for discovery, the Defendants seek information to support their claim that the prosecution discriminated against women during jury selection, thereby violating constitutional principles articulated in *Batson/J.E.B.* As set forth above, Lighty's direct *Batson/J.E.B.* claim is procedurally defaulted, because the Defendants failed to raise it at trial or on appeal. *See generally Massaro*, 538 U.S. at 504. With respect to the Defendants' ineffective assistance of trial and appellate counsel for failing to raise a *Batson/ J.E.B.* claim, as set forth above, that claim is likewise without merit, and therefore discovery is not justified. More practically, under *Strickland*, the Defendants must establish their counsels' performance was unreasonable. To satisfy this prong, they do not need any discovery from the Government; rather, it would require the Defendants to show that their former attorneys possessed, or should reasonably have possessed, the information upon which they would have had them make the *Batson/J.E.B.* claim in the first instance.

The defendants claim that because they have established a prima facie case of discrimination, they are entitled to expansive discovery. Indeed, they seek discovery above and beyond the procedure mandated by *Batson/J.E.B.* and their progeny. As revealed from even a cursory review of their Section 2255 petitions, the defendants have failed to establish good cause for any of their discovery requests. Their discovery requests are nothing more than requests to engage in broad fishing expeditions into the government's files - a practice the courts have repeatedly rejected.

Specifically, the defendants request the following for "all capital eligible cases" prosecuted by either Deborah Johnston or Sandra Wilkinson, (1) contemporaneous notes that AUSA Johnston

and/or AUSA Wilkinson made during jury selection; (2) all documents that the Government obtained regarding any member of the venire from which the jury was drawn; (3) any and all documents reflecting which jurors the Government struck, which jurors the defense struck, and which jurors were acceptable to each side, including documents in the Clerk's office; (4) any and all documents reflecting the gender and race of the jurors on the venire including notes of the prosecutors and court staff.  *See* Docket No.453, p.2-3.

The defendants also seek to depose the prosecutors or have the prosecutors answer the following interrogatories:

> For each juror peremptorily struck  by the Government or the defense in the instant case, please identify the gender and race of each such juror, whether the juror was struck by the Government or the defense or both, and all of the reasons for the Government's strikes.

> Please describe any information that the Government received regarding the penalty phase jury deliberations in United States v. Haynes, including but not limited to the split between jurors who voted for the death penalty and jurors who voted for life without parole and the gender and race of the jurors who voted for life imprisonment.   Additionally, please explain the beliefs of AUSA Johnston and AUSA Wilkinson regarding both the split between jurors who voted for the death penalty and jurors who voted for life without parole and the gender and race of the jurors who voted for life imprisonment in United States v. Haynes.

Finally, the defendant requests "The strike lists and all related materials maintained by the Jurors' Office in the following capital cases tried in the District of Maryland:  (a) United States v. Taylor and Moses, 02-cr-410; (b) United States v. Argueta, 05-cr-393; (c) United States v. Dinkins and Gilbert, 06-cr-309; and (d) United States v. Patrick Byers, 08-cr-00056."

Preliminarily, the government notes that with regard to the request for deposition and/or responses to written interrogatories, the attached Declaration provides the information described  in Interrogatory Number One for the Lighty/Flood case and likewise addresses Interrogatory Number

Two.  As a result, not only have the defendants not established good cause for such discovery, the request for deposition and/or interrogatories is moot.  The defendants assert that by making out a prima facie case of discrimination, they are entitled to "discover the government's reasons for their strikes, as well as any other evidence bearing of the court's determination."  Neither *Batson*, nor *J.E.B.*, support the Defendants' contentions that they are entitled to the discovery requested in this case.  Rather, under *Batson* and its progeny, upon a prima facie showing of discrimination, the Government is required to provide a non-discriminatory reason for the government's use of the peremptory challenge.  *Johnson*, 545 U.S. at 168 ("Second, once the defendant has made out a prima facie case, the 'burden shifts to the State to explain adequately the racial exclusion' by offering permissible race-neutral justifications for the strikes.") (citations omitted).  Then, once the prosecution has presented a non-discriminatory reason, the district court must determine, "in light of all the evidence with a bearing on it," whether the defendant has proven intentional discrimination.  *Miller–El*, 545 U.S. at 252; *Johnson*, 545 U.S. at 168.

While the Government does not concede the Defendants have made out a prima facie case, consistent with the Supreme Court's rulings, the Declaration filed with this pleading sets forth the Government's race and gender neutral and non-discriminatory reasons for all of its peremptory challenges.  As a consequence, the Defendants have now received the information they would have obtained had either timely raised this meritless issue at trial.  The Defendants are entitled to receive nothing else and no more than that which is required from the Government.  Indeed, it would be illogical to grant the Defendants broader discovery than that which they would  have received had they raised this claim at trial or on direct appeal.

The Defendants' bald assertion that the Government's notes would be "relevant" to the

"veracity" of the prosecutors, citing *Miller-El II*, 545 U.S. at 246, does not satisfy the good cause required for limited discovery in Section 2255 proceedings. In *Miller-El-II,* the Supreme Court reminded courts of their responsibility to "assess the plausibility of [a prosecutor's stated] reason in light of all evidence with a bearing on it." 125 S.Ct. at 2331 (citing *Batson*, 476 U.S. at 96-97). The *Miller-El-II* Court, rejected a prosecutor's credibility on the basis of a constellation of facts including the repeated use of a "jury shuffle" to favor the selection of white jurors, the use of disparate voir dire questions to vet black and white veniremen (including inquiries the Court characterized as "trickery"), and evidence that the prosecutor's office had once had a written policy of discrimination. *Id.* at 2323-39. All of these circumstances are missing in this case. Moreover, there is nothing in *Miller-El-II* or any other cases cited by the defendants which support the kind of rummaging through of the government or court files which the defendants' seek in this case. Likewise, again citing *Miller-El II*, they argue they are entitled to obtain information about other capital cases because it is relevant to whether the government engaged in impermissible discrimination. Unlike *Miller-El II,* where they prosecutor's office had a documented policy of discrimination, there is no such evidence in this case. These arguments have no application to the instant matter, as discovery on collateral review is not permitted so that a petitioner can "explore [his] case in search of its existence." *Rich*, 187 F.3d at 1067. Given the ample record and controlling Supreme Court and Fourth Circuit precedent, the Court should find that the Defendants have failed to show good cause for discovery and deny their request.

## CONCLUSION

For the reasons set forth above, the Defendants' claims are procedurally barred and are substantively without merit. Accordingly, the Government requests that the Court dismiss

defendant Lighty's Claim One as procedurally barred and, alternatively, deny Claim One, because Lighty has failed to establish the Government engaged in purposeful discrimination. Similarly, the Government requests that the Court deny Lighty and Flood's petition for relief based upon ineffective assistance of counsel claims for failure to raise a *Batson/J.E.B.*, because the Defendants have failed to establish that their trial or appellate counsels' conduct was unreasonable, and they cannot establish any prejudice from the failure to make the stated meritless claims. Finally, in light of the Government's response and Declaration, the Government requests that the Court find that the Defendants have failed to demonstrate good cause for discovery and deny their request.

Because the facts and legal contentions are adequately set forth in the existing record, the Government submits that oral argument is unnecessary.

Respectfully submitted,

Rod J. Rosenstein
United States Attorney

By:  /s/   *James Crowell*
James A. Crowell IV
Deborah A. Johnston
Sandra Wilkinson
Assistant United States Attorneys
6500 Cherrywood Lane
Greenbelt, Maryland 20770-1249

CERTIFICATE OF SERVICE

This is to certify that on this 11th day of March, 2013, a copy of the aforegoing

Government's Omnibus Response To Defendants Batson/J.E.B. Claims was e-filed and e-mailed

to counsel of record for defendants.

/s/    *James Crowell*
James A. Crowell IV
Assistant United States Attorney