IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA          :
                                  :
        v.                        :        Civil No. PJM 12-3065
                                  :        Criminal No. PJM 03-457
KENNETH LIGHTY                    :
        Defendant.                :
                        *******

**GOVERNMENT'S RESPONSE TO DEFENDANT LIGHTY'S
MOTION FOR DISCOVERY REGARDING CLAIMS OTHER THAN
CLAIM I MOTION FOR RELIEF UNDER 28 U.S.C. § 2255**

Comes now the United States of America, by and through undersigned counsel, and files

this Response to Defendant Lighty's Motion for Discovery Regarding Claims Other than Claim I

in his Motion for Relief Under 28 U.S.C. § 2255.

I.      Background

Defendant/Petitioner Kenneth Lighty (hereinafter "Lighty") was convicted of capital

murder for the kidnapping and fatal shooting of Eric Hayes in Prince George's County, Maryland

on January 3, 2002.  On direct appeal, he raised 16 issues.[1]  His appellate team included a new

---

[1]   The appellate issues were: (1) whether the district court abused its discretion in
denying Lighty's severance motion; (2) whether the district court abused its discretion in
admitting evidence of a subsequent shooting in which Lighty participated; (3) whether the district
court abused its discretion in precluding testimony of an uncharged suspect's possession of a
firearm; (4) whether the district court plainly erred in overruling Lighty's objection to a question
posed to witness Ebony Miller; (5) whether the government's closing argument violated Lighty's
right to a fair trial; (6) whether the district court abused its discretion by excluding irrelevant and
cumulative evidence in the penalty phase; (7) whether the district court properly denied Lighty's
request for a "mercy instruction" at the close of the penalty phase of the trial; (8) whether the
aggravating factor of death during the commission of another offense impermissibly duplicated
elements of the kidnapping count charged in the indictment; (9) whether the failure to allege
nonstatutory aggravating factors in the indictment rendered the indictment unconstitutional; (10)
whether the district court's decision to exclude a letter written by Lighty to his grandmother
rendered the lack of remorse nonstatutory aggravating factor unconstitutional; (11) whether the

1

lead attorney, Gary DiBianco of Washington D.C., as well as trial counsel.[2]   The case was

affirmed by the Fourth Circuit by published opinion on August 11, 2010.

New counsel (Seth Rosenthal, Venable L.L.P., and Julie Brain) was appointed in May

2010 to pursue any habeas relief on behalf of Lighty.  A 166 page Motion to Vacate under 28

U.S.C. 2255 was filed on October 16, 2012 alleging numerous errors by skilled and death-

qualified trial and appellate counsel.   Habeas counsel have not filed a Memorandum in support

of the Motion to Vacate yet contending they "need" discovery to do so.  Essentially, counsel is

requesting the authority of this Court to re-litigate an 11 year old murder case where the Fourth

Circuit, in affirming the conviction and sentence in 2010, stated that the: "the government,

through the relevant evidence it introduced at trial .... overwhelmingly established each

defendant's guilt on each count beyond a reasonable doubt."  *United States v. Lighty*, 616 F.3d

321, 349-50 (4th Cir. 2010).   Lighty has not claimed actual innocence.

II.     FACTS

The government adopts by reference the detailed factual summary set forth in the

Government's response brief to Lighty's direct appeal, a copy of which can be provided to the

Court upon request.   Briefly, the case involved the January 3, 2002 abduction of Eric Hayes in

---

death sentence was imposed under the influence of passion, prejudice, or other arbitrary factors;
(12) whether the district court properly denied Lighty's motion to dismiss the government's notice
of intent to seek the death penalty and alternative request for discovery based on the alleged
discriminatory application of the death penalty; (13) whether the death penalty is per se cruel and
unusual punishment under the Eighth Amendment; and (14) whether the district court properly
imposed consecutive sentences for each of the defendant's three convictions for using a firearm
during the commission of a crime of violence, where each conviction related to a distinct use of a
firearm.

[2]  Jeffery B. O'Toole and Danya A. Dayson of O'Toole, Rothwell, Nassau & Steinbach

Washington D.C.  whose dead body was found in a neighborhood in Temple Hills, Maryland the same evening.  Three men, Lighty and co-defendants James Flood  and Lorenzo Wilson, were placed without a doubt in the car used for the kidnapping and murder just before the shots rang out and were together in the crucial minutes following the shooting.  A citizen eyewitness  saw and heard a man (Hayes) executed at close range by one shooter who then got back in the car and drove it away.  The citizen's 911 call at 8:51 p.m. established the time of the murder. Hayes had been kidnapped between 8 and 8:30 p.m.   Two women testified they picked up Lighty, Wilson and Flood just miles from the scene of the crime at approximately 9:00 p.m.  Lighty confessed he was the shooter to a girlfriend and to a cooperating witness, Charles Whitley.

The defense was that a fourth man, Tony Mathis, was involved in the Hayes' kidnapping and was possibly the shooter.

III.    Legal Argument

A.    Standard

Discovery in connection with a habeas petition may be given only upon a showing of "good cause."  *Higgs v. United States,* 711 F.Supp. 479, 502 (D.Md. 2010)*.*  Pursuant to Rule 6(a) of the Rules Governing § 2255 Proceedings, a prisoner may engage in discovery only "if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants him leave to do so, but not otherwise."  "Good cause" exists when there is "reason to believe that [the defendant] may, if the facts are fully developed, be able to demonstrate that he is ... entitled to relief."  *Id.*  at 502; *Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997).   There is "no reason to believe" that the additional facts Lighty "might hope to mine during discovery" will demonstrate his entitlement to relief at this juncture."  *Higgs*, 711 F.Supp. at 502.  The burden of

demonstrating the materiality of information requested through discovery in habeas proceedings is on the moving party. 28 U.S.C.A. § 2255. He has not met this burden and, accordingly, his request for discovery must be denied.

        B.      Legal Arguments for which Discovery is Sought by Lighty

In the pending Motion for "other" Discovery[3] (hereinafter referred to as "Motion") , Lighty seeks deposition testimony and subpoenas duces tecum with respect to issues raised in Claims II, IV and VI in his Section 2255 Motion to Vacate. At the heart of Lighty's demands is the notion that he should get a second bite at the apple after very experienced counsel defended him at trial. To make his case, he makes brazen allegations of prosecutorial misconduct while "suggest[ing]" and "believ[ing]" there is other information and evidence that could have supported a defense that was proffered at his trial. The defense, however, was soundly rejected because the strength of the evidence proved his guilt otherwise.

        1.      Claim II: Ineffective Assistance of Counsel

Lighty wants discovery to try to prove his trial counsel failed to effectively investigate (and therefore defend) fact issues presented at trial. The crux of his discovery requests is that (1) more should have been done by trial counsel to show another person (Tony Mathis) was involved in the murder, Motion at 1 - 3, (2) trial counsel should have better investigated, and then present to the jury, evidence to mitigate the Afton Street Shooting, Motion at 3-5, (3) trial counsel should have better investigated and presented to the jury evidence that Charles Whitley was an "experienced informant", Motion at 5-6 and (4) trial counsel should have discovered and

---

   [3] Habeas counsel also filed a lengthy motion for discovery regarding a *Batson* issue during jury selection at trial. The government's response to that lengthy motion is addressed in a separate pleading.

investigated that another man was implicated in the Afton Street shooting.  Motion at 7-8.  The

Court is asked to entertain Lighty's wish list, without knowing whether or not trial counsel did or

did not do the things Lighty now wants because starkly missing from his motion is any

representation by trial counsel about the information he says he needs.

Moreover, while he wants discovery to support his theory of a failure to investigate, his

reason for doing so is just rank speculation that any such discovery even exists.   Lighty is

essentially requesting permission from this Court to embark on "a fishing expedition

masquerading as discovery."  *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001), *Sellers v.*

*United States*, 316 F.Supp.2d 516, 523 (E.D.Mich. 2004); *Deputy v. Taylor*, 19 F.3d 1485, 1493

(3d Cir. 1994)(A fishing expedition for evidence to support claims does not constitute good

cause for granting a discovery request in a habeas proceeding.)  Even in a death penalty case,

"bald assertions and conclusory allegations do not provide sufficient ground to warrant requiring

the state to respond to discovery or to require an evidentiary hearing." *Zettlemoyer v. Fulcomer*,

923 F.2d 284, 301 (3d Cir. 1991).

        a.      Tony Mathis

With regard to his Tony Mathis theory of defense, which was presented to the jury by trial

counsel, Lighty now wants to depose two females (Tamika Hampton and Capricia Yarborough)

and to have this court order the government to produce documents he does not even know exist.

For his argument, Lighty attaches grand jury testimony and reports of interview that were plainly

available and considered by trial counsel prior to the trial.  Lighty wants to depose Tamika

Hampton because, he alleges, her grand jury testimony  "reveals that she is in possession of a

great deal of information that **tends** to incriminate Mathis in the Hayes homicide...and [his]

general propensity to commit acts of violence...” Defendant Lighty's Memorandum (hereinafter "Memo") at 5 (emphasis supplied). Stated another way, counsel wants to depose her "to discover" what could be "relevant" to his claim. Motion at Para A. Expression of a mere need to do discovery to "substantiate [a petitioner's] claims demonstrate[s] that the discovery request [is] a thinly disguised fishing expedition. *Johnson v. United States*, 2010 WL 231790, 3 (D.Del. 2010). In support, Lighty attaches Hampton's grand jury testimony which was available to trial counsel prior to the trial. He does not aver what he will ask, what her answers would be, or even that she does know information other than what she already attested to. In fact, trial counsel proffered Hampton as a witness stating that she would testify about the relationship between Flood and Mathis and that, sometime prior to December 21, 2001, she had observed Mathis with a firearm similar to the one seized from Lighty on January 31, 2002. JA 1850, 1853. The district court found the firearm evidence to be "too tenuous" and the Fourth Circuit affirmed the evidentiary ruling. Trial counsel decided not to call Hampton as a witness regarding the Flood/Mathias relationship. Habeas counsel does not even attempt to guess at what Hampton would say if she was deposed. Lighty has not shown in the slightest how a deposition of Hampton now, a defense witness in the first trial, would "demonstrate entitlement to relief."

He is simply hoping the deposition of Hampton might yield a different possible motive for the murder: "to retaliate against a crime committed against co-defendant James Flood." Memo at 6. For this motive, he cites inadmissible hearsay from Forrest about what he "heard" about Hayes' abduction. Memo at 6. All of this is Lighty's guessing game. It is readily apparent that Lighty simply desires "to establish the full extent of the information regarding the abduction" but has not "demonstrated entitlement to relief" as required at this stage of the

6

proceeding.

Similarly, Lighty wants to depose Yarborough, the girlfriend of the victim (Eric Hayes), whose statement was also provided to trial counsel in discovery. Lighty cites her written statement as "suggest[ing]" that Antoine Forrest was the "actual target of the abduction."[4] Motion at D. The written statement she provided does not actually say this. Exhibit C attached to Motion. As the victim's girlfriend, who testified for him at the penalty phase, Yarborough had every reason to give as much information as she had at the time she wrote the statement at the request of the police. Yet Lighty speculates there is more which is not the standard for obtaining discovery in a habeas case.

Moreover, because some of the trial evidence suggested mistaken identity regarding a car theft as a possible motive for the murder, *Lighty,* 616 F.3d at 337-38, it is not at all apparent how such a fact even if true helps Lighty. In other words, Lighty does not aver how it exculpates Lighty if Forrest was the "actual target" of the abduction.

To this end, Light also speculates that there are unspecified "documents" that need to be produced "regarding the carjacking of James Flood" and cites in support materials that were provided to trial counsel prior to trial such as the grand jury testimony of Flood's sister and the mother of one of Flood's children. He suggests that co-defendant James Flood was carjacked and that retaliation for that carjacking was the true motive for the homicide "and had nothing to do with Mr. Lighty". Memo at 6. This blanket statement obviously ignores the plethora of evidence proving Lighty's guilty in the homicide but, more importantly, the mere suggestion that

---

[4] Forrest, in fact, testified at trial that the driver of the car that abducted Hayes instructed the person sitting in the front passenger seat of the vehicle to "get" him. JA 1025.

there is some unspecified  "information designed to determine the veracity of these allegations"

does not constitute a ground for a court sanctioned fishing expedition into a theory of defense

that was clearly available at the time of trial, utilized by trial counsel, and rejected by the jury.

Finally, on this claim, Lighty wants the date of Mathis' release from prison to show when he was

released.  How this fact, assuming it is true, entitles him to relief now is unclear and therefore not

sustainable here.

b.        Afton Street Shooting: Maurice Gray

Lighty also attacks his trial counsel regarding their handling of the Afton Street shooting

evidence.  Lighty states counsel "could have presented significant evidence showing that the

incident" was part of a dispute involving Lorenzo Wilson and not Lighty in order to "mitigate"

the evidence.  But Lighty fails in this request too.

First, though the Fourth Circuit found error in admission of the Afton Street shooting, it

was because the  evidence was not "necessary" to the government' s case and could not have

affected the judgment in Lighty's case because the evidence of guilt presented by the government

was "overwhelming."  616 F.3d at 356.   This is primarily because the government proffered the

evidence because it linked Lighty to the murder weapon.  As the Fourth Circuit pointed out, the

government linked Lighty to the murder weapon with stronger evidence: a .380 was recovered

from Lighty a few weeks after the homicide.

Second, the evidence which Lighty seeks is corroborative of the very statement he makes

to Whitley - that Wilson was the shooter.  Thus, though Lighty wants to re-investigate the Afton

8

Street shooting[5], the issue is to what end.  Lighty, by his own admission to his friend Charles Whitley, was involved in the Afton Street with Wilson - a fact that he does not dispute now. The jury heard that Wilson was the shooter.  It is hard to fathom how additional discovery would "demonstrate entitlement to relief."

c.      Charles Whitley

Lighty also claims the government should be required to produce more (if it exists) about witness Charles Whitley, Motion at 5, who testified at length at trial.  Specifically, Lighty "seeks to discover" if Whitley "previously provided detailed information regarding other crimes of violence and narcotics trafficking."  Memo at 8-9.  In this regard, habeas counsel are asking to depose the detective and Charles Whitley and get documents regarding the same. Not only has counsel not provided legal support of why he would be entitled to such information if true, counsel's insinuation that there exists impeachment information about Whitley about which trial counsel was not informed and/or should have asked for is offensive.   Of course, trial counsel requested all impeachment information on Whitley and of course, the government provided what was known to them.  Whitley was even the subject of previous post-trial motions long since denied.

There is no substance whatsoever to Lighty's claim - they are making a general request

---

[5]  Counsel attempts to vilify the government by suggesting that an evidence review team (neither Mr. Rosenthal nor Ms. Brain) saw the Afton Street shooting weapon in a box when at the FBI and were "for[bidden] from looking at it.  The truth is that the government agreed to provide access to the trial evidence in the case as a professional courtesy.  But as set forth in this memoranda, habeas counsel is not entitled to discovery in this case (including examination of a weapon or any materials that were not part of the marked and admitted evidence in the first trial). Moreover, how looking at a gun by the evidence review team entitles him to relief is not addressed anywhere in his memo.  Lighty simply wants to try this case all over again and that is not the legislative purpose of Section 2255.

for *Giglio* information that <u>was</u> made by trial counsel and that <u>was</u> provided by government counsel without a single reference to how a shred of additional information about Whitley, even if it exists, would change or alter the verdict in this case which was based on "compelling evidence" that corroborated Whitley's testimony at every turn. A defendant may not use discovery to go on a "fishing expedition" through the Government's files in search of evidence to support an imagined and fanciful claim. *See United States v. Wilson*, 901 F.2d 378, 381 (4th Cir. 1990). As to Claim IV discovery, Lighty's motion should be summarily denied.

> d.   Afton Street Shooting

His last argument with regard to Claim II discovery is that another individual was implicated in the Afton Street shooting. Lighty does not proffer how such information, even if it exists, would nullify the compelling evidence that shell casing recovered from the Afton Street shooting was fired by Lighty's .380 caliber handgun (to the exclusion of all other firearms). *Lighty,* 616 F.3d at 342. He cannot meet his burden of showing the materiality of evidence at this stage of the proceeding by simply suggesting others may have been involved in the Afton Street shooting. The important part was that it was Lighty's gun that Wilson fired. Though the Fourth Circuit held the government did not "need" this evidence to establish Lighty's guilt "overwhelmingly," the relevance was in this fact alone (that it was his gun). Evidence relating to a phantom other shooter to whom even now Lighty makes no allegation had a connection to the gun cannot possibly show entitlement to relief at this stage of the proceeding.

> 2.   Claim IV: Prosecutorial Misconduct

Lighty's Petition is rife with gratuitous allegations of prosecutorial misconduct based on speculation and innuendo. Under Claim IV, Lighty recasts his argument for discovery relating

to Charles Whitley and the Afton Street shooting from trial counsel ineffectiveness for failing to investigate to constitutional dimension.  Lighty "seeks to discover" if Whitley "previously provided detailed information regarding other crimes of violence and narcotics trafficking" and if there is evidence implicating another man in the Afton Street shooting.  Memorandum at 8-9. He does not begin to address either legally or factually how this statement about Whitley in a police report further substantiated by the discovery he now seeks entitles him to habeas relief, or how it constitutes prosecutorial misconduct of a constitutional dimension.   Nor does he address how if the jury had heard his new theory about another man being involved in the Afton Street shooting, how it would possibly ameliorate the evidence that it was  Lighty's gun that left the casings as the scene.  He simply has not met his burden of proof here.

Lighty's argument that he needs discovery to prove that the Government violated its discovery obligations with respect to these claims further  demonstrates that he is truly going on a "fishing expedition" in hopes of "landing" some evidence that will support his contention that the Government failed to disclose impeachment and/or exculpatory evidence and that this "new evidence" justifies a new trial.   This is simply not permitted by the law.  *See, e.g., United States v. Carvajal*, 989 F.2d 170, 170 (5th Cir. 1993) (stating that a petitioner cannot "conduct a fishing expedition to see if he can find something in the grand jury minutes that might support further relief under § 2255"); *Munoz v. Keane*, 777 F.Supp. 282, 287 (S.D.N.Y.1991) (stating in a Section 2254 case that "petitioners are not entitled to go on a fishing expedition through the government's files in the hopes of finding some damaging evidence"). In other words, a defendant's right to *Brady* material does not include the unsupervised authority to search the Government's files. *Pennsylvania v. Ritchie*, 480 U.S. 39, 59 (1987).

Much of Lighty's motion is based on generalities and does not even attempt to address the requirements for such discovery. Lighty often uses the phrase "seeks to discover" - i.e. seek to find out if certain facts exist. This is fatal to his claim for post-conviction and post-appeal discovery, especially given the voluminous discovery that was provided to trial counsel in this case.  In other words, Lighty fails to establish that he is entitled to any of the discovery he sought or how it would be material to his claim of constitutional prosecutorial misconduct.  Even when Lighty mentions certain categories of documents specifically, police department on the shooting, he makes no showing that those documents contain evidence that is material either to guilt or to punishment. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963) (holding that a prosecutor who suppresses evidence "favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution"). *See also United States v. Bagley*, 473 U.S. 667, 682 (1985) ("The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome.").   Absent facts tending to show that relevant information was not turned over, the Court cannot possibly conclude that undisclosed impeachment information may have been material to his defense or that he was prejudiced as a result of the withholding.

       3.     Claim VI: Ineffective Assistance of Counsel at the Penalty Phase

The belief of  habeas counsel that trial counsel did not obtain all mitigation evidence that was available regarding the penalty phase and their supposition that an error may have occurred finds no anchor in fact or law.   He asks for subpoenas about Lighty's mother, his grandmother

and other relatives without even guessing what he expects it to yield, how it would be material to the jury's decision on death, or even how it is relevant.  A petitioner making § 2255 claims must set forth specific facts in support of each ground of relief asserted. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977) (holding that a habeas petitioner must make specific allegations; "conclusory allegations unsupported by specifics," or "contentions that in the face of the record are wholly incredible" will not entitle one to discovery or a hearing); *see also Taylor v. United States*, 287 F.3d 658, 661 (7th Cir. 2002) (finding that a mere impression of what happened, rather than specific allegations, does not satisfy the requirements for a collateral attack). As to Claim VI, Lighty is fishing and his request for discovery should be denied.

IV.      Summary

There has been no showing of "good cause" to engage in discovery or hold a hearing based on the wishful thinking of Lighty's new attorneys.  The evidence of Lighty's role in the murder of Eric Hayes was strong and powerful.  Indeed, it was overwhelming.  *Lighty*, 616 F.3d at 349-50.  Lighty's motion for "other" discovery should be denied because he cannot show how it would entitle him to relief now.

Very truly yours,

Rod J. Rosenstein
United States Attorney

/s/
By:_____
        Deborah A. Johnston
        Sandra Wilkinson
        Assistant United States Attorneys

## **CERTIFICATE OF SERVICE**

This is to certify that on this 11th day of March, 2013, a copy of the aforegoing

Government's  Response  was e-filed and e-mailed to counsel of record for defendant Lighty.


_____/s/_____
Sandra Wilkinson
Assistant United States Attorney