**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Greenbelt Division)**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| *Plaintiff*, | ) Case No. 03-cr-00457-PJM |
| | ) |
| v. | ) |
| | ) |
| KENNETH JAMAL LIGHTY, | ) |
| | ) |
| *Defendant*. | ) |

**PETITIONER'S REPLY TO GOVERNMENT'S RESPONSE TO PETITIONER'S**
**MOTION FOR DISCOVERY REGARDING CLAIMS OTHER THAN CLAIM I IN HIS**
**MOTION FOR RELIEF UNDER 28 U.S.C. § 2255**

Petitioner Kenneth Jamal Lighty respectfully submits this Reply to the Government's

Response (ECF No. 467) to his Motion for Discovery  Regarding Claims other than Claim I in

his Motion for Relief under 28 U.S.C. § 2255 ("Motion") (ECF No. 464).

In its Response, the Government accuses Mr. Lighty of attempting to conduct a "fishing

expedition masquerading as discovery."  (ECF No. 467 at 5; *see also id.* at 6, 11, 13.)  This

accusation is unwarranted.  The Motion is the antithesis of a request that is "so broad and

baseless as to constitute a fishing expedition."  *United States v. Wilson*, 901 F.2d 378, 381 (4th

Cir. 1990).  Each item of discovery sought is identified with specificity and its relevance is

clearly explained.  The Motion should be granted in full.

I.     **THE REQUESTED DISCOVERY RELATING TO THE CLAIM THAT TRIAL**
       **COUNSEL RENDERED CONSTITUTIONALLY INEFFECTIVE ASSISTANCE**
       **AT THE GUILT PHASE IS RELEVANT AND AMPLY PARTICULARIZED.**

Mr. Lighty has requested permission to conduct discovery related to certain discrete

aspects of Claim II of his § 2255 Motion, which alleges that his trial counsel rendered ineffective

1

assistance at the guilt phase of his trial.   Claim II takes up 35 pages of the § 2255 Motion and includes numerous subparts.  Mr. Lighty seeks discovery relating to just four of them, namely: (i) counsel's failure to adequately investigate and present evidence that an individual named Tony Mathis, and not Mr. Lighty, killed Eric Hayes (ECF No. 451 at 32-37); (ii) counsel's failure to discover, investigate and present available evidence to mitigate the overwhelming prejudice that Mr. Lighty suffered as a result of the erroneous admission of the Afton Street homicide (ECF No. 451 at 43-50); (iii) counsel's failure to discover and present evidence that key Government witness Charles Whitley was an experienced informant with a history of parlaying information about the alleged criminal acts of others into legal and other benefits for himself (ECF No. 451 at 57-58); and (iv) counsel's failure to discover and present evidence that an individual named Maurice Gray was implicated in the Afton Street homicide (ECF No. 451 at 58).

### A.      Evidence Implicating Tony Mathis

Mr. Lighty's requests with respect to evidence implicating Tony Mathis in the Hayes homicide are limited to depositions of Tamika Hampton and Caprecia Yarborough, production of documents including those regarding a carjacking committed against co-defendant James Flood, and a subpoena for a particular portion of Tony Mathis's jail record.

The Government asserts that, as to the request for Ms. Hampton's deposition, the Motion is an "'[e]xpression of a mere need to do discovery" and "a thinly disguised fishing expedition." (ECF No. 467 at 6.)  The Government further claims that Mr. Lighty has failed to specify "what he will ask, what her answers would be, or even that she does know information other than what she already attested to," "does not even attempt to guess at what Hampton would say if she was deposed," and "has not shown in the slightest" how Hampton's deposition may aid him in demonstrating his entitlement to relief.  *Id.*   To the contrary, in his Memorandum of Law

supporting his Motion, Mr. Lighty explained that he seeks to discover the information in Ms.

Hampton's possession that is incriminatory of Tony Mathis in the Hayes homicide. (ECF No.

464 at 5.) He listed several discrete categories of such evidence that he believes Ms. Hampton

possesses and explained that the basis for his belief is the transcript of Ms. Hampton's testimony

before the grand jury in this case. *Id.* He attached a copy of that transcript to the Memorandum.

(ECF No. 464-1.) And he provided legal authority establishing that failure to discover and

present evidence implicating another person in the crime for which a defendant is charged may

constitute ineffective assistance of counsel requiring post-conviction relief and a new trial. (ECF

No. 464 at 4-5.)

Obviously, Mr. Lighty cannot proffer precisely "what [Ms. Hampton's] answers will be"

– if he could, he would not need discovery – but such is not required. It is sufficient that he has

set forth good cause to believe that Ms. Hampton has information that is material to his claim

and that may "resolve . . . factual disputes that could entitle him to relief . . if the facts were

found in his favor." *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001). Viewed in

combination with all the other instances of ineffective assistance that are alleged in the § 2255

Motion, Mr. Lighty has manifestly shown that, if Ms. Hampton has the information that he has

outlined, the information would support a finding that his trial counsel rendered ineffective

assistance by, *inter alia*, failing to investigate and present it. The deposition of Ms. Hampton

should therefore be allowed.

Regarding Mr. Lighty's request for documents relating to the carjacking of James Flood,

the Government criticizes Mr. Lighty for putting forth hearsay evidence that the carjacking was

the true motive for the Hayes homicide and for "mere[ly] suggesti[ng]" that the requested

documents exist. It avers that the discovery should not be allowed because Mr. Lighty has not

3

"demonstrated entitlement to relief." (ECF No. 467 at 6-7.)  Yet there is no prohibition on the reliance on hearsay evidence to demonstrate good cause; even if they would not be admissible at a trial, the statements of Antoine Forrest clearly constitute a specific basis to conclude that there is a likelihood that exculpatory information exists in records possessed by the Government that is exculpatory of Mr. Lighty and should have been obtained and presented by his trial counsel. Moreover, Mr. Lighty does not rely solely on the statements of Antoine Forrest.  As he explained in his Memorandum, two additional witnesses, Nakita Carter and Joyce Flood, testified in the grand jury about their personal knowledge of Flood's carjacking.   (ECF No. 464 at 5-6.)  Mr. Lighty attached the transcripts of the grand jury testimony of both women to the Memorandum. (ECF. No, 564-2, 464-3.)

Mr. Lighty's showing is significantly more substantial and robust than a "mere suggestion that there is some unspecified 'information.'" (ECF No. 467 at 7-8.)  As noted, both Nakita Carter and Joyce Flood testified before the grand jury that the carjacking occurred and that they personally witnessed Flood, carless, shoeless and wallet-less, in its aftermath.  Both women also testified that Flood was in contact with police immediately after the incident occurred.  Ms. Carter recalled seeing him being driven home by a police officer, (ECF No. 464-2 at 18), and Ms. Flood remembered seeing him talking to police officers.  (ECF No. 464-3 at 20.) The inference that police reports or other documents were likely created regarding the incident is thus hardly a stretch.  Additionally, Mr. Lighty's burden when seeking discovery is not to "demonstrate[ his] entitlement to relief."  If he or any other habeas petitioner could do that, there would never be any need for post-conviction discovery, and § 2255 Rule 6 would be a nullity. Rather, at this juncture, Mr. Lighty must show good cause to believe that he may be able to

establish his entitlement to relief once discovery is completed and the facts are fully developed. *United States v. Roane*, 378 F.3d 382, 402-03 (4th Cir. 2004).  This he has manifestly done.

With respect to Mr. Lighty's request to depose Caprecia Yarborough, the Government characterizes Mr. Lighty's belief that she may be in possession of material exculpatory information that she has not previously provided as speculative.  (ECF No. 467 at 7.)  In fact, as Mr. Lighty explained in his Memorandum, his request is based upon a specific statement by Antoine Forrest, Hayes's best friend and the sole eyewitness to the abduction, that Ms. Yarborough knows all about the reasons for the abduction.  (ECF No. 464 at 6.) Antoine Forrest's assertion is made especially credible by the fact that Ms. Yarborough was fully aware of Hayes's drug selling activities and the relatives who supplied him with his product, relatives that Forrest specifically implicated in the motive for the abduction.  (ECF No. 464 at 6, 464-4, 464-5.)  The Government implies that, if Ms. Yarborough were indeed in possession of additional information, she would have provided it to the police when she gave her written statements.  (ECF No. 467 at 7.)  But of course, that would only have been possible if she had learned the information within the first few days following the incident.  If she learned it later she could not have included it in her written statements and, for reasons of her own, may have chosen not to divulge it if it was unhelpful to the prosecution of Mr. Lighty.

Additionally, as set forth in detail in the Memorandum, (ECF No. 464 at 6), Ms. Yarborough had a conversation with Eric Hayes on the night of the abduction that suggested that Antoine Forrest may have been the actual target of the abductors, and that the motive for the kidnapping was a homicide that Forrest himself had recently committed and had nothing to do with Mr. Lighty.  Ms. Yarborough talked with Hayes on the telephone, and Hayes told her that Forrest had just been released from jail after being arrested for murder, that people were out

looking for Forrest, and that Hayes was scared, prompting her to tell Hayes to get in a cab and go home immediately.  Not long thereafter, Hayes was abducted.  These details about this conversation are contained in Ms. Yarborough's police statements.  Mr. Lighty accordingly seeks to elicit testimony regarding the conversation and ensure that the account is accurate and complete.  The deposition of Caprecia Yarborough is necessary and appropriate and should be allowed.

Mr. Lighty's final request relating to evidence implicating Tony Mathis is the request for a small portion of Mathis's jail record, which should document when he was released from the Prince George's County Detention Center in late 2001.  (ECF No. 463 at 3.)  In its Response, the Government avers only that "[h]ow this fact, assuming it is true, entitles him to relief now is unclear and therefore not sustainable here." (ECF No. 467 at 8.)  It bears repeating that, at this juncture, Mr. Lighty's burden is not to prove his entitlement to relief; rather, it is to show good cause to believe that, when the facts are fully developed, he may well be able to demonstrate his entitlement to relief.  *Roane*, 378 F.3d at 402-03.  Mr. Lighty carefully explained the relevance of this evidence.  (ECF No. 467 at 3.)  The Government presented evidence at trial that one of Hayes's abductors mentioned during the encounter that he had recently been released from jail. The Government then presented evidence that Mr. Lighty had been released from jail on October 21, 2001, more than two months earlier, and thereby urged the jury to conclude that Mr. Lighty was the abductor who made the comment.  However, court records show that Tony Mathis was also released from jail in October, 2001.  The records of the facility will prove precisely which day in October Mathis was released.

Mr. Lighty's trial counsel obviously should have discovered and presented all of this evidence.  Their defense, albeit inadequately presented, was that Mathis and not Mr. Lighty shot

Hayes.  Counsel therefore had every reason to investigate and introduce evidence that implicated Mathis. By failing to do so, they rendered constitutionally deficient performance.

### B.      Evidence Mitigating the Afton Street Shooting.

Discovery of the limited information sought regarding the Afton Street homicide is also warranted.  The Government largely limits its discussion in its Response to Mr. Lighty's request for evidence that the motive for the Afton Street shooting was Lorenzo Wilson's alone.  But the evidence sought by Mr. Lighty is not limited to that of Wilson's motive.  There is strong reason to believe that the Afton Street shooting was not, as the Government portrayed it, a cold-blooded, one-sided drive-by assault; rather, it was but one aspect of an ongoing dispute that caused everyone involved to fear for their lives.   Specifically, there is evidence that an individual suspected to be the target of the Afton Street shooting and others drove a burgundy Ford Expedition into the neighborhood where Lorenzo Wilson and Mr. Lighty lived he night before the Afton Street shooting and opened fire, shooting at all visible pedestrians.  (ECF No. 464-6.) There is also evidence that, during the shooting, there were shots fired by both sides, not just from the car in which Lorenzo Wilson was riding.  (ECF No. 464 at 8.)  Such evidence would obviously have lessened the prejudicial impact of the Afton Street evidence on Mr. Lighty at both the guilt and penalty phases of his trial, and his trial counsel were obligated to discover and present it.  It is manifestly appropriate for current counsel to discover it now in order to demonstrate trial counsel's ineffectiveness.

The Government does address, in a footnote, the box of evidence pertaining to the Afton Street shooting that members of Mr. Lighty's defense team glimpsed when the Government (apparently inadvertently) set it out for them for their review of the trial exhibits.  Counsel in no way seek to "vilify" Government counsel, (ECF No. 467 at 9 n.5), and fully understand that they

were not entitled to review the evidence at that time absent an order from the Court pursuant to §

2255 Rule 6.  Counsel now seek such an order, however, because of the potential significance of

the objects in the box.  The Government incorrectly states that the gun that counsel saw was "the

Afton Street shooting weapon."  *Id.*  The actual shooting weapon was introduced as evidence at

trial because it was the Government's theory that the same weapon was used to shoot Eric

Hayes.  The gun in the box is, therefore, another firearm entirely, never before known to defense

counsel and not described in any of the police reports provided in discovery.  Given Mr. Lighty's

contention that there were multiple weapons used at the scene of the shooting, as well as

weapons used the night before, the discovery of another gun in the store of physical evidence in

this case is of obvious significance.  Counsel therefore seek discovery of that evidence and any

additional evidence pertaining to the Afton Street incident that was not previously disclosed.

### C.       Evidence of Charles Whitley's History as an Informant

The Government characterizes Mr. Lighty's request to discover evidence of Charles

Whitley's history of acting as an informant for law enforcement as an "insinuation" which is

"offensive."  (ECF No. 467 at 9.)  The insinuation, however, was made not by counsel but by

Prince George's County Police Department Detective Sean Chaney, who wrote in a document

filed in court in this case that an individual, obviously Whitley, had "previously provided

detailed information regarding other crimes of violence and narcotics trafficking."  (ECF No.

464-7.)  The Government did not disclose Whitley's provision of information in any of those

cases involving "crimes of violence and narcotics trafficking."  Mr. Lighty therefore

appropriately seeks such disclosure now.

The Government's further contention that Mr. Lighty failed to provide legal support for

his request for this information is manifestly incorrect.  On page 8 of his Memorandum, Mr.

Lighty cited *Monroe v. Angelone*, 323 F.3d 286, 315-16 (4th Cir. 2003), a Fourth Circuit case finding a *Brady* violation to have been established where the prosecution failed to disclose the informant history of one of its witnesses.  (ECF No. 464 at 8.)  Moreover, it is beyond dispute that the informant history of a key government witness constitutes relevant impeachment evidence that must be disclosed under *Brady, Giglio* and its progeny.  *See, e.g., Banks v. Dretke*, 540 U.S. 668 (2004).

### D.    Evidence Implicating Maurice Gray in Afton Street

The Government dismisses Mr. Lighty's request to discover evidence implicating Maurice Gray in the Afton Street shooting as based upon his own "simpl[e] suggesti[on]" that others may have been involved in the incident.  (ECF No. 467 at 10.) But, as set forth in Mr. Lighty's Memorandum and attached exhibits, a police report prepared by the Prince George's County Police Department states that a search warrant was obtained to search Gray's residence in connection with the Afton Street case.  (ECF No. 464 at 9, 464-8.)  Mr. Lighty is thus not simply suggesting that Gray may have been involved.  Prince George's County Police have stated that a judicial officer found the existence of probable cause to believe that Gray was involved.  Mr. Lighty is entitled to discover the evidence upon which that probable cause finding was based.

The Government further suggests that no amount of evidence implicating Maurice Gray could be material because the evidence at trial proved that the shooting was committed with "Lighty's gun."  (ECF No. 467 at 10.)  This is an overstatement.  It is certainly the case that a firearms examiner declared that a shell casing found at the scene of the Afton Street shooting was fired by the gun that was in Mr. Lighty's possession when he was arrested in the District of Columbia the following night.  But while this fact is probative of whether Mr. Lighty possessed

the gun at the time of the Afton Street shooting, it is far from conclusive on the matter.

Compelling evidence of Maurice Gray's culpability for the shooting could therefore be

exculpatory of Mr. Lighty.  Having never seen it, undersigned counsel cannot speculate

regarding the nature or weight of the evidence against Maurice Gray, but Mr. Lighty is certainly

entitled to discover it.

As noted in Mr. Lighty's Memorandum (ECF No. 464 at 4), the prejudice flowing from

counsel's multiple errors and omissions must be evaluated cumulatively.  *See Hooks v.*

*Workman,* 689 F.3d 1148, 1188 (10th Cir. 2012); *Malone v. Walls*, 538 F.3d 744, 762 (7th Cir.

2008); *Harris v. Housewright*, 697 F.2d 202, 206 (8th Cir. 1982).  A definitive determination of

Mr. Lighty's entitlement to relief must therefore await full development of all the facts

supporting Claim II.  Mr. Lighty has nevertheless shown good cause warranting discovery to

facilitate that factual development.

## II.      THE REQUEST FOR DISCOVERY RELATING TO THE CLAIM THAT MR. LIGHTY WAS DEPRIVED OF HIS CONSTITUTIONAL RIGHTS BECAUSE THE GOVERNMENT ENGAGED IN PROSECUTORIAL MISCONDUCT IS RELEVANT AND AMPLY PARTICULARIZED.

In Claim IV of his Amended Motion, Mr. Lighty alleges that his constitutional right to a

fair trial was violated by prosecutorial misconduct, which included the failure to disclose

material impeaching information regarding Charles Whitley and his history as an informant,

(ECF No. 451 at 82-83), and the failure to disclose material exculpatory information implicating

Maurice Gray in the Afton Street homicide (ECF No. 451 at 84-85).  Mr. Lighty seeks no

additional discovery on these issues beyond that requested in connection with Claim II.

The Government implies that Mr. Lighty's Motion in this regard is tantamount to a

request for "the unsupervised authority to search the Government's files."  (ECF 467 at 11.)

Nothing could be further from the truth.  Mr. Lighty has narrowly and carefully identified two

specific categories of information as to which he has a legal and factual basis for seeking discovery, and he has limited his requests accordingly. Additionally, the Government (again) accuses counsel of failing to provide legal authority for his request for information about Whitley, ignoring both his citation to *Monroe* and the indisputable command of *Brady* and *Giglio*. The Government also makes the same argument regarding "Lighty's gun," but as with Claim II, that argument fails to defeat Mr. Lighty's entitlement to evidence implicating Maurice Gray in the context of Claim IV.

Invoking the language of this Court's opinion in *United States v. Higgs,* 711 F. Supp.2d 479 (D. Md. 2010), the Government further resists Mr. Lighty's discovery request by stating: "Absent facts tending to show that relevant information was not turned over, the Court cannot possibly conclude that undisclosed impeachment information may have been material to his defense or that he was prejudiced as a result of the withholding." (ECF No. 467 at 12.) *See Higgs*, 711 F. Supp. 2d at 551. But this case presents a starkly different situation than that confronted by the Court in *Higgs*. The issue that prompted the comment that the Government quotes was Higgs's claim that the Government violated his rights under *Brady* by generally failing to disclose "all Park Police and FBI witness statements and reports." *Id.* at 550. The Court's comment thus constituted a judgment on the merits of Higgs's claim, not a ruling on a request for discovery. Moreover, in clear abdication of his pleading obligations, Higgs admitted that, by seeking "all Park Police and FBI witness statements and reports," he was not alleging that any *specific,* material evidence had been withheld; rather, he asserted only that such information *might* exist within the identified documents. *Id. See also id.* at 551 ("Higgs offers absolutely no facts, not even a slight suspicion, that the Government failed to turn over material evidence"). Here, in direct contrast, Mr. Lighty has set forth ample "facts tending to show that

11

relevant information was not turned over." He has produced a court document in which a detective avers that Charles Whitley had acted as an informant for law enforcement prior to this case, even though no information regarding Whitley's informant status or history was ever disclosed; and he has produced a police report stating that a judicial officer issued a search warrant for Maurice Gray's residence and therefore necessarily found probable cause to believe Gray was implicated in the Afton Street shooting based presumably on evidence that also has never been disclosed. Both categories of information have indisputably exculpatory value. Accordingly, Mr. Lighty has demonstrated his right to discover them.

### III.   THE REQUESTED DISCOVERY RELATING TO THE CLAIM THAT TRIAL COUNSEL RENDERED CONSTITUTIONALLY INEFFECTIVE ASSISTANCE AT THE PENALTY PHASE IS RELEVANT AND AMPLY PARTICULARIZED.

Mr. Lighty's final discovery requests relate to his Claim VI, which alleges that his constitutional right to the effective assistance of counsel at the penalty phase of his trial was violated, *inter alia*, by the failure of his counsel to adequately investigate and present available mitigating evidence. (ECF No. 451 at 103-49.) As explained in his Memorandum, (ECF No. 464 at 10-12), these requests seek documents that are sufficiently likely to yield relevant mitigating evidence that the American Bar Association's Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases (2003) direct counsel to obtain them in all cases. Mr. Lighty's counsel performed deficiently in failing to gather these records at the time of trial, and Mr. Lighty is entitled to secure them now in order to develop the facts necessary to prove that he was prejudiced by that deficient performance.

The Government's claim that Mr. Lighty has not "even guess[ed] what he expects [his request] to yield, how it would be material to the jury's decision on death, or even how it is relevant," (ECF No. 467 at 13), is manifestly incorrect. Not only did Mr. Lighty explain that the

12

documents he seeks are among those that counsel in capital cases are required to routinely obtain under the ABA Guidelines, he also took pains to explain in particular why the records are likely to exist and to reveal relevant information in his own case.  (ECF No. 464 at 12.)  Mr. Lighty's discovery requests relating to Claim VI should be granted.

Dated:  April 26, 2013

<div style="margin-left:45%">

Respectfully submitted,


 /s/ Julie Brain
Julie Brain
JulieBrain1@yahoo.com
Attorney at Law
127 Church Street
2nd Floor
Philadelphia, PA 19106
(267) 639 0417

/s/ Karl Schwartz
Karl Schwartz
Karl_schwartz@fd.org
Capital Habeas Unit
Delaware Federal Defender Office
800 King Street
Suite 200
Wilmington, DE 19801
302-573-6010

/s/ Seth Rosenthal
Seth A. Rosenthal (D. Md. Bar No. 10780)
sarosenthal@venable.com
Molly T. Cusson (D. Md. Bar No. 18390)
mtcusson@venable.com
VENABLE LLP
575 7th Street, NW
Washington, DC  20004-1601
202-344-4000

*Counsel for Kenneth Jamal Lighty*

</div>