# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 03-cr-00457-PJM |
| | ) | |
| v. | ) | |
| | ) | |
| KENNETH JAMAL LIGHTY, | ) | |
| | ) | |
| Defendant. | ) | |

## DECLARATION OF JEFFREY B. O'TOOLE

I, Jeffrey B. O'Toole, hereby declare:

1. I am a partner at O'Toole Rothwell. I am over 18 years of age and have personal knowledge of the following facts and could and would competently testify to them if called to do so.

2. Together with my former colleague, Danya Dayson, I served as trial counsel for Kenneth Lighty in the above-captioned case.

3. At trial, I took the lead in jury selection on behalf of Mr. Lighty. Along with Ms. Dayson, I worked with counsel for Mr. Lighty's co-defendant, James Flood, to pick the jury, as Mr. Lighty and Mr. Flood were required to share and jointly exercise the defense's allotment of peremptory strikes.

4. Once the court qualified a sufficient number of jurors to obtain the required 12 seated jurors and six alternates, each side was given 23 peremptory strikes – 20 to seat the jury of 12 and three to seat the alternates. The court used a simultaneous blind striking procedure. Each side was handed a sheet listing all of the qualified jurors, marked down its strikes without the other side knowing which jurors it was striking, and then provided its strike list to the court, again without the other side knowing which jurors it struck.

5. I have picked hundreds of juries in my career. I have also picked several juries in death penalty cases. I had never before used a simultaneous blind striking procedure. Unlike the methods of jury selection I knew, where the defense can observe which jurors the prosecution strikes peremptorily as the selection process unfolds, the simultaneous blind procedure makes it impossible to determine, during the course of striking, whether the prosecution might be engaged in unconstitutionally discriminatory conduct against jurors belonging to protected classes. The only way to determine whether the prosecution might be engaged in unlawful discrimination

1

when simultaneous blind striking is employed is to determine and then analyze the strikes the prosecution exercised *after* the jury is selected.

6.      I did not consider, nor did Ms. Dayson and I discuss, making a *J.E.B.* and/or *Batson* challenge at the time of jury selection in Mr. Lighty's case. This was not a strategic decision. It was an oversight. We did not think to, and thus did not, take the steps necessary to determine, when blind striking is used, whether the prosecution engaged in unlawful discrimination that would support a *J.E.B.* and/or *Batson* challenge. We did not request an accounting of the prosecution's peremptory strikes after Mr. Lighty's jury was selected. Nor did we ask for the time needed to analyze the prosecution strikes that could be identified without such an accounting (*i.e.*, the jurors whom we accepted but were dismissed). Without the prosecution's strike list, and without otherwise deducing and closely scrutinizing the prosecution's striking patterns, we gave ourselves no way to determine whether the prosecution violated *J.E.B.* and/or *Batson*.

7.      We knew that, prior to Mr. Lighty's trial, the same Assistant United States Attorneys who would prosecute Mr. Lighty tried another capital case, *United States v. Higgs*. It was not until after Mr. Lighty's trial that we learned that an all-male jury was chosen in *Higgs*.

8.      I am now familiar with the available evidence of the prosecution's peremptory strikes at Mr. Lighty's trial. This evidence makes clear that the prosecution struck an extremely high percentage of women and an even higher percentage of African-American women. It also makes clear that, other than their gender or gender/racial differences, most of the excluded jurors bore characteristics, including views on the death penalty, that were similar to the characteristics of the jurors the prosecution accepted. Had it occurred to us to obtain and meaningfully evaluate this information before the jury was sworn, we would have challenged the prosecution's strikes of both women generally and African-American women in particular, as both challenges were amply supported by the record. Had it occurred to us, we also would have supported the challenge with evidence that the prosecution engaged in a similar pattern of strikes in the *Higgs* case.

I declare under the penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 24th day of April, 2013.

Jeffrey B. O'Toole

2