**EXHIBIT 1**

# SUPPLEMENTAL EXPERT REPORT OF DR. JOHN LAMBERTH

United States
v.
Kenneth Lighty and James Flood

CASE NO. 8:03-cr-457-PJM
THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

## SCOPE OF OPINION

I have been asked to performadditional analyses in this matter—that is, to assess the

Government's pattern of striking jurors in the case of *United States v. Higgs*. *Higgs* was a

federal death penalty case prosecuted by the same two Assistant United States Attorneys who

prosecuted the *Lighty*case.*Higgs*, like *Lighty*,was prosecuted in the United States District Court

for the Southern District of Maryland.  The court used the same jury selection process in*Higgs*

that it used in*Lighty*.

I have been specificallyasked to analyze the strikes by the Government in the *Higgs* case

to determine whether the Government's striking patterns in *Higgs*was consistent with the striking

patterns that I found in the *Lighty*case, detailed in my report of April 26, 2013—i.e., that the

Government's striking pattern was consistent with targeting women and particularly black

women with its peremptory challenges.  Further, I was asked whether an analysis combining the

Government's strikes in the *Lighty*and *Higgs* cases would produce scientifically valid results

and, if so, to determine whether the results of that combined analysis are similarlyconsistent with

the conclusion that the Government targeted women and particularly black women with its

peremptory challenges.

## INFORMATON RELIED UPON

I was provided with the race and gender of the first 52 death-qualified jurors needed to

seat a petit jury of 12 in the *Higgs* case, as well as the jurors whom the Government struck from

the pool of 52.[1]In my earlier report, which included only jurors in the *Lighty*case, I analyzed and

presented to the Court the strikes by the Government for the panel of 64, which included the

---

[1] Counsel informed me that they determined the government's strikes from several sources, including a declaration the Government submitted in Higgs' post-conviction proceeding that explainedmany of its strikes,a copy of the strike sheet that Higgs' counsel used to track strikes, andHiggs' counsel's notes from jury selection.

panel of 52 for selection of the 12 jurors for the petit jury plus 12 more death qualified panelists so that 6 alternates could be selected. Because the analysis I am performing of the *Higgs* jury selection involves the panel of the first 52 jurors needed to seat a petit jury of 12, the analysis that I present for *Lighty* in this supplemental report also will include only the panel of the first 52 jurors needed to seat a petit jury of 12.

The raw data for both the *Lighty* and the *Higgs* panels of 52 are presented in Table 1.

| Panel | Women N | % Women | Men N | % Men | Total N | Black Women N | % Black Women | Non Black Women N | %Non Black Women | Total N |
|---|---|---|---|---|---|---|---|---|---|---|
| Lighty | 23 | 44.2 | 29 | 55.8 | 52 | 9 | 17.3 | 43 | 82.7 | 52 |
| Higgs | 21 | 40.4 | 31 | 59.6 | 52 | 7 | 13.5 | 45 | 86.5 | 52 |

**Table 1.** *Number and Percent of Women, Men, Black Women and Non Black Women in the* Lighty *and* Higgs *Panels of 52.*

## RESULTS

I have not before presented an analysis of the Government's strikes for either the *Lighty* panel of 52 or the *Higgs* panel of 52, so I proceed to those analyses now. The analyses compare the women in the panel to the proportion of women available to be struck, and the Black women in the panel to the proportion of Black women available to be struck.

### *Lighty* Women

There were 23 (44.2%) females and 29 males in the panel of 52 for the *Lighty* petit jury. The Government used 15 of 19 strikes (78.9%) against females. The probability that the Government would use 78.9% of its strikes against women in a panel that contained 44.2% women, without regard to gender, is < .01, meaning that it would occur by chance less than 1 time in 100. By convention, statisticians generally agree that a result is statistically significant when it would occur by chance 5 times in 100. The result here, therefore, is statistically

significant. The odds ratio for these same data is 4.72, meaning that women were 4.72 times as likely to be struck as men.

The Government had a strike which was not utilized in the panel of 52. When I analyze the data taking that strike into account, it shows that 15 of 20 (75%) possible strikes by the Government were utilized against women who made up 44.2% of the panel. In this analysis, too, the result is statistically significant. The probability of the obtained result occurring by chance is <.02, or less than 2 times in 100, which is well beyond the conventional level of significance. The odds ratio for these data is 3.79, meaning that women were 3.79 times as likely to be struck as men.

### *Higgs* Women

In the *Higgs* panel of 52, there were 21 females (40.4% of the panel) and 31 males. The Government used all of their 20 strikes, removing 14 females (70% of their strikes) and 6 males. Analyzing the difference between the 70% of strikes against women and their 40.4% presence on the panel yields a statistically significant result. The probability that this difference occurred by chance is .024, or 2.4 times in 100. The odds ratio for these data is 3.44.

### *Lighty* Black Women

There were 9 Black women in the panel of 52 in the *Lighty* case. The Government struck 8 of the 9. The strike rate for Black females was 88.9% from a panel which consisted of 17.3% Black females. The probability that this result would occur by chance is .00006, or 6 times in 100,000. The odds ratio for these data is 38.36, meaning that the Government was 38.36 times more likely to strike a juror who was a Black female than a juror who was not a Black female.

4

For this comparison, I do not do an alternate analysis of the data accounting for the fact that the Government did not use a challenge, as they had enough strikes to strike all the Black women on the panel of 52.

### *Higgs* Black Women

There were 7 Black women on the panel of 52 in the *Higgs* case. The Government struck 5 of the 7. The strike rate for Black women was 71.4% from a panel which contained 13.5% Black women. The probability that this was a chance finding is < .003, or less than 3 times in 1,000. The odds ratio for these data is 16.0.

### Combining *Lighty* and *Higgs*

#### *Scientific Validity of Combining* Lighty*and* Higgs *Pools of 52*

Replication is an important tool in science. It is difficult to find situations in which there are adequate controls to insure that two separate phenomena bear sufficient statistical similarities that they may be considered replications of each other for further statistical analysis. In the present situation, however, there exists such replication:twodeath penalty cases, tried by the same two prosecutors,in the same jurisdiction, with the same Judge presiding,utilizing the same method of jury selection, for jurors selected from the same 5 counties in Maryland. Because the prospective jurors making up the panels are selected to jury service randomly, it would be expected that the panels would be quite similar with regard to race and gender, the variables of interest for my analysis.This has, in fact, been borne out, as demonstrated in the tables in this report. Of further benefit to the statistician, the simultaneous blind striking procedure allows a view of the prosecutors' striking decisions without any influence from the defense attorneys' striking decisions.

Table 1 shows that the panels of qualified jurors for both cases were functionally the same or, in statistical language, that they do not differ from each other.[2] The following two comparisons demonstrate this fact. The first is a comparison of the proportion of men and women on the two panels; the second is a comparison of the proportion of Black women vs. non-Black women on the two panels.

The *Lighty* panel of 52 had 44.2% women (55.8% men) and the *Higgs* panel had 40.4% women (59.6% men). An analysis of these proportions indicates that the panels did not differ from each other p. NS[3]. The *Lighty* panel had 17.35% Black women (82.7% non-Black women) and the *Higgs* panel had 13.5% Black women (86.5% non-Black women). These data also do not differ from each other. Based on these results, I can say that these two panels are sufficiently similar in the relevant demographics—proportion of women and proportion of Black women—to allow the combination of the two panels for statistical analysis.

The final question to be answered before determining whether a statistically reliable analysis of the combined panels is appropriate is whether the prosecutors' strikes of women and of Black women were statistically different as between the *Higgs* and *Lighty* cases. In *Lighty*, the prosecutors struck 15 (78.9%) women out of their 19 strikes. In *Higgs*, the prosecutors struck 14 (70.0%) females out of their 20 strikes. The difference between these two proportions is not statistically significant, p. >.5.[4] Similarly, the difference between the proportions of the

_____

[2] For statistical purposes, a finding of no difference does not mean that the striking pattern is identical, but rather that the slight differences in the strikes by the prosecutors in *Lighty* and *Higgs* are chance findings, not real ones for statistical purposes. In this particular instance, it means that the prosecutors' strikes were essentially the same with regard to women in both *Lighty* and *Higgs*. The same explanation is attributable to their striking of Black women.

[3] N. S. means that two values have been compared and do not differ from each other for statistical purposes. It is thus permissible to combine them for further analysis.

[4] If the Government's unused strike in *Lighty* is taken into account, the prosecutors used 15 of 20 available strikes against women in the *Lighty* panel of 52 (75%), and the difference between

prosecutors' strikes of Black women in *Lighty*(8 of 9) and the prosecutors' strikes in *Higgs*(5 of 7)is not statistically significant, p. >.5.

For all of these reasons, there is a valid basis for conducting a combined statistical analysis of the Government's strikes from the panels of 52 in the *Lighty*and *Higgs* cases.

*Results*

The data for the combined cases is presented in Table 2, which is Table 1 plus the combined totals for women, men, Black women and non-Black women.

| Panel | Women N | % Women | Men N | % Men | Total N | Black Women N | % Black Women | Non Black Women N | % Non Black Women | Tota l N |
|-------|---------|---------|-------|-------|---------|---------------|---------------|-------------------|-------------------|----------|
| Lighty | 23 | 44.2 | 29 | 55.8 | 52 | 9 | 17.3 | 43 | 82.7 | 52 |
| Higgs | 21 | 40.4 | 31 | 59.6 | 52 | 7 | 13.5 | 45 | 86.5 | 52 |
| Com-bined | 44 | 42.3 | 60 | 57.7 | 104 | 16 | 15.4 | 88 | 84.6% | 104 |

**Table 2.***Number and Percent of Women, Men, Black Women and Non Black Women in the* Lighty *and* Higgs *Panels of 52 plus the Totals for the Two Cases.*

The prosecutors used a combined 39 strikes, and 29 (74.4%) of them were directed at women who came from panels that, combined, contained 42.3% women. Comparing these two percentages yields a large, statistically significant difference, $p. = .0006$, meaning that the probability that the Government's strikes of women from the two panels occurred by chance is 6 times in 10,000. The odds ratio for these data is 3.95.

The prosecutors, as noted, did not use one of their strikes in *Lighty*. Analyzing these data using the number of strikes the prosecutors could have used, the difference between the percentage of strikes used against women (72.5%) compared to the percentage of women on the panels (42.3%) is still highly statistically significant, $p. = .0012$, or 12 times in 10,000. The odds ratio for this set of data is 3.58.

---

that proportion and the prosecutors' use of 14 of 20 available strikes against women from the *Higgs* panel of 52 remains not statistically significant, p.> .7.

With regard to Black women, there were 16 Black women on the combined panels. The prosecutors struck 13 of them. This strike rate, 81.3%, when compared to the 15.4% of Black women on the panels is very highly statistically significant, $p < .0000028$, meaning that the probability that the Government's strikes of Black women from the two panels occurred by chance is 2.8 in one million. The odds ratio for these data is 23.8.

## CONCLUSIONS

I found that the panels for two different cases that were selected from the same population consisting of 5 counties in Maryland did not differ from each other with regard to the proportion of women and Black women. This result is not remarkable, as one would expect that the demographics of panels selected from the identical area to remain fairly constant. The same two attorneys prosecuted both cases and their striking behavior was strongly supportive of the conclusion that they were targeting women in general and Black women in particular. Even though there were factual differences between the two cases, this pattern of striking women/Black women was observed in each case individually and when the jury panels were combined.

## SIGNATURE

This Report is based on information available as of September 10, 2013. I reserve the right to modify or supplement these opinions if new or additional information is obtained through discovery or identified by reports produced by other parties in this litigation.

Signature:

_John Lamberth_
Dr. John Lamberth

_9/11/13_
Date

8