**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Greenbelt Division)**

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | **Criminal Case  03-cr-00457-PJM** |
| **v.** | ) | **Civil Case  11-cv-3065-PJM** |
| | ) | **Civil Case  11-cv-3563-PJM** |
| | ) | |
| **KENNETH JAMAL LIGHTY AND** | ) | |
| **JAMES EVERETT FLOOD,** | ) | |
| | ) | |
| *Defendants*. | ) | |

**PETITIONERS' SUPPLEMENTAL BRIEF IN SUPPORT OF JOINT**
**MOTION FOR DISCOVERY REGARDING THE ALLEGATIONS OF**
**IMPERMISSIBLE DISCRIMINATION IN JURY SELECTION MADE**
**IN THEIR MOTIONS FOR RELIEF UNDER 28 U.S.C. § 2255**

As the Court requested at a hearing held on September 23, 2013 ("September 23 hearing"), Petitioners Kenneth Jamal Lighty and James Flood respectfully submit this Supplemental Brief in support of their Joint Motion for Discovery Regarding the Allegations of Impermissible Discrimination in Jury Selection Made in Their Motions for Relief Under 28 U.S.C. § 2255.

The Court seeks answers to two questions:  (1) does the procedural default rule prevent Petitioners from establishing "good cause" for discovery on their various claims of discrimination in jury selection—*i.e.,* does the procedural default rule render them incapable of establishing a *prima facie* case for relief on those claims; and (2) have other courts permitted the kind of discovery Petitioners seek?  The answer to the first question is no.  The answer to the second is yes.

1

**INTRODUCTION**

The procedural default rule does not preclude Petitioners from establishing "good cause" for the discovery they have requested under Rule 6 of the Rules Governing Section 2255 Proceedings.  Petitioners' *J.E.B.-Batson* claims are not defaulted because Petitioners have made a *prima facie* showing that the failure to raise them before was due to the ineffective assistance of counsel, which establishes cause and prejudice sufficient to cure any default.  Through the declarations of prior counsel, Jeffrey O'Toole and Michael Lawlor, regarding their failure to recognize and mount *J.E.B.-Batson* challenges, as well as the voluminous evidence set forth in Petitioners' prior submissions showing that the Government discriminated against prospective female and black female jurors, Petitioners have made a *prima facie* showing that their prior counsel rendered deficient performance establishing "cause" for any default.  Having made such a showing, Petitioners necessarily have proven "prejudice," as *J.E.B.-Batson* violations constitute structural error from which prejudice is presumed.

Petitioners' separate claims that the Government discriminated against certain prospective jurors based on their religion and on reasons that are proxies for race also are not procedurally defaulted.  That is because the evidentiary basis for these claims was not in the record, could not have been deduced from the composition of the empaneled jury and was unavailable until just recently, when the Government offered reasons for its strikes in its opposition to Petitioners' discovery motion.

The discovery Petitioners request is nothing out of the ordinary.  Contrary to the Government's suggestion at the September 23 hearing, other courts, on less compelling facts, have required disclosure of precisely what Petitioners seek, including the Government's jury selection notes and files and the Government's striking patterns in other cases.  Because

Petitioners have established good cause for discovery, they are entitled to obtain the documents they continue to request: (i) the Government's notes from jury selection in this case, as well as any other materials about prospective jurors in the Government's files; (ii) the Government's jury selection notes and juror materials from *Higgs*; (iii) the strike lists in *Higgs* and *Haynes* (retained by the jury clerk); (iv) juror questionnaires from *Higgs* (retained by the jury clerk); and (v) the strike lists from *Taylor, Argueta, Dinkins* and *Byers* (retained by the jury clerk).[1]

## ARGUMENT

I. **THE PROCEDURAL DEFAULT DOCTRINE DOES NOT DEFEAT PETITIONERS' REQUESTS FOR DISCOVERY ON THEIR CLAIMS OF DISCRIMINATION IN JURY SELECTION.**

At the September 23 hearing, the Court questioned whether it should deny Petitioners' motion for discovery in support of their claims of discrimination in jury selection on the ground that those claims are procedurally defaulted. Because Petitioners have made a *prima facie* showing that their claims are not in fact defaulted, and otherwise have demonstrated "good cause" for discovery by establishing a compelling "*prima facie* case for relief" on the merits in their prior submissions, ECF Nos. 454 and 471, the requested discovery is warranted.

A. **Petitioners Have Made a *Prima Facie* Showing That There Is Cause and Prejudice Curing any Default of Their Claim that the Government Discriminated against Prospective Jurors on the Basis of Gender and a Combination of Race and Gender.**

A procedural default may be excused when a Section 2255 petitioner demonstrates cause for, and prejudice resulting from, the default. *Bousley v. United States*, 523 U.S. 614, 622 (1998). A petitioner may demonstrate cause and prejudice by, *inter alia*, establishing that the default was the product of the constitutionally ineffective assistance of his trial and/or appellate counsel. *Murray v. Carrier,* 477 U.S. 478, 488 (1986). The question whether Petitioners have

---

[1] As set forth below, Petitioners no longer seek to depose or submit interrogatories to the prosecutors because the Government has now furnished the reasons for their peremptory strikes.

demonstrated "good cause" warranting discovery as to their claims that the Government

discriminated against prospective female and black female jurors is thus whether Petitioners have

made out a *prima facie* case of ineffective assistance of counsel under the familiar two-part test

of *Strickland v. Washington*, 466 U.S. 668 (1984).   The first part asks whether counsel's

performance "fell below an objective standard of reasonableness." *Id.* at 688.   Counsel's

performance is deficient if it is unreasonable under "prevailing professional norms."  *Id.*;

*Wiggins v. Smith*, 539 U.S. 510, 521 (2003).   The second part considers whether counsel's

inadequate representation was prejudicial.  *Strickland*, 466 U.S. at 687-88.

      1.      <u>Petitioners Have Made Out a *Prima Facie* Case of Deficient Performance</u>.

At the time of Petitioners' trial, the law was clear that *Batson* required trial counsel to

evaluate the Government's strikes and, if warranted, challenge them as discriminatory at the time

they occurred.  *Batson,* 476 U.S. at 99-100; *Allen v. Lee*, 366 F.3d 319, 327-328 (4th Cir. 2004).

In this case, trial counsel were aware how many women and how many African-American

women were on the panel of qualified jurors, should have seen that only one woman and no

African American women were seated among the 18 petit and alternate jurors empaneled, knew

how many of each class they struck, and should have deduced how many of each class the

Government struck.  Recognition of these basic facts would have caused reasonably competent

counsel to suspect that the Government exercised its strikes in a discriminatory manner.[2]  But

---

[2] The focus of the *Batson* line of cases is on discrimination in the selection of any single juror.  *Batson*, 476 U.S. at 99 n.22 ("The standard we adopt under the Federal Constitution is designed to ensure that a State does not use peremptory challenges to strike any black juror because of his race."); *Georgia v. McCollum*, 505 U.S. 42, 48 (1992) ("'While an individual juror does not have the right to sit on any particular jury, he or she does have the right not to be excluded from one on account of race") (quoting *Powers v. Ohio*, 499 U.S. 400, 409 (1991)) (internal alterations omitted); *United States v. Lane*, 866 F.3d 103, 105 (4th Cir. 1989) (noting that "striking only one black prospective juror for a discriminatory reason violates a black defendant's equal protection rights, even when other black jurors are seated and even when valid reasons are articulated for challenges to other black prospective jurors"); ECF No. 471 at 6-8 (citing cases).  The fact that the defense may have removed some members of a protected class is of no moment, because it has no bearing on the prosecutors' intent as to the individual jurors the prosecutors removed. *See, e.g.*, *Holloway v. Horn*, 355 F.3d 707, 729 (3d Cir. 2004) ("defense strikes are irrelevant to the determination of

trial counsel in this case raised no objection.[3] *See, e.g., Johnson v. California,* 545 U.S. 162, 170 (2005) (a *prima facie* case of a *Batson* violation is established if there is even a "suspicion" of discrimination).

Trial counsel have submitted sworn affidavits establishing that they failed to consider, and failed to assemble the information needed to make, the available *J.E.B.-Batson* challenge. ECF No. 406 (Lawlor declaration) and ECF No. 471-2 (O'Toole declaration). Negligently overlooking a meritorious objection is constitutionally deficient performance. *Drain v. Woods*, 902 F. Supp. 2d 1006, 1025 (2012) ("Counsel's passivity in light of an obvious pattern of strikes against minority prospective jurors fell below any objective standard of reasonableness and amounted to deficient performance."); *Davidson v. Gengler*, 852 F. Supp. 782 (W.D.Wis. 1994) (counsel deficient for failing to make a *Batson* objection because he was unaware of the case).

For all of the reasons set forth in their prior submissions, Petitioners easily have made a *prima facie* showing that, had trial counsel lodged *J.E.B.-Batson* objections, those objections would have been meritorious. ECF Nos. 454 and 471. The submissions present a host of evidence that is probative of *J.E.B.-Batson* violations, including: comprehensive statistical

---

whether the prosecutor has engaged in discrimination. . . While *Batson* permits a trial judge to focus at the prima facie stage on 'all relevant circumstances,' the nature of a defendant's strikes fails the test for relevancy. Instead, the focus properly falls on the prosecutor's actions."); *Harrison v. Ricks*, 150 F. App'x 95, 97 (2d Cir. 2005) ("The manner in which the defendant exercises his or her own peremptory challenges cannot reasonably be said to buttress—or undermine—an inference of discrimination by the prosecution."); *Bui v. Haley*, 321 F.3d 1304, 1317 & n.19 (11th Cir. 2003) (finding "that the defense struck one black person from the venire" wholly irrelevant to *Batson* claim because, "[a]s *Batson* instructs us to be equally protective of the equal protection rights of the potential jurors as we are of those of the defendant, the fact that Bui himself may have unclean hands can have no bearing on our determination of whether the State's use of its strikes to remove blacks from the jury passes constitutional muster"); *Richardson v. Hardy*, 855 F. Supp. 2d, 809, 844 (N.D. Ill. 2012) ("Respondent has made a point throughout these proceedings that of noting that Richardson's counsel used eighteen of their twenty peremptory challenges to strike white prospective jurors. That is not an appropriate factor to consider in assessing whether the prosecution discriminated against prospective jurors based on race.").

[3] Reasonably competent counsel also would have consulted with defense attorneys who handled previous capital cases with the same prosecutors, *e.g., United States v. Dustin Higgs*, PJM-98-0520, in which the seated jury consisted of twelve men and no women, and the alternate panel of six consisted of four men, two women and no African-American women. ECF No. 454 at 25-27; ECF No. 479-1 (supplemental report of Dr. John Lamberth). Had counsel done this rudimentary work, they would have been prepared to supplement the compelling evidence of unconstitutional discrimination in this case with evidence the Government had engaged in similar behavior before.

comparisons of the Government's striking behavior in this case and corresponding statistical analysis; detailed comparisons of the male jurors the Government accepted with the female jurors the Government struck; additional analysis showing that the reasons the Government has given for striking female jurors are unsupported by the record or apply with equal or even more force to male jurors the Government accepted; and statistical comparisons and analysis of the strikes the same prosecutors exercised in a prior capital case, *Higgs*.  *Id.* (citing cases); *see also Miller-El v. Dretke,* 545 U.S. 231 (2005) (discussing certain, non-exclusive categories of evidence that are probative of discrimination in jury selection).

Counsel's failure to object to a petit jury from which all African-American women and all but one woman were excluded, along with their affidavits admitting that there was no strategic basis for their failure, establishes a *prima facie* case of deficient performance and, therefore, a *prima facie* showing of cause to excuse any procedural default.

2.    Prejudice is presumed.

The Supreme Court has repeatedly found that structural errors affecting the framework within which a trial proceeds cannot be subjected to harmless error review.  *See, e.g., Neder v. United States*, 527 U.S. 1, 8-9 (1999) (certain errors, including deprivation of trial by an impartial adjudicator, require "automatic reversal" because they "infect the entire trial process and necessarily render a trial fundamentally unfair"); *Vasquez v. Hillery*, 474 U.S. 254, 261-263 (1986) (discrimination in selection of grand jury not subject to harmless error review despite verdict by unbiased petit jury).  Invidious discrimination in jury selection is one such structural error.  *See, e.g., Vasquez,* 474 U.S. at 261-63; *Batson*, 476 U.S. at 100 (requiring new trial if required showings made on remand); *Davis v. Sec'y for Dept. of Corrs.,* 341 F.3d 1310, 1316 (11th Cir. 2003) (discussing cases in which Supreme Court has "reversed convictions without

pausing to determine whether the improper exclusion of jurors made any difference to the trial's outcome."). The Supreme Court recently reiterated this rule in *Rivera v. Illinois*, 566 U.S. 148, 161 (2009). Distinguishing a lower court's erroneous ruling rejecting the defendant's peremptory challenge from *Batson* violations and other structural errors that strike at the heart of the defendant's right to an impartial adjudicator, the Court acknowledged that *Batson* is an "automatic reversal precedent" and that *Batson* violations are not subject to harmless error review. *Id.* at 161.

Prejudice likewise must be presumed where the ineffectiveness of counsel resulted in the failure to raise a claim of structural error, such as *Batson* error. As this Court has noted, "a structural error cannot be dismissed as harmless and therefore presumptively satisfies *Strickland's* prejudice requirement and requires scrutiny only under *Strickland's* reasonableness prong." *Higgs v. United States,* 711 F. Supp. 2d 479, 539 (D.Md. 2010) (quoting *Bell v. Jarvis,* 236 F.3d 149, 180 (4th Cir. 2000) (*en banc*). In *Bell*, the *en banc* decision the Court cited for this principle*,* the petitioner raised an ineffectiveness claim based on his appellate counsel's failure to allege a structural error, *i.e.,* the violation of his right to a public trial. *Id.* at 157. Holding that prejudice is presumed for an ineffectiveness claim based on the failure to object to a structural error, *id.* at 165, the Fourth Circuit confined its *Strickland* analysis to the question of deficient performance. The *en banc* court's finding that prejudice is presumed when an ineffectiveness claim relates to a structural error was unanimous*. Id.* at 180 ("the majority properly recognizes, when, as here, the deficient performance constitutes structural error, the prejudice component of the *Strickland* analysis may be presumed") (Motz, Michael and Butzner, JJ., dissenting) (quotations and citations omitted). *See also Owens v. United States,* 483 F.3d 48, 64 (1st Cir. 2007) ("defendant who is seeking to excuse a procedurally defaulted claim of

structural error need not establish actual prejudice"); *Bloomer v. United States,* 162 F.3d 187, 194 (2d Cir. 1998) (prejudice presumed when counsel failed to object to a defective jury instruction that amounts to a structural error); *Johnson v. Sherry,* 586 F.3d 439, 447 (6th Cir. 2009) (where counsel fails to object to violation of right to public trial, prejudice is presumed if right was in fact violated); *Winston v. Boatwright,* 649 F.3d 618, 632 (7th Cir. 2011) (the Supreme Court's decision in *Rivera v. Illinois* confirmed that when counsel fails to object to a *Batson* violation, prejudice is presumed); *Styers v. Shiro,* 547 F.3d 1026, 1030 n.5 (9th Cir. 2008) (prejudice presumed when ineffectiveness "directly implicates the impartiality of the jury itself").

Having made a *prima facie* showing that their trial counsel were ineffective for failing to raise and preserve claims that the Government discriminated against prospective jurors based on gender and a combination of gender and race, Petitioners necessarily have established prejudice resulting from counsel's deficient performance.

*               *               *

Petitioners have made a *prima facie* showing that trial counsel were ineffective in their failure to act in the face of a red flag regarding the Government's use of its peremptory strikes to remove women in general, and African-American women in particular, from their jury. Trial counsel have admitted that their failure resulted from plain oversight, not from any strategy. The facts Petitioners have presented in their earlier submissions convincingly show discrimination on the basis of gender and a combination of gender and race. And the prejudice resulting from such discrimination is presumed. Having thus made a *prima facie* showing of cause and prejudice, Petitioners have demonstrated "good cause" for discovery on their *J.E.B.-Batson* claims.

8

**B.      Petitioners' Claims that the Government Discriminated Against Certain Prospective Jurors Based on Their Religion and on Reasons that Are Proxies for Race Are Not Procedurally Defaulted.**

The procedural default rule generally provides that an available claim not raised at trial or on direct appeal may not be raised on collateral review absent a showing of cause and prejudice. *See Bousley*, 523 U.S. at 622. A claim is not defaulted, however, where the evidence supporting it was previously unavailable. *See, e.g., id.* at 621-22; *Waley v. Johnston*, 316 U.S. 101, 104 (1942) (an issue is appropriately raised on habeas when "[t]he facts relied on are dehors the record and their effect on the judgment was not open to consideration and review on appeal"); *United States v. Fell*, Case No. 2:01-cr-12, 2013 WL 1953322, at *2 (D.Vt. May 10, 2013) ("Like ineffective assistance of counsel claims, however, juror misconduct claims may be poorly suited to resolution on direct appeal. Evidence of juror misconduct may not appear in the trial record. . . .  Accordingly, where, as here, the trial record did not disclose grounds for raising the jury issues on appeal, and the jury claims could not be presented without further factual development, the procedural default rule will not apply to bar the claims."); *Ray v. United States*, Nos. 07-C-1072, 04-CR-71, 2010 WL 3120033 at *4 (E.D.Wis. Aug. 5, 2010) (*Brady* claim not defaulted, even though known on direct appeal, because "[d]irect appeals [sic] are generally limited to the material in the record … and the Seventh Circuit has held that because *Brady* claims typically require additional factual development, it can be appropriate to reserve them for a § 2255 action") (citations omitted); *Gholikhan v. United States*, Case Nos. 08-60751-CIV, 05-60238-CR-CR, 2008 WL 2627715, at *2 (S.D. Fla. July 3, 2008) ("[A]n exception [to the procedural default rule] exists for those cases where the record is deficient in some way, and thus, the claim is not open to consideration and review on appeal.").

In addition to the *J.E.B.-Batson* claims they have advanced from the beginning, Petitioners have raised separate claims that the Government discriminated against certain prospective jurors based on their religion and against other prospective jurors based on reasons that are proxies for race. ECF No. 471 at 32-36; ECF No. 478. These new claims arise from the declaration the Government submitted in support of its opposition to Petitioners' motion for discovery. ECF No. 466-1; *see also* ECF No. 478 at ¶ 2. The contents of the declaration, which for the first time advanced the purported reasons for the Government's strikes, were not available at the time of trial or direct appeal. Indeed, because defense counsel could not have discerned from what was occurring before them in open court that the Government was striking certain jurors on the basis of religion and others for reasons that are proxies for race, the evidence was not available until the Government filed its opposition. Accordingly, Petitioners' claims of religious and racial discrimination against certain prospective jurors are not procedurally defaulted. For the reasons furnished in Petitioners' prior briefing, ECF No. 471 at 32-36, discovery on these claims is warranted.

## II.    CASE LAW WARRANTS DISCOVERY OF THE INFORMATION PETITIONERS SEEK.

Petitioners have requested (i) the Government's notes regarding jury selection and documents the Government obtained about any venire-person in aid of selection; (ii) the Government's jury selection notes and materials from *United States v. Dustin John Higgs*, No. 98-cr-0520-PJM (D. Md.); (iii) juror strike lists and other juror materials retained by the jury clerk in *Higgs* and *United States v. Willis Mark Haynes*, No. 98-cr-0520-PJM (D. Md.) (iv) juror questionnaires from *Higgs* (retained by the jury clerk); and (v) the strike lists from the *Taylor, Argueta, Dinkins,* and *Byers* cases (retained by the jury clerk). Petitioners are no longer seeking

the previously requested depositions or interrogatories because the Government has now proffered the purported reasons for its strikes.

There is ample precedent supporting post-conviction discovery of the jury selection materials Petitioners seek.  Courts have recognized that evidence outside the trial record is not only appropriate, but necessary to determine whether a prosecutor's peremptory strikes were motivated by discriminatory intent, notwithstanding any facially race-neutral reasons the prosecutor has offered.  To ensure that the record of the prosecutor's intent is as complete as possible, courts have authorized discovery on post-conviction *Batson* and *Batson*-based ineffectiveness claims that are based on less evidence of discrimination than is alleged here, that necessarily reaches beyond the record-based facts of jury selection, and that is frequently broader in scope than what Petitioners have requested.  These rulings are consistent with the Supreme Court's directive that *Batson* violations may be proven by a "wide variety of evidence." *Johnson*, 545 U.S. at 169 ("[W]e held [in *Batson*] that a *prima facie* case of discrimination can be made out by offering a wide variety of evidence, so long as the sum of the proffered facts gives rise to an inference of discriminatory purpose.").

In *Kandies v. Polk*, 2006 U.S. Dist. LEXIS 75625 at *11, 13 (M.D. N.C. Oct. 2, 2006), a North Carolina district court granted broad discovery to a petitioner alleging a *Batson* violation in a post-conviction proceeding.  Though the Fourth Circuit had affirmed the district court's denial of the petitioner's *Batson* claim, the Supreme Court granted *certiorari*, vacated the Fourth Circuit's judgment and remanded the case for "further consideration in light of *Miller-El v. Dretke*, 545 U.S. 231 (2005)." *Id.* (internal citations omitted).  In *Miller-El,* the Court reversed the Fifth Circuit's affirmance of a district court's denial of *Batson* relief by looking past the prosecutor's "facially neutral" reasons for exercising peremptory challenges, *id.* at 240, and

11

considering, *inter alia,* "side-by-side comparisons of some black venire panelists who were struck and white panelists allowed to serve," *id.* at 241, the prosecutor's office's alleged history of discrimination in the exercise of peremptory strikes, *id.* at 253, and "the prosecutors' own notes." *Id.* at 266.

On remand, the district court in *Kandies* found that *Miller-El* required it to be "more critical of proffered race-neutral explanations." *Kandies,* 2006 U.S. Dist. LEXIS at *4 (a district court must look beyond prosecutor's reasons that are "facially neutral," and consider factors like "comparative analyses of questions asked to and answers given by white potential jurors and black potential jurors" and "*Swain*-type" evidence "such as a history of a formal practice of systematically excluding blacks from juries"). Accordingly, nearly 12 years after the petitioner's trial, the court ordered expansive discovery that included:  documentation of the prosecutors' record checks of jurors, as well as prosecutors' notes of those record checks, to determine if the checks were done selectively based on race, *id.* at *13; and jury selection records from previous cases involving one of the prosecutors and defense counsel to assess defense counsel's claim that the prosecutor had a pattern of excluding African-American jurors in his cases.  *Id.* at *15.  In addition, the district court subsequently granted the petitioner leave to take depositions of the two trial prosecutors, a detective involved in the *voir dire* and trial counsel.  *Kandies*, 2011 U.S. Dist. LEXIS 37615 at *11, 31; *Kandies,* No. 1:99-cv-764, Minute Entry, 12/20/2007.

Petitioners' evidence is more compelling than the evidence presented in support of discovery in *Kandies*.  There, the petitioner alleged that the state engaged in discriminatory jury selection when its strike rate of African-Americans was 60% (*i.e.*, the prosecutors used 9 of 15 peremptory challenges to strike African-Americans), and its exclusion rate for African-Americans was 75% (*i.e.*, the prosecutors struck 9 of the 12 African-Americans they could have

accepted).[4] *Kandies v. Lee*, 252 F. Supp. 2d 252, 271-72. (M.D.N.C. 2000). In this case, the Government's strike rate of women was 82% (18 of 22), its exclusion rate of women was 78% (18 of 23), and its exclusion rate of African-American women was 82% (9 of 11). Further, whereas African-Americans represented only 5.6% of the population from which the *Kandies* venire was drawn, which the *Kandies* magistrate judge found "substantially dilute[d] any inference that can be drawn from the statistics," *Kandies*, 2011 U.S. Dist. LEXIS 37615 at *24, women in this case represented 47% of the qualified juror pool, yet only one of the 30 women (3%) in the pool sat on the jury. Therefore, the resulting jury composition in Petitioners' case was far more statistically unlikely (one woman on the petit jury) than the jury composition in *Kandies* (two African Americans on the petit jury).[5] Additionally, as in *Kandies*, Petitioners have alleged prior discrimination in jury selection (from *Higgs*). Finally, beyond what the petitioner in *Kandies* showed to justify discovery, Petitioners have presented detailed analyses showing that the reasons the Government offered for striking certain female jurors were either unsupported by the record or applied equally, or even more, to the male jurors the Government accepted.

For these reasons, the district court's observation in *Kandies* that petitioner's preliminary evidence required it to be "more critical of proffered race-neutral explanations" obtains in this case. *Kandies,* 2006 U.S. Dist. LEXIS at *4. Indeed, given the declaration the Government submitted in support of its opposition to Petitioners' discovery motion, the district court's observation carries special force here. The Government has unilaterally expanded the record by proffering the reasons for its strikes while, at the same time, resisting Petitioners' efforts to

---

[4] As noted in prior pleadings, the "strike rate" is the ratio of class members struck to the total number of strikes used; the "exclusion rate" is the ratio of class members struck to the total number of class members whom the prosecutor could have struck.

[5] *Kandies v. Polk,* 385 F.3d 387, 463 (4th Cir. 2004), *cert. granted, vacated and remanded by* 545 U.S. 1137 (2005).

13

expand the record to scrutinize those reasons.  Fairness dictates that expanding the record to discern the prosecutors' intent cannot be a one-way street.   If the Court is going to consider the reasons the Government has given for its strikes, as the Government asks and as steps 2 and 3 of the *Batson* inquiry require, then the Court should permit discovery designed to determine as conclusively as possible the validity of those reasons.

In *Simmons v. Simpson*, 2009 U.S. Dist. LEXIS 122388 at *70-71 (W.D. Ky. Feb. 11, 2009), the petitioner presented statistical evidence that African-Americans were disproportionately excluded from the jury at his capital murder trial, which took place 24 years before. The prosecutors used 71% of their peremptory challenges to remove five of the seven African Americans from the venire.  *Id.* at *24.  One African American juror sat on the petit jury. *Id.*  The petitioner's allegations also involved assertions, *inter alia,* that the prosecutors in his case engaged in racially discriminatory jury selection in two prior cases, and that a prosecutor's handbook instructed prosecutors how to remove members of defendants' race or nationality from the jury.[6]  *Id*. at 70-71.   The state, much like the government here, opposed discovery on the basis that it amounted to "a fishing expedition."  *Id*. at 6.  In *Simmons,* unlike here, the petitioner had the benefit of a "full evidentiary hearing [on the *Batson* issue] in state court." *Id.* Nevertheless, after finding that the petitioner's *prima facie* case satisfied the good cause standard of Rule 6, the district court ordered extensive discovery, including depositions of the prosecutors as to the existence of any notes and documents relating to jury selection, depositions of the prosecutors as to their involvement in other prosecutions over a five-year period, depositions of other attorneys in the prosecutor's office regarding jury selection practices and policies within the office, and all notes and documentation containing jury selection policies and practices of the

---

[6] Although there is no evidence of such a handbook in the instant case, this was far from the most critical factor justifying the discovery order.  The Court made clear that the statistical evidence was "significant" in proving the petitioner's *prima facie* case. *Id*. at *70-71.

prosecutor's office between the time the prosecutors were hired and the conclusion of the petitioner's trial. *Id*. at *68-73.  Notably, the court stated that its discovery order was "illustrative rather than exclusionary in nature" and that the petitioner could "reasonably inquire on any related subject matter to the topics identified above which is relevant to his *Batson* challenge." *Id*. at *73.  The court found support for its order in *Miller-El v. Cockrell*, 537 U.S. 322, 346-47 (2003), observing that the decision directs courts to take a "broad-based approach" when considering *Batson* claims and provides "[t]he best example of the willingness of the Supreme Court to consider circumstances beyond what occurred in the courtroom during jury selection." *Id*. at *68-69.

Petitioners' statistical evidence is stronger than even the "significant statistical evidence," *id.* at *70, presented in *Simmons*.  The Government's exclusion rate for women was 78% (18 of 23), and 82% (9 of 11) for African-American women, while the *Simmons* prosecutors' exclusion rate for African-Americans was 71% (5 of 7). Additionally, the Government's strikes in this case resulted in a jury composition that was far more statistically unlikely (one woman on the petit jury from a panel that included 30 women) than the resulting jury composition in *Simmons* (one African-American on the petit jury from a panel that included seven African-Americans).  Like the petitioner in *Simmons*, Petitioners also have alleged that the prosecutors in his case discriminated in jury selection in another case.  And again, in this case, using comparative juror analysis, Petitioners have presented voluminous evidence that the reasons the Government has offered for striking women are pretextual.

In *Johnson v. Finn*, 2007 U.S. Dist. LEXIS 101185 at *8-11 (E.D. Cal. Oct. 30, 2007), the district court granted *Batson* discovery after the petitioners demonstrated that the trial prosecutor struck all of the African-American jurors from the venire.  The court ordered the

15

prosecutor to produce all of the notes he generated during jury selection, as well as notes from jury selection in other prosecutions over a five-year span. *Id*. at \*12-13.  The court stressed "the importance of discovering the *actual* reasons the prosecutor exercised the peremptory challenges at trial."  *Id*. at \*8 (citing *Johnson*, 545 U.S. at 172 and *Paulino v. Castro*, 371 F.3d 1083, 1090 (9th Cir. 2004)) (emphasis added).  The court recognized that, "[d]ue to the passage of time and the fading of recollection, as well as the difficulty inherent in ferreting out charges of discrimination," the prosecutor's notes "may be the most direct evidence available to demonstrate the prosecutor's actual reasons for exercising peremptory challenges." *Id*. at 9.  Thus, the passage of time heightens, rather than diminishes, the need for broad-based discovery designed to ensure a reliable fact-finding process.  Short of statements in the trial transcript itself, the prosecutor's contemporaneous notes are the most accurate indicator of what informed the prosecutor's peremptory challenges.  Unlike post-hoc explanations, they remain unaffected by the passage of time.  *See, e.g., Marshall v. Beard*, 2004 U.S. Dist. LEXIS 17507 at \*15 (E.D. Pa. Aug. 26, 2004) (granting discovery of the prosecution's notes from a trial 20 years prior in order "to inquire further into the intent of the prosecutor").

In *Marshall v. Beard,* as here, the *Batson* and *J.E.B.* claims asserted in habeas were not raised at trial or on direct appeal. *Marshall*, 2004 U.S. Dist. LEXIS 17507 at \*10.[7]  The petitioner alleged "that the proportions of African-American and female venire-persons who were stricken reflect[ed] intentional discrimination on the part of the prosecutor" at both the 1984 trial and 1990 penalty retrial. *Id*. at \*15.  The petitioner requested, *inter alia,* discovery of the prosecutors' notes and documents relating to jury selection in his case. *Id*. at \*9-10.  Despite

---

[7] The *Marshall* Court entertained the *Batson/J.E.B.* claim because it found that the state procedural rule the Pennsylvania Supreme Court relied on to bar consideration of the claim in post-conviction had not been consistently applied in capital cases in Pennsylvania. *Marshall,* 2004 U.S. Dist. LEXIS at \*11.  There was no question, however, that the claim, like Petitioners' claims, had never been raised at trial or on appeal.

the passage of twenty years, the district court granted the requested discovery, explaining that "[w]hile proportions alone are not sufficient to prove discrimination, they do support a limited request to inquire further into the intent of the prosecutor." *Id*. at *15. The statistical evidence demonstrated that, at the 1984 trial, the prosecutor's exclusion rate for African-Americans was 54% (7 of 13), but only 29% for white venire-persons (7 of 24). *Id.* at *14. The prosecutor's exclusion rate for women was 50% (11 of 22), but only 17% (3 of 18) for men. *Id.* At the petitioner's 1990 penalty retrial, the prosecutor's exclusion rate for whites and African-Americans was nearly identical to the rates in the 1984 trial. *Id.*

As with all of the other cases cited here, the statistical evidence in *Marshall* was less compelling than the evidence Petitioners have presented. In this case, the Government's exclusion rate for women, 78%, was significantly higher than the 50% exclusion rate in *Marshall.* Moreover, in *Marshall,* exclusion rates for white and black jurors (54% to 29%) were far less disparate than the exclusion rates for men and women here (78% to 17%). And the 82% exclusion rate for African-American women in Petitioners' case (9 of 11) exceeded the exclusion rate of any class in *Marshall*. Additionally, unlike in *Marshall*, Petitioners have presented specific factual allegations concerning the jury selection in a case other than their own, as well as evidence showing that the reasons the Government has given for its strikes are pretextual.

In *In re Beard,* 383 F. App'x. 136, 137-38 (3d Cir. 2010), the district court granted the petitioner discovery on his ineffective assistance claim based on trial counsel's failure to raise a *Batson* objection at trial, and the Commonwealth sought mandamus. *Id.* The Third Circuit denied the Commonwealth's challenge and upheld the district court's discovery order, which compelled the Commonwealth to disclose, *inter alia,* the prosecutor's notes on jury selection in the petitioner's case and other cases, as well as materials from the prosecutor's office on jury

17

selection training, policies and practices. *Id.;Uderra v. Beard*, No. 05-cv-1094 (E.D. Pa., Oct. 1, 2007), Motion for Discovery at 15, ECF No.50; *id*., Discovery Order, ECF No. 57.

The statistical evidence of discrimination in this case is comparable to that in *Beard* in that the petitioner in *Beard* argued that the prosecution struck "75 or 80%" of the Latinos from his venire, leaving only one Latino on the venire and no Latinos on the seated jury. Petitioner's Memorandum of Law at 56-57, *Uderra v. Beard*, No. 05-cv-1094 (E.D. Pa., Feb 21, 2006), ECF No. 17. In addition, whereas in *Beard* the petitioner argued that certain non-statistical evidence established a pattern of race-based discrimination as to the prosecutor's office generally, *id*. at 58, Petitioners here have presented evidence that the prosecutors *in their case* engaged in gender- and race-based discrimination in jury selection in another case (*Higgs*), as well as evidence that the reasons the Government has supplied for striking female jurors are pretextual. Thus, *Beard*, too, establishes that discovery is appropriate here. In fact, the broad discovery ordered in *Beard* supports the rule that a petitioner's effort in habeas proceedings to establish ineffective assistance for failing to raise a *Batson* claim warrants the same factual inquiries as a non-defaulted *Batson* claim. *See also Williams v. Hall*, 648 F. Supp. 2d 1222, 1226-27 (D. Or. 2009) (finding discovery, in the form of juror interviews, to be "'essential' to the development of petitioner's claim [of ineffective assistance for failing to raise a *Batson* objection]," where prosecutor struck two African American jurors at trial 17 years before). Petitioners should be afforded the same opportunity for fact development that the district court afforded the petitioner in *Beard*.

A guiding principle in all of these cases is that, in assessing a request for habeas discovery of information bearing on the prosecutor's state of mind, federal courts must be mindful that evidence outside the trial record is critical to their determination. *Johnson,* 2007

U.S. Dist. LEXIS at *9-10. "This is particularly true given the context of a *Batson* challenge." *Id.* The concern is only heightened where a petitioner seeks to establish ineffective assistance curing any failure to raise a *Batson* claim, because no other court will have ever considered that underlying claim. *See Marshall*, 2004 U.S. Dist. LEXIS 17507 at *15 (noting that petitioner's discovery requests as to his *Batson* and *J.E.*B. claims deserve special consideration because "[t]his is a capital case and, unlike Petitioner's other claims, the state courts have never reached the merits of this claim."). *Cf. Martinez v. Ryan,* 132 S. Ct. 1309, 1316 (2012); *Trevino v. Thaler,* 133 S. Ct. 1911, 1918 (2013) (emphasizing the imperative of at least one opportunity for meaningful review of a petitioner's ineffective assistance of counsel claim).

Petitioners' discovery request is certainly in line with the above cases. The evidence Petitioners have presented surpasses the evidence of discrimination in all of these cases, and their request is considerably more measured than the requests made (and granted) in several of them.

## CONCLUSION

For the foregoing reasons, as well as the reasons set forth in their prior submissions, ECF Nos. 454 and 471, Petitioners have demonstrated good cause for discovery on their jury discrimination claims, the procedural default doctrine does not undermine their showing of good cause, and the discovery they have requested is similar to discovery that other courts have ordered in similar (even less compelling) circumstances.

Dated:  November 22, 2013

Respectfully submitted,

/s/ Julie Brain
Julie Brain
JulieBrain1@yahoo.com
Attorney at Law
127 Church Street
2nd Floor
Philadelphia, Pennsylvania  19106
(267) 639 0417

/s/ Karl Schwartz
Karl Schwartz
Karl_schwartz@fd.org
Jennifer Merrigan
Jenny.merrigan@fd.org
Capital Habeas Unit
Delaware Federal Defender Office
800 King Street
Suite 200
Wilmington, Delaware  19801
302-573-6010

/s/ Seth Rosenthal
Seth A. Rosenthal (D. Md. Bar No. 10780)
sarosenthal@venable.com
Molly T. Cusson (D. Md. Bar No. 18390)
mtcusson@venable.com
VENABLE LLP
575 7th Street, N.W.
Washington, D.C.  20004-1601
202-344-4000

*Counsel for Kenneth Jamal Lighty*

20

**CERTIFICATE OF SERVICE**

I hereby certify that on the 22nd day of November, 2013, I caused the foregoing to be filed via the Court's ECF system, a copy of which was mailed by U.S. mail, first class, postage pre-paid, to the following:

James Crowell, Esquire
Deborah A. Johnston, Esquire
Sandra Wilkinson, Esquire
Assistant United States Attorney
Office of the United States Attorney
400 United States Courthouse
6500 Cherrywood Lane
Greenbelt, Maryland  20770-1249

_____/s/_____
Seth Rosenthal