IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)


| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 03-cr-00457-PJM |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| | ) | |
| KENNETH JAMAL LIGHTY, | ) | |
| | ) | |
| Defendant. | | |

**PETITIONER'S MOTION TO SUPPLEMENT
AMENDED MOTION FOR RELIEF UNDER 28 U.S.C. § 2255**

Pursuant to Fed. R. Civ. P. 15(d), Kenneth Jamal Lighty respectfully moves to supplement his Amended Motion for relief under 28 U.S.C. § 2255 (ECF No. 451), based on the rulings of the Supreme Court in *Johnson v. United States*, 135 S. Ct. 2551 (2015) and *Welch v. United States*, 136 U.S. 1257 (2016).  As set forth below, those rulings render invalid Mr. Lighty's convictions for possession or use of a firearm during a crime of violence under 18 U.S.C. § 924(c) (Counts 3, 4 and 5 in the indictment).  Accordingly, his convictions on those counts must be vacated. Moreover, because the sentence of death imposed on Mr. Lighty under 18 U.S.C. § 1201(a)(1) (Count 1 of the indictment) was informed by those invalid Section 924(c) convictions, the sentence of death also must be vacated and a new sentencing proceeding must be held.

Mr. Lighty respectfully submits the following Supplement, to follow Claim IX of his Amended Motion (ECF No. 451).

*    *    *    *    *

X.    UNDER THE FIFTH AND EIGHTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND THE SUPREME COURT'S RECENT DECISIONS IN *JOHNSON V. UNITED STATES* AND *WELCH V. UNITED STATES*, MR. LIGHTY'S THREE CONVICTIONS UNDER 18 U.S.C. § 924(c) MUST BE VACATED, AS MUST HIS SENTENCE OF DEATH FOR HIS CONVICTION UNDER 18 U.S.C. § 1201(a)(1).

Mr. Lighty's three convictions for possession or use of a firearm during and in relation to a crime of violence were obtained in violation of his Fifth Amendment right to due process because the statute under which Mr. Lighty was convicted, 18 U.S.C. § 924(c)(1)(A), is impermissibly vague. Correspondingly, Mr. Lighty's death sentence was obtained in violation of his Fifth and Eighth Amendment rights to due process, a fair trial, and to be free from cruel and unusual punishment, because the jury's decision to recommend imposition of a sentence of death was informed at least in part by the invalid 924(c)(1)(A) convictions.

In support of this claim, Mr. Lighty alleges the following:

INTRODUCTION

1.    On October 25, 2005, Mr. Lighty was convicted of kidnapping resulting in death in violation of 18 U.S.C. § 1201(a)(1) (Count 1), conspiracy to violate 18 U.S.C. § 1201(a)(1) in violation of 18 U.S.C. § 1201(c) (Count 2), and three counts of possession and/or use of a firearm during and in relation to a "crime of violence" in violation of 18 U.S.C. § 924(c)(1)(A) (Counts 3, 4, 5).

2

2.    Section 924(c) prohibits, *inter alia*, the use, carrying or possession of a firearm during and in relation to any "crime of violence."  The term "crime of violence" is defined as "an offense that is a felony and (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."  18 U.S.C. § 924(c)(3).  These alternative definitions of "crime of violence" are known, respectively, as the "force" clause, § 924(c)(3)(A), and the residual clause, § 924(c)(3)(B).

3.    At the conclusion of the guilt phase of Mr. Lighty's trial, the Court instructed the jury regarding the Section 924(c) offenses as follows:  "The first element the government must prove beyond a reasonable doubt is that each defendant committed a crime of violence for which he might be prosecuted in a court of the United States.  Defendants are charged in Count One with kidnapping and in Count Two with conspiracy to commit kidnapping.  I instruct you that these are crimes of violence." Guilt Phase Jury Instructions at 47. The Court thus instructed the jury that kidnapping automatically qualified as a crime of violence for Section 924(c) purposes.

4.    On June 26, 2015, the Supreme Court decided *Johnson v. United States*, 135 S. Ct. 2551 (2015), in which it invalidated the residual clause of the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(2)(B)(ii), as void for vagueness under the Due Process Clause. The Court concluded that "the

indeterminacy of the wide-ranging inquiry required by the residual clause both denies fair notice and invites arbitrary enforcement by judges," and that "[i]ncreasing a defendant's sentence under the clause denies due process of law." *Id.* at 2257. Finding the residual clause "vague in all its applications[,]" the Court overruled its contrary decisions in *Sykes v. United States*, 131 S. Ct. 2267 (2011) and *James v. United* States, 550 U.S. 192 (2007). 135 S. Ct. at 2562-63.

5. In *Welch v. United States*, 136 U.S. 1257 (2016), the Supreme Court held that *Johnson* announced a new substantive rule that has retroactive effect in cases on collateral review.

6. Section 924(c)'s residual clause is materially indistinguishable from the ACCA residual clause that the Supreme Court struck down in *Johnson* as unconstitutionally vague. Therefore, like the ACCA residual clause conviction in *Johnson,* Mr. Lighty's Section 924(c) convictions, if based on the residual clause, are unconstitutional.

7. Mr. Lighty could not have been convicted of any Section 924(c) violation under Section 924's other clause, the force clause, because kidnapping under 18 U.S.C. § 1201, and thus by extension the offense of conspiracy to commit kidnapping, fails to qualify categorically as a felony that "has an element the use, attempted use, or threatened use of physical force against the person or property of another." Mr. Lighty's three convictions under Section 924(c) are therefore void.

8. The Supreme Court has held in both the capital and non-capital context that a defendant whose sentence may have been informed by convictions

later deemed invalid is constitutionally entitled to resentencing. *Johnson v. Mississippi*, 486 U.S. 578 (1988); *United States v. Tucker*, 404 U.S. 443, 449 (1972). Mr. Lighty's death sentence was informed by the jury's consideration of his three invalid Section 924(c) convictions. Therefore, under the Fifth and Eighth Amendments to the Constitution, Mr. Lighty's death sentence must be vacated, and he must be resentenced.

9.     Mr. Lighty's *Johnson* claim is timely under 28 U.S.C. § 2255(f)(3) because he filed it within one year of the Supreme Court's decision in *Johnson*, a ruling which established a "newly recognized" right that is "retroactively applicable to cases on collateral review." *Welch,* 136 S. Ct. at 1265.

10.     Mr. Lighty's Section 924(c) convictions and the death sentence imposed for his Section 1201 conviction should be vacated.

## ARGUMENT

I.     **In light of *Johnson*, Mr. Lighty's convictions under 18 U.S.C. § 924(c) cannot be sustained because kidnapping fails to qualify as a "crime of violence" under either Section 924(c)'s force clause or its residual clause.**

     A.     **Kidnapping cannot qualify as a "crime of violence" under Section 924(c)'s residual clause because, under *Johnson*, that clause is unconstitutionally vague.**

11.     The ACCA's residual clause defines a "violent felony" as an offense that "otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii).

12.     In assessing in *Johnson* whether the ACCA's residual clause was unconstitutionally vague, the Supreme Court "began its analysis … by noting that

the residual clause mandates the use of a two-step framework, to determine whether a crime is a violent felony." *United States v. Vivas-Ceja*, 808 F.3d 719, 721 (7th Cir. 2015) (citing *Johnson*, 135 S. Ct. at 2557, 2562). "In the first step, the [trial] court must determine 'the kind of conduct that the crime involves in the ordinary case' as opposed to the facts on the ground in the defendant's prior case." *Id.* (quoting *Johnson*, 135 S. Ct. at 2557). The second step is also dependent on the ordinary case. Specifically, the "court must gauge whether that ordinary case of the crime presents a serious potential risk of physical injury." *Id.* at 722.

13.     The Supreme Court held that these "two features of the residual clause conspire to make it unconstitutionally vague." *Johnson*, 135 S. Ct. at 2557. To begin with, the Court held that it is impossible for a sentencing court to get past the first step because there is too much uncertainty about what constitutes the ordinary case of a crime. *Id.* The Court concluded that the "the residual clause offers no reliable way to choose between [] competing accounts of what 'ordinary' . . . involves." *Id.* at 2558. The Court explained that a statistical analysis of reported cases, expert evidence, Google, and gut instinct are all equally unreliable in determining the "ordinary case." *Id.* at 2557 (quoting *United States v. Mayer*, 560 F.3d 948, 952 (9th Cir. 2009) (Kozinski, C.J., dissenting from denial of rehearing en banc)).

14.     The Court next held that the second step of the residual clause analysis is equally vague because there is too much "'uncertainty about how much risk it takes' [i.e., the quantum of risk] before a court can conclude that the 'ordinary case' of a crime is serious enough to be a violent felony." *Vivas-Ceja*, 808

F.3d at 722 (citing *Johnson*, 135 S. Ct. at 2558).  To be clear, the Court's reasoning on the second step turned not on the type of risk presented by the crime, *i.e.*, "serious potential risk of physical injury," but rather, like the first step, on the doomed "ordinary case" inquiry: "It is one thing to apply an imprecise 'serious potential risk' standard to real-word facts; it is quite another to apply it to a judge-imagined [ordinary case] abstraction." *Johnson*, 135 S. Ct. at 2558.

15.     The Court explained that it was not doubting the constitutionality of any statute that "require[s] gauging the riskiness of conduct in which an individual defendant engages on a particular occasion." *Id* at 2561.  However, because the quantum of risk under the ACCA's residual clause had to be assessed based on the ordinary case, the clause was constitutionally invalid, because the indeterminacy, unpredictability, and arbitrariness inherent in the "ordinary case" analysis are more than the "Due Process Clause tolerates." *Id.* at 2558.

16.     The effect of *Johnson* is not only to invalidate the ACCA's residual clause, but also to invalidate any similar provision that requires the "ordinary case" analysis that the ACCA residual clause required. In other words, the Supreme Court found that any "crime of violence" residual clause that is dependent upon "the ordinary case" of a crime is impossible to apply in a constitutional manner.

17.     The residual clause of Section 924(c) is essentially the same as the ACCA's residual clause.[1]  *See United States v. Ayala*, 601 F.3d 256, 267 (4th Cir.

---

[1] Courts regularly compare the residual clause in the ACCA to the clause at issue here. Although the comparison tends to be between the residual clause in the ACCA and the residual clause in 18 U.S.C. § 16, the residual clause in Section 16 is

2010) (relying on an ACCA case to interpret the definition of a crime of violence under § 924(c)(3)(B)). Section 924(c)'s residual clause provides that a "crime of violence" includes "a felony … that by its nature involves a substantial risk that physical force against the person or property of another may be used in the course of committing a crime."  18 U.S.C. § 924(c)(3)(B).

18.    Section 924(c) requires a trial court to engage in the exact same, two-step "ordinary case" evaluation process that the Supreme Court invalidated in *Johnson*.  Both the ACCA's residual clause and Section 924(c)'s residual clause require courts first to picture the "ordinary case" embodied by a felony,[2] and then decide if it qualifies as a crime of violence by assessing the quantum of risk posed by the "ordinary case."

---

identical to Section 924(c)(3)(B).  *See, e.g.*, *Chambers v. United States*, 555 U.S. 122, 133, n.2 (2009) (citing circuit splits on § 16(b) in the context of a residual clause case because § 16(b) "closely resembles ACCA's residual clause") (Alito, J., concurring); *United States v. Aragon*, 983 F.2d 1306, 1314 (4th Cir. 1993) (same); *United States v. Keelan*, 786 F.3d 865, 871 n.7 (11th Cir. 2015) (describing the ACCA's residual clause and § 16(b) as "analogous"); *Roberts v. Holder*, 745 F.3d 928, 930-31 (8th Cir. 2014) (using both ACCA cases and § 16(b) cases to define the same "ordinary case" analysis); *United States v. Sanchez-Espinal*, 762 F.3d 425, 432 (5th Cir. 2014) (despite the fact that the ACCA talks of risk of injury and § 16(b) talks of risk of force, "we have previously looked to the ACCA in deciding whether offenses are crimes of violence under § 16(b)").

[2] Both the ACCA and § 924(c)(3)(B) require courts to discern the ordinary case of a crime by using what is known as "the categorical approach." *See, e.g., United States v. Fuertes*, 805 F.3d 485,498 (4th Cir. 2015); *United States v. Butler*, 496 Fed. Appx. 158, 161 n.4 (3d Cir. 2012); *Evans v. Zych*, 644 F.3d 447, 453 (6th Cir. 2011); *United States v. Serafin*, 562 F.3d 1104, 1108 (10th Cir. 2009); *United States v. Green*, 521 F.3d 929, 932 (8th Cir. 2008); *United States v. Acosta*, 470 F.3d 132, 134 (2d Cir. 2006); *United States v. Amparo*, 68 F.3d 1222, 1225 (9th Cir. 1995). Courts may not consider the factual means of committing any given offense, but must consider the nature of the offense in the "ordinary case."

19.     This was the analysis employed by the Fourth Circuit in *United States v. Fuertes*, 805 F.3d 485, 498, 500 n.6 (4th Cir. 2015), and *United States v. Naughton*, 621 Fed. Appx. 170, 178 (4th Cir. Sept. 2, 2015), in applying the "ordinary case" inquiry to § 924(c)'s residual clause. *See also United States v. Avila*, 770 F.3d 1100, 1107 (4th Cir. 2014) (in construing 18 U.S.C. §16(b), a statute that uses language identical to Section 924(c)'s, the Court held that "the conduct encompassed by the elements of the offense, *in the ordinary case*, [must present] a substantial risk that physical force . . . may be used") (emphasis added).[3]

20.     18 U.S.C. § 924(e)(2)(B)(ii) and 18 U.S.C. § 924(c)(3)(B) are not identical. The risk at issue in the ACCA's residual clause is a risk of injury, and the risk at issue in Section 924(c) is a risk that force will be used. But this difference has no bearing on the applicability of the constitutional analysis the Supreme Court performed in *Johnson*.[4] The Court's holding in *Johnson* turned not on the fact that

---

[3] Other courts likewise require the ordinary case analysis when the statutory language of § 16(b) (and thus § 924(c)(3)(B)) is at issue. *See, e.g.*, *Keelan*, 786 F.3d at 871 (adopting "ordinary case" analysis for § 16(b)); *United States v. Ramos-Medina*, 706 F.3d 932, 938 (9th Cir. 2012) (citing *James* as the source of the "ordinary case" analysis required by § 16(b)); *Van Don Nguyen v. Holder*, 571 F.3d 524, 530 (6th Cir. 2009) (considering § 16(b) and concluding that "[t]he proper inquiry is one that contemplates the risk associated with the proscribed conduct in the mainstream of prosecutions brought under the statute."); *United States v. Sanchez-Garcia*, 501 F.3d 1208, 1213 (10th Cir. 2007) (same).

[4] *See Jimenez-Gonzales v. Mukasey*, 548 F.3d 557, 562 (7th Cir. 2008) (noting that, "[d]espite the slightly different definitions," the Supreme Court's respective analyses of the ACCA and § 16(b) "perfectly mirrored" each other). *See also United States v. Coronado-Cervantes*, 154 F.3d 1242, 1244 (10th Cir. 1998); *United States v. Kirk*, 111 F.3d 390, 394 (5th Cir. 1997); *United States v. Bauer*, 990 F.2d 373, 374 (8th Cir. 1993) (describing the differences between the statutes as immaterial and holding that U.S.S.G. § 4b1.2, which uses the ACCA language, "is controlled by" a decision that interprets § 16(b)).

the type of risk at issue under the ACCA's residual clause was the risk of injury;
rather, it turned on how the ACCA's residual clause required a trial court to assess
and quantify risk.[5]  That is, *Johnson* turned on the fact that the ACCA's residual
clause required a trial court to examine "the ordinary case" of a crime.

21.     The Seventh and Ninth Circuits have struck down Section 16(b) as
void for vagueness under *Johnson*.  *See Vivas-Ceja*, 808 F.3d at 723; *Dimaya*, 803
F.3d at 1117. Because Section 16(b) is the identical twin to Section 924(c)(3)(B), the
rationale of *Dimaya* and *Vivas-Ceja* applies equally to the determination of whether
an offense qualifies as a "crime of violence" under Section 924(c).

22.     Judge Paul W. Grimm of this District recently relied on the reasoning
of *Dimaya* and *Vivas-Ceja* to conclude that Section 924(c)'s residual clause is void
for vagueness. *United States v. Edmundson*, ___ F.Supp.3d___ , 2015 WL 9311983
at *4 (D. Md. Dec. 30, 2015) ("§ 924(c) residual clause suffers from exactly the same
double indeterminacy as the ACCA residual clause.").  In the wake of *Johnson*,
other courts have found the same.  *See, e.g., United States v. Lattanaphom*, ___

---

[5]Of course, many federal and state criminal laws include "risk" standards that
employ adjectives similar to those in the ACCA and § 924(c), such as "substantial,"
"grave," and "unreasonable." And the Supreme Court in *Johnson* said it did not
mean to call most of these into question. But, as Justice Scalia's majority opinion
observed, that is because the vast majority of those statutes require gauging the
riskiness of conduct in which an individual defendant engages on a particular
occasion; in other words, they require applying such a standard to "real-world
conduct." By contrast, the ACCA residual clause, and § 924(c)(3), too, require courts
to assess "an idealized ordinary case of the crime," an "abstract inquiry" that "offers
significantly less predictability." *Johnson*, 135 S. Ct. at 2558.

F.Supp.3d___, 2106 WL 393545 (E.D. Cal. Feb. 1, 2016) and *United States v. Bell*, 2016 WL 344749, at *11-13 (N.D. Cal. Jan. 28, 2016).

23.     The Fourth Circuit has recently issued several orders authorizing the filing of successive Section 2255 motions based on *Johnson*'s applicability to Section 924(c). *In Re: Chadrick Evan Fulks*, No. 16-9 (4th Cir. June 17, 2016) Doc. 19-1; *In Re: Richard Allen Jackson*, No. 16-10 (4th Cir. June 16, 2016) Doc. 11-1; *In Re: Basham*, No. 16-5 (4th Cir. May 20, 2016) Doc. 18-1; *In Re: Rico Lamont Bias*, No. 16-619 (4th Cir. May 19, 2016) Doc. 7-2; *In re: Damon Jones*, No. 16-583 (4th Cir. May 19, 2016) Doc. 10-2; *In re: Seifullah Chapman*, No. 16-246 (4th Cir. May 3, 2016) Doc. 9-1.[6]

24.     The Fourth Circuit also recently issued a published opinion authorizing a *Johnson* successor based on Section 16(b). In *In re Creadell Hubbard*, No. 15-276 (4th Cir. June 8, 2016), Doc. 32, the Court presaged that it will likely decide that *Johnson*'s holding extends to Section 924(c)'s residual clause. The Court found that Mr. Hubbard had made a prima facie showing "of possible merit to warrant fuller exploration by the district court" of the claim that his conviction for burglary is not a crime of violence under 18 U.S.C. §16. *Id.* at 12-13. The Court recognized that the residual clause of Section 16(b) "presents both" of the problematic features of the ACCA's residual clause that the Supreme Court struck

---

[6] *Fulks*, *Jackson*, and *Basham*, like Mr. Lighty's case, are federal capital cases. In *Basham* the petitioner argued, as does Mr. Lighty, that the jury's consideration of an invalid Section 924(c) conviction invalidates the death sentence imposed on another count (there, another two counts) in the indictment. *In Re: Basham*, No. 16-5 (4th Cir. May 20, 2016) Doc. 2-2 at 36.

down in *Johnson*, noting that Section 16(b) "invokes the ordinary case by referring, not to the facts of the case, but to the 'nature' of the offense. 18 U.S.C. § 16(b). The provision also applies almost the exact same vague standard—'involves a substantial risk'—to the abstract ordinary case." *Id.* at 14-15. The Court was not persuaded that any differences between ACCA's residual clause and Section 16(b) were material. "The *Johnson* Court's focus was on the abstraction involved in analyzing an ordinary case, and the distinction the government has raised between these provisions does not render it implausible that § 16(b), too, is unconstitutionally vague." *Id.* at 17. Because Section 16(b) and Section 924(c)'s residual clauses are identical, the Fourth Circuit's skepticism about the validity of Section 16(b) applies with equal force to Section 924(c)'s residual clause. In fact, in a footnote in its opinion in *Hubbard*, the Court observed that "the language of §16(b) is identical to that in §924(c)(3)(B), and we have previously treated precedent respecting one as controlling analysis of the other." *Id.* at 9 n.3.

25.     It is noteworthy that in litigating *Johnson*, the Government, through the Solicitor General, agreed that the phrases at issue in *Johnson* and Section 16(b)—which, again, is identical to Section 924(c)'s residual clause—pose the same problem:

> Although Section 16 refers to the risk that force will be used rather than that injury will occur, it is equally susceptible to petitioner's central objection to the residual clause: Like the ACCA, Section 16 requires a court to identify the ordinary case of the commission of the offense and to make a commonsense judgment about the risk of confrontations and other violent encounters.

*Johnson v. United States*, S. Ct. No. 13-7120, Supplemental Brief of Respondent

United States at 22-23 (available at 2015 WL 1284964) (March 30, 2015).

26.     The Solicitor General was right.  Section 16(b)—and, correspondingly,

Section 924(c)'s residual clause—are functionally the same as the ACCA's residual

clause and contain the same flaws.  This Court should hold the Government to its

concession.

27.     In sum, Section 924(c)(3)(B) requires a trial court to conduct exactly

the same "ordinary case" analysis that the Supreme Court invalidated in *Johnson.*

*Fuertes*, 805 F.3d at 500 n.6; *Avila*, 770 F.3d at 1107; *Ayala*, 601 F.3d at 267; *Van*

*Don Nguyen*, 571 F.3d at 530; *Sanchez-Garcia*, 501 F.3d at 1213.  Therefore, for the

same reasons the Supreme Court found the ACCA's residual clause to be

constitutionally infirm, Section 924(c)'s residual clause is constitutionally infirm

and any conviction thereunder must be vacated.

### B.     Kidnapping categorically fails to qualify as a "crime of violence" under the force clause of Section 924(c).

28.     For an offense to qualify as a "crime of violence" under Section 924(c)'s

"force" clause, the offense must have as an element the use, attempted use, or

threatened use of "physical force" against another person or property.  18 U.S.C. §

924(c)(3)(A).  "Physical force" means violent force – that is, "strong physical force"

that is "capable of causing physical pain or injury to another person." *Johnson v.*

*United States*, 559 U.S. 133, 140 (2010) (defining term for purposes of §924(e)).[7]

---

[7] Courts of Appeal have consistently held that 18 U.S.C. § 16(a) (which is almost the
same as § 924(c)(3)(A)) contemplates "destructive," "violent force" – not de minimis

29.     In determining whether an offense qualifies as a "crime of violence" under the "force" clause of Section 924(c), trial courts must employ what is called "the categorical approach." *Fuertes*, 805 F.3d at 498. *See also Descamps v. United States*, 133 S. Ct. 2276, 2283 (2013) (discussing application of categorical approach in Section 924(e) cases); *United States v. Royal*, 731 F.3d 333, 341-41 (4th Cir. 2013) (same). This approach requires courts to "look only to the statutory definitions – *i.e.*, the elements – of a defendant's [offense] and not to the particular facts underlying [the offense]" in determining whether the offense qualifies as a "crime of violence." *Descamps*, 133 S. Ct. at 2283 (citation omitted); *Royal*, 731 F.3d at 341-42. Under the categorical approach, an offense can only qualify as a "crime of violence" if all of the criminal conduct covered by a statute, "including the most innocent conduct," matches or is narrower than the "crime of violence" definition. *United States v. Torres-Miguel*, 701 F.3d 165, 167 (4th Cir. 2012). If the most innocent conduct penalized by a statute does not constitute a "crime of violence," then the statute categorically fails to qualify as a "crime of violence." In other words, "when a statute defines an offense using a single, indivisible set of elements

---

force. *United States v. Landeros-Gonzales*, 262 F.3d 424, 426 (5th Cir. 2001); *see also Flores-Lopez v. Holder*, 685 F.3d 857, 864 (9th Cir. 2012) (requiring "use of violent, physical force*"); United States v. Serafin*, 562 F.3d 1105, 1109 (10th Cir. 2009); *Jobson v. Ashcroft*, 326 F.3d 367, 373 (2d Cir. 2003*); Bazan- Reyes v. INS*, 256 F.3d 600, 611 (7th Cir. 2001) ("[T]erm 'physical force' in 18 U.S.C. § 16(b) refers to actual violent force."). Indeed, the Supreme Court in *Johnson* cited lower court opinions defining "physical force" under § 16 when defining "physical force" in the Armed Career Criminal Act, 18 U.S.C. § 924(e) (ACCA). 559 U.S. at 140 (citing *Flores*, 350 F.3d at 672).

that allows for both violent and nonviolent means of commission, the offense is not a categorical crime of violence." *Fuertes*, 805 F.3d at  498.

30.     Mr. Lighty was convicted of kidnapping under 18 U.S.C. § 1201. Section 1201 makes it a crime to "unlawfully seize[], confine[], inveigle[], decoy[], kidnap[], abduct[], or carr[y] away and hold[] for ransom or reward or otherwise any person." 18 U.S.C. § 1201(a).

31.     Kidnapping categorically fails to qualify as a "crime of violence" under the force clause of Section 924(c) because it can be committed through non-forcible means that are not "capable of causing physical pain or injury to another person." *Johnson*, 559 U.S. at 140.  These non-forcible means include "inveigling" and "decoying." 18 U.S.C. § 1201(a).  As the Fourth Circuit has observed, a kidnapper may "use[] deceit and trickery to accomplish his purpose rather than overt force." *United States v. Hughes*, 716 F.2d 234, 239 (4th Cir. 1983); *see also United States v. Wills*, 234 F.3d 174, 177 (4th Cir. 2000) ("By its terms, § 1201(a) criminalizes kidnappings accomplished through physical, forcible means and also by nonphysical, nonforcible means."); *accord Delgado-Hernandez v. Holder*, 697 F.3d 1125, 1129 (9th Cir. 2012) (noting that "[t]he federal kidnapping statute has no force requirement"); *United States v. Moreno-Florean*, 542 F.3d 445, 450-52 (5th Cir. 2008) (determining that California kidnapping statute did not include physical force as an element because the crime could be accomplished through non-physical means).

15

32.     The requirement that the kidnapper "hold" the victim for "ransom or reward or otherwise" also does not categorically require the use of physical force. As the Supreme Court has explained, "the act of holding a kidnapped person for a proscribed purpose necessarily implies an unlawful physical *or mental* restraint for the appreciable period against the person's will and with a willful intent so to confine the victim." *Chatwin v. United States*, 326 U.S. 455, 460 (1946) (emphasis added).  The victim need not even be aware of such restraint: "If the victim is of such an age or mental state as to be incapable of having a recognizable will, the confinement then must be against the will of the parents or legal guardian of the victim." *Id.*  As such, a kidnapper who lures a child across state lines may "seize" and "hold" the child by means of enticement (for example, through toys, games, or other amusement) without any use of physical force, as long as those actions were against the will of the parents or legal guardian. Indeed, a common kidnapping scenario – the kidnapping of a newborn from a hospital – need not involve any "violent" force because force would be unnecessary to restrain an infant.

33.     The Fourth Circuit has found that other crimes do not categorically qualify as "crimes of violence" under the force clause because, like kidnapping under Section 1201, they do not include "physical force" as an element.  *See Fuertes*, 805 F.3d at 498-99 (concluding that sex trafficking by force, fraud or coercion does not categorically involve physical force); *Montes-Flores*, 736 F.3d 357, 368 (4th Cir. 2013) (holding that South Carolina offense of assault and battery of a high and aggravating nature does not have physical force as an element); *cf. United States v.*

*Aparicio-Soria*, 740 F.3d 152, 157-58 (4th Cir. 2014) (en banc) (reasoning that, because the Maryland offense of resisting arrest has a single and indivisible set of elements that may be committed by either violent or nonviolent means, it does not qualify categorically as a crime of violence under U.S.S.G. § 2L1.2, the reentry Guideline); *Royal*, 731 F.3d at 341-42 (reasoning that, because the Maryland offense of second-degree assault has a indivisible set of elements that may be committed by either violent or nonviolent means, it does not qualify categorically as a "violent felony" under 18 U.S.C. § 924(e)(1)).

34.     Because kidnapping under Section 1201 may be accomplished without the use of any physical force, it categorically fails to qualify as a crime of violence under 18 U.S.C. § 924(c)(3)(A).

35.     Because Section 924(c)'s force clause (the only constitutional clause of that section that remains after *Johnson*), may not be used to support a 924(c) conviction where the predicate offense is kidnapping, Mr. Lighty's convictions under Section 924(c) are invalid.

**II.    Mr. Lighty's sentence of death under 18 U.S. C. § 1201 must be vacated because, in recommending death, the jury considered Mr. Lighty's unconstitutional Section 924(c) convictions and considered kidnapping   as a per se crime of violence.**

36.     In *Johnson v. Mississippi*, 486 U.S. 578 (1988), the Supreme Court held that where a jury imposes a sentence of death after having considered a conviction that is later vacated, the defendant is entitled to a new sentencing hearing. The Court reasoned that a sentence of death imposed under such a circumstance is inconsistent with the Eighth Amendment's prohibition against cruel

17

and unusual punishment because "the jury was allowed to consider evidence that had been revealed to be materially inaccurate." *Id.* at 579.

37.   The Supreme Court conducted a similar analysis in *United States v. Tucker*, 404 U.S. 443, 449 (1972), a non-capital case. In *Tucker*, the Court affirmed the judgment of the Ninth Circuit ordering resentencing after two prior convictions known to the sentencer were later invalidated. *Id.* at 593. Finding the sentence was imposed "at least in part on misinformation of constitutional magnitude," the Court declared that it would be "callous to assume, now that the constitutional invalidity of the respondent's previous convictions is clear, that the [sentencer] will upon reconsideration 'undoubtedly' impose the same sentence." *Id.* at 447, 449 n.8.

38.   It is irrelevant that the invalidated conviction and resulting sentence were rendered at the same trial. The determinative factor is whether the invalidated conviction was known to, and likely considered by, the sentencer. Thus, when a defendant has been convicted and sentenced on multiple counts, and one of the convictions is later determined to be invalid, the defendant must be resentenced on the remaining valid counts, unless it is established that the sentencer did not rely on the invalid count in imposing the sentence. *See James v. United States*, 476 F.2d 936, 937 (8th Cir. 1973) (citing *Tucker*). Where it "appear[s] possible that [the sentencer] might have relied in part on an unconstitutional conviction," the defendant must be resentenced. *Id. See also Bourgeois v. Whitley*, 784 F.2d 718, 721 (5th Cir. 1986) (resentencing required "unless it can be ascertained from the record that a trial court's sentence on a valid conviction was not affected" by the

invalid conviction); *Jerkins v. United States*, 530 F.2d 1203, 1204 (5th Cir. 1976) (unless it can be ascertained from the record . . . that the District Court's sentence on a valid conviction was not affected by a subsequently invalidated conviction on another count of the indictment, the defendant must be resentenced on the valid conviction."); *United States v. Pinkney*, 551 F.2d 1241, 1246 n.37 (D.C. Cir. 1976) ("Where the appellate court could only speculate as to what sentence the [sentencer] would have imposed absent consideration of a count upon which the conviction or sentence is later vacated, a remand for resentencing on the remaining valid counts is appropriate.").

39.     This was the rationale the Fifth Circuit employed in the capital case of *United States v. Causey*, 185 F.3d 407, 423 (5th Cir. 1999). In *Causey,* the defendants were convicted and sentenced to death on three federal capital charges. *Id.* at 411-12. Following reversal of one of the convictions, the Court ordered resentencing on the two remaining convictions because there was no way to determine whether the jury had been influenced to impose a death sentence by the invalidated third conviction. *Id.* at 423.

40.     In this case, during its penalty phase deliberations, the jury considered materially inaccurate evidence that Mr. Lighty was guilty of three counts of using a firearm during a crime of violence, when in fact he was actually innocent of those non-existent crimes. There is no basis upon which to conclude that the jury's death sentence was not based in part on Mr. Lighty's three Section 924(c) convictions. On direct appeal, the Fourth Circuit pointed out that each Section 924(c) conviction

19

involved a separate act, independent of the other two. *United States v. Lighty*, 616 F.3d 321, 371 (4th Cir. 2010). One of the three was for the alleged gunshot that caused the death of the decedent. *Id.* Mr. Lighty would not be the first federal capital defendant whose jury concluded that a conviction on even one count, let alone three, of using a firearm in connection with a crime of violence was a factor weighing heavily in favor of a death sentence. *See, e.g., Billie Jerome Allen v. United States*, Case No. 97-CR-141 (E.D. Mo.) (defendant convicted of armed robbery resulting in murder under 18 U.S.C. §§ 2113 (a) & (e)) and §§ 924(c) & (j), and sentenced to death on *only* the §§ 924(c) & (j) count).

41.    In this case, by instructing the jury that the evidence relevant to sentencing included all evidence received in the guilt phase of the trial, the Court actually *directed* the jury to consider the "materially inaccurate" evidence of Mr. Lighty's Section 924(c) convictions. Final Penalty Phase Jury Instructions (JI) at 4. The Court further instructed the jury to consider Mr. Lighty's invalid Section 924(c) convictions by directing the jury to look at (i) "all facts and circumstances" in determining whether Mr. Lighty "intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used," JI at 16, and (ii) "all the facts and the surrounding circumstances" in deciding whether Mr. Lighty knowingly created a grave risk of death. JI at 17.

42.    The erroneous instruction given during the guilt phase of the trial that kidnapping was a crime of violence, Guilt Phase Jury Instructions at 47, compounded the error caused by allowing the jury to consider the Section 924(c)

convictions at the penalty phase.  The guilt phase instruction was prejudicial to Mr. Lighty at the penalty phase because several of the penalty phase instructions required the jury *to determine* whether Mr. Lighty engaged in an act of violence.  JI at 16, 20, 31. The guilt phase instruction that kidnapping *is* a crime of violence operated as an impermissible directed verdict on the penalty phase question of whether Mr. Lighty engaged in an act of violence.

43.    The principle that a sentence must be vacated if it could have been influenced by an invalid conviction applies with even greater force in the case of jury sentencing, because the court can never determine with certainty what factors influenced the jury. *Cf. Wren v. United States*, 540 F.2d 643, 644 (4th Cir. 1975) ("In short, to terminate further inquiry, the district judge must be able to say either from recollection or reconstruction that had he known at the time of sentencing that the earlier convictions were invalid, he would have nevertheless imposed the same sentence.") (quoting *Gardner v Florida*, 430 U.S. 349, 359 (1977). .

44.    In vacating the petitioner's death sentence in *Johnson v. Mississippi*, the Court held that even absent an express argument by the prosecutor to consider the invalid conviction, "there would be a possibility that the jury's belief that petitioner had been convicted of a prior felony would be 'decisive' in the 'choice between a life and a death sentence." *Johnson*, 486 U.S. at 586.  The Court held that allowing for this possibility was inconsistent with the Eighth Amendment's

21

"special need for reliability in the determination that death is the appropriate punishment." *Id.* at 584 (internal quotations and citations omitted).

45.     Because it is not possible for this Court to find that the jury – or even a single juror – was not influenced to vote for death on Count 1 by the three invalid § 924(c) convictions on Counts 3,4 and 5, the Court should order that Mr. Lighty be resentenced by a jury.

46.     The Supreme Court has made clear that capital cases impose a "high requirement of reliability on the determination that death is the appropriate penalty in a particular case." *Mills v. Maryland*, 486 U.S. 367, 383-84 (1988). Therefore, "[t]he possibility that petitioner's jury conducted its task improperly certainly is great enough to require resentencing." *Id.* at 384. Mr. Lighty's unconstitutional convictions under Section 924(c) undermines confidence in his death sentence on Count 1.

## CONCLUSION

47.     Because Mr. Lighty's three convictions for possession or use of a firearm during and in relation to a crime of violence are based on a statute, 18 U.S.C. § 924(c)(1)(A), that is unconstitutionally vague, those convictions must be vacated.

48.     Because Mr. Lighty's death sentence was based at least in part on Mr. Lighty's invalid Section 924(c) convictions, the death sentence must be vacated and a new sentencing hearing must be held.

Respectfully Submitted:

/s/ *Julie Brain*
Julie Brain
Juliebrain1@yahoo.com
Attorney at Law
916 South 2nd Streetreet
Philadelphia, PA 19147
(267) 639 0417

/s/ *Seth Rosenthal*
Seth A. Rosenthal
(D. Md. Bar No. 10780)
sarosenthal@venable.com
VENABLE LLP
Suite 200
575 7th Street, NW
Washington, DC 20004
202-344-4000

/s/ *Karl Schwartz*
Karl Schwartz
Karl_Schwartz@fd.org
Chief, Capital Habeas Unit
Delaware Federal Public Defender Office
800 N. King Street
Wilmington, DE 19801
(302) 573-6010