```
 1                  UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF MARYLAND
 2                        SOUTHERN DIVISION

 3

 4   UNITED STATES OF AMERICA  :  Criminal Action No.

 5        v.                   :  PJM 03-457

 6   JAMES FLOOD,              :  Greenbelt, Maryland

 7           Defendant.        :  Thursday, July 27, 2017

 8   _____/  10:00 A.M.

 9

10                 TRANSCRIPT OF MOTION PROCEEDINGS
                 BEFORE THE HONORABLE PETER J. MESSITTE
11                   UNITED STATES DISTRICT JUDGE

12   APPEARANCES:

13   FOR THE GOVERNMENT:       SANDRA WILKINSON, Esquire
                               Office of the United Attorney
14   -                         36 South Charles Street, Fourth Floor
                               Baltimore, Maryland  21201
15                             410-209-4921

16

17   FOR THE DEFENDANT:        MARTA KARIN KAHN, Esquire
                               The Law Office of Marta K. Kahn, LLC
18                             8 East Mulberry Street
                               Baltimore, Maryland 21202
19                             410-299-6966

20

21

22

23   OFFICIAL COURT REPORTER:  LINDA C. MARSHALL,(301) 344-3229

24          COMPUTER-AIDED TRANSCRIPTION OF STENOTYPE NOTES

25
```

```
 1                    P-R-O-C-E-E-D-I-N-G-S

 2              THE DEPUTY CLERK:  The matter now pending before the

 3    Court is Criminal Case Number PJM 03-457, United States of

 4    America versus James Edward Flood, III.  The matter comes before

 5    this Court for a motions hearing.

 6              THE COURT:  All right.  Counsel, identify yourselves

 7    first for the government and then for defendant.

 8              MS. WILKINSON:  Good morning, Judge Messitte.  Sandra

 9    Wilkinson on behalf of the U.S. Attorney's office.

10              MS. KAHN:  Good morning, Your Honor.  Marta Kahn for

11    Mr. Flood.

12              THE COURT:  Anything preliminary from either

13    government or defendant?

14              MS. WILKINSON:  I don't believe so.

15              THE COURT:  You're ready to launch?

16              Here's what I thought.  Because there is a number of

17    issues, we should go back and forth on the issues rather than

18    having the defendant argue all of his claims and then hear it

19    from defendant.  Let's just go one, two, three, four, back and

20    forth.

21              And I don't know whether you want to go in the

22    numerical sequence of the counts or you've got certain kinds of

23    issues you want to cluster and talk about before others.

24              Ms. Kahn, it's your motion.

25              MS. KAHN:  Certainly I'll accommodate whatever the
```

```
 1    Court wants to do.  I was going to submit on a couple of the
 2    issues.
 3              THE COURT:  Well, why don't we start with what isn't
 4    an issue then?  I know one, of course, we've decided already,
 5    which is the juror strikes.
 6              MS. KAHN:  Yes.
 7              THE COURT:  Okay.
 8              MS. KAHN:  I'm going to argue Claim One, which is on
 9    the plea, the ineffective assistance in failing to seek a plea.
10              I'm going to submit -- I'm sorry, didn't write the
11    numbers of the claims on my notes.  I'm going to submit on
12    Claims Two and Three.  And I'm going to argue more briefly than
13    Claim One, the balance of the claims obviously not including
14    Batson.
15              And it was my understanding the Court was no planning
16    to hear argument on the supplemental briefs on the Johnson
17    issues.  I can touch on those briefly if the Court would like.
18              MS. WILKINSON:  We haven't briefed them yet.
19              THE COURT:  No, I think we -- that's right, I think
20    we'll hold off on that.
21              Well, is it fair to say that your big ticket item is
22    Claim One?
23              MS. KAHN:  Yes, Your Honor.
24              THE COURT:  Well, maybe we ought to get the smaller
25    issues out of the way first and then come back and spend our
```

```
 1    time on Claim One.  So why don't we start with -- you're talking
 2    about Claim Two, which is what, fail to move for joinder.
 3              MS. KAHN:  I'm submitting on claims --
 4              THE COURT:  Oh, you're submitting.  I'm sorry,
 5    which -- two and three you're submitting on and --
 6              MS. WILKINSON:  Four was already resolved.
 7              THE COURT:  All right.  The multiplicitous indictment
 8    you're submitting on.  And Claim Four is already decided.  So
 9    you are here on failure to offer evidence of good character,
10    conceding the sufficiency of evidence to support a finding of
11    guilt, failing to request limiting instruction regarding the
12    cross-examination of Natasha Massey, and then the collective
13    undermining of competence.
14              MS. KAHN:  Yes, Your Honor.
15              THE COURT:  All right.  Let's lay Claim One aside and
16    go through the other ones then in sequence starting with the
17    claim as to failure to offer evidence of good character.
18              MS. KAHN:  May I argue from the podium?
19              THE COURT:  However you want to talk, that's fine.
20              MS. KAHN:  Thank you.
21              So this is sort of a cluster of claims about defense
22    counsel strategy at trial.  It's a standard Sixth Amendment
23    claim, *Strickland* claim.  The first being that in opening
24    argument the defense promised that the jury would hear evidence
25    that Mr. Flood was innocent.  It said, you know, the government
```

5

```
 1   will show this and we will show that Mr. Flood was not there.

 2   He is absolutely innocent and then they did not offer that

 3   evidence.

 4            Now, when they said that they were going to show this

 5   affirmative evidence of innocence, the government objected to

 6   that and the Court actually sustained that objection, and

 7   actually admonished counsel that they should not say that they

 8   are offering evidence of innocence unless they actually have

 9   evidence of innocence.  And in fact said, quote, you're going to

10   have to deliver on what you said, and they did not say that.

11            And the cases cited in the petition talk about how

12   damaging it is to offer the jury something like evidence of

13   innocence and then not provide it.  In a sense that you could

14   think about it like a -- I was thinking analogies, but a toddler

15   who is offered a piece of cake and then does not receive that

16   piece of cake is going to feel much differently than if he was

17   never offered that in the first place.

18            So here is counsel saying, I'm going to show you this

19   man is innocent, and then here comes the end of trial and they

20   never heard that.  There's really only one conclusion they can

21   draw from that.  You said you have evidence, you don't have

22   evidence.  He's clearly guilty, defense counsel essentially told

23   me that.

24            THE COURT:  Was the government permitted to argue he

25   didn't provide evidence of his innocence, therefore that
```

6

1      demonstrates guilt?  They wouldn't have argued that.

2              MS. KAHN:  I don't believe they argued that, Your

3      Honor.  I'm merely talking about what message was left by

4      defense counsel, you know, with the jury having been told that

5      they were going to receive this evidence knowing that they were

6      not going to offer that evidence is ineffective assistance.

7              If you want to simply say that the government's

8      evidence does not add up, if you want to say that it's

9      circumstantial, that they're not going to be able to actually

10     place him in the car, you can say that and then that will follow

11     through trial and through your strategy and through what the

12     evidence is actually going to show.

13             To stand there and say to a jury, I'm going to show

14     you that he's innocent and then not show that leaves the jury in

15     a more conviction prone place than they otherwise would have

16     been.  I mean, I see it --

17             What the government did point to, I believe, is that

18     the -- they had, they had showed -- the government had evidence

19     that Mr. Flood's phone was used and that his car was used in the

20     event.

21             THE COURT:  What are the exact words that you're going

22     on?  For example, someone could say, the evidence will show that

23     he's innocent.  That wouldn't be counsel necessarily

24     misrepresenting it.  That would be challenging the government's

25     case.  Does he say, I will show you -- we will put on evidence

 1    that he's innocent or is there something that's a little more

 2    neutral?

 3              MS. KAHN:  I have to -- if I may glance at my --

 4              THE COURT:  Read to me the language that you say is

 5    the promise that wasn't fulfilled.

 6              MS. WILKINSON:  I think it's at page 18.

 7              MS. KAHN:  Oh, thank you.

 8              "James Flood was not present at the kidnapping, had no

 9    part in it and James Flood had no part in the death of Eric

10    Hayes.  That's also what the evidence is going to show."

11              THE COURT:  Well, what's wrong about that?

12              MS. KAHN:  Well, I could -- the petition also points

13    out what the government and the Court thought was wrong with

14    that.  And the Court itself said --

15              THE COURT:  At that point or later on.

16              MS. KAHN:  At that point.

17              THE COURT:  This is at a bench conference, I assume.

18              MS. KAHN:  Yes, Your Honor.

19              THE COURT:  Okay.

20              MS. KAHN:  I apologize.  The government objected and

21    said, "If counsel is going to proceed with his defense as he

22    argued --

23              THE COURT:  If counsel is going to proceed with the

24    defense is what the government said.

25              MS. KAHN:  Correct.

```
 1              THE COURT:  All right.
 2              MS. KAHN:  However -- "he's going to have to call
 3   Mr. Flood to say he wasn't there.  So certainly, if Mr. Flood is
 4   going to say he didn't do it, then that's going to have to come
 5   from Mr. Flood.  The only way he can prove that he wasn't there,
 6   that they had his car and keys, but he wasn't there is for
 7   Mr. Flood to get on the stand and say it."
 8              And Your Honor said, "I'm afraid that's right.  I
 9   don't know how you argue he didn't do it.  It's a very different
10   proposition to say that the government hasn't proved it, but to
11   say he didn't do it, no one has established that he didn't do
12   it."
13              So I think that's a fairly --
14              THE COURT:  This is at the beginning of the trial or
15   end of the trial?
16              MS. KAHN:  This is at the beginning of the trial.
17              THE COURT:  I don't know what the evidence necessarily
18   is going to be at that point, right?
19              MS. KAHN:  Well, I think counsel has a good
20   understanding of what the evidence is going to be and they
21   certainly know what evidence of innocence they possess.  I think
22   they can be fairly certain the government is not going to put on
23   evidence of Mr. Flood's innocence.  So when they say, the
24   evidence is going to show he is innocent, the jury is thinking
25   they're going to be hearing something reflecting that he's
```

1    innocent.  As opposed to the government's evidence is not going

2    to amount to proof beyond a reasonable doubt or this is a

3    circumstantial case and they can't prove that he was there,

4    making a statement that --

5              THE COURT:  Was there any direct proof that he was

6    there, that he was the trigger man, that he did anything like

7    that.  There's a lot of circumstantial evidence around him being

8    very near the scene at the time, but wouldn't that have

9    permitted an argument that he wasn't there?

10             MS. KAHN:  I certainly think --

11             THE COURT:  There's no evidence that he was directly

12   there and I think Ms. Wilkinson is correctly on it, I think

13   that's what the evidence was, right?

14             Did anybody place him squarely at the scene or on the

15   scent when the shooting occurred?  I don't think so.

16             MS. WILKINSON:  No, we didn't have a cooperator that

17   testified about actually what happened.

18             THE COURT:  So, why couldn't they argue from that,

19   we'll show that he was innocent.  And then the next step would

20   be, because the evidence doesn't show that anybody put him

21   there.

22             MS. KAHN:  My argument is based on partly --

23             THE COURT:  He's already said, the evidence will show,

24   not we'll show.

25             MS. KAHN:  Yes.

```
 1              THE COURT:  May be an important distinction.

 2              MS. KAHN:  I think -- my position simply reflects what

 3    the government was arguing and what the Court was agreeing with

 4    the government on that there's a big distinction from saying

 5    that the evidence will not show that he was there, and implying

 6    to the jury they have -- they didn't say the word "alibi", but

 7    something implying --

 8              THE COURT:  Well, wait a minute though.  He wasn't --

 9    the jury wasn't told to disregard what he said, was it?

10              MS. KAHN:  No, Your Honor.

11              THE COURT:  I mean, we stopped him at that point and

12    said, don't go any further unless you're -- I mean, we're

13    effectively trying to keep him from being ineffective, aren't

14    we, at that point?

15              MS. KAHN:  I believe it was at the conclusion of

16    argument that the objection occurred.  However, that to me -- I

17    mean, the claim is, the cat was out of the bag at that point.

18    The jury had heard and could certainly have implied from these

19    words that we're going to hear affirmative evidence of innocence

20    and then simply did not.  And that's the prejudicial ineffective

21    assistance.

22              THE COURT:  That's a big leap to make that statement

23    from what the word said or said, and saying we're going to hear

24    evidence from the defendant that, and then counsel didn't follow

25    up.  I'm not sure I make that connection.
```

1          MS. KAHN:  Well, I can see that Your Honor disagrees

2    with the claim.

3          THE COURT:  Well, I'm not puzzled by it because he

4    wasn't -- the jury was not told to disregard what he said and

5    what he said was permissible to that point.  I didn't know what

6    the evidence was going to show at that point.  I hadn't talked

7    to all the witnesses.  As far as I was concerned, somebody might

8    say, you know what, I just can't see Flood connected with the

9    shooting here.

10         MS. KAHN:  Well, the point that the Court and the

11   government made at the time was, if you're going to make a claim

12   of innocence as opposed to a claim that the government can't

13   meet its burden, if you're going to make affirmative claim of

14   innocence, we're expecting that you must be putting Mr. Flood on

15   the stand.  So, that's what the government thought.  That's what

16   the Court thought.  So that I don't see that it's a massively --

17         THE COURT:  I thought that was the direction he was

18   going in.  I think that was -- that's the distinction.  I didn't

19   think he had said it in that statement that he had made to that

20   point.

21         I didn't know the government's evidence at that point

22   and I was cautioning him, unless you're prepared to -- if

23   there's somebody who is going to demonstrate innocence except

24   you, you better be careful about being ineffective.  I mean,

25   that's effectively what I would say.

1          MS. KAHN:  I agree and I believe the ineffectiveness

2    had already happened at that point.  So, that's the balance of

3    that claim.  I mean, I just think that the jury was set up to

4    understand that there was going to be affirmative evidence of

5    innocence.  I think that they could easily have made that leap.

6    The government did, the Court did.

7          I mean, it's a fairly common distinction that's made

8    between arguing affirmative innocence and arguing failure of the

9    government's burden.

10         THE COURT:  So any time an attorney says, a defense

11   attorney in opening statement, my client is innocent and then

12   doesn't call a witness to demonstrate it, they're ineffective

13   for constitutional reasons.

14         MS. KAHN:  I think if they -- I think these words

15   actually said, the evidence is going to show that he's innocent,

16   which in my reading of it, if I were a juror, I would think I am

17   going to be hearing evidence of his innocence, rather than the

18   government is going to fail at its burden?

19         THE COURT:  Okay.

20         MS. KAHN:  Should I just --

21         THE COURT:  There's another part in that same motion.

22   There was an issue of character testimony.

23         MS. KAHN:  Yes.  By the same token, counsel offered

24   the jury that they would be hearing that Mr. Flood was a good

25   man, he had been working hard.  You know, that he -- I don't

 1    think they directly said that he was -- had no record, but the

 2    good character evidence that they were going to put on, again

 3    that evidence did not arrive.  So again, the jury would not have

 4    thought, you know, that Mr. Flood's character was even an issue

 5    until counsel told them that evidence was coming and then it

 6    didn't come.

 7         Well, you said that.  Where is it?  What happened?

 8    Maybe he's not such a good guy.  Maybe we can't believe anything

 9    you say, because you told us in opening you're showing us he's

10    innocent, evidence of his innocence.  You didn't.  You're saying

11    you're going to show us he's a good guy.  Never heard anything

12    about that either.  So, you know, you're --

13         Then it kind of ties in with the other claim here, if

14    I may, sort of, just touch on that one, which is ineffective

15    assistance for conceding evidence without making it a part of a

16    larger theory.

17         So, as we just discussed a minute ago, the government

18    had evidence that the perpetrators had used Mr. Flood's phone

19    and that he had -- they had used his car and he had lied to the

20    Grand Jury about the whereabouts of the car.  So, basically,

21    defense counsel in opening conceded those pieces of evidence,

22    which is probably enough for a conspiracy conviction.  And

23    conceding guilt is a very sticky wicket.

24         THE COURT:  What does he say specifically?  You're

25    characterizing what he said, but what does he say about those --

14

1              MS. KAHN:  He says -- so there's a couple of excerpts

2      here.  James Flood is seated at that table right there.  The

3      defense --

4              THE COURT:  Slow down a bit for the reporter.

5              MS. KAHN:  I'm so sorry.  I do that often, sorry.

6              "James Flood is seated at that table right there, the

7      defense table because they used his car and they used his phone

8      during the commission of that crime.  What the government told

9      you is absolutely correct, they used his car.  It was a car he

10     had bought off Kenneth Lighty.  So in that sense, they're

11     correct.

12             I'm going to save you some time.  The car was his.  He

13     had purchased that car from Kenneth Lighty just days before this

14     crime took place, but that vehicle was his, no two ways about

15     it.  And the government is absolutely correct, he lied about the

16     car being his before the Grand Jury.  He lied about it several

17     times and we're not trying to controvert that.  It was his car,

18     no doubt about it.

19             When the government called him as their witness, he

20     lied before the Grand Jury.  He repeatedly lied before the Grand

21     Jury.  That much is absolutely true."

22             THE COURT:  This is opening or closing?  I'm sorry.

23             MS. KAHN:  This is opening.

24             And then they conceded the same evidence repeatedly in

25     closing as well.

```
 1              THE COURT:  All right.

 2              MS. KAHN:  So in certain cases, the government -- I

 3    mean, in certain cases counsel can concede guilt if it's part of

 4    a larger strategy.  For example, if it's conceding a lower

 5    offense in order to attack a greater offense, that -- generally,

 6    concessions of that nature need permission of the client, but

 7    more importantly, it has to be tied in to a larger strategy.

 8              Here, these concessions were not tied into to a part

 9    of a larger strategy.  Counsel basically said, yes, that he lied

10    about the car.  But it's sort of implying, I guess, that somehow

11    Lighty and Wilson got his phone in his car, but they never

12    really offered any way that Lighty and Wilson got his phone in

13    his car and used them without his permission.

14              So, again, in that sense, that's sort of giving the

15    jury enough to probably to convict on a conspiracy conviction

16    without any benefit to overall defense theory.  So I just think

17    as part of a setting off the whole tone of the trial from the

18    beginning, basically, saying the government has got this great

19    evidence which is enough for you to convict, which they didn't

20    say, I grant you.  And we're going to show evidence of innocence

21    and we're going to show you evidence he's a great guy.  And if

22    that never happened either, this jury basically had no path to

23    deviate from conviction at that point given what defense counsel

24    had said.

25              THE COURT:  You're talking about evidence that he was
```

 1     great guy.  That's really not the shape the character evidence

 2     would take, is it?

 3              MS. KAHN:  Well, that was shorthand.

 4              THE COURT:  Best it's pretty broad.  I mean, in terms

 5     of what could have been said by a character witness.

 6              MS. KAHN:  I believe that the -- if -- I'm sorry, Your

 7     Honor.  The evidence was -- I believe it was that he --

 8              THE COURT:  Think about what good character would

 9     mean.  If he would testify, good character would bolster his

10     credibility.  Good character evidence, what would it do in this

11     case?  Show not to have assaultive propensity or what, what

12     would it have done?

13              MS. KAHN:  I don't believe that the absence of the

14     evidence was the prejudicial ineffectiveness.  I believe that

15     the promising of evidence that you then do not provide is the

16     ineffectiveness, because you lose credibility with the jury and

17     because it, again, sort of like the piece of cake analogy puts

18     it on the jury's mind that this evidence is coming.  We're going

19     to hear something good about him, that he had this job or that

20     he was a contributing member of society.  And then it doesn't

21     come, which makes us think either that evidence doesn't exist or

22     it makes us think you don't know what you're doing.

23              So how are we supposed to buy your defense theory that

24     somehow Flood got his phone and his car, and we never heard any

25     evidence of innocence like you said.  So it just seems like that

```
 1    unfulfilled promise contributed to the lack of credibility to

 2    the defense as a whole.

 3              THE COURT:  Okay.  Let me hear from Ms. Wilkinson on

 4    these issues and then we'll let you pick up on others.

 5              MS. WILKINSON:  Certainly, Your Honor.  Let me deal

 6    with the second issue first, if I might, since it's fresh in

 7    everyone's mind.  I don't know how many opening statements I've

 8    heard in my time here as an Assistant U.S. Attorney, but I

 9    honestly can't recall a single one where defense counsel didn't

10    try to or did successfully -- I'll use the word "sneak" in

11    evidence about a person's background with no evidence submitted

12    at trial as a result of that person.

13              In other words, you're giving background about the

14    person, discussing the person before opening statements and then

15    maybe we don't hear evidence that they actually worked at so and

16    so job or that they were a good mother, or that they cared about

17    something.

18              And you know, whether or not that's a strategic

19    decision to kind of get those thoughts in front of the jury and

20    then modifying their strategy later, I don't know, but that's

21    what Mr. Lawlor did in this case because he put in his affidavit

22    that it was upon learning that the government would

23    cross-examine any character witnesses with other bad act

24    evidence that he modified his strategy accordingly with regard

25    to whether or not Mr. Flood was a honest man, a non-violent man,
```

 1    that sort of thing and he puts that right into his affidavit.

 2         THE COURT:  Do we have an affidavit from the person

 3    who would have given the testimony saying I would have said all

 4    these things or are we speculating that that person, whoever

 5    that person might have been might have said something.

 6         MS. WILKINSON:  Not only are we speculating about

 7    that, because that is not anywhere in the petition that was

 8    filed, Your Honor.  But more importantly, where is the prejudice

 9    in the compelling evidence that was presented before this jury

10    of Mr. Flood's involvement in this conspiracy to murder

11    Mr. Davis.  How, how -- I mean, Mr. Hayes, excuse me, Your

12    Honor.

13         How did that possibly prejudice the jury if they would

14    have heard that Mr. Flood worked at Douglas Knolls apartment?

15    How would that possibly have changed in this jury's mind whether

16    or not he was involved in this particular homicide?  So, there's

17    no prejudice either, there's no proof that there were people who

18    would come in and testify about what his, quote-unquote, good

19    character one.  And then we have the attorney himself saying he

20    made a strategic decision at that point.

21         And let me go directly to what his affidavit actually

22    says here, Your Honor, at paragraph 5-D.  "Our failure to

23    deliver evidence promised in opening, assuming opening can be

24    read as such, was based on rulings made by the Court during

25    trial.

1              At some point, I recall the government indicated they

2    possessed evidence of other criminal activity by Mr. Flood that

3    was prepared to present and we altered our strategy accordingly.

4              THE COURT:  Under by way of cross-examination,

5    assuming a character witness had been called, the government

6    could have said, but have you heard that Mr. So and So also is

7    guilty of this crime, this crime and that crime.

8              MS. WILKINSON:  Of course.

9              THE COURT:  Where there could have been impeachment,

10   serious impeachment of the character witness that would have

11   undercut the defendant's case.

12             MS. WILKINSON:  Yes, I certainly don't --

13             THE COURT:  I just don't have anything before me on

14   that.

15             MS. WILKINSON:  There's no evidence from the

16   petitioner in front of you before that, Your Honor, but even

17   more importantly, again, this is a defense attorney who is

18   making decisions the best he can in a context of a case where

19   there's, frankly, overwhelming evidence of Mr. Flood's guilt and

20   he is providing a little bit of background in his opening

21   statement.

22             This isn't one where he, you know, presents or

23   promises an alibi defense, for example, and then doesn't

24   deliver.  And I think that that was running into the second

25   issue or the first issue that Ms. Kahn addressed.  That's

1    exactly what the Court is talking about here.

2         He didn't cross that line.  He's simply saying, the

3    evidence is going to show that Mr. Flood is innocent.  Well, you

4    can certainly argue that from his cross-examination of the

5    witnesses because we didn't have a witness that put Mr. Flood at

6    the scene of the murder at the time that it happened.  Of

7    course, you're going to argue that.

8         Did the circumstantial evidence add up to what the

9    jury convicted Mr. Flood of?  Of course it did, but he had to

10    deal with the cards that he had at this point.  And he is going

11    to argue from that evidence that there's nobody who said

12    Mr. Flood was sitting in that car at the time Mr. Hayes was

13    murdered.

14         And so when he's standing up before the jury, he's

15    making the point that the Court.  Did that -- did he say it in a

16    --

17         You know, we're talking about semantics here.  He's

18    basically saying, when you look at his opening statement and

19    we're mincing out words here, his context was, it's not enough

20    evidence and, therefore, it's going to show that he's innocent.

21         The lay person know the difference between the

22    government being able to prove and actually staying with

23    innocent, it cannot be that a defense attorney can't say that in

24    opening statement, my client didn't do this.  Is that the same

25    as saying, the government can prove my client didn't do this?  I

21

1    think we're mincing words here for purposes of what is a opening

2    statement.  He certainly didn't argue that enclosing statements

3    that he was -- that there was evidence that he had put on of his

4    absolute innocence.

5         I mean, I -- you know, I read Mr. Lawlor's opening

6    statement here, Your Honor, and even though the government and

7    the Court and the defense engaged in a colloquy at the end of

8    his statement saying, hey, don't cross that line here, it really

9    was directed towards future -- making future arguments of things

10   that didn't exist.  Then saying what he had said in opening

11   statement was inappropriate or more importantly ineffective for

12   purposes of this case.

13        And on that, unless the Court has any questions --

14        THE COURT:  No.  Ms. Kahn, do you want to respond to

15   this particular issue?

16        MS. KAHN:  Just very briefly, Your Honor.

17        THE COURT:  Go ahead.

18        MS. KAHN:  Just three quick points.  The good

19   character evidence portion of what he said was "Now, during this

20   trial, you're also going to hear about some of the good aspects

21   of James Flood, the real James Flood.  And you're going to hear

22   that around January, 2002, a long time before and a long time

23   after he was a hard working young man, worked every day, worked

24   every day for the Douglas Knolls apartments.  He worked every

25   day and you're going to hear from people who know all aspects of

1    his life.  And they're going to tell you, he's a hard-working

2    guy and he's not a violent man.  So you're going to hear some

3    things about James Flood during this trial as well and I think

4    that's very important."  So that's evidence of good character.

5              THE COURT:  Do you have the names of the people who

6    would have been called?

7              MS. KAHN:  No, Your Honor, because I just want to

8    clarify that my point is not the absence of that evidence

9    prejudiced the jury substantively.  I'm saying, it's the empty

10   promise itself.

11             If he had said, I'm going to show you that James Flood

12   has once traveled to the moon, I don't need a person to say, I

13   had evidence that he traveled to the moon to prove prejudice on

14   that.  It prejudiced the jury by telling them, I'm going to show

15   you something and not show it to you.  That's the nature of the

16   prejudice itself.  It's losing credibility and making empty

17   promises, and losing the belief of the jury.

18             And also it's Mr. McKenna was making the opening

19   argument, so I don't think Mr. Lawlor's proclamations about what

20   happened there are really relevant?

21             MS. WILKINSON:  I'm sorry for that.

22             MS. KAHN:  That's okay.

23             Well, he put in his affidavit about what his strategy

24   was and he didn't have one.

25             THE COURT:  Is there an affidavit from McKenna?

1          MS. KAHN:  There is not.

2          Also, I just also want to clarify that it was -- you

3    know, the government is standing here now and saying that they

4    didn't think that defense counsel went too far in their opening

5    argument, but they are the ones that objected to it.  The Court

6    agreed with their objection.  The counsel was admonished for

7    what he did, so it can't be that was, sort of, so innocuous.

8          THE COURT:  Are you back on the first issue?

9          MS. KAHN:  Yes, I'm -- yes, just augment on the

10   evidence of innocence piece that, you know, it's sort of not

11   just me making it up.

12         THE COURT:  I just heard you say, he was admonished.

13   He hadn't done anything wrong to that point.

14         MS. KAHN:  Except that that's what the Court said.

15   The Court said, "Mr. McKenna, we have your words.  We'll see

16   what your evidence does.  You're going to have to deliver on

17   what you said.

18         I'm afraid that's right.  I mean, I don't know how you

19   argument he didn't do it.  It's a very different proposition to

20   say that the government hasn't proved it.  Very different

21   proposition to say that the government hasn't proved it.  But to

22   say he didn't do it, no one established he didn't do it.  So

23   it's even going far afield from what an opening argument is

24   supposed to do, which is summarize the evidence.  There is no

25   evidence that you're going to put on that he didn't do it."  And

```
 1   with that I'll --
 2            THE COURT:  I think I understand that part.
 3            MS. KAHN:  Thank you, Your Honor.
 4            THE COURT:  Do you have anything further to say on
 5   those issues?
 6            MS. WILKINSON:  No, Your Honor.
 7            THE COURT:  You want to go on to your next issue?  Is
 8   there anything more to say about --
 9            Well, maybe you should go into the issue of conceded
10   evidence sufficient to finding guilt or have you covered that
11   already?
12            MS. KAHN:  It's covered.
13            THE COURT:  I don't know that you addressed that.  You
14   want to say anything about it, Ms. Wilkinson?
15            MS. WILKINSON:  Your Honor, they didn't concede Mr. --
16   I should just submit on my brief, because I lay it out in there,
17   Your Honor, but they did not concede that Mr. Flood was guilty
18   here.  They conceded the two points that they had to concede
19   because there was such powerful evidence over it and it was a
20   tactical decision.
21            Again, as like at Mr. Lawlor's affidavit that he --
22   that he stated at paragraph 5E, I do not agree we conceded
23   elements of the offense.  Our position at trial was that
24   Mr. Flood was not present at nor aware of the kidnapping of the
25   victim and did not participate in the conspiracy to commit the
```

```
1   act or the substantive act.  We conceded those things, that
2   means the car and the phone because that -- we thought we had to
3   concede them by pushing out the theory that we could.  And of
4   course, that's true because --
5            THE COURT:  On the car, what evidence was there?
6   What, sale by Flood to Lighty?
7            MS. WILKINSON:  There was testimony that he had
8   purchased the car from Mr. Lighty.
9            THE COURT:  By who?
10           MS. WILKINSON:  I don't recall.  Let me see if I can
11  go back about --
12           THE COURT:  Who testified to that?
13           MS. WILKINSON:  I think that -- give me one second,
14  Your Honor.
15           THE COURT:  Well, Flood was the owner of the car at
16  the time of the murder, is that the statement?
17           MS. WILKINSON:  Yes.
18           THE COURT:  The evidence showed that.  Then the issue
19  was, Flood had purchased it from Lighty sometime prior?
20           MS. WILKINSON:  Yes, Your Honor.  Hold on, I'm getting
21  to the -- I think I put it in my brief, maybe not.
22           THE COURT:  One of the girlfriends talk about that?
23           MS. WILKINSON:  I believe his girlfriend,
24  Ms. Marshall, talked about it at trial, but I also believe that
25  his -- I can't remember right now, Your Honor.  I'm sorry.  If
```

```
 1     the Court needs that, I will certainly supplement.
 2              THE COURT:  Well, on the cellphones, there actually
 3     were phone calls that were made on Flood's cellphone.
 4              MS. WILKINSON:  Correct, and people testifying that
 5     that was his phone number.
 6              THE COURT:  And then there were phone records that
 7     showed that it was his cell phone?
 8              MS. WILKINSON:  Of course.
 9              THE COURT:  Well, all right so.
10              MS. WILKINSON:  Un-refutable type of evidence.  In
11     other words, Ms. Marshall is actually a witness for the defense
12     and she would testify that it was his car and his phone number,
13     for example.  There's the facts that you -- that were just
14     well-known throughout the the trial, a lot of different
15     evidence.
16              THE COURT:  Well, all right.  And I suppose it could
17     be argued and you ought to, I think, address this, Ms. Kahn,
18     that these are essentially irrefutable facts.  And the idea of
19     counsel conceding that he'll concede them looks like something
20     is being given up, which really isn't very much because he was
21     going to be beaten on those points anyway.
22              So, technically, perhaps not a bad decision to say, we
23     give on those points.  We're not going to make --
24              The reverse would be, we're going to contest them and
25     it's not even a central issue in the case.
```

```
 1              MS. WILKINSON:  Of course, Your Honor.  I mean, it's
 2    more important to --
 3              THE COURT:  The question is whether there was a
 4    tactical decision here that could be defended as just a decision
 5    by counsel to forego.  And may even look like they're making a
 6    concession, which candidly wasn't much.
 7              MS. WILKINSON:  Yeah, it's more important to show what
 8    the government couldn't show.  For example, we didn't have a
 9    cooperator that put him at the scene of the murder.  We didn't
10    have anybody to say, this is what happened that night.
11              THE COURT:  All right.  Anything more on this point?
12              MS. KAHN:  No, Your Honor.
13              THE COURT:  All right.  Let's go on to your next
14    point, which is -- that is on the concession of guilt.  That
15    would be Item 60, the limiting instruction following examination
16    of Latasha Massey.
17              MS. KAHN:  Yes, Your Honor.  This is just a brief
18    point.  So Latasha Massey testified --
19              THE COURT:  Tell me her relationship again.
20              MS. KAHN:  Latasha Massey was Tony Mathis' girlfriend.
21              THE COURT:  Mathis' girlfriend.
22              MS. KAHN:  Yes.  So, she testified that Mr. Flood
23    called Mr. Mathis who -- and then came by.  And then Mathis left
24    with Flood and later Mathis came back and had blood on his
25    clothes.
```

28

```
 1              Lighty's counsel wanted to use that as evidence of
 2    their theory that it was Flood and Mathis that did the crime.
 3    So they questioned Massey in a way and -- so that when they
 4    tried to draw that out, the government came back and questioned
 5    Massey in a way that indicated that Flood must have called
 6    Massey and returned when Massey returned with -- I mean, Mathis,
 7    and Mathis returned with blood on his clothes from a different
 8    murder.
 9              So, just because that was so jumbled, I'll read this
10    section from the record.  "Now, you indicated -- this is the
11    government questioning Ms. Massey.  "Now, you indicated that you
12    remembered that incident because you remembered hearing about a
13    murder or a kidnapping, or something in the news the next day;
14    is that correct?"  So --
15              THE COURT:  Her answer was?
16              MS. KAHN:  Yeah, Mathis, her boyfriend, came in with
17    blood.  And so she said, "Oh, you know, then I heard that there
18    was a murder.  So I thought --
19              THE COURT:  Talking about the Hayes murder?
20              MS. KAHN:  Well, she just says, I thought he must have
21    been involved in whatever murder it was.  So, apparently, she
22    couldn't remember what murder it was.  So, she says, yes.
23              "Now, where you lived was a high crime area back then,
24    isn't that correct?
25              "Yes."
```

```
 1              THE COURT:  In the end, you're saying -- what is the
 2   essence of the objection?  Let me work back from there, because
 3   I'm not sure where we're going to end up.
 4              MS. KAHN:  I'm sorry, Your Honor.  The essence of the
 5   claim is through this government's questioning, it left the
 6   impression that Mr. Flood had been involved in some other murder
 7   other than the Hayes murder which is, of course, highly
 8   prejudicial to the jury.  They did not request any kind of
 9   instruction or a mistrial or anything suggesting that the jury
10   should not consider any possibility that Mr. Flood was involved
11   in --
12              THE COURT:  Did they argue it in closing argument?  I
13   mean, in terms of the -- did the defense argue that she was
14   confused?
15              MS. KAHN:  Actually, at this point, I don't recall.
16              THE COURT:  Wouldn't that matter though?
17              MS. KAHN:  I would have put that probably in the
18   petition had they done so.  I'm not sure that it has to come up
19   in argument when a jury has been left with the impression that
20   Mr. Flood could have been involved in another murder.  I think
21   that's fairly prejudicial without anyone even going back over
22   it, so it just seems to me at that point --
23              THE COURT:  Is it constitutionally ineffective
24   assistance of counsel even to not ask for an instruction, a
25   limiting instruction middle of trial, but perhaps then going
```

30

```
1    forward and arguing afterwards that there's confusion in the
2    testimony?
3                MS. KAHN:  Oh, I see.  Did --
4                THE COURT:  Did Lawlor or McKenna, whoever was doing
5    it come back and say, you know, Latasha Massey could not be sure
6    as to whether Mathis was -- whether Flood was at the scene or
7    not at that scene, whatever her testimony was.
8                MS. KAHN:  Well, because Latasha Massey was not
9    implicating Mr. Flood necessarily --
10               So, it's a little bit confusing because, essentially,
11   the government's position was that because Massey's testimony
12   didn't line-up with their theory, because it didn't put Wilson
13   --
14               THE COURT:  Massey was a defense witness?
15               MS. KAHN:  No, Massey was -- yes, Massey was a defense
16   witness for Lighty.  So Lighty -- Lighty's theory was that Flood
17   and Mathis did the crime.  So Lighty's people put them on.
18               The government didn't like that theory, so they
19   cross-examined Massey to try to give the impression that this
20   wasn't the Hayes murder because it didn't match up with their
21   timing or with their theory of the case, so this must have been
22   some other murder.  There's so many murders.
23               THE COURT:  The government wanted some other murder,
24   is that what you're saying?
25               MS. KAHN:  Right, right.  So you know, the jury is
```

1    left with the impression, there's some other murder and nobody

2    tells the jury, don't consider the fact that there was some

3    other murder in your consideration of whether he's guilty of

4    this murder.

5             THE COURT:  But defense counsel called Massey.  Is the

6    position here that she was even called as a witness, because

7    that certainly would go to the fair examination by the

8    government.

9             MS. KAHN:  Lighty's defense counsel called her, not

10   Flood's.

11            THE COURT:  And was there objection to her being

12   called by Flood?

13            MS. KAHN:  I don't think that -- I don't think Flood

14   had an objection that they could have made.  I mean, their

15   defenses were contradictory defenses.  You know, Flood wanted to

16   say, this was Lighty and Wilson; and Lighty wanted to say, this

17   was Flood and Mathis, I believe.  So the defenses were not

18   together.  So Latasha Massey helped Lighty's defense.  And until

19   they brought up this other --

20            THE COURT:  Well, what could -- what could have been

21   done to unscramble this, either by a limiting instruction or

22   argument by Flood's counsel at closing?

23            MS. KAHN:  I think an instruction.  I would have asked

24   for an instruction, a motion for mistrial.  I wouldn't have

25   revisited it in closing.

```
 1            THE COURT:  If I would have given an instruction, what

 2   would you have asked for?

 3            MS. KAHN:  I would have said, you've heard the

 4   implication from this testimony that Mr. Flood was somehow

 5   involved in another murder.  You are in no way to consider her

 6   testimony as evidence that he was involved in another murder or

 7   consider the possibility that he was involved in another murder

 8   in your deliberations in this case, rather than just leave it

 9   out there unquestioned that he picked this guy up and brings him

10   home bloody, and it wasn't the Hayes murder.

11            I mean, that's really extremely prejudicial.  That's

12   really the balance of that claim.

13            THE COURT:  Let me hear the government's response.

14            MS. KAHN:  Certainly.

15            MS. WILKINSON:  Your Honor, I'm not really sure how to

16   respond because I can't even figure out what the limiting

17   instruction would have been from the Court, because it's so

18   convoluted here.  I think that what Ms. Kahn is trying to say is

19   that the defense should have had the Court highlight the fact

20   that Ms. Massey is talking about a different murder and say,

21   there's no evidence of a different murder involving Mr. Flood.

22            Again, this is a strategic call that an attorney might

23   make in the course of a trial.  I'm not even sure the Court

24   would have given this.  This was a very brief witness that

25   Lighty offered.  It -- they had the opportunity, obviously,
```

1    defense counsel -- I can't even recall if they cross-examined

2    Ms. Massey as well.  The only point the government made in its

3    cross-examination of Ms. Massey is that --

4            THE COURT:  Cross-examination would have been to say,

5    this other murder that you talk about, tell me about that.

6            MS. WILKINSON:  Right.

7            THE COURT:  And that would have been --

8            MS. WILKINSON:  That might have been ineffective.  But

9    in regard to this, it's simply that she didn't recall the date

10   that she heard about a murder on TV.  She saw her boyfriend with

11   blood on his clothes.  I mean, frankly, it was such

12   inconsequential evidence anyway.  It came out very flat in the

13   course of trial.  It just is what it is and the inference that

14   Ms. Kahn wants to draw from it, you have to do a kind of a bunch

15   of different mental gymnastics to even get to the prejudicial --

16           THE COURT:  Let me see if I understand the line here.

17   Essentially, she does say that she saw --

18           MS. WILKINSON:  A murder on TV.

19           THE COURT:  What's her testimony in her direct

20   examination?  What is she there to say from defendant's

21   standpoint?

22           MS. WILKINSON:  She said words to the effect that,

23   that she saw something on TV about a news report and she

24   harkened back to seeing her boyfriend who had gone into

25   Mr. Flood's car earlier on some day.

```
1              THE COURT:  This is Lighty calling?

2              MS. WILKINSON:  Because remember --

3              THE COURT:  He wants to pin the murder on Flood.

4              MS. WILKINSON:  He wanted to really pin the murder on

5   Mr. Massey.  Mr. Massey was the --

6              THE COURT:  Mr. Mathis.

7              MS. WILKINSON:  Mr. Mathis, he was the -- exactly, he

8   was the unknown person, the big pink elephant in the room for

9   Mr. Lighty.  He was the one he wanted to focus all of this time

10  and effort on that Mr. Mathis was the one that did it.  And this

11  was his only evidence --

12             THE COURT:  Mathis and Flood was Lighty's targets,

13  were Lighty's targets?

14             MS. WILKINSON:  That it wasn't him, that Mr. Mathis

15  was this -- the other person.

16             THE COURT:  Mathis and Flood?

17             MS. WILKINSON:  Yes.

18             THE COURT:  For purposes of this case, we're talking

19  about Flood and not Mathis.

20             MS. WILKINSON:  Yes.

21             THE COURT:  And so she says that, but in the course of

22  her testimony, why would she be saying, and I saw blood on

23  Flood's shirt?

24             MS. WILKINSON:  Not Flood.

25             THE COURT:  She's talking about Mathis.  So she's
```

1    Mathis' girlfriend.

2              MS. WILKINSON:  Yeah, she's Mr. Mathis' --

3              THE COURT:  She saw blood on Mathis' shirt.

4              MS. WILKINSON:  That's why I'm saying the mental

5    gymnastics, Your Honor.  The only way Mr. Flood's name comes in

6    it is she puts Mr. Mathis in Mr. Flood's vehicle the morning or

7    the day that he comes home with blood on his pants; that he had

8    gotten into Flood's vehicle, came back sometime later, had blood

9    on his pants, saw a news report and remembers thinking, it must

10   have something to do with that.

11             THE COURT:  Okay.  Was the implication that Flood was

12   involved with another murder or possibly Mathis?

13             MS. WILKINSON:  No, Mathis.

14             THE COURT:  Maybe that's really what we're talking

15   about, Ms. Kahn.  If she saw blood on Mathis' shirt and she --

16   if the argument was that she became confused about Mathis, was

17   he even alive at that point?  He certainly wasn't in the trial.

18             MS. WILKINSON:  No, he was never charged.

19             THE COURT:  So, she's -- they're asking about whether

20   there's some other murder involving Mathis, not necessarily

21   Flood.  Why would that by prejudicial to Flood?

22             MS. KAHN:  Would Your Honor like me to respond?

23             THE COURT:  I'm asking you that question.

24             MS. KAHN:  Oh, this is how I see it.  Lighty's counsel

25   was -- should I --

```
1                 THE COURT:  Wherever you wish.

2                 MS. KAHN:  Lighty's counsel was painting her testimony

3      as circumstantial evidence that Mathis and Flood were involved

4      in the Hayes murder by virtue of the fact that Flood picked him

5      up and brought him back.  And then when Mathis came back, he was

6      bloody.  That was their circumstantial evidence that he did a

7      murder, which was the Hayes murder.

8                 The government says, well, that doesn't make any

9      sense.  It could have been -- you lived in a high crime area.

10     There's all kinds of murders.  Well, that's piggybacking on

11     Lighty's theory that Flood picked up Mathis, took him, brought

12     him back with blood after some other murder, because it wasn't

13     Mathis murder.  The government left that impression that it was

14     another murder that involved Flood in the exact same

15     circumstantial way that Lighty's counsel was suggesting.

16                THE COURT:  Did they go anywhere beyond the bloody

17     shirt?  I mean, how much more did they say about that?

18                MS. KAHN:  I believe that was, essentially, the

19     balance of the arguments.

20                THE COURT:  Okay.  I understand your argument.  Let's

21     go on to something else.

22                Well, before you argue the, the last collective

23     prejudice, why don't you go back to the ineffective assistance

24     on, on the plea bargain, plea negotiations.

25                MS. KAHN:  So, the lead claim in the petition is that
```

```
 1    counsel was unquestionably ineffective for failing to make any
 2    effort to seek to resolve this case by way of a plea.  You know,
 3    as the Supreme Court has been clear that the plea negotiation
 4    process not only is a critical part of the -- of the criminal
 5    justice process, but is the criminal justice system, I believe,
 6    is the language that they used in Frye.
 7              This -- I mean, this is particularly true where, you
 8    know, the evidence is strong, the consequences of losing are a
 9    mandatory life sentence.  You know, as we know, we don't see
10    very many defendants walking out this door.  Once you're in here
11    and over here, your conviction is very, very likely, which is
12    why I pointed out in the petition that at the time that
13    Mr. Flood was convicted, 95 percent of our criminal defendants
14    pled out and counsel failed to make any effort.
15              It wasn't until actually the government approached
16    them during jury selection and said, are you guys going to look
17    for anything?  Are you going to try to get an offer here?  You
18    know, do you want to try to bring him in?  And they never took
19    that to the client.  They never discussed it at all.  And
20    Mr. Lawlor puts in his affidavit, this was my first federal
21    felony case.  I cannot understand for the life of me why I
22    wouldn't have pursued a plea in this.  It's everybody's stock
23    and trade.  It's mostly what we do.
24              You know, it really, once you're indicted, a lot of
25    the time, right, it's really where it's about negotiating down
```

38

 1    the sentence and it was simply never done.  So, you know, any,

 2    any sentence less than mandatory life would have been better

 3    than a virtually assured sentence of mandatory life coming in

 4    here to be tried.

 5            So, the government says, we can't prove, you know,

 6    there was no offer.  We all agree there was no offer, but of

 7    course, that is a product of counsel's ineffectiveness that

 8    there was no offer.  They never sought an offer.

 9            THE COURT:  You're indicating that the fact that

10    counsel did not initiate a request for a plea in and of itself

11    establishes ineffectiveness?

12            MS. KAHN:  I believe in this day and age --

13            THE COURT:  Is there -- does the cases say that?

14            MS. KAHN:  No, because it's so vanishingly rare where

15    95 percent of cases resolved by way of plea, it's vanishingly

16    rare and almost unimaginable that in a case of this nature, in a

17    murder case carrying mandatory life that no one would even seek

18    an offer.  That's the only way you can save your client.

19            THE COURT:  Aren't there cases actually, though, that

20    have held that even if the government says, let's talk plea

21    negotiations and nothing picks up from there, that the failure

22    to communicate is not ineffective assistance.

23            MS. KAHN:  In this case, it wasn't the failure to

24    communicate.  We're even a step more ineffective than that.

25    There was never even an offer sought.

```
 1              THE COURT:  Is that a stronger case or a weaker case?
 2   I'm not sure.
 3              MS. KAHN:  I believe it's a stronger case, because if
 4   you -- at least you took a step to negotiate and at some point
 5   along the line you made some sort of decision that maybe that
 6   wasn't a very good offer for your client.  There was some
 7   attempt to resolve the case.  Here, it was just absolutely never
 8   pursued.
 9              And, you know, I have an expert affidavit --
10              THE COURT:  You're contending it was, in fact, at
11   least some form or something or other happened during jury
12   selection.
13              MS. KAHN:  Well, the government approached counsel and
14   said, you can bring him in and you can proffer him.  And they
15   thought, well, we're not going to do that now and they never
16   even asked Mr. Flood about that.  And so, you know, it just --
17   and at that point, at jury selection, an offer is probably not
18   going to be very good.
19              But they made an overture, so there was going to be
20   maybe some offer depending on what the proffer would be, but
21   they didn't even take it to the client.  So, you know, as we
22   point in expert affidavit and Mr. Lawlor's affidavit, and it
23   simply just doesn't happen.
24              So in government's response, they say, well, we
25   wouldn't have made him an offer without cooperation.  Well,
```

1    there's a couple problems with that.  First of all, that's there

2    averment in their petition.  It's not a sworn statement.  It's

3    not testimony, so.  It's not how we get evidence into the

4    record, so I don't think that we -- so I think we really need --

5           THE COURT:  I don't know exactly what was spoken to

6    McKenna or Lawlor?  What words were spoken?  What does he say?

7           MS. KAHN:  That Ms. Wilkinson said to them?

8           THE COURT:  Yeah, not what you think he might say if

9    we had a hearing some day, but what do you say now to try and

10   establish a colorable basis to even have an evidentiary hearing

11   on this point?  It's very important.  The words matter here in

12   terms of what's said.

13          For example, let me just give you the hypothetical.

14   The government says to the defense counsel, are we ever going to

15   talk plea, at some point?  Suppose those are the only words for

16   now.

17          MS. KAHN:  Mm-hmm.

18          THE COURT:  Well, that's touching on -- is there some

19   obligation on the part of the defense counsel to say, well, not

20   now or something like that; or yes, let's talk?  Is that

21   omissive right there?  Is that something you have to communicate

22   to the client, maybe we ought to talk plea while the jury is

23   being selected?

24          MS. KAHN:  If you're in a case where you're facing

25   mandatory life and the government is approaching you and

41

1    potentially offering something, I think you're absolutely remiss

2    --

3           THE COURT:  Are they offering anything?

4           MS. KAHN:  They said, do you want to come and talk?

5    You have to bring him in.  And they just said, we're not doing

6    it.  They didn't ask Mr. Flood if he wanted to do that.

7           THE COURT:  Okay.

8           MS. KAHN:  So --

9           THE COURT:  I don't think I have all that in Lawlor's

10   affidavit, but that's what you're saying now.  He said --

11          MS. KAHN:  It says -- his affidavit says, "During jury

12   selection, I was approached by Ms. Wilkinson about the prospect

13   of pleading.  Mr. McKenna and I met with her and Ms. Johnston

14   that same night after trial.  We were informed that in order to

15   receive an offer, Mr. Flood would have to proffer.  Mr. McKenna

16   and I discussed this and decided proffering at this stage of the

17   case was too risky.  We failed, however, to permit Mr. Flood to

18   make an election about proffering.  That said, we did discuss

19   the notion of pleading guilty with him and he was not reluctant

20   to do so."

21          THE COURT:  When did they talk about discussing the

22   possibility --

23          MS. KAHN:  That is not entirely clear from the

24   affidavit.

25          THE COURT:  Wouldn't that be significant if they said

1    then and there, we talked --

2         MS. KAHN:  Well, I imagine it had to be then and there

3    because they had never sought an offer, and they had no reason

4    not to seek an offer in this case.  I mean, they're not going to

5    come in here when very likely --

6         THE COURT:  I need to follow exactly what you're

7    arguing.  If there's a general statement, are you going to come

8    in, but you have to proffer.  And at that point, the defendant

9    is not totally resistant to a plea, isn't there something that's

10   being communicated then and there --

11        MS. KAHN:  Well, there might have been.

12        THE COURT:  -- going forward.  Just the idea of maybe

13   talking then and there, so there is a communication and there

14   is, at least, in the air plea discussions that never go

15   anywhere.  And then there's a decision tactically made.  We

16   didn't think -- maybe counsel rues it now, but we didn't think

17   it would make good sense at that stage of the game, that late

18   stage of the game.  What was it going to get us?  Nothing.

19        MS. KAHN:  Well, A, they're absolutely right that

20   waiting until jury selection until the government walks over to

21   asks you is too late.  Plea negotiations needed to happen early

22   and often in this case.

23        THE COURT:  Government didn't have to offer anything,

24   right, ever?

25        MS. KAHN:  Absolutely not.  And if they had gone and

 1    said, what are you offering us?  And they said, bye-bye, we're

 2    not listening to you or we're not going to listen to you without

 3    cooperation and your client won't cooperate, that's in your

 4    notes, that's in your file, that's in your letters to the

 5    client, we're done.  None of that happened here.

 6         THE COURT:  But they did say, you represented -- I

 7    haven't heard from Ms. Wilkinson yet who is going to be arguing

 8    her own cause, I guess, but you did say that they said he'd have

 9    to come in and proffer.  And they thought, not a good idea at

10    this stage.

11         So why isn't that a communication of something, not

12    necessarily a plea offer?  Then when you go back to your client

13    and say, would you plea under the circumstances or would you

14    plea?  And he says, well, maybe.  Is that all some -- is that

15    all add up to ineffective assistance?  Maybe it does in your

16    theory.

17         MS. KAHN:  It does in my theory.  None of that should

18    have waited until jury selection.  He was not told --

19         THE COURT:  It's because he didn't go to the

20    government before jury selection and say, can we talk, can we

21    talk plea?

22         MS. KAHN:  Should have been going there years before

23    jury selection, can we talk plea?  And I think that's what he

24    would say now and what my expert counsel says now.  That's what

25    everybody does.

44

```
 1              THE COURT:  I know that it's a standard part of

 2     practice and maybe the major part of criminal defense work in

 3     both federal and state court, but the question is under these

 4     circumstances whether you've got constitutionally ineffective

 5     counsel at that.

 6              MS. KAHN:  I can't think of a stronger example of

 7     constitutionally ineffective of assistance of counsel when

 8     there's one way, basically, to save your client from mandatory

 9     life and you don't pursue it at all.

10              THE COURT:  Well, it sounds to me that one way to save

11     your client from any kind of criminal conviction is never to go

12     to the government and ask for anything about a plea.  That's

13     what you're saying in effect.  That's what this adds up to.

14              MS. KAHN:  Oh, is the Court suggesting that you would

15     roll the dice and get your client sentenced to mandatory life so

16     you could go back and --

17              THE COURT:  Well, but you're saying that the mere

18     failure of defense counsel to ask for a plea, to ask for plea

19     negotiations ipso facto is ineffective assistance

20     constitutionally speaking and upsets any verdict that follows.

21     That's what you're arguing.  And I'm asking you, then is it

22     always in the interest of a defendant to have his counsel not

23     ask for plea discussions?

24              MS. KAHN:  I have a couple responses to that.

25     Absolutely not.  That would be disbarrable conduct to throw a
```

```
 1    trial where your client gets mandatory life in the hope that
 2    you're going to get the blue elephant, pink elephant of relief
 3    in 2255, which hardly ever happens and there are many, many ways
 4    to make sure that doesn't happen.
 5              The Court can inquire on the record, were there plea
 6    negotiations in the case?  Was there an offer?  Did you seek
 7    one?  What was it?  Did you tell him, the client?  Did you know
 8    --
 9              THE COURT:  Well, the Fourth Circuit has come down
10    pretty hard on the government saying -- the judiciary saying
11    anything about plea negotiations, believe me.  I was in a case
12    sometime back and I don't know whether Ms. Wilkinson was, where
13    I suggested to a defendant, why don't you go and talk to the
14    government, see what they offer.  And the Fourth Circuit said,
15    you can't do that, which I don't agree with, but nonetheless
16    that's what they've said.
17              MS. KAHN:  Your Honor, I think the Court becoming
18    involved in encouraging or discouraging negotiations is
19    different from putting --
20              THE COURT:  Well, can the Court say, have there been
21    plea negotiations?  What was said when?  And so, aren't I --
22    wouldn't the Court be four square in the -- wouldn't I have to
23    be judging whether there had been an advance effective
24    assistance of counsel by reason of the nature of the
25    conversation?
```

1          MS. KAHN:  The only reason I'm bringing this up is to

2     put to bed the notion that somehow counsel is going to

3     intentionally not seek a plea offer in the best interest of

4     their client so that they can maybe save up for post-conviction

5     later.  You can simply inquire on the record, was there any

6     negotiation in his case?  Government did you extend an offer?

7     Yes, we did.  No, we didn't.  Yes, we offered him 20.  No, he

8     wouldn't take it.  Done for the record, over.

9          THE COURT:  I think that's problematic.  I'm not sure

10     the judge can do that.  I really -- I'm concerned about it.

11          MS. KAHN:  Well, if the judge can't, I think we still

12     go back to the fact that if anybody is going to commit complete

13     professional conduct by not representing their client at trial,

14     not seeking a plea so that they maybe can come back, get a new

15     trial --

16          THE COURT:  Well, don't spend too much time on that.

17     I just was sort of extending it out a little bit and just

18     suggesting those -- that's sort of the inherent problem with the

19     argument really.

20          This is a little farther along the spectrum, but

21     candidly not much.  I mean, you're upsetting a trial years

22     later, a major trial on a major crime by just suggesting that

23     this casual and that's what it sounds like pretty much to me

24     back and forth -- well, not even that.  You're saying the

25     failure to follow up on this casual, isn't that --

1          MS. KAHN:  No, I think the casual is after the game is

2     over.

3          THE COURT:  Okay.  So you're -- all right, we're clear

4     on this now that nothing was initiated prior by counsel and that

5     was constitutionally ineffective.  Is that a fair statement?

6          MS. KAHN:  No offer was ever sought.  They say they

7     had a client who is amenable.  I don't know at what point they

8     bothered to ask him whether he was amenable, but he was amenable

9     at some point.  And never told him, look, the government just

10    walked over.  Do you want to proffer?  Nothing.  At that

11    point -- I mean, that's all that did happen and that was too

12    late.  It should have all happened before.  What do you want

13    from us?

14          So the government comes now and says, well, we

15    wouldn't have offered him anything if he didn't cooperate.  He

16    hasn't said he would cooperate.  There's no hard and fast rule

17    that says you have to cooperate, so there's no reason that

18    Mr. Flood would have now known that was part of the deal.

19          And these are, again, self-serving representations,

20    unsworn representations in a responsive pleading, which is why I

21    believe a hearing is required on that issue.  If the government

22    is going to say --

23          THE COURT:  Tell me what a hearing would look like.  I

24    was trying to get my hands around that as I was preparing for

25    this.  What do you expect to elicit at a hearing?

48

```
 1              MS. KAHN:  Well, for example, the government would

 2    testify that, well, we never would have -- it's our policy that

 3    we never would have offered him anything in this case unless he

 4    cooperated.  And you know, I could theoretically cross-examine

 5    on other cases where they have offered non-cooperation pleas if,

 6    for example, the client testifies.

 7              So, if they say, we never would have offered him

 8    anything without cooperation and the client says, well, I never

 9    would have cooperated, then I agree the claim is over.

10              THE COURT:  Was he maintaining his innocence, by the

11    way, throughout the trial?

12              MS. KAHN:  Well, he was never offered a plea, so he

13    went to trial.  I mean, no, he didn't go in front of the jury

14    and say, I did it, so, yes, but he -- you know.

15              THE COURT:  Let me ask you a question.  Could one read

16    on the basis of this case that a plea was -- plea discussions

17    were never really in the picture?  I mean, in a case like this

18    as opposed to many?  Candidly, I'm not sure why the government

19    would have gone to him in the course of jury selection.  It's a

20    little bit peculiar to me and maybe Ms. Wilkinson can tell me

21    why it came at that stage, if it came at all.

22              MS. KAHN:  I believe she doesn't recall that that

23    conversation occurred, but that's a disputed matter that has to

24    be resolved at a hearing, I believe.  You know, if -- and what

25    they say is not that it was never in the cards, we never would
```

 1   have offered him anything.  They do say that we would have

 2   demanded cooperation, but nobody ever asked Mr. Flood whether he

 3   would cooperate.  So again --

 4          THE COURT:  Well, it --

 5          MS. KAHN:  Sorry.

 6          THE COURT:  I thought there was a line you read from

 7   Lawlor's affidavit that said, he wasn't totally resistant to a

 8   plea.

 9          MS. KAHN:  He wasn't totally resistant to a plea.  It

10   doesn't speak to whether he wouldn't have been interested in

11   cooperating or proffering, because he does say, they never told

12   him about that.  They never said, do you want to come in and

13   proffer.  They made that decision for him, that would be bad

14   now.

15          Now, whether that would be bad a year and a half ago,

16   that's something you got to talk to your client about for a long

17   time, right?

18          THE COURT:  This trial was -- we're talking about

19   when, 2012?

20          MS. KAHN:  Five.

21          THE COURT:  Wow, going back a long way.

22          MS. KAHN:  Yep.

23          THE COURT:  What happened in 2012?  He did something

24   else?

25          MS. KAHN:  Yeah.

```
 1              THE COURT:  Okay.  Well, maybe the timeline has
 2   something to do with it too.  Frye has been decided since then.
 3              MS. KAHN:  Frye was decided between the petition and
 4   the reply, but you know, Frye didn't really change the game that
 5   much.
 6              THE COURT:  Well, they used the word "formal" anyway,
 7   which is going to be a bit of a problem in this case.
 8              MS. KAHN:  Yeah, I mean, I don't think that -- you
 9   know, Frye is on all fours with this case, because of course in
10   Frye there was an offer.  Because just again, I just think it's
11   so unusual that nobody would even attempt.  I mean, sometimes it
12   doesn't go very far.  You know, sometimes somebody will go to
13   the government and they'll say --
14              THE COURT:  Go ahead.
15              MS. KAHN:  They'll say, they're offering 30.  They're
16   not going to move off of it.  My client is not going to go for
17   more than 12 and it kind of, you know, it falls apart there.
18   But to have no, no approach made, it's really fairly unique in
19   my experience and the numbers just don't bear that out.
20              When 95 percent of people are pleading, I don't think
21   those 95 percent came in and fell on their swords with no
22   agreement and we know that 95 percent of people aren't
23   cooperating.  So there are offers being made regularly.  And you
24   know, if the government doesn't want to go to defense counsel
25   and make an offer, which they could, then it's incumbent upon
```

1   defense counsel to go and ask for one.

2          THE COURT:  I assume you're familiar with the

3   *Merzbacher* case from the Fourth Circuit.

4          MS. KAHN:  I am not.

5          THE COURT:  You are?

6          MS. KAHN:  I'm not.

7          THE COURT:  Does the government know about *Merzbacher*?

8          MS. KAHN:  I am not.

9          THE COURT:  Oh, well, let me give you the cite.

10  706 F.3d 356, 706 F.3d 356, a 2013 case.  "Failure to

11  communicate a much firmer offer here, no ineffective

12  assistance."

13         MS. KAHN:  I certainly agree, again, that there could

14  be circumstances where the prejudice in that situation is

15  different.  Maybe they couldn't prove that the person would have

16  taken the better offer or maybe they couldn't --

17         THE COURT:  Well, you can't do it either, can you?

18  Can you do that -- you can't do that either.  All you can say

19  is, had -- had there been discussions and had there been a

20  firmer texture given to the nature of the -- what the plea might

21  be that the defendant would have accepted it.  Are you arguing

22  that?

23         MS. KAHN:  No, I can't say that because of the level

24  of ineffectiveness here.  In that case, at least the attorney

25  made an effort.  They got some kind of offer.

1          THE COURT:  Why is there qualitatively a difference?

2    If they get a firmer offer that they don't communicate.  Here

3    they just -- it's a much flimsier, quote-unquote, offer and

4    really may not be an offer at all --

5          MS. KAHN:  Right.

6          THE COURT:  -- and they don't communicate it.  Why is

7    this a stronger case?

8          MS. KAHN:  There is no offer in this case.  That's why

9    it's a stronger case.  In that case, at least counsel took one

10   step of ineffectiveness -- I mean, of effectiveness toward at

11   least attempting to get a plea.  Whether he then failed

12   somewhere down the road and in that case --

13         THE COURT:  Because there was a firm offer in the

14   other case, it wasn't communicated, that's a weaker case than

15   this case where there wasn't a firm offer that wasn't

16   communicated.

17         MS. KAHN:  The weakness in this --

18         THE COURT:  Having trouble with the logic of that

19   argument frankly.

20         MS. KAHN:  The weakness and the strengths of the cases

21   depend on the facts of the cases.  So, in that case it wasn't

22   communicated and maybe there's a letter in the file from the

23   client that says, I'd never take anything who -- I don't know.

24   You know, there's scores of cases like this and the fact

25   patterns are all different.  I mean, there's one in the Fourth

1    Circuit where, again, like no -- sorry.

2            THE COURT:  Well, if either of you read *Merzbacher*, I

3    want you to read it because it really gets a lot closer, I

4    think, to maybe what you're arguing.

5            I understand your argument now to clearly be that the

6    total failure of defense counsel to initiate and try and pursue

7    plea discussions is a constitutionally ineffective assistance in

8    this case.

9            MS. KAHN:  And I think that our -- Mr. Flood should

10   not have any less right to the effective assistance of counsel

11   because of the double layers of ineffectiveness.

12           If the counsel had gone and at least done something,

13   and then made some strategic decision about not communicating.

14   Here, I don't even get to get that far, because they didn't do

15   anything.  So, essentially, I feel like the Court is trying to

16   say, well, if they had gotten an offer, you'd have an easier

17   time proving their ineffectiveness.  But they didn't get an

18   offer, so I'm stuck and Mr. Flood is stuck with having nothing

19   done on his behalf in the most critical portions of the

20   negotiations.

21           THE COURT:  All right.

22           MS. KAHN:  Thank you.

23           THE COURT:  Let me hear from the government.

24           MS. WILKINSON:  Your Honor, as an initial proposition,

25   it simply cannot be and nor do I think it to be true that every

```
 1    time a defense attorney doesn't ask for a plea offer they are
 2    constitutionally ineffective.  I will proffer right now to the
 3    Court, it happens many times up in the U.S. Attorneys' office in
 4    Baltimore where the Federal Public Defenders office does not ask
 5    the government for a plea agreement.
 6            I'll give you an example of a case.  A distribution of
 7    child pornography where the man-min is five years, no priors on
 8    the defendant and there is a pretty clear record up in Baltimore
 9    that the defendant is going to get five years no matter what.
10    He takes the shot and goes to trial.  Never asked us for a plea
11    agreement.  Goes to trial and maybe he gets a year more or
12    whatever.  I don't know, Your Honor.  That's not even relevant.
13            The point is, is that there are many occasions where
14    defense attorneys do not ask for plea agreements.
15            THE COURT:  And that's why?
16            MS. WILKINSON:  Because they make their own strategic
17    decision about either to proceed to trial because the client
18    never even wants to go that far with the government, possibly.
19    That's between them, because maybe it shows a sign of weakness.
20    Maybe think they're going to roll the dice and see what happens
21    before a jury.  Or they're going to plead straight up because
22    they want to plead straight up and make their own argument that
23    a sentencing regime that's very different than it used to be
24    when I started in the U.S. Attorneys office when the guidelines
25    were mandatory.  There are many reasons why a defense attorney
```

1    might never ask for a plea offer in a particular case.

2           My second point is here is that the burden is on the

3    petitioner here.  And if you read Mr. Flood's affidavit, he

4    loses on its face, because he states here, all I wanted to do is

5    avoid getting a life sentence.  I was hoping I could get a plea

6    and get a lower sentence.  And I know my lawyers never asked the

7    government about the possibility of a plea before trial.

8           What he never says in here is what Ms. Kahn believes

9    is so ineffective about Mr. Lawlor that, first of all, that he

10    didn't request a plea offer; but second, that he didn't somehow

11    communicate the willing -- the offer -- I don't even want to use

12    that word.  The suggestion of cooperating in this case.

13           What Mr. Flood needed to put in this affidavit, if it

14    was true, is that I was prepared to accept responsibility for my

15    role in the offense and cooperate against Mr. Wilson and

16    Mr. Lighty, and testify in order to get out from underneath a

17    life sentence.  Then we might be talking here, because then

18    maybe Mr. Lawlor should have advised his client that the

19    government had possibly made these overtures, which I frankly do

20    not recall if we did, Your Honor.

21           THE COURT:  Did you ordinarily make verbal kinds of

22    overtures before they get written?  I guess you do.

23           MS. WILKINSON:  All the time, Your Honor.  That's plea

24    negotiations, like -- the original conversation sometimes it

25    comes from the government, do you want a plea offer?  Sometimes

```
 1    it comes from the defense.  Hey, can you get me a plea offer?  I

 2    don't think my client is interested --

 3              THE COURT:  Why so late at sentencing?  It seems a

 4    little unusual to me.

 5              MS. WILKINSON:  Sentencing?  You mean at jury

 6    selection?

 7              THE COURT:  Sorry, at jury selection.

 8              MS. WILKINSON:  First of all, I don't recall this

 9    happening, Your Honor, but I -- if it did, I -- perhaps because

10    it's, you know, where the rubber meets the road so-to-speak or

11    maybe -- I have no idea because I have no recollection of doing

12    it.

13              THE COURT:  Do you make any -- do you even suggest the

14    possibility of a plea discussion when you're at the point of

15    selecting the jury?

16              MS. WILKINSON:  Oh, cases plead at the time of

17    selecting a jury.  Many times sometimes in opening statement and

18    we'll make an offer at that point. I mean, every case is

19    different.

20              THE COURT:  What kind of words do you typically use if

21    it happens in that situation?  Hey, would you like to talk about

22    a plea or what?  I'm not asking for this case, but you say it

23    happens in other cases, so what's the typical dialogue.

24              MS. WILKINSON:  You mean in jury selection?

25              THE COURT:  Yeah.  I mean, you see counsel where --
```

57

```
 1              MS. WILKINSON:  You've seen everything.  Come on, why
 2      is your client doing this?  Let's just go to trial -- I mean,
 3      let's just plead this.  Why isn't he pleading?  Because we
 4      believe the evidence is so powerful and strong, or maybe we're
 5      waiting for the witness to show up and here they are.  And come
 6      on, what are you doing?  I mean, that might be something we
 7      would say to a defense attorney.
 8              THE COURT:  Do counsel sometimes say, not going to
 9      happen or --
10              MS. WILKINSON:  Yes, of course.  I mean, I can give
11      you scenarios of every situation that we just talked because
12      every case is so different and every person is different.  Every
13      person charged with a crime is different.  Every attorney is
14      different.  Every strategic decision they make is different
15      here.
16              But, Your Honor, I do want to talk to you about a
17      point that the Court made earlier too that I think the Court can
18      take notice of the seriousness of this case.  And the fact that
19      we were pursuing the death penalty against Mr. Lighty who is the
20      trigger man here, that the government would not have made a plea
21      offer that did not include cooperation here.  It just wouldn't
22      have happened because of the nature of this case and Mr. Flood's
23      involvement.  Remember --
24              THE COURT:  He doesn't say, Flood doesn't say, I would
25      have testified against Lighty.
```

58

1           MS. WILKINSON:  Correct, unless he would testify

2      against Mr. Lighty, because remember, we did not have that in

3      this case.  We did not have someone that was there and could

4      tell us minute by minute what happened.  This was a highly

5      circumstantial, though compelling and powerful case against

6      these particular defendants.

7           But it wasn't like, for example -- I'll refer to a

8      case that I tried before Your Honor, *Higgs* and *Haynes*, where we

9      had a cooperator in the back seat who testified about what

10     happened.  We didn't have that in this case.  I think the Court

11     can take notice about that where we have three people involved

12     in a brutal killing of a policeman's son involving a kidnapping

13     across state lines where he's on his knees begging for his life;

14     that unless you have something to offer us, we have no incentive

15     to --

16          Frankly, all of them deserve life sentences and that's

17     exactly what should have happened in this case.

18          THE COURT:  Didn't you indict Flood for capital murder

19     at first too?  I thought you backed off of that.

20          MS. WILKINSON:  I can't remember the focus, but there

21     was some point a no seek.  And remember, at the very beginning

22     of this case, Your Honor, where we did not know what was going

23     on, Mr. Flood was even in the Grand Jury because we didn't know

24     his involvement at that point, obviously.

25          And I don't remember the sequence of events, but at

1    some point we must have thought that Mr. Flood could be a

2    witness in this case and, actually, put him in the Grand Jury.

3    But of course he lied and that was part of the evidence at

4    trial.

5             And I think that was the part of the evidence

6    involving his car as well, Your Honor, that we were able to

7    prove it through that scenario going back to another question

8    that the Court had.

9             But here, more importantly, what we're looking at here

10   is a defendant who has not come forward and said that any of

11   this would have happened; that had he known that the government

12   said this to his lawyer, even assuming that it's true during

13   jury selection that he would have embraced that.  He would have

14   come in, he would have proffered, he would have truthfully done

15   it.  Where is the prejudice or harm here on a constitutional

16   ineffectiveness question under *Strickland*?  The Court has to

17   make both findings here.

18            First, the government argues that it cannot be that

19   there is an absolute rule that if you don't ask for a plea

20   agreement you are ineffective as a defense attorney.  That

21   cannot be.

22            THE COURT:  That's the essence of the --

23            MS. WILKINSON:  They're argument.

24            THE COURT:  -- the claim here.

25            MS. WILKINSON:  That is absolutely the essence of the

60

1   argument and it just cannot be.  For the reasons also that the

2   Court suggested because, you know, why not come up and raise it

3   later then and say, oh, I never asked for a plea.  You get a

4   second bite because I didn't follow the rule of defense attorney

5   work that you have to ask for a plea.

6           Many attorneys choose not to ask the government for a

7   plea offer.  Maybe they're going to sit back and wait and see if

8   the government does.  They don't want to negotiate against

9   themselves.  Maybe they think they should just go to trial and

10  roll the dice.  Maybe their client is innocent and --

11          THE COURT:  Okay.  That's an interesting thing though

12  to consider.  That's all true what you say, but we have an

13  attorney who said, I goofed.  I should have done it, I would

14  have done it.  Now, does he carry the day because he says that?

15          MS. WILKINSON:  No.

16          THE COURT:  You can argue why generically, you know,

17  it wouldn't be -- and maybe that's the way the case gets

18  resolved in the end.  The mere fact of failing to initiate is

19  not ineffective assistance.  But this lawyer says, yeah, it

20  really was.  I should have done it and I've done it every time

21  sense.

22          MS. KAHN:  Of course, his co-counsel didn't come in

23  and provide the same thing --

24          THE COURT:  Well, he'll say the same thing.  That's

25  really again -- let me go back to my issue.  I'm trying to

1   figure out what a hearing would look like.  How much more meat

2   gets onto this claim in an evidentiary hearing that I don't have

3   now.

4          Lawlor comes in or -- and they are decent lawyers.  I

5   have no quarrel with either of them, but they -- I don't know

6   how much you embellish.  I mean, maybe you call Flood and he

7   says, oh, yeah, if I had known, I would have definitely pled to

8   cooperate.  He says that now, hasn't said it in his affidavit.

9          Now, for me -- first of all, you know, hearings and

10   that's certainly what this argument today is about.  This is not

11   the hearing so much, is to whether we should have a hearing

12   particularly on that one point.  They're not the norm, they're

13   extraordinary.  And right now there has to be some disputed

14   material fact.  I'm not sure there's any disputed material fact

15   here.  There has to be --

16          Well, there are credibility issues which would open

17   up, I guess, at trial and it would take the form of a far more

18   expansive statement about, quote-unquote, what happened than I

19   have now on the request for holding a hearing, which is just a

20   colorable claim.  So, I'm dealing with those issues about

21   whether, frankly, there should be a hearing at all to go forward

22   on this.  That's really the essence of where we are on this

23   argument today or whether it can be decided on the papers.

24          MS. WILKINSON:  I would submit that it can, Your

25   Honor.  The government is telling the Court to accept as true

1   that it happened as Mr. Lawyer said it did, accept that as true.

2          THE COURT:  Well, I don't know what Lawlor is going to

3   say at a hearing though.  That's what I'm concerned about, not

4   through any sense of deliberate misrepresentation to the Court,

5   but these claims have a way of --

6          The way a witness at trial ends up remembering a lot

7   more at trial than they told you before trial, I just wonder.

8   And same with Flood, he remembers a lot more now about what he

9   would have done.  Certainly, he probably says, he would say, I

10  would have cooperated if it would have cut my sentence in half.

11  Well, sure, we hear that all the time from people who regret not

12  pleading.

13         MS. WILKINSON:  Or not cooperating.

14         THE COURT:  Or not cooperating.  I mean, that's a

15  fairly common argument.

16         MS. WILKINSON:  Well, and I certainly don't think it's

17  fair now when Mr. Flood has already filed his affidavit setting

18  forth what his position is.  He never puts in here his

19  willingness to accept responsibility and plead guilty in this

20  case.  What he's saying is, I hope -- I just didn't want to get

21  a life sentence.  He doesn't even say that he did it.  You know,

22  he doesn't put in here, I would have accepted responsibility, I

23  would have proffered, I would have cooperated, I was willing to

24  testify, I was willing to do all these things.

25         And he certainly knows when he's filing the affidavit

63

1    that that's the issue in the case is that Mr. Lawlor is saying

2    he didn't relate that information to him, nor did he come

3    earlier and ask for a plea.

4            And, Your Honor, I have to also say, like, Mr. Flood

5    was not a stranger to the criminal justice system either.  And

6    the idea that a defendant wouldn't say, hey, you know, I'm ready

7    to plead guilty and accept responsibility for this, that that

8    would happen, he doesn't say that here either.

9            He never says, I told my attorney, go get a plea --

10   you know, ask for a plea.  I mean, it's just common sense that

11   if that's the way you want to go, you would say that in here.

12   And that's what's missing in here.  This is just Mr. Lawlor

13   saying, hey, I know now.  I'm going to go ask for a plea in ever

14   case.

15           And you know what, I can't imagine that's true either.

16   There are circumstances where a defense attorney would never ask

17   the government for a plea agreement, they just wouldn't.

18           THE COURT:  All right.  Ms. Kahn, anything further you

19   want to say on that point?

20           MS. KAHN:  Yes, please, Your Honor.

21           Respectfully, there are no circumstances in which your

22   client is facing mandatory life at trial and the evidence is

23   very strong, and you do nothing to try to avoid that outcome.

24   That's very different than not going to the government where

25   there's five years on the table for whatever reason.  It's

64

1    qualitatively different.

2         And if we want to not make the claim so broad that

3    every time you don't seek a plea offer, you're per se

4    ineffective, you are when there's mandatory life on the table

5    and the Fourth Circuit has said as much.  It's unpublished, but

6    they said it in *United States versus Pender*, 514 Fed Appendix

7    359.

8         Now, in that case, it was factually distinguishable

9    because the government conceded we would have offered him

10   something, which they're not doing here, but that raises the

11   point about the hearing.

12        The Court has heard a lot of testimony today from

13   Ms. Wilkinson about what she would have offered and why she

14   wouldn't have offered it, and her experience with other people

15   not seeking pleas.  And that's all testimony that needs to be

16   done at a hearing and I don't think the Court can rule on the

17   papers based on those unsworn statements as true as they may be.

18   That's just the way the law is.

19        And I just want to clarify one more point.

20   Ms. Wilkinson is very adamant that Mr. Flood had to say at this

21   point, I was guilty, I did it, I would cooperated.  He doesn't

22   have to say he would have cooperated.  Maybe in Ms. Wilkinson's

23   practice that's a requirement for a plea, but it's not always a

24   requirement for a plea.

25        So when he's filing his affidavit, he didn't know

1  about the government's various requirements.  He said, I was

2  amenable to a plea.  Now, whether that had conditions on it,

3  that can be established at a hearing, but he is under no

4  affirmative obligation to say that in his affidavit.

5  THE COURT:  Well, the question, though, is whether I

6  can decide as a matter of law, because I think you're making the

7  argument, that the failure of defense counsel to seek plea

8  discussions is generically, constitutionally defective.  Or now

9  that you've refined it somewhat, in cases involving possible

10  life sentences, it's constitutionally ineffective.  I mean,

11  that's on the table right now.  I don't know what more testimony

12  from Ms. Wilkinson or Mr. Flood or Mr. Lawlor adds to that

13  concern.

14  I mean, I'm concerned about whether I'm prepared to

15  say, because I don't think any court has said yet, that the mere

16  failure of defense counsel to initiate plea discussions is

17  constitutionally ineffective and that's the main argument you're

18  making or to try and circumscribe and say, okay, only in life,

19  possible life sentences or very serious crimes.  I mean, these

20  are large propositions to float.

21  And the second concern and you can address this.  Yes,

22  we ought to have a hearing.  And there's some language in the

23  Fourth Circuit, yeah, hearings are good in certain kinds of

24  circumstances, but hard for me to find an organizing principle

25  that would say in future cases, you don't have a hearing if the

1    issue is counsel never pursued plea discussions.

2          And here what Ms. Wilkinson is saying, it's maybe her

3    experience and just a matter of informing the Court that this is

4    the way life is out there, but there certainly are circumstances

5    because I'm not involved in them that defense counsel don't ask

6    for plea discussions, don't pursue them.

7          MS. WILKINSON:  One would be, Your Honor, where their

8    client is maintaining his innocence.

9          THE COURT:  I don't have that experience, but if

10   that's the statement, maybe we need to get a supplemental

11   affidavit from the government that says, this is the way it is

12   and here is why.  But to hold a hearing is a major step that

13   involves bringing in this defendant years after the fact to say

14   whatever he may say now.  I mean, right now he's sort of got a

15   menu of things he can say.

16         What if he goes way beyond what he said in his

17   affidavit?  What am I going to do with that?  Say, well, okay,

18   it's what he says, but he didn't say it in order to try and get

19   the -- he didn't use magic words, even if he conceivably could,

20   to get the hearing.  And now at the hearing, he says a lot more;

21   same with Lawlor and McKenna.

22         There's a principle here about whether hearings --

23   when -- whether hearings should be given at all.  We know they

24   are, but under what circumstances and is this one of those

25   situations, and I need to wrestle with this.

67

```
 1              I understand your argument, the -- it's why we left
 2    this claim really for last, because it's a little more texture
 3    to it than I think, perhaps, some of the others, but we'll deal
 4    with that as well.
 5              So, I'm going to write an opinion on this.  Maybe one
 6    of the last ones I squeeze out of Julie, I don't know, or most
 7    of it.  We're pretty far along, but I really need to think about
 8    this, this last point.  And I may -- I may call for -- if I'm
 9    really concerned about whether we should have a hearing, we may
10    need a supplemental affidavit from the government about
11    situations in which counsel do not seek plea discussions for
12    what kinds of circumstances and deal with that, because I think
13    that -- you may have to decide this case more generically than
14    specifically.  I'm not sure that it's the kind of decision where
15    the Court would say, at least only in all circumstances it has
16    to be sought or -- talking about the Fourth Circuit -- or only
17    in certain limited circumstances plea discussions have to be
18    sought.
19              Those are large propositions and I don't get -- I
20    don't know now yet whether I'm prepared to say that a hearing is
21    the place to resolve all of this.  Maybe just an affidavit about
22    what those circumstances about, as I say, when plea discussions
23    are not pursued by defendant and why.
24              Anyway, under advisement.  We'll let you know.  We
25    have -- Mr. Flood is in custody for some considerable time at
```

```
 1    this point, so we're not losing much.

 2              All right.  Anything further then this morning?

 3              MS. KAHN:  No, thank you, Your Honor.

 4              MS. WILKINSON:  Thank you, Your Honor.

 5              THE COURT:  Let me actually -- let me not wait and see

 6    how I come out.  Why don't I ask for this from the government

 7    now, because I won't get an opinion written that quick and you

 8    can also respond, Ms. Kahn, if you will, but I would like an

 9    affidavit from the government about the circumstances in which

10    counsel have not sought plea discussions; what frequency, what

11    kinds of case, what reasons.  And that would be helpful to sort

12    of see whether this is somehow inherently constitutionally

13    deficient.  I mean, maybe that's what we come to.

14              MS. WILKINSON:  Your Honor, and the way I'm hearing

15    the Court, I don't know that it particularly pertains to me or

16    Ms. Johnston having to do the affidavit, but just generally

17    someone from our office.

18              THE COURT:  Somebody from your office needs to say

19    something to give me a kind of a base on how that phase works,

20    because I don't get involved in these discussions that often

21    and, frankly, I'll stay 40 miles away from.

22              MS. WILKINSON:  That there are situations where

23    defense counsel do not ask for a plea first.

24              THE COURT:  Can you get something in, like, the next

25    20 days.
```

69

```
 1              MS. WILKINSON:  Certainly, Your Honor.

 2              THE COURT:  And then you can have time to respond.

 3    I'll give you 20 days to file any kind of responsive paper that

 4    you want on that.

 5              MS. KAHN:  Just one question, Your Honor, and I'm just

 6    sort of thinking aloud about this.  Would that limited to state

 7    cases where mandatory life is the consequence of going to trial?

 8              THE COURT:  If your response is that there are

 9    cases -- I don't know if there's too many court cases.  There's

10    not that much for it.  I didn't find it and we didn't find any

11    decisions that say, the mere fact of failing to initiate

12    discussions is constitutionally ineffective.  That's a large

13    proposition you're floating right now.

14              But in terms of practice where what -- what you might

15    say, if you have something to this effect, that there is no

16    known case around the United States or somewhere regionally

17    where a major crime was involved and in every case there was

18    some initiation of plea discussions.  However you want to cope

19    with what the government says on that.

20              MS. KAHN:  Could I quickly add one more point, Your

21    Honor?

22              THE COURT:  Yeah.

23              MS. KAHN:  I just want to -- in terms of the Court

24    being concerned about making too broad of a rule.  I mean,

25    perhaps it's possible, as the Court pointed out, Mr. Lawlor
```

1    said, I just missed it.  So maybe it's possible that there could

2    be, so Ms. Wilkinson's affidavit will offer various strategies

3    that counsel may rely on not to seek a plea.  None of those

4    strategies were offered here by counsel.

5            THE COURT:  I asked that question, specifically, if

6    you remember.  What if counsel says, oh, I shouldn't have done

7    that and I goofed, and all that?  Does that trump in any way?

8    Maybe not, I mean, because you're asking for kind of a generic

9    ruling in all cases where there are no plea discussions or at

10   least in cases with major crimes, there are no plea discussions.

11   This is what the Court should find is constitutionally

12   ineffective.  That's what you're arguing.

13           And if I'm deciding those issues, then the specific

14   facts of this case wouldn't necessarily control, even though

15   client -- the lawyer may say, well, this is why I did or didn't

16   do it.  I should have, but I never --

17           You know, it never is the case that where the lawyer

18   says, I messed up, that that's enough to carry the day for

19   ineffective assistance.  And not because it's a lawyer, you

20   know, fabricating some sort of position necessarily, but it

21   doesn't really -- it's really not analytical in the end.  I

22   mean, it doesn't really help you think through these kinds of

23   cases.  And you may need a kind of -- when you're making a

24   generic ruling, you need to think of the generic category of

25   cases that are involved.  This or any other where there is no

1    initiation of plea discussions, so, but whatever -- however you

2    think you want to come back at it, that's what I'm saying.

3             Take 20 days, Ms. Wilkinson, to come up with your

4    supplemental affidavit.  Doesn't have to be from you.  Could be

5    from somebody in your office, Ms. Wilkinson.

6             MS. WILKINSON:  Yes.

7             THE COURT:  And likewise, you come back 20 days after

8    with whatever you have.

9             All right.  Anything else?

10            MS. KAHN:  No, thank you, sir.

11            THE COURT:  Thank you, counsel.

12        (Recess at 11:29 a.m.)

13                              *    *    *

14

15

16

17

18

19

20

21

22

23

24

25

1                    CERTIFICATE OF COURT REPORTER

2          I, Linda C. Marshall, certify that the foregoing is a

3     correct transcript from the record of proceedings in the

4     above-entitled matter.

5

6

7                   /s/
                    _____
8                   Linda C. Marshall, RPR
                    Official Court Reporter
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**/**

/s [1]  72/7

**0**

03-457 [2]  1/5 2/3

**1**

10:00 [1]  1/8
11:29 a.m [1]  71/12
12 [1]  50/17
18 [1]  7/6

**2**

20 [5]  46/7 68/25 69/3 71/3 71/7
2002 [1]  21/22
2012 [2]  49/19 49/23
2013 [1]  51/10
2017 [1]  1/7
21201 [1]  1/14
21202 [1]  1/18
2255 [1]  45/3
27 [1]  1/7

**3**

30 [1]  50/15
301 [1]  1/23
3229 [1]  1/23
344-3229 [1]  1/23
356 [2]  51/10 51/10
359 [1]  64/7
36 [1]  1/14

**4**

40 miles [1]  68/21
410-209-4921 [1]  1/15
410-299-6966 [1]  1/19
457 [2]  1/5 2/3
4921 [1]  1/15

**5**

5-D [1]  18/22
514 [1]  64/6
5E [1]  24/22

**6**

6966 [1]  1/19
6O [1]  27/15

**7**

706 [2]  51/10 51/10

**9**

95 percent [5]  37/13 38/15 50/20 50/21
 50/22

**A**

a.m [2]  1/8 71/12
able [3]  6/9 20/22 59/6
about [88]
above [1]  72/4
above-entitled [1]  72/4
absence [2]  16/13 22/8
absolute [2]  21/4 59/19
absolutely [10]  5/2 14/9 14/15 14/21
 39/7 41/1 42/19 42/25 44/25 59/25

accept [5]  55/14 61/25 62/1 62/19 63/7
accepted [2]  51/21 62/22
accommodate [1]  2/25
accordingly [2]  17/24 19/3
across [1]  58/13
act [3]  17/23 25/1 25/1
Action [1]  1/4
activity [1]  19/2
actually [17]  5/6 5/7 5/8 6/9 6/12 9/17
 12/15 17/15 18/21 20/22 26/2 26/11
 29/15 37/15 38/19 59/2 68/5
adamant [1]  64/20
add [4]  6/8 20/8 43/15 69/20
address [2]  26/17 65/21
addressed [2]  19/25 24/13
adds [2]  44/13 65/12
admonished [3]  5/7 23/6 23/12
advance [1]  45/23
advised [1]  55/18
advisement [1]  67/24
affidavit [30]  17/21 18/1 18/2 18/21
 22/23 22/25 24/21 37/20 39/9 39/22
 39/22 41/10 41/11 41/24 49/7 55/3
 55/13 61/8 62/17 62/25 64/25 65/4
 66/11 66/17 67/10 67/21 68/9 68/16
 70/2 71/4
affirmative [6]  5/5 10/19 11/13 12/4 12/8
 65/4
afield [1]  23/23
afraid [2]  8/8 23/18
after [6]  21/23 36/12 41/14 47/1 66/13
 71/7
afterwards [1]  30/1
again [14]  13/2 13/3 15/14 16/17 19/7
 24/21 27/19 32/22 47/19 49/3 50/10
 51/13 53/1 60/25
against [6]  55/15 57/19 57/25 58/2 58/5
 60/8
age [1]  38/12
ago [2]  13/17 49/15
agree [6]  12/1 24/22 38/6 45/15 48/9
 51/13
agreed [1]  23/6
agreeing [1]  10/3
agreement [5]  50/22 54/5 54/11 59/20
 63/17
agreements [1]  54/14
ahead [2]  21/17 50/14
AIDED [1]  1/24
air [1]  42/14
alibi [2]  10/6 19/23
alive [1]  35/17
all [50]  2/6 2/18 4/7 4/15 8/1 11/7 15/1
 18/3 21/25 26/9 26/16 27/11 27/13 34/9
 36/10 37/19 38/6 40/1 41/9 43/14 43/15
 44/9 47/3 47/11 47/12 48/21 50/9 51/18
 52/4 52/25 53/21 55/4 55/9 55/23 56/8
 58/16 60/12 61/9 61/21 62/11 62/24
 63/18 64/15 66/23 67/15 67/21 68/2
 70/7 70/9 71/9
almost [1]  38/16
along [3]  39/5 46/20 67/7
aloud [1]  69/6
already [7]  3/4 4/6 4/8 9/23 12/2 24/11
 62/17
also [11]  7/10 7/12 19/6 21/20 22/18

 23/2 23/2 25/24 60/1 63/4 68/8
altered [1]  19/3
always [2]  44/22 64/23
am [4]  12/16 51/4 51/8 66/17
amenable [4]  47/7 47/8 47/8 65/2
Amendment [1]  4/22
AMERICA [2]  1/4 2/4
amount [1]  9/2
analogies [1]  5/14
analogy [1]  16/17
analytical [1]  70/21
another [8]  12/21 29/20 32/5 32/6 32/7
 35/12 36/14 59/7
answer [1]  28/15
any [28]  9/5 10/12 12/10 15/12 15/16
 16/24 17/23 21/13 29/8 29/10 36/8 37/1
 37/14 38/1 38/2 44/11 44/20 46/5 53/10
 56/13 59/10 61/14 62/4 65/15 69/3
 69/10 70/7 70/25
anybody [4]  9/14 9/20 27/10 46/12
anyone [1]  29/21
anything [25]  2/12 9/6 13/8 13/11 19/13
 23/13 24/4 24/8 24/14 27/11 29/9 37/17
 41/3 42/23 44/12 45/11 47/15 48/3 48/8
 49/1 52/23 53/15 63/18 68/2 71/9
anything who [1]  52/23
anyway [4]  26/21 33/12 50/6 67/24
anywhere [3]  18/7 36/16 42/15
apart [1]  50/17
apartment [1]  18/14
apartments [1]  21/24
apologize [1]  7/20
apparently [1]  28/21
APPEARANCES [1]  1/12
Appendix [1]  64/6
approach [1]  50/18
approached [3]  37/15 39/13 41/12
approaching [1]  40/25
are [49]  4/9 5/8 6/21 16/23 18/4 18/6
 22/20 23/5 23/8 26/18 32/5 37/8 37/16
 37/17 40/14 40/15 41/3 42/7 43/1 45/3
 47/19 50/20 50/23 51/5 51/21 52/25
 54/1 54/13 54/25 57/5 57/6 59/20 61/4
 61/16 61/22 63/16 63/21 64/4 65/20
 65/23 66/4 66/24 67/19 67/23 68/22
 69/8 70/9 70/10 70/25
area [2]  28/23 36/9
aren't [4]  10/13 38/19 45/21 50/22
argue [15]  2/18 3/8 3/12 4/18 5/24 8/9
 9/18 20/4 20/7 20/11 21/2 29/12 29/13
 36/22 60/16
argued [4]  6/1 6/2 7/22 26/17
argues [1]  59/18
arguing [10]  10/3 12/8 12/8 30/1 42/7
 43/7 44/21 51/21 53/4 70/12
argument [26]  3/16 4/24 9/9 9/22 10/16
 22/19 23/5 23/19 23/23 29/12 29/19
 31/22 35/16 36/20 46/19 52/19 53/5
 54/22 59/23 60/1 61/10 61/23 62/15
 65/7 65/17 67/1
arguments [2]  21/9 36/19
around [4]  9/7 21/22 47/24 69/16
arrive [1]  13/3
as [42]  4/17 7/21 9/1 11/7 11/7 11/12
 13/17 14/19 14/25 15/17 17/2 17/8
 17/12 18/24 20/25 22/3 24/21 27/4 28/1

## A

**as... [23]**  30/6 31/6 32/6 33/2 36/3 37/3
37/9 39/21 47/24 48/18 53/24 59/6
59/20 61/25 62/1 62/1 64/5 64/17 64/17
65/6 67/4 67/22 69/25
**as just [1]**  27/4
**aside [1]**  4/15
**ask [23]**  29/24 41/6 44/12 44/18 44/18
44/23 47/8 48/15 51/1 54/1 54/4 54/14
55/1 59/19 60/5 60/6 63/3 63/10 63/13
63/16 66/5 68/6 68/23
**asked [8]**  31/23 32/2 39/16 49/2 54/10
55/6 60/3 70/5
**asking [5]**  35/19 35/23 44/21 56/22 70/8
**asks [1]**  42/21
**aspects [2]**  21/20 21/25
**assaultive [1]**  16/11
**assistance [16]**  3/9 6/6 10/21 13/15
29/24 36/23 38/22 43/15 44/7 44/19
45/24 51/12 53/7 53/10 60/19 70/19
**Assistant [1]**  17/8
**assume [2]**  7/17 51/2
**assuming [3]**  18/23 19/5 59/12
**assured [1]**  38/3
**at [105]**
**attack [1]**  15/5
**attempt [2]**  39/7 50/11
**attempting [1]**  52/11
**attorney [18]**  1/13 12/10 12/11 17/8
18/19 19/17 20/23 32/22 51/24 54/1
54/25 57/7 57/13 59/20 60/4 60/13 63/9
63/16
**Attorney's [1]**  2/9
**attorneys [3]**  54/14 54/24 60/6
**Attorneys' [1]**  54/3
**augment [1]**  23/9
**averment [1]**  40/2
**avoid [2]**  55/5 63/23
**aware [1]**  24/24
**away [1]**  68/21

## B

**back [30]**  2/17 2/19 3/25 23/8 25/11
27/24 28/4 28/23 29/2 29/21 30/5 33/24
35/8 36/5 36/5 36/12 36/23 43/12 44/16
45/12 46/12 46/14 46/24 49/21 58/9
59/7 60/7 60/25 71/2 71/7
**backed [1]**  58/19
**background [3]**  17/11 17/13 19/20
**bad [4]**  17/23 26/22 49/13 49/15
**bag [1]**  10/17
**balance [4]**  3/13 12/2 32/12 36/19
**Baltimore [4]**  1/14 1/18 54/4 54/8
**bargain [1]**  36/24
**base [1]**  68/19
**based [3]**  9/22 18/24 64/17
**basically [6]**  13/20 15/9 15/18 15/22
20/18 44/8
**basis [2]**  40/10 48/16
**Batson [1]**  3/14
**be [68]**  6/9 6/23 6/24 8/18 8/20 8/22
8/25 9/20 10/1 11/14 11/24 12/4 12/17
12/24 15/7 18/23 20/23 23/7 26/17
26/21 26/24 27/4 27/15 30/5 34/22 38/4
39/18 39/19 39/20 41/25 42/2 43/7

---

44/25 45/22 45/23 48/24 49/13 49/15
50/7 51/14 51/21 52/4 53/5 53/25 53/25
54/23 55/17 57/6 59/1 59/18 59/21 60/1
60/17 61/13 61/15 61/21 61/23 64/15
64/17 65/5 66/7 66/23 67/16 67/17
68/11 70/2 71/4 71/4
**bear [1]**  50/19
**beaten [1]**  26/21
**became [1]**  35/16
**because [67]**  2/16 9/20 11/3 13/9 14/7
16/16 16/17 17/21 18/7 20/5 22/7 24/16
24/19 25/2 25/4 26/20 28/9 28/12 29/2
30/8 30/10 30/11 30/12 30/20 31/6
32/16 32/17 34/2 36/12 38/14 39/3 42/3
43/19 49/11 50/9 50/10 51/23 52/13
53/3 53/11 53/14 54/16 54/17 54/19
54/21 55/4 55/17 56/9 56/11 57/3 57/11
57/22 58/2 58/23 60/2 60/4 60/14 64/9
65/6 65/15 66/5 67/2 67/12 68/7 68/20
70/8 70/19
**becoming [1]**  45/17
**bed [1]**  46/2
**been [29]**  6/4 6/16 12/25 16/5 18/5 19/5
19/9 22/6 28/21 29/6 29/19 29/20 30/21
31/20 32/17 33/4 33/7 33/8 36/9 37/3
38/2 42/11 43/22 45/20 45/23 49/10
50/2 51/19 51/19
**before [23]**  1/10 2/2 2/4 2/23 14/13
14/16 14/20 14/20 17/14 18/9 19/13
19/16 20/14 21/22 36/22 43/20 43/22
47/12 54/21 55/7 55/22 58/8 62/7
**begging [1]**  58/13
**beginning [4]**  8/14 8/16 15/18 58/21
**behalf [2]**  2/9 53/19
**being [12]**  4/23 9/7 10/13 11/24 14/16
20/22 26/20 31/11 40/23 42/10 50/23
69/24
**belief [1]**  22/17
**believe [22]**  2/14 6/2 6/17 10/15 12/1
13/8 16/6 16/7 16/13 16/14 25/23 25/24
31/17 36/18 37/5 38/12 39/3 45/11
47/21 48/22 48/24 57/4
**believes [1]**  55/8
**bench [1]**  7/17
**benefit [1]**  15/16
**best [3]**  16/4 19/18 46/3
**better [3]**  11/24 38/2 51/16
**between [4]**  12/8 20/21 50/3 54/19
**beyond [3]**  9/2 36/16 66/16
**big [4]**  3/21 10/4 10/22 34/8
**bit [6]**  14/4 19/20 30/10 46/17 48/20
50/7
**bite [1]**  60/4
**blood [10]**  27/24 28/7 28/17 33/11 34/22
35/3 35/7 35/8 35/15 36/12
**bloody [3]**  32/10 36/6 36/16
**blue [1]**  45/2
**bolster [1]**  16/9
**both [2]**  44/3 59/17
**bothered [1]**  47/8
**bought [1]**  14/10
**boyfriend [3]**  28/16 33/10 33/24
**brief [4]**  24/16 25/21 27/17 32/24
**briefed [1]**  3/18
**briefly [3]**  3/12 3/17 21/16
**briefs [1]**  3/16

---

**bring [3]**  37/18 39/14 41/5
**bringing [2]**  46/1 66/13
**brings [1]**  32/9
**broad [3]**  16/4 64/2 69/24
**brought [3]**  31/19 36/5 36/11
**brutal [1]**  58/12
**bunch [1]**  33/14
**burden [4]**  11/13 12/9 12/18 55/2
**but [77]**
**buy [1]**  16/23
**bye [2]**  43/1 43/1
**bye-bye [1]**  43/1

## C

**cake [3]**  5/15 5/16 16/17
**call [5]**  8/2 12/12 32/22 61/6 67/8
**called [9]**  14/19 19/5 22/6 27/23 28/5
31/5 31/6 31/9 31/12
**calling [1]**  34/1
**calls [1]**  26/3
**came [10]**  27/23 27/24 28/4 28/16 33/12
35/8 36/5 48/21 48/21 50/21
**can [43]**  3/17 5/20 6/10 8/5 8/22 11/1
15/3 18/23 19/18 20/4 20/25 25/10
38/18 39/14 39/14 43/20 43/20 43/23
45/5 45/20 46/4 46/5 46/10 46/14 48/20
51/17 51/18 51/18 56/1 57/10 57/17
58/11 60/16 61/23 61/24 64/16 65/3
65/6 65/21 66/15 68/8 68/24 69/2
**can't [19]**  9/3 11/8 11/12 13/8 17/9
20/23 23/7 25/25 32/16 33/1 38/5 44/6
45/15 46/11 51/17 51/18 51/23 58/20
63/15
**candidly [3]**  27/6 46/21 48/18
**cannot [6]**  20/23 37/21 53/25 59/18
59/21 60/1
**capital [1]**  58/18
**car [24]**  6/10 6/19 8/6 13/19 13/20 14/7
14/9 14/9 14/12 14/13 14/16 14/17
15/10 15/11 15/13 16/24 20/12 25/2
25/5 25/8 25/15 26/12 33/25 59/6
**cards [2]**  20/10 48/25
**cared [1]**  17/16
**careful [1]**  11/24
**carry [2]**  60/14 70/18
**carrying [1]**  38/17
**case [72]**  2/3 6/25 9/3 16/11 17/21 19/11
19/18 21/12 26/25 30/21 32/8 34/18
37/2 37/21 38/16 38/17 38/23 39/1 39/1
39/3 39/7 40/24 41/17 42/4 42/22 45/6
45/11 46/6 48/3 48/16 48/17 50/7 50/9
51/3 51/10 51/24 52/7 52/8 52/9 52/9
52/12 52/14 52/14 52/15 52/21 53/8
54/6 55/1 55/12 56/18 56/22 57/12
57/18 57/22 58/3 58/5 58/8 58/10 58/17
58/22 59/2 60/17 62/20 63/1 63/14 64/8
67/13 68/11 69/16 69/17 70/14 70/17
**cases [21]**  5/11 15/2 15/3 38/13 38/15
38/19 48/5 52/20 52/21 52/24 56/16
56/23 65/9 65/25 69/7 69/9 69/9 70/9
70/10 70/23 70/25
**casual [3]**  46/23 46/25 47/1
**cat [1]**  10/17
**category [1]**  70/24
**cause [1]**  43/8
**cautioning [1]**  11/22

# C

cell [1]  26/7
cellphone [1]  26/3
cellphones [1]  26/2
central [1]  26/25
certain [6]  2/22 8/22 15/2 15/3 65/23
67/17
certainly [20]  2/25 8/3 8/21 9/10 10/18
17/5 19/12 20/4 21/2 26/1 31/7 32/14
35/17 51/13 61/10 62/9 62/16 62/25
66/4 69/1
CERTIFICATE [1]  72/1
certify [1]  72/2
challenging [1]  6/24
change [1]  50/4
changed [1]  18/15
character [16]  4/9 4/17 12/22 13/2 13/4
16/1 16/5 16/8 16/9 16/10 17/23 18/19
19/5 19/10 21/19 22/4
characterizing [1]  13/25
charged [2]  35/18 57/13
Charles [1]  1/14
child [1]  54/7
choose [1]  60/6
Circuit [7]  45/9 45/14 51/3 53/1 64/5
65/23 67/16
circumscribe [1]  65/18
circumstances [13]  43/13 44/4 51/14
63/16 63/21 65/24 66/4 66/24 67/12
67/15 67/17 67/22 68/9
circumstantial [8]  6/9 9/3 9/7 20/8 36/3
36/6 36/15 58/5
cite [1]  51/9
cited [1]  5/11
claim [26]  3/8 3/13 3/22 4/1 4/2 4/8 4/15
4/17 4/23 4/23 10/17 11/2 11/11 11/12
11/13 12/3 13/13 29/5 32/12 36/25 48/9
59/24 61/2 61/20 64/2 67/2
claims [7]  2/18 3/11 3/12 3/13 4/3 4/21
62/5
clarify [1]  22/8 23/2 64/19
clear [4]  37/3 41/23 47/3 54/8
clearly [2]  5/22 53/5
client [33]  12/11 15/6 20/24 20/25 37/19
38/18 39/6 39/21 40/22 43/3 43/5 43/12
44/8 44/11 44/15 45/1 45/7 46/4 46/13
47/7 48/6 48/8 49/16 50/16 52/23 54/17
55/18 56/2 57/2 60/10 63/22 66/8 70/15
closer [1]  53/3
closing [5]  14/22 14/25 29/12 31/22
31/25
clothes [3]  27/25 28/7 33/11
cluster [2]  2/23 4/21
co [1]  60/22
co-counsel [1]  60/22
collective [2]  4/12 36/22
colloquy [1]  21/7
colorable [2]  40/10 61/20
come [26]  3/25 8/4 13/6 16/21 18/18
29/18 30/5 41/4 42/5 42/7 43/9 45/9
46/14 49/12 57/1 57/5 59/14 60/2
60/22 63/2 68/6 68/13 71/2 71/3 71/7
comes [8]  2/4 5/19 35/5 35/7 47/14
55/25 56/1 61/4
coming [3]  13/5 16/18 38/3

commission [1]  14/8
commit [2]  24/25 46/12
common [3]  12/7 62/15 63/10
communicate [7]  38/22 38/24 40/21
51/11 52/2 52/6 55/11
communicated [4]  42/10 52/14 52/16
52/22
communicating [1]  53/13
communication [2]  42/13 43/11
compelling [2]  18/9 58/5
competence [1]  4/13
complete [1]  46/12
COMPUTER [1]  1/24
COMPUTER-AIDED [1]  1/24
concede [6]  15/3 24/15 24/17 24/18
25/3 26/19
conceded [7]  13/21 14/24 24/9 24/18
24/22 25/1 64/9
conceding [5]  4/10 13/15 13/23 15/4
26/19
conceivably [1]  66/19
concern [2]  65/13 65/21
concerned [6]  11/7 46/10 62/3 65/14
67/9 69/24
concession [2]  27/6 27/14
concessions [2]  15/6 15/8
conclusion [2]  5/20 10/15
conditions [1]  65/2
conduct [2]  44/25 46/13
conference [1]  7/17
confused [2]  29/14 35/16
confusing [1]  30/10
confusion [1]  30/1
connected [1]  11/8
connection [1]  10/25
consequence [1]  69/7
consequences [1]  37/8
consider [5]  29/10 31/2 32/5 32/7 60/12
considerable [1]  67/25
consideration [1]  31/3
conspiracy [4]  13/22 15/15 18/10 24/25
constitutional [2]  12/13 59/15
constitutionally [13]  29/23 44/4 44/7
44/20 47/5 53/4 57/2 65/8 65/10 65/17
68/12 69/12 70/11
contending [1]  39/10
contest [1]  26/24
context [2]  19/18 20/19
contradictory [1]  31/15
contributed [1]  17/1
contributing [1]  16/20
control [1]  70/14
controvert [1]  14/17
conversation [3]  45/25 48/23 55/24
convict [2]  15/15 15/19
convicted [2]  20/9 37/13
conviction [7]  6/15 13/22 15/15 15/23
37/11 44/11 46/4
convoluted [1]  32/18
cooperate [7]  43/3 47/15 47/16 47/17
49/3 55/15 61/8
cooperated [6]  48/4 48/9 62/10 62/23
64/21 64/22
cooperating [5]  49/11 50/23 55/12 62/13
62/14
cooperation [6]  39/25 43/3 48/5 48/8

49/2 57/21
cooperator [3]  9/16 27/9 58/9
cope [1]  69/18
correct [9]  7/25 14/9 14/11 14/15 26/4
28/14 28/24 58/1 72/3
correctly [1]  9/12
could [29]  5/13 6/22 7/12 10/18 12/5
16/5 19/6 19/9 25/3 26/16 27/4 29/20
30/5 31/14 31/20 31/20 36/9 44/16 48/4
48/15 50/25 51/13 55/5 58/3 59/1 66/19
69/20 70/1 71/4
couldn't [5]  9/18 27/8 28/22 51/15 51/16
counsel [66]  2/6 4/22 5/7 5/18 5/22 6/4
6/23 7/21 7/23 8/19 10/24 12/23 13/5
13/21 15/3 15/9 15/23 17/9 23/4 23/6
26/19 27/5 28/1 29/24 31/5 31/9 31/22
33/1 35/24 36/2 36/15 37/1 37/14 38/10
39/13 40/14 40/19 42/16 43/24 44/5
44/7 44/18 44/22 45/24 46/2 47/4 50/24
51/1 52/9 53/6 53/10 53/12 56/25 57/8
60/22 65/7 65/16 66/1 66/5 67/11 68/10
68/23 70/3 70/4 70/6 71/11
counsel's [1]  38/7
counts [1]  2/22
couple [4]  3/1 14/1 40/1 44/24
course [17]  3/4 19/8 20/7 20/9 25/4 26/8
27/1 29/7 32/23 33/13 34/21 38/7 48/19
50/9 57/10 59/3 60/22
court [55]  1/1 1/23 2/3 2/5 3/1 3/15 3/17
5/6 7/13 7/14 10/3 11/10 11/16 12/6
18/24 20/1 20/15 21/7 21/13 23/5 23/14
23/15 26/1 32/17 32/19 32/23 37/3 44/3
44/14 45/5 45/17 45/20 45/22 53/15
54/3 57/17 57/17 58/10 59/8 59/16 60/2
61/25 62/4 64/12 64/16 65/15 66/3
67/15 68/15 69/9 69/23 69/25 70/11
72/1 72/8
covered [2]  24/10 24/12
credibility [5]  16/10 16/16 17/1 22/16
61/16
crime [12]  14/8 14/14 19/7 19/7 19/7
28/2 28/23 30/17 36/9 46/22 57/13
69/17
crimes [2]  65/19 70/10
criminal [9]  1/4 2/3 19/2 37/4 37/5 37/13
44/2 44/11 63/5
critical [2]  37/4 53/19
cross [11]  4/12 17/23 19/4 20/2 20/4
21/8 30/19 33/1 33/3 33/4 48/4
cross-examination [5]  4/12 19/4 20/4
33/3 33/4
cross-examine [2]  17/23 48/4
cross-examined [2]  30/19 33/1
custody [1]  67/25
cut [1]  62/10

# D

damaging [1]  5/12
date [1]  33/9
Davis [1]  18/11
day [10]  21/23 21/24 21/25 28/13 33/25
35/7 38/12 40/9 60/14 70/18
days [5]  14/13 68/25 69/3 71/3 71/7
deal [5]  17/5 20/10 47/18 67/3 67/12
dealing [1]  61/20
death [2]  7/9 57/19

## D

**decent [1]** 61/4
**decide [2]** 65/6 67/13
**decided [6]** 3/4 4/8 41/16 50/2 50/3 61/23
**deciding [1]** 70/13
**decision [13]** 17/19 18/20 24/20 26/22 27/4 27/4 39/5 42/15 49/13 53/13 54/17 57/14 67/14
**decisions [2]** 19/18 69/11
**defective [1]** 65/8
**defendant [17]** 1/7 1/17 2/7 2/13 2/18 2/19 10/24 42/8 44/22 45/13 51/21 54/8 54/9 59/10 63/6 66/13 67/23
**defendant's [2]** 19/11 33/20
**defendants [3]** 37/10 37/13 58/6
**defended [1]** 27/4
**Defenders [1]** 54/4
**defense [48]** 4/21 4/24 5/22 6/4 7/21 7/24 12/10 13/21 14/3 14/7 15/16 15/23 16/23 17/2 17/9 19/17 19/23 20/23 21/7 23/4 26/11 29/13 30/14 30/15 31/5 31/9 31/18 32/19 33/1 40/14 40/19 44/2 44/18 50/24 51/1 53/6 54/1 54/14 54/25 56/1 57/7 59/20 60/4 63/16 65/7 65/16 66/5 68/23
**defenses [3]** 31/15 31/15 31/17
**deficient [1]** 68/13
**definitely [1]** 61/7
**deliberate [1]** 62/4
**deliberations [1]** 32/8
**deliver [4]** 5/10 18/23 19/24 23/16
**demanded [1]** 49/2
**demonstrate [2]** 11/23 12/12
**demonstrates [1]** 6/1
**depend [1]** 52/21
**depending [1]** 39/20
**deserve [1]** 58/16
**deviate [1]** 15/23
**dialogue [1]** 56/23
**dice [3]** 44/15 54/20 60/10
**did [55]** 5/2 5/10 6/17 9/6 9/14 10/20 12/6 12/6 13/3 17/10 17/21 18/13 20/8 20/9 20/15 20/15 23/7 24/17 24/25 28/2 29/8 29/12 29/13 30/3 30/4 30/17 34/10 36/6 36/16 36/17 38/10 41/18 41/21 43/6 43/8 45/6 45/7 45/7 46/6 46/7 47/11 48/14 49/23 55/20 55/21 56/9 57/21 58/2 58/3 58/22 62/1 62/21 63/2 64/21 70/15
**didn't [63]** 3/10 5/25 8/4 8/9 8/11 8/11 9/16 10/6 10/24 11/5 11/18 11/21 13/6 13/10 15/19 17/9 20/2 20/5 20/24 20/25 21/2 21/10 22/24 23/4 23/19 23/22 23/22 23/25 24/15 27/8 27/9 30/12 30/12 30/18 30/20 33/9 39/21 41/6 42/16 42/16 42/23 43/19 46/7 47/15 48/13 50/4 53/14 53/17 55/10 55/10 58/10 58/18 58/23 60/4 60/22 62/20 63/2 64/25 66/18 66/19 69/10 69/10 70/15
**difference [2]** 20/21 52/1
**different [20]** 8/9 23/19 23/20 26/14 28/7 32/20 32/21 33/15 45/19 51/15 52/25 54/23 56/19 57/12 57/12 57/13 57/14

57/14 63/24 64/1
**differently [1]** 5/16
**direct [2]** 9/5 33/19
**directed [1]** 21/9
**direction [1]** 11/17
**directly [3]** 9/11 13/1 18/21
**disagrees [1]** 11/1
**disbarrable [1]** 44/25
**discouraging [1]** 45/18
**discuss [1]** 41/18
**discussed [3]** 13/17 37/19 41/16
**discussing [2]** 17/14 41/21
**discussion [1]** 56/14
**discussions [19]** 4/22 14/4 44/23 48/16 51/19 53/7 65/8 65/16 66/1 66/6 67/11 67/17 67/22 68/10 68/20 69/12 69/18 70/9 70/10 71/1
**disputed [1]** 48/23 61/13 61/14
**disregard [2]** 10/9 11/4
**distinction [4]** 10/1 10/4 11/18 12/7
**distinguishable [1]** 64/8
**distribution [1]** 54/6
**DISTRICT [3]** 1/1 1/1 1/11
**DIVISION [1]** 1/2
**do [59]** 3/1 8/4 8/9 8/11 8/11 14/5 16/10 16/15 18/2 20/24 20/25 21/14 22/5 23/19 23/22 23/22 23/24 23/25 24/4 24/22 33/14 35/10 37/18 37/23 39/15 40/9 41/4 41/6 41/20 45/15 46/10 47/10 47/12 47/25 49/1 49/12 50/2 51/17 51/18 51/18 53/14 53/25 54/14 55/4 55/19 55/22 55/25 56/13 56/13 56/20 57/8 57/16 62/24 63/23 66/17 67/11 68/16 68/23 70/16
**does [18]** 5/15 6/8 6/25 13/24 13/25 23/16 33/17 38/13 40/6 43/15 43/17 43/25 49/11 51/7 54/4 60/8 60/14 70/7
**doesn't [22]** 9/20 12/12 16/20 16/21 19/23 36/8 39/23 45/4 48/22 49/10 50/12 50/24 54/1 57/24 57/24 62/21 62/22 63/8 64/21 70/21 70/22 71/4
**doing [7]** 16/22 30/4 41/5 56/11 57/2 57/6 64/10
**don't [73]**
**done [17]** 16/12 23/13 29/18 31/21 38/1 43/5 46/8 53/12 53/19 59/14 60/13 60/14 60/20 60/20 62/9 64/16 70/6
**door [1]** 37/10
**double [1]** 51/11
**doubt [2]** 9/2 14/18
**Douglas [2]** 18/14 21/24
**down [4]** 14/4 37/25 45/9 52/12
**draw [3]** 5/21 28/4 33/14
**during [8]** 14/8 18/24 21/19 22/3 37/16 39/11 41/11 59/12

## E

**earlier [3]** 33/25 57/17 63/3
**early [1]** 42/21
**easier [1]** 53/16
**easily [1]** 12/5
**East [1]** 1/18
**Edward [1]** 2/4
**effect [3]** 33/22 44/13 69/15
**effective [2]** 45/23 53/10
**effectively [2]** 10/13 11/25

**effectiveness [1]** 52/10
**effort [4]** 34/10 37/2 37/14 51/25
**either [14]** 2/12 13/12 15/22 16/21 18/17 31/21 51/17 51/18 53/2 54/17 61/5 63/5 63/8 63/15
**election [1]** 41/18
**elements [1]** 24/23
**elephant [3]** 34/8 45/2 45/2
**elicit [1]** 47/25
**else [3]** 36/21 49/24 71/9
**embellish [1]** 61/6
**embraced [1]** 59/13
**empty [2]** 22/9 22/16
**enclosing [1]** 21/2
**encouraging [1]** 45/18
**end [7]** 5/19 8/15 21/7 29/1 29/3 60/18 70/21
**ends [1]** 62/6
**engaged [1]** 21/7
**enough [5]** 13/22 15/15 15/19 20/19 70/18
**entirely [1]** 41/23
**entitled [1]** 72/4
**Eric [1]** 7/9
**Esquire [2]** 1/13 1/17
**essence [5]** 29/2 29/4 59/22 59/25 61/22
**essentially [6]** 5/22 26/18 30/10 33/17 36/18 53/15
**establish [1]** 40/10
**established [3]** 8/11 23/22 65/3
**establishes [1]** 38/11
**even [33]** 13/4 19/16 21/6 23/23 26/25 27/5 29/21 29/24 31/6 32/16 32/23 33/1 33/15 35/17 38/17 38/20 38/24 38/25 39/16 39/21 40/10 46/24 50/11 53/14 54/12 54/18 55/11 56/13 58/23 59/12 62/21 66/19 70/14
**event [1]** 6/20
**events [1]** 58/25
**ever [6]** 40/14 42/24 45/3 47/6 49/2 63/13
**every [14]** 21/23 21/24 21/24 53/25 56/18 57/11 57/12 57/12 57/12 57/13 57/14 60/20 64/3 69/17
**everybody [1]** 43/25
**everybody's [1]** 37/22
**everyone's [1]** 17/7
**everything [1]** 57/1
**evidence [100]**
**evidentiary [2]** 40/10 61/2
**exact [2]** 6/21 36/14
**exactly [5]** 20/1 34/7 40/5 42/6 58/17
**examination [8]** 4/12 19/4 20/4 27/15 31/7 33/3 33/4 33/20
**examine [2]** 17/23 48/4
**examined [2]** 30/19 33/1
**example [11]** 6/22 15/4 19/23 26/13 27/8 40/13 44/6 48/1 48/6 54/6 58/7
**except [2]** 11/23 23/14
**excerpts [1]** 14/1
**excuse [1]** 18/11
**exist [2]** 16/21 21/10
**expansive [1]** 61/18
**expect [1]** 47/25
**expecting [1]** 11/14
**experience [4]** 50/19 64/14 66/3 66/9

**E**

**expert [3]** 39/9 39/22 43/24
**extend [1]** 46/6
**extending [1]** 46/17
**extraordinary [1]** 61/13
**extremely [1]** 32/11

**F**

**F.3d [2]** 51/10 51/10
**fabricating [1]** 70/20
**face [1]** 55/4
**facing [2]** 40/24 63/22
**fact [14]** 5/9 31/2 32/19 36/4 38/9 39/10 46/12 52/24 57/18 60/18 61/14 61/14 66/13 69/11
**facto [1]** 44/19
**facts [4]** 26/13 26/18 52/21 70/14
**factually [1]** 64/8
**fail [2]** 4/2 12/18
**failed [3]** 37/14 41/17 52/11
**failing [5]** 3/9 4/11 37/1 60/18 69/11
**failure [12]** 4/9 4/17 12/8 18/22 38/21 38/23 44/18 46/25 51/10 53/6 65/7 65/16
**fair [4]** 3/21 31/7 47/5 62/17
**fairly [6]** 8/13 8/22 12/7 29/21 50/18 62/15
**falls [1]** 50/17
**familiar [1]** 51/2
**far [8]** 11/7 23/4 23/23 50/12 53/14 54/18 61/17 67/7
**farther [1]** 46/20
**fast [1]** 47/16
**Fed [1]** 64/6
**federal [3]** 37/20 44/3 54/4
**feel [2]** 5/16 53/15
**fell [1]** 50/21
**felony [1]** 37/21
**figure [2]** 32/16 61/1
**file [3]** 43/4 52/22 69/3
**filed [2]** 18/8 62/17
**filing [2]** 62/25 64/25
**find [4]** 65/24 69/10 69/10 70/11
**finding [2]** 4/10 24/10
**findings [1]** 59/17
**fine [1]** 4/19
**firm [2]** 52/13 52/15
**firmer [3]** 51/11 51/20 52/2
**first [15]** 2/7 3/25 4/23 5/17 17/6 19/25 23/8 37/20 40/1 55/9 56/8 58/19 59/18 61/9 68/23
**five [4]** 49/20 54/7 54/9 63/25
**flat [1]** 33/12
**flimsier [1]** 52/3
**float [1]** 65/20
**floating [1]** 69/13
**FLOOD [82]**
**Flood's [16]** 6/19 8/23 13/4 13/18 18/10 19/19 26/3 31/10 31/22 33/25 34/23 35/5 35/6 35/8 55/3 57/22
**Floor [1]** 1/14
**focus [2]** 34/9 58/20
**follow [5]** 6/10 10/24 42/6 46/25 60/4
**following [1]** 27/15
**follows [1]** 44/20

**forego [1]** 27/5
**foregoing [1]** 72/2
**form [2]** 39/11 61/17
**formal [1]** 50/6
**forth [4]** 2/17 2/20 46/24 62/18
**forward [4]** 30/1 42/12 59/10 61/21
**four [4]** 2/19 4/6 4/8 45/22
**fours [1]** 50/9
**Fourth [8]** 1/14 45/9 45/14 51/3 52/25 64/5 65/23 67/16
**frankly [7]** 19/19 33/11 52/19 55/19 58/16 61/21 68/21
**frequency [1]** 68/10
**fresh [1]** 17/6
**front [3]** 17/19 19/16 48/13
**Frye [6]** 37/6 50/2 50/3 50/4 50/9 50/10
**Frye was [1]** 50/3
**fulfilled [1]** 7/5
**further [4]** 10/12 24/4 63/18 68/2
**future [3]** 21/9 21/9 65/25

**G**

**game [4]** 42/17 42/18 47/1 50/4
**general [1]** 42/7
**generally [2]** 15/5 68/16
**generic [3]** 70/8 70/24 70/24
**generically [3]** 60/16 65/8 67/13
**get [32]** 3/24 8/7 17/19 33/15 37/17 40/3 42/18 44/15 42 46/14 47/24 52/2 52/11 53/14 53/14 53/17 54/9 55/5 55/6 55/16 55/22 56/1 60/3 62/20 63/9 66/10 66/18 66/20 67/19 68/7 68/20 68/24
**gets [5]** 45/1 53/3 54/11 60/17 61/2
**getting [2]** 25/20 55/5
**girlfriend [4]** 25/23 27/20 27/21 35/1
**girlfriends [1]** 25/22
**give [9]** 25/13 26/23 30/19 40/13 51/9 54/6 57/10 68/19 69/3
**given [7]** 15/23 18/3 26/20 32/1 32/24 51/20 66/23
**giving [2]** 15/14 17/13
**glance [1]** 7/3
**go [37]** 2/17 2/19 2/21 4/16 10/12 18/21 21/17 24/7 24/9 25/11 27/13 31/7 36/16 36/21 36/23 42/14 43/12 43/19 44/11 44/16 45/13 46/12 48/13 50/12 50/12 50/14 50/16 50/24 51/1 54/18 57/2 60/9 60/25 61/21 63/9 63/11 63/13
**goes [3]** 54/10 54/11 66/16
**going [98]**
**gone [4]** 33/24 42/25 48/19 53/12
**good [23]** 2/8 2/10 4/9 4/17 8/19 12/24 13/2 13/8 13/11 16/8 16/9 16/10 16/19 17/16 18/18 21/18 21/20 22/4 39/6 39/18 42/17 43/9 65/23
**goofed [2]** 60/13 70/7
**got [9]** 2/22 15/11 15/12 15/18 16/24 44/4 49/16 51/25 66/14
**gotten [2]** 35/8 53/16
**government [85]**
**government's [10]** 6/7 6/24 9/1 11/21 12/9 29/5 30/11 32/13 39/24 65/1
**Grand [6]** 13/20 14/16 14/20 14/20 58/23 59/2
**grant [1]** 15/20
**great [3]** 15/18 15/21 16/1

**greater [1]** 15/5
**Greenbelt [1]** 1/6
**guess [4]** 15/10 43/8 55/22 61/17
**guidelines [1]** 54/24
**guilt [4]** 4/11 6/1 13/23 15/3 19/19 24/10 27/14
**guilty [8]** 5/22 19/7 24/17 31/3 41/19 62/19 63/7 64/21
**guy [6]** 13/8 13/11 15/21 16/1 22/2 32/9
**guys [1]** 37/16
**gymnastics [2]** 33/15 35/5

**H**

**had [61]** 6/18 6/18 6/18 7/8 7/9 8/6 10/18 11/19 11/19 12/2 12/25 13/1 13/18 13/18 13/19 13/19 13/19 14/10 14/13 15/22 15/24 16/19 19/5 20/9 20/10 21/3 21/10 22/11 22/13 24/18 25/2 25/7 25/19 27/24 29/6 29/18 31/14 32/19 32/25 33/24 35/7 35/8 40/9 42/2 42/3 42/3 42/25 45/23 47/7 51/19 51/19 51/19 53/12 53/16 55/19 58/9 59/8 59/11 61/7 64/20 65/2
**hadn't [2]** 11/6 23/13
**half [2]** 49/15 62/10
**happen [6]** 39/23 42/21 45/4 47/11 57/9 63/8
**happened [18]** 9/17 12/2 13/7 15/22 20/6 22/20 27/10 39/11 43/5 47/12 49/23 57/22 58/4 58/10 58/17 59/11 61/18 62/1
**happening [1]** 56/9
**happens [5]** 45/3 54/3 54/20 56/21 56/23
**hard [6]** 12/25 21/23 22/1 45/10 47/16 65/24
**hard-working [1]** 22/1
**hardly [1]** 45/3
**harkened [1]** 33/24
**harm [1]** 59/15
**has [22]** 8/11 8/19 15/7 15/18 21/13 22/12 29/18 29/19 37/3 45/9 48/23 50/1 50/2 59/10 59/16 61/13 61/15 62/17 64/5 64/12 65/15 67/15
**hasn't [5]** 8/10 23/20 23/21 47/16 61/8
**have [156]**
**haven't [2]** 3/18 43/7
**having [5]** 2/18 6/4 52/18 53/18 68/16
**Hayes [9]** 7/10 18/11 20/12 28/19 29/7 30/20 32/10 36/4 36/7
**Haynes [1]** 58/8
**he [178]**
**he'd [1]** 43/8
**he'll [2]** 26/19 60/24
**he's [25]** 5/22 6/14 6/23 7/1 8/2 8/25 9/23 12/15 13/8 13/9 13/11 15/21 20/2 20/14 20/14 20/17 20/20 22/1 22/2 31/3 58/13 62/20 62/25 64/25 66/14
**hear [15]** 2/18 3/16 4/24 10/19 10/23 16/19 17/3 17/15 21/20 21/21 21/25 22/2 32/13 53/23 62/11
**heard [13]** 5/20 10/18 13/11 16/24 17/8 18/14 19/6 23/12 28/17 32/3 33/10 43/7 64/12
**hearing [29]** 2/5 8/25 12/17 12/24 28/12

**H**

hearing... [24]  40/9 40/10 47/21 47/23 47/25 48/24 61/1 61/2 61/11 61/11 61/19 61/21 62/3 64/11 64/16 65/3 65/22 65/25 66/12 66/20 66/20 67/9 67/20 68/14
hearings [4]  61/9 65/23 66/22 66/23
held [1]  38/20
help [1]  70/22
helped [1]  31/18
helpful [1]  68/1
her [17]  27/19 28/15 28/16 30/7 31/9 31/11 32/5 33/10 33/19 33/19 33/24 34/22 36/2 41/13 43/8 64/14 66/2
here [58]  4/9 5/18 5/19 11/9 13/13 14/2 15/8 17/8 18/22 20/1 20/17 20/19 21/1 21/6 21/8 23/3 24/18 27/4 31/6 32/18 33/16 37/10 37/11 37/17 38/4 39/7 40/11 42/5 43/5 51/11 51/24 52/2 53/14 55/2 55/3 55/4 55/8 55/17 57/5 57/15 57/20 57/21 59/9 59/9 59/15 59/17 59/24 61/15 62/18 62/22 63/8 63/11 63/12 64/10 66/2 66/12 66/22 70/4
Here's [1]  2/16
hey [5]  21/8 56/1 56/21 63/6 63/13
Higgs [1]  58/8
high [2]  28/23 36/9
highlight [1]  32/19
highly [2]  29/7 58/4
him [36]  6/10 9/7 9/14 9/20 10/11 10/13 11/22 14/19 16/19 27/9 32/9 34/14 36/4 36/5 36/11 36/12 37/18 39/14 39/14 39/25 41/5 41/19 45/7 46/7 47/8 47/9 47/15 48/3 48/7 48/19 49/1 49/12 49/13 59/2 63/2 64/9
himself [1]  18/19
his [70]  2/18 5/25 6/19 7/21 8/6 12/17 13/10 13/19 14/7 14/7 14/9 14/12 14/14 14/16 14/17 15/11 15/11 15/12 15/13 15/13 16/9 16/24 16/24 17/21 17/24 18/1 18/18 18/21 19/20 20/4 20/18 20/19 21/3 21/8 22/1 22/23 22/23 25/23 25/25 26/5 26/7 26/12 26/12 27/24 28/7 33/11 34/11 35/7 35/9 37/20 41/11 44/22 46/6 48/10 53/19 55/18 58/13 58/13 58/24 59/6 59/12 60/22 61/8 62/17 62/18 62/18 64/25 65/4 66/8 66/16
hmm [1]  40/17
hold [3]  3/20 25/20 66/12
holding [1]  61/19
home [2]  32/10 35/7
homicide [1]  18/16
honest [1]  17/25
honestly [1]  17/9
Honor [51]  2/10 3/23 4/14 6/3 7/18 8/8 10/10 11/1 16/7 17/5 18/8 18/12 18/22 19/16 21/6 21/16 22/7 24/3 24/6 24/15 24/17 25/14 25/20 25/25 27/1 27/12 27/17 29/4 32/15 35/5 35/22 45/17 53/24 54/12 55/20 55/23 56/9 57/16 58/8 58/22 59/6 61/25 63/4 63/20 66/7 68/3 68/4 68/14 69/1 69/5 69/21
HONORABLE [1]  1/10
hope [2]  45/1 62/20

hoping [1]  55/5
how [17]  5/11 8/9 16/23 17/7 18/11 18/11 18/13 18/15 23/18 32/15 35/24 36/17 40/3 61/1 61/6 68/6 68/19
however [6]  4/19 8/2 10/16 41/17 69/18 71/1
hypothetical [1]  40/13

**I**

I see [1]  6/16
I'd [1]  52/23
I'll [8]  2/25 17/10 24/1 28/9 54/6 58/7 68/21 69/3
I'm [58]  3/8 3/10 3/10 3/11 3/12 4/3 4/4 5/18 6/3 6/13 8/8 10/25 11/3 14/5 14/12 14/22 16/6 22/9 22/11 22/14 22/21 23/9 23/18 25/20 25/25 29/3 29/4 29/18 32/15 32/23 35/4 35/23 39/2 44/21 46/1 46/9 46/10 48/18 51/6 53/18 56/22 60/25 61/1 61/14 61/20 62/3 63/6 63/13 65/14 65/14 66/5 67/5 67/8 67/14 67/20 68/14 69/5 70/13 71/2
I've [2]  17/7 60/20
idea [5]  26/18 42/12 43/9 56/11 63/6
identify [1]  2/6
if [73]
III [1]  2/4
imagine [2]  42/2 63/15
impeachment [2]  19/9 19/10
implicating [1]  30/9
implication [2]  32/4 35/11
implied [1]  10/18
implying [3]  10/5 10/7 15/10
important [5]  10/1 22/4 27/2 27/7 40/11
importantly [1]  15/7 18/8 19/17 21/11 59/9
impression [5]  29/6 29/19 30/19 31/1 36/13
in [233]
inappropriate [1]  21/11
incentive [1]  58/14
incident [2]  28/12
include [1]  57/21
including [1]  3/13
inconsequential [1]  33/12
incumbent [1]  50/25
indicated [4]  19/1 28/5 28/10 28/11
indicating [1]  38/9
indict [1]  58/18
indicted [1]  37/24
indictment [1]  4/7
ineffective [31]  3/9 6/6 10/13 10/20 11/24 12/12 13/14 21/11 29/23 33/8 36/23 37/1 38/22 38/24 43/15 44/4 44/7 44/19 47/5 51/11 53/7 54/2 55/9 59/20 60/19 64/4 65/10 65/17 69/12 70/12 70/19
ineffectiveness [10]  12/1 16/14 16/16 38/7 38/11 51/24 52/10 53/11 53/17 59/16
inference [1]  33/13
information [1]  63/2
informed [1]  41/14
informing [1]  66/3
inherent [1]  46/18
inherently [1]  68/12

initial [1]  53/24
initiate [5]  38/10 53/6 60/18 65/16 69/11
initiated [1]  47/4
initiation [2]  69/18 71/1
innocence [21]  5/5 5/8 5/9 5/13 5/25 8/21 8/23 10/19 11/12 11/14 11/23 12/5 12/8 12/17 13/10 13/10 15/20 16/25 21/4 23/10 48/10 66/8
innocent [16]  4/25 5/2 5/19 6/14 6/23 7/1 8/24 9/1 9/19 12/11 12/15 13/10 20/3 20/20 20/23 60/10
innocuous [1]  23/7
inquire [2]  45/5 46/5
instruction [10]  4/11 27/15 29/9 29/24 29/25 31/21 31/23 31/24 32/1 32/17
intentionally [1]  46/3
interest [2]  44/22 46/3
interested [2]  49/10 56/2
interesting [1]  60/11
into [7]  15/8 18/1 19/24 24/9 33/24 35/8 40/3
involved [17]  18/16 28/21 29/6 29/10 29/20 32/5 32/6 32/7 35/12 36/3 36/14 45/18 58/11 66/5 68/20 69/17 70/25
involvement [3]  18/10 57/23 58/24
involves [1]  66/13
involving [5]  32/21 35/20 58/12 59/6 65/9
ipso [1]  44/19
irrefutable [1]  26/18
is [233]
isn't [8]  3/3 19/22 26/20 28/24 42/9 43/11 46/25 57/3
issue [16]  3/4 12/22 13/4 17/6 19/25 19/25 21/15 23/8 24/7 24/9 25/18 26/25 47/21 60/25 63/1 66/1
issues [11]  2/17 2/17 2/23 3/2 3/17 3/25 17/4 24/5 61/16 61/20 70/13
it [198]
it in [1]  20/15
it's [64]  2/24 4/22 6/8 7/6 8/9 11/16 12/7 15/3 15/4 15/10 16/4 17/6 20/19 20/20 22/9 22/16 22/18 23/10 23/19 23/23 24/12 26/25 27/1 27/7 30/10 32/17 33/9 37/22 37/23 37/25 37/25 38/14 38/15 39/3 40/2 40/2 40/3 40/11 43/19 44/1 48/2 48/19 50/10 50/18 50/25 52/3 52/9 56/10 59/12 62/16 63/10 63/25 64/5 64/23 65/10 66/2 66/18 67/1 67/2 67/14 69/25 70/1 70/19 70/21
item [2]  3/21 27/15
its [4]  11/13 12/18 33/2 55/4
itself [4]  7/14 22/10 22/16 38/10

**J**

JAMES [10]  1/6 2/4 7/8 7/9 14/2 14/6 21/21 21/21 22/3 22/11
January [1]  21/22
job [2]  16/19 17/16
Johnson [1]  3/16
Johnston [2]  41/13 68/16
joinder [1]  4/2
judge [4]  1/11 2/8 46/10 46/11
judging [1]  45/23
judiciary [1]  45/10
Julie [1]  67/6

## J

**July [1]** 1/7
**jumbled [1]** 28/9
**juror [2]** 3/5 12/16
**jury [53]** 4/24 5/12 6/4 6/13 6/14 8/24
10/6 10/9 10/18 11/4 12/3 12/24 13/3
13/20 14/16 14/20 14/21 15/15 15/22
16/16 17/19 18/9 18/13 20/9 20/14 22/9
22/14 22/17 29/8 29/9 29/19 30/25 31/2
37/16 39/11 39/17 40/22 41/11 42/20
43/18 43/20 43/23 48/13 48/19 54/21
56/5 56/7 56/15 56/17 56/24 58/23 59/2
59/13
**jury's [2]** 16/18 18/15
**just [61]** 2/19 11/8 12/3 12/20 13/14
13/17 14/13 15/16 16/25 19/13 21/16
21/18 22/7 23/2 23/9 23/11 23/12 24/16
26/13 27/4 27/17 28/9 28/20 29/22 32/8
33/13 39/7 39/16 39/23 40/13 41/5
42/12 46/17 46/17 46/22 47/9 50/10
50/10 50/19 52/3 57/2 57/3 57/11 57/21
60/1 60/9 61/19 62/7 62/20 63/10 63/12
63/17 64/18 64/19 66/3 67/21 68/16
69/5 69/5 69/23 70/1
**justice [3]** 37/5 37/5 63/5

## K

**KAHN [13]** 1/17 1/17 2/10 2/24 19/25
21/14 26/17 32/18 33/14 35/15 55/8
63/18 68/8
**KARIN [1]** 1/17
**keep [1]** 10/13
**Kenneth [2]** 14/10 14/13
**keys [1]** 8/6
**kidnapping [4]** 7/8 24/24 28/13 58/12
**killing [1]** 58/12
**kind [13]** 13/13 17/19 29/8 33/14 44/11
50/17 51/25 56/20 67/14 68/19 69/3
70/8 70/23
**kinds [7]** 2/22 36/10 55/21 65/23 67/12
68/11 70/22
**knees [1]** 58/13
**Knolls [2]** 18/14 21/24
**know [83]**
**knowing [1]** 6/5
**known [5]** 26/14 47/18 59/11 61/7 69/16
**knows [1]** 62/25

## L

**lack [1]** 17/1
**language [3]** 7/4 37/6 65/22
**large [3]** 65/20 67/19 69/12
**larger [4]** 13/16 15/4 15/7 15/9
**last [4]** 36/22 67/2 67/6 67/8
**Latasha [6]** 27/16 27/18 27/20 30/5 30/8
31/18
**late [4]** 42/17 42/21 47/12 56/3
**later [7]** 7/15 17/20 27/24 35/8 46/5
46/22 60/3
**launch [2]** 2/15
**law [3]** 1/17 64/18 65/6
**Lawlor [13]** 17/21 30/4 37/20 40/6 55/9
55/18 61/4 62/2 63/1 63/12 65/12 66/21
69/25
**Lawlor's [6]** 21/5 22/19 24/21 39/22

41/9 49/7
**lawyer [6]** 59/12 60/19 62/1 70/15 70/17
70/19
**lawyers [2]** 55/6 61/4
**lay [3]** 4/15 20/21 24/16
**layers [1]** 53/11
**lead [1]** 36/25
**leap [2]** 10/22 12/5
**learning [1]** 17/22
**least [9]** 39/4 39/11 42/14 51/24 52/9
52/11 53/12 67/15 70/10
**leave [1]** 32/8
**leaves [1]** 6/14
**left [7]** 6/3 27/23 29/5 29/19 31/1 36/13
67/1
**less [2]** 38/2 53/10
**let [16]** 17/3 17/4 17/5 18/21 25/10 29/2
32/13 33/16 40/13 48/15 51/9 53/23
60/25 67/24 68/5 68/5
**let's [8]** 2/19 4/15 27/13 36/20 38/20
40/20 57/2 57/3
**letter [1]** 52/22
**letters [1]** 43/4
**level [1]** 51/23
**lied [7]** 13/19 14/15 14/16 14/20 14/20
15/9 59/3
**life [22]** 22/1 37/9 37/21 38/2 38/3 38/17
40/25 44/9 44/15 45/1 55/5 55/17 58/13
58/16 62/21 63/22 64/4 65/10 65/18
65/19 66/4 69/7
**Lighty [18]** 14/10 14/13 15/11 15/12
25/6 25/8 25/19 30/16 30/16 31/16
31/16 32/25 34/1 34/9 55/16 57/19
57/25 58/2
**Lighty's [11]** 28/1 30/16 30/17 31/9
31/18 34/12 34/13 35/24 36/2 36/11
36/15
**like [26]** 3/17 5/12 5/14 9/6 16/17 16/25
16/25 24/21 26/19 27/5 30/18 35/22
40/20 46/23 47/23 48/17 52/24 53/1
53/15 55/24 56/21 58/7 61/1 63/4 68/8
68/24
**likely [2]** 37/11 42/5
**likewise [1]** 71/7
**limited [2]** 67/17 69/6
**limiting [5]** 4/11 27/15 29/25 31/21
32/16
**LINDA [3]** 1/23 72/2 72/8
**line [6]** 20/2 21/8 30/12 33/16 39/5 49/6
**line-up [1]** 30/12
**lines [1]** 58/13
**listen [1]** 43/2
**listening [1]** 43/2
**little [8]** 7/1 19/20 30/10 46/17 46/20
48/20 56/4 67/2
**lived [2]** 28/23 36/9
**LLC [1]** 1/17
**logic [1]** 52/18
**long [4]** 21/22 21/22 49/16 49/21
**look [6]** 20/18 27/5 37/16 47/9 47/23
61/1
**looking [1]** 59/9
**looks [1]** 26/19
**lose [1]** 16/16
**loses [1]** 55/4
**losing [4]** 22/16 22/17 37/8 68/1

**lot [8]** 9/7 26/14 37/24 53/3 62/6 62/8
64/12 66/20
**lower [2]** 15/4 55/6

## M

**made [21]** 11/11 11/19 12/5 12/7 18/20
18/24 26/3 31/14 33/2 39/5 39/19 39/25
42/15 49/13 50/18 50/23 51/25 53/13
55/19 57/17 57/20
**magic [1]** 66/19
**main [1]** 65/17
**maintaining [2]** 48/10 66/8
**major [6]** 44/2 46/22 46/22 66/12 69/17
70/10
**make [21]** 10/22 10/25 11/11 11/13
26/23 32/23 36/8 37/1 37/14 41/18
42/17 45/4 50/25 54/16 54/22 55/21
56/13 56/18 57/14 59/17 64/2
**makes [2]** 16/21 16/22
**making [13]** 9/4 13/15 19/18 20/15 21/9
22/16 22/18 23/11 27/5 65/6 65/18
69/24 70/23
**man [9]** 5/19 9/6 12/25 17/25 17/25
21/23 22/2 54/7 57/20
**man-min [1]** 54/7
**mandatory [12]** 37/9 38/2 38/3 38/17
40/25 44/8 44/15 45/1 54/25 63/22 64/4
69/7
**many [12]** 17/7 30/22 37/10 45/3 45/3
48/18 54/3 54/13 54/25 56/17 60/6 69/9
**MARSHALL [5]** 1/23 25/24 26/11 72/2
72/8
**MARTA [3]** 1/17 1/17 2/10
**MARYLAND [4]** 1/1 1/6 1/14 1/18
**Massey [22]** 4/12 27/16 27/18 27/20
28/3 28/5 28/6 28/6 28/11 30/5 30/8
30/14 30/15 30/15 30/19 31/5 31/18
32/20 33/2 33/3 34/5 34/5
**Massey's [1]** 30/11
**massively [1]** 11/16
**match [1]** 30/20
**material [2]** 61/14 61/14
**Mathis [27]** 27/23 27/23 27/24 28/2 28/6
28/7 28/16 30/6 30/17 31/17 34/6 34/7
34/10 34/12 34/14 34/16 34/19 34/25
35/6 35/12 35/13 35/16 35/20 36/3 36/5
36/11 36/13
**Mathis' [6]** 27/20 27/21 35/1 35/2 35/3
35/15
**matter [9]** 2/2 2/4 29/16 40/11 48/23
54/9 65/6 66/3 72/4
**may [15]** 4/18 7/3 10/1 13/14 27/5 52/4
64/17 66/14 67/8 67/8 67/9 67/13 70/3
70/15 70/23
**maybe [42]** 3/24 13/8 13/8 17/15 24/9
25/21 35/14 39/5 39/20 40/22 42/12
42/16 43/14 43/15 44/2 46/4 46/14
48/20 50/1 51/15 51/16 52/22 53/4
54/11 54/19 54/20 55/18 56/11 57/4
60/7 60/9 60/10 60/17 61/6 64/22 66/2
66/10 67/5 67/21 68/13 70/1 70/8
**McKenna [8]** 22/18 22/25 23/15 30/4
40/6 41/13 41/15 66/21
**me [38]** 5/23 7/4 10/16 17/3 17/5 18/11
18/21 19/13 23/11 25/10 25/13 27/19
29/2 29/22 32/13 33/5 33/16 35/22

# M

**me... [20]** 37/21 40/13 44/10 45/11 46/23 47/23 48/15 48/20 48/20 51/9 53/23 56/1 56/4 60/25 61/9 65/24 68/5 68/5 68/15 68/19
**mean [48]** 6/16 10/11 10/12 10/17 11/24 12/3 12/7 15/3 16/4 16/9 18/11 21/5 23/18 27/1 28/6 29/13 31/14 32/11 33/11 36/17 37/7 42/4 46/21 47/11 48/13 48/17 50/8 50/11 52/10 52/25 56/5 56/18 56/24 56/25 57/2 57/6 57/10 61/6 62/14 63/10 65/10 65/14 65/19 66/14 68/13 69/24 70/8 70/22
**means [1]** 25/2
**meat [1]** 61/1
**meet [1]** 11/13
**meets [1]** 56/10
**member [1]** 16/20
**mental [2]** 33/15 35/4
**menu [1]** 66/15
**mere [4]** 44/17 60/18 65/15 69/11
**merely [1]** 6/3
**Merzbacher [3]** 51/3 51/7 53/2
**message [1]** 6/3
**messed [1]** 70/18
**MESSITTE [2]** 1/10 2/8
**met [1]** 41/13
**middle [1]** 29/25
**might [13]** 11/7 17/6 18/5 18/5 32/22 33/8 40/8 42/11 51/20 55/1 55/17 57/6 69/14
**miles [1]** 68/21
**min [1]** 54/7
**mincing [2]** 20/19 21/1
**mind [3]** 16/18 17/7 18/15
**minute [4]** 10/8 13/17 58/4 58/4
**misrepresentation [1]** 62/4
**misrepresenting [1]** 6/24
**missed [1]** 70/1
**missing [1]** 63/12
**mistrial [2]** 29/9 31/24
**Mm [1]** 40/17
**Mm-hmm [1]** 40/17
**modified [1]** 17/24
**modifying [1]** 17/20
**moon [2]** 22/12 22/13
**more [26]** 3/12 6/15 7/1 15/7 18/8 19/17 21/11 24/8 27/2 27/7 27/11 36/17 38/24 50/17 54/11 59/9 61/1 61/17 62/7 62/8 64/19 65/11 66/20 67/2 67/13 69/20
**morning [4]** 2/8 2/10 35/6 68/2
**most [2]** 53/19 67/6
**mostly [1]** 37/23
**mother [1]** 17/16
**motion [4]** 1/10 2/24 12/21 31/24
**motions [1]** 2/5
**move [2]** 4/2 50/16
**Mr [22]** 17/21 18/11 19/6 20/12 22/18 22/19 23/15 24/15 24/21 27/23 34/5 34/6 34/7 34/10 34/14 35/2 35/5 35/6 41/13 41/15 53/18 62/17
**Mr. [68]** 2/11 4/25 5/1 6/19 8/3 8/3 8/5 8/7 8/23 11/14 12/24 13/4 13/18 17/25 18/10 18/11 18/14 19/2 19/19 20/3 20/5 20/9 20/12 21/5 24/17 24/24 25/8 27/22

29/6 29/10 29/20 30/9 32/4 32/21 33/25 34/5 34/9 35/6 37/13 37/20 39/16 39/22 41/6 41/15 41/17 47/18 49/2 53/9 55/3 55/9 55/13 55/15 55/16 55/18 57/19 57/22 58/2 58/23 59/1 62/1 63/1 63/4 63/12 64/20 65/12 65/12 67/25 69/25
**Mr. Davis [1]** 18/11
**Mr. Flood [39]** 2/11 4/25 5/1 8/3 8/3 8/5 8/7 11/14 12/24 17/25 18/14 19/2 20/3 20/5 20/9 20/12 24/17 24/24 27/22 29/6 29/10 29/20 32/4 32/21 37/13 39/16 41/6 41/15 41/17 47/18 49/2 53/9 55/13 58/23 59/1 63/4 64/20 65/12 67/25
**Mr. Flood necessarily [1]** 30/9
**Mr. Flood's [10]** 6/19 8/23 13/4 13/18 18/10 19/19 33/25 35/6 55/3 57/22
**Mr. Lawlor [7]** 37/20 55/9 55/18 63/1 63/12 65/12 69/25
**Mr. Lawlor's [2]** 21/5 39/22
**Mr. Lawyer [1]** 62/1
**Mr. Lighty [5]** 25/8 34/9 55/16 57/19 58/2
**Mr. Massey [1]** 34/5
**Mr. Wilson [1]** 55/15
**Ms [34]** 2/24 9/12 17/3 19/25 21/14 24/14 25/24 26/11 26/17 28/11 32/18 32/20 33/2 33/3 33/14 35/15 40/7 41/12 41/13 43/7 45/12 48/20 55/8 63/18 64/13 64/20 64/24 65/12 66/2 66/8 68/16 70/2 71/3 71/5
**much [17]** 5/16 14/21 26/20 27/6 36/17 46/16 46/21 46/23 50/5 51/11 52/3 61/1 61/6 61/11 64/5 68/1 69/10
**Mulberry [1]** 1/18
**multiplicitous [1]** 4/7
**murder [40]** 18/10 20/6 25/16 27/9 28/8 28/13 28/18 28/19 28/21 28/22 29/6 29/7 29/20 30/20 30/22 30/23 31/1 31/3 31/4 32/5 32/6 32/7 32/10 32/20 32/21 33/5 33/10 33/18 34/3 34/4 35/12 35/20 36/4 36/7 36/7 36/12 36/13 36/14 38/17 58/18
**murdered [1]** 20/13
**murders [2]** 30/22 36/10
**must [6]** 11/14 28/5 28/20 30/21 35/9 59/1
**my [26]** 3/11 3/15 7/3 9/22 10/2 12/11 12/16 17/8 20/24 20/25 22/8 24/16 25/21 37/20 43/17 43/24 47/24 50/16 50/19 55/2 55/6 55/14 56/2 60/25 62/10 63/9

# N

**name [1]** 35/5
**names [1]** 22/5
**Natasha [1]** 4/12
**nature [6]** 15/6 22/15 38/16 45/24 51/20 57/22
**near [1]** 9/8
**necessarily [7]** 6/23 8/17 30/9 35/20 43/12 70/14 70/20
**need [10]** 15/6 22/12 40/4 42/6 66/10 66/25 67/7 67/10 70/23 70/24
**needed [2]** 42/21 55/13
**needs [3]** 26/1 64/15 68/18
**negotiate [2]** 39/4 60/8

**negotiating [1]** 37/25
**negotiation [2]** 37/3 46/6
**negotiations [10]** 36/24 38/21 42/21 44/19 45/6 45/11 45/18 45/21 53/20 55/24
**neutral [1]** 7/2
**never [41]** 5/17 5/20 13/11 15/11 15/22 16/24 35/18 37/18 37/19 38/1 38/8 38/25 39/7 39/15 42/3 42/14 44/11 47/9 48/2 48/3 48/7 48/8 48/12 48/17 48/25 48/25 49/11 49/12 52/23 54/10 54/18 55/1 55/6 55/8 60/3 62/18 63/9 63/16 66/1 70/16 70/17
**new [1]** 46/14
**news [3]** 28/13 33/23 35/9
**next [5]** 9/19 24/7 27/13 28/13 68/24
**night [2]** 27/10 41/14
**no [64]** 1/4 3/15 3/19 7/8 7/9 8/11 9/11 9/16 10/10 13/1 14/14 14/18 15/22 17/11 18/17 18/17 19/15 21/14 22/7 23/22 23/24 24/6 27/12 30/15 32/5 32/21 35/13 35/18 38/6 38/6 38/8 38/14 38/17 42/3 46/7 46/7 47/1 47/6 47/16 47/17 48/13 50/18 50/18 50/21 51/11 51/23 52/8 53/1 54/7 54/9 56/11 56/11 58/14 58/21 60/15 61/5 63/21 65/3 68/3 69/15 70/9 70/10 70/25 71/10
**nobody [4]** 20/11 31/1 49/2 50/11
**non [2]** 17/25 48/5
**non-cooperation [1]** 48/5
**non-violent [1]** 17/25
**None [3]** 43/5 43/17 70/3
**nonetheless [1]** 45/15
**nor [3]** 24/24 53/25 63/2
**norm [1]** 61/12
**not [144]**
**notes [3]** 1/24 3/11 43/4
**nothing [6]** 38/21 42/18 47/4 47/10 53/18 63/23
**notice [2]** 57/18 58/11
**notion [2]** 41/19 46/2
**now [42]** 2/2 5/4 21/19 23/3 25/25 28/10 28/11 28/23 39/15 40/9 40/16 40/20 41/10 42/16 43/24 43/24 47/4 47/14 47/18 49/14 49/15 53/5 54/2 60/14 61/3 61/8 61/9 61/13 61/19 62/8 62/17 63/13 64/8 65/2 65/8 65/11 66/14 66/14 66/20 67/20 68/7 69/13
**number [4]** 2/3 2/16 26/5 26/12
**numbers [2]** 3/11 50/19
**numerical [1]** 2/22

# O

**objected [3]** 5/5 7/20 23/5
**objection [6]** 5/6 10/16 23/6 29/2 31/11 31/14
**obligation [2]** 40/19 65/4
**obviously [3]** 3/13 32/25 58/24
**occasions [1]** 54/13
**occurred [3]** 9/15 10/16 48/23
**off [5]** 3/20 14/10 15/17 50/16 58/19
**offense [4]** 15/5 15/5 24/23 55/15
**offer [51]** 4/9 4/17 5/2 5/12 6/6 37/17 38/6 38/6 38/8 38/8 38/18 38/23 39/6 39/17 39/20 39/25 41/15 42/3 42/4 42/23 43/12 45/6 45/14 46/3 46/6 47/6

**O**

offer... [25] 50/10 50/25 51/11 51/16 51/25 52/2 52/3 52/4 52/8 52/13 52/15 53/16 53/18 54/1 55/1 55/10 55/11 55/25 56/1 56/18 57/21 58/14 60/7 64/3 70/2
offered [16] 5/15 5/17 12/23 15/12 32/25 46/7 47/15 48/3 48/5 48/7 48/12 49/1 64/9 64/13 64/14 70/4
offering [5] 5/8 41/1 41/3 43/1 50/15
offers [1] 50/23
office [9] 1/13 1/17 2/9 54/3 54/4 54/24 68/17 68/18 71/5
OFFICIAL [2] 1/23 72/8
often [3] 14/5 42/22 68/20
oh [11] 4/4 7/7 28/17 30/3 35/24 44/14 51/9 56/16 60/3 61/7 70/6
okay [13] 3/7 7/19 12/19 17/3 22/22 35/11 36/20 41/7 47/3 50/1 60/11 65/18 66/17
omissive [1] 40/21
on [116]
once [3] 22/12 37/10 37/24
one [34] 2/19 3/4 3/8 3/13 3/22 4/1 4/15 5/20 8/11 13/14 17/9 18/19 19/22 22/24 23/22 25/13 25/22 34/9 34/10 38/17 44/8 44/10 45/7 48/15 51/1 52/9 52/25 61/12 64/19 66/7 66/24 67/5 69/5 69/20
ones [3] 4/16 23/5 67/6
only [13] 5/20 8/5 18/6 33/2 34/11 35/5 37/4 38/18 40/15 46/1 65/18 67/15 67/16
onto [1] 61/2
open [1] 61/16
opening [20] 4/23 12/11 13/9 13/21 14/22 14/23 17/7 17/14 18/23 18/23 19/20 20/18 20/24 21/1 21/5 21/10 22/18 23/4 23/23 56/17
opinion [2] 67/5 68/7
opportunity [1] 32/25
opposed [3] 9/1 11/12 48/18
or [70] 2/13 2/22 7/1 7/15 8/14 9/2 9/14 10/23 14/22 16/11 16/19 16/21 17/10 17/16 17/16 17/18 17/25 18/4 18/16 19/22 19/25 21/11 24/10 25/1 28/13 28/13 29/9 29/9 30/4 30/6 30/21 31/21 32/6 35/6 35/12 39/1 39/11 39/11 40/6 40/20 40/20 43/2 43/13 45/18 49/11 51/16 54/11 54/21 56/10 56/22 57/4 57/9 59/15 61/4 61/23 62/13 62/14 65/8 65/12 65/12 65/18 65/19 67/6 67/16 67/16 68/15 69/16 70/9 70/15 70/25
order [4] 15/5 41/14 55/16 66/18
ordinarily [1] 55/21
organizing [1] 65/24
original [1] 55/24
other [23] 4/16 13/13 17/13 17/23 19/2 26/11 29/6 29/7 30/22 30/23 31/1 31/3 31/19 33/5 34/15 35/20 36/12 39/11 48/5 52/14 56/23 64/14 70/25
others [3] 2/23 17/4 67/3
otherwise [1] 6/15
ought [4] 3/24 26/17 40/22 65/22
our [8] 3/25 18/22 19/3 24/23 37/13 48/2 53/9 68/17

out [21] 3/25 7/13 10/17 20/19 24/16 25/3 28/4 32/9 32/16 33/12 37/10 37/12 37/14 46/17 50/19 55/16 61/1 66/4 67/6 68/6 69/25
outcome [1] 63/23
over [8] 24/19 29/21 37/11 42/20 46/8 47/2 47/10 48/9
overall [1] 15/16
overture [1] 39/19
overtures [2] 55/19 55/22
overwhelming [1] 19/19
own [3] 43/8 54/16 54/22
owner [1] 25/15

**P**

P-R-O-C-E-E-D-I-N-G-S [1] 2/1
page [1] 7/6
painting [1] 36/2
pants [2] 35/7 35/9
paper [1] 69/3
papers [2] 61/23 64/17
paragraph [2] 18/22 24/22
part [15] 7/9 7/9 12/21 13/15 15/3 15/8 15/17 24/2 37/4 40/19 44/1 44/2 47/18 59/3 59/5
participate [1] 24/25
particular [4] 18/16 21/15 55/1 58/6
particularly [3] 37/7 61/12 68/15
partly [1] 9/22
path [1] 15/22
patterns [1] 52/25
peculiar [1] 48/20
penalty [1] 57/19
Pender [1] 64/6
pending [1] 2/2
people [10] 18/17 21/25 22/5 26/4 30/17 50/20 50/22 58/11 62/11 64/14
per [1] 64/3
percent [5] 37/13 38/15 50/20 50/21 50/22
perhaps [5] 26/22 29/25 56/9 67/3 69/25
permissible [1] 11/5
permission [2] 15/6 15/13
permit [1] 41/17
permitted [2] 5/24 9/9
perpetrators [1] 13/18
person [13] 17/12 17/14 17/14 18/2 18/4 18/5 20/21 22/12 34/8 34/15 51/15 57/12 57/13
person's [1] 17/11
pertains [1] 68/15
PETER [1] 1/10
petition [8] 5/11 7/12 18/7 29/18 36/25 37/12 40/2 50/3
petitioner [2] 19/16 55/3
phase [1] 68/19
phone [12] 6/19 13/18 14/7 15/11 15/12 16/24 25/2 26/3 26/5 26/6 26/7 26/12
pick [1] 17/4
picked [3] 32/9 36/4 36/11
picks [1] 38/21
picture [1] 48/17
piece [4] 5/15 5/16 16/17 23/10
pieces [1] 13/21
piggybacking [1] 36/10
pin [2] 34/3 34/4

pink [2] 34/8 45/2
PJM [2] 1/5 2/3
place [6] 5/17 6/10 6/15 9/14 14/14 67/21
planning [1] 3/15
plea [78]
plead [6] 54/21 54/22 56/16 57/3 62/19 63/7
pleading [6] 41/13 41/19 47/20 50/20 57/3 62/12
pleas [2] 48/5 64/15
please [1] 63/20
pled [2] 37/14 61/7
podium [1] 4/18
point [52] 6/17 7/15 7/16 8/18 10/11 10/14 10/17 11/5 11/6 11/10 11/20 11/21 12/2 15/23 18/20 19/1 20/10 20/15 22/8 23/13 27/11 27/14 27/18 29/15 29/22 33/2 35/17 39/4 39/17 39/22 40/11 40/15 42/8 47/7 47/9 47/11 54/13 55/2 56/14 56/18 57/17 58/21 58/24 59/1 61/12 63/19 64/11 64/19 64/21 67/8 68/1 69/20
pointed [2] 37/12 69/25
points [5] 7/12 21/18 24/18 26/21 26/23
policeman's [1] 58/12
policy [1] 48/2
pornography [1] 54/7
portion [1] 21/19
portions [1] 53/19
position [6] 10/2 24/23 30/11 31/6 62/18 70/20
possess [1] 8/21
possessed [1] 19/2
possibility [5] 29/10 32/7 41/22 55/7 56/14
possible [4] 65/9 65/19 69/25 70/1
possibly [5] 18/13 18/15 35/12 54/18 55/19
post [1] 46/4
post-conviction [1] 46/4
potentially [1] 41/1
powerful [3] 24/19 57/4 58/5
practice [3] 44/2 64/23 69/14
prejudice [8] 18/8 18/13 18/17 22/13 22/16 36/23 51/14 59/15
prejudiced [2] 22/9 22/14
prejudicial [7] 10/20 16/14 29/8 29/21 32/11 33/15 35/21
preliminary [1] 2/12
prepared [5] 11/22 19/3 55/14 65/14 67/20
preparing [1] 47/24
present [3] 7/8 19/3 24/24
presented [1] 18/9
presents [1] 19/22
pretty [5] 16/4 45/10 46/23 54/8 67/7
principle [2] 65/24 66/22
prior [2] 25/19 47/4
priors [1] 54/7
probably [5] 13/22 15/15 29/17 39/17 62/9
problem [2] 46/18 50/7
problematic [1] 46/9
problems [1] 40/1
proceed [3] 7/21 7/23 54/17

## P

**proceedings [2]**  1/10 72/3
**process [2]**  37/4 37/5
**proclamations [1]**  22/19
**product [1]**  38/7
**professional [1]**  46/13
**proffer [8]**  39/14 39/20 41/15 42/8 43/9
47/10 49/13 54/2
**proffered [2]**  59/14 62/23
**proffering [3]**  41/16 41/18 49/11
**promise [3]**  7/5 17/1 22/10
**promised [2]**  4/24 18/23
**promises [2]**  19/23 22/17
**promising [1]**  16/15
**prone [1]**  6/15
**proof [3]**  9/2 9/5 18/17
**propensity [1]**  16/11
**proposition [5]**  8/10 23/19 23/21 53/24
69/13
**propositions [2]**  65/20 67/19
**prospect [1]**  41/12
**prove [8]**  8/5 9/3 20/22 20/25 22/13 38/5
51/15 59/7
**proved [3]**  8/10 23/20 23/21
**provide [4]**  5/13 5/25 16/15 60/23
**providing [1]**  19/20
**proving [1]**  53/17
**Public [1]**  54/4
**purchased [3]**  14/13 25/8 25/19
**purposes [3]**  21/1 21/12 34/18
**pursue [3]**  44/9 53/6 66/6
**pursued [4]**  37/22 39/8 66/1 67/23
**pursuing [1]**  57/19
**pushing [1]**  25/3
**put [18]**  6/25 8/22 9/20 13/2 17/21 20/5
21/3 22/23 23/25 25/21 27/9 29/17
30/12 30/17 46/2 55/13 59/2 62/22
**puts [5]**  16/17 18/1 35/6 37/20 62/18
**putting [2]**  11/14 45/19
**puzzled [1]**  11/3

## Q

**qualitatively [2]**  52/1 64/1
**quarrel [1]**  61/5
**question [9]**  27/3 35/23 44/3 48/15 59/7
59/16 65/5 69/5 70/5
**questioned [2]**  28/3 28/4
**questioning [2]**  28/11 29/5
**questions [1]**  21/13
**quick [2]**  21/18 68/7
**quickly [1]**  69/20
**quote [4]**  5/9 18/18 52/3 61/18
**quote-unquote [3]**  18/18 52/3 61/18

## R

**raise [1]**  60/2
**raises [1]**  64/10
**rare [2]**  38/14 38/16
**rather [3]**  2/17 12/17 32/8
**read [9]**  7/4 18/24 21/5 28/9 48/15 49/6
53/2 53/3 55/3
**reading [1]**  12/16
**ready [2]**  2/15 63/6
**real [1]**  21/21
**really [30]**  5/20 15/12 16/1 21/8 22/20

26/20 32/11 32/12 32/15 34/4 35/14
37/24 37/25 40/4 46/10 46/19 48/17
50/4 50/18 52/4 53/3 60/20 60/25 61/22
67/2 67/7 67/9 70/21 70/21 70/22
**reason [5]**  42/3 45/24 46/1 47/17 63/25
**reasonable [1]**  9/2
**reasons [4]**  12/13 54/25 60/1 68/11
**recall [9]**  17/9 19/1 25/10 29/15 33/1
33/9 48/22 55/20 56/8
**receive [5]**  5/15 6/5 41/15
**Recess [1]**  71/12
**recollection [1]**  56/11
**record [8]**  13/1 28/10 40/4 45/5 46/5
46/8 54/8 72/3
**records [1]**  26/6
**refer [1]**  58/7
**refined [1]**  65/9
**reflecting [1]**  8/25
**reflects [1]**  10/2
**refutable [1]**  26/10
**regard [2]**  17/24 33/9
**regarding [1]**  4/11
**regime [1]**  54/23
**regionally [1]**  69/16
**regret [1]**  62/11
**regularly [1]**  50/23
**relate [1]**  63/2
**relationship [1]**  27/19
**relevant [2]**  22/20 54/12
**relief [1]**  45/2
**reluctant [1]**  41/19
**rely [1]**  70/3
**remember [9]**  25/25 28/22 34/2 57/23
58/2 58/20 58/21 58/25 70/6
**remembered [2]**  28/12 28/12
**remembering [1]**  62/6
**remembers [1]**  35/9 62/8
**remiss [1]**  41/1
**repeatedly [1]**  14/20 14/24
**reply [1]**  50/4
**report [2]**  33/23 35/9
**reporter [4]**  1/23 14/4 72/1 72/8
**representations [2]**  47/19 47/20
**represented [1]**  43/6
**representing [1]**  46/13
**request [5]**  4/11 29/8 38/10 55/10 61/19
**required [1]**  47/21
**requirement [2]**  64/23 64/24
**requirements [1]**  65/1
**resistant [3]**  42/9 49/7 49/9
**resolve [2]**  37/2 39/7 67/21
**resolved [4]**  4/6 38/15 48/24 60/18
**Respectfully [1]**  63/21
**respond [5]**  21/14 32/16 35/22 68/8 69/2
**response [3]**  32/13 39/24 69/8
**responses [1]**  44/24
**responsibility [4]**  55/14 62/19 62/22
63/7
**responsive [2]**  47/20 69/3
**result [1]**  17/12
**returned [3]**  28/6 28/6 28/7
**reverse [1]**  39/7 67/21
**revisited [1]**  31/25
**right [38]**  2/6 3/19 4/7 4/15 8/1 8/8 9/18
9/13 14/2 14/6 15/1 18/1 23/18 25/25
26/9 26/16 27/11 27/13 30/25 30/25

33/6 37/25 40/21 42/19 42/24 47/3
49/17 52/5 53/10 53/21 54/2 61/13
63/18 65/11 66/14 68/2 69/13 71/9
**risky [1]**  41/17
**road [2]**  52/12 56/10
**role [1]**  55/15
**roll [3]**  44/15 54/20 60/10
**room [1]**  34/8
**RPR [1]**  72/8
**rubber [1]**  56/10
**rues [1]**  42/16
**rule [5]**  47/16 59/19 60/4 64/16 69/24
**ruling [2]**  70/9 70/24
**rulings [1]**  18/24
**running [1]**  19/24

## S

**said [67]**  4/25 5/4 5/9 5/10 5/21 7/14
7/21 7/24 8/8 9/23 10/9 10/12 10/23
10/23 11/4 11/5 11/19 12/15 13/1 13/7
13/25 15/9 15/24 16/5 16/25 18/3 18/5
19/6 20/11 21/10 21/19 22/11 23/14
23/15 23/17 28/17 32/3 33/22 37/16
39/14 40/7 40/12 41/4 41/5 41/10 41/18
41/25 43/1 43/1 43/8 45/14 45/16 45/21
47/16 49/7 49/12 59/10 59/12 60/13
61/8 62/1 64/5 64/6 65/1 65/15 66/16
70/1
**sale [1]**  25/6
**same [10]**  12/21 12/23 14/24 20/24
36/14 41/14 60/23 60/24 62/8 66/21
**SANDRA [2]**  1/13 2/8
**save [5]**  14/12 38/18 44/8 44/10 46/4
**saw [7]**  33/10 33/17 33/23 34/22 35/3
35/9 35/15
**say [102]**
**saying [29]**  5/18 10/4 10/23 13/10 15/18
18/3 18/19 20/2 20/18 20/25 21/8 21/10
22/9 23/3 29/1 30/24 34/22 35/4 41/10
44/13 44/17 45/10 45/10 46/24 62/20
63/1 63/13 66/2 71/2
**says [31]**  12/10 14/1 18/22 28/20 28/22
34/21 36/8 38/5 38/20 40/14 41/11
41/11 43/14 43/24 47/14 47/17 48/8
52/23 55/8 60/14 60/19 61/7 61/8 62/9
63/9 66/11 66/18 66/20 69/19 70/6
70/18
**scenario [1]**  59/7
**scenarios [1]**  57/11
**scene [6]**  9/8 9/14 20/6 27/9 30/6 30/7
**scent [1]**  9/15
**scores [1]**  52/24
**se [1]**  64/3
**seat [1]**  58/9
**seated [2]**  14/2 14/6
**second [7]**  17/6 19/24 25/13 55/2 55/10
60/4 65/21
**section [1]**  28/10
**see [16]**  6/16 11/1 11/8 11/16 23/15
25/10 30/3 33/16 35/24 37/25 45/14
54/20 56/25 60/7 68/5 68/12
**seeing [1]**  33/24
**seek [11]**  3/9 37/2 38/17 42/4 45/6 46/3
58/21 64/3 65/7 67/11 70/3
**seeking [2]**  46/14 64/15
**seems [3]**  16/25 29/22 56/3

**S**

seen [1] 57/1
selected [1] 40/23
selecting [2] 56/15 56/17
selection [13] 37/16 39/12 39/17 41/12
42/20 43/18 43/20 43/23 48/19 56/6
56/7 56/24 59/13
self [1] 47/19
self-serving [1] 47/19
semantics [1] 20/17
sense [8] 5/13 14/10 15/14 36/9 42/17
60/21 62/4 63/10
sentence [9] 37/9 38/1 38/2 38/3 55/5
55/6 55/17 62/10 62/21
sentenced [1] 44/15
sentences [3] 58/16 65/10 65/19
sentencing [3] 54/23 56/3 56/5
sequence [3] 2/22 4/16 58/25
serious [2] 19/10 65/19
seriousness [1] 57/18
serving [1] 47/19
set [1] 12/3
setting [2] 15/17 62/17
several [1] 44/15
shape [1] 16/1
she [27] 26/12 27/22 28/17 28/20 28/21
28/22 29/13 31/6 33/9 33/10 33/10
33/17 33/17 33/20 33/22 33/23 33/23
34/21 34/22 35/3 35/6 35/15 35/15
35/16 48/22 64/13 64/13
she's [4] 34/25 34/25 35/2 35/19
shirt [4] 34/23 35/3 35/15 36/17
shooting [2] 9/15 11/9
shorthand [1] 16/3
shot [1] 54/10
should [23] 2/17 5/7 12/20 24/9 24/16
29/10 32/19 35/25 43/17 43/22 47/12
53/9 55/18 58/17 60/9 60/13 60/20
61/11 61/21 66/23 67/9 70/11 70/16
shouldn't [1] 70/6
show [30] 5/1 5/1 5/4 5/18 6/12 6/13
6/14 6/22 6/25 7/10 8/24 9/19 9/20 9/23
9/24 10/5 11/6 12/15 13/11 15/20 15/21
16/11 20/3 20/20 22/11 22/14 22/15
27/7 27/8 57/5
showed [3] 6/18 25/18 26/7
showing [1] 13/9
shows [1] 54/19
sign [1] 54/19
significant [1] 41/25
simply [9] 6/7 10/2 10/20 20/2 33/9 38/1
39/23 46/5 53/25
since [2] 17/6 50/2
single [1] 17/9
sir [1] 71/10
sit [1] 60/7
sitting [1] 20/12
situation [3] 51/14 56/21 57/11
situations [3] 66/25 67/11 68/22
Sixth [1] 4/22
Slow [1] 14/4
smaller [1] 3/24
sneak [1] 17/10
so [112]
so-to-speak [1] 56/10

society [1] 16/20
some [32] 14/12 19/1 21/20 22/2 29/6
30/22 30/23 31/1 31/2 33/25 35/20
36/12 39/4 39/5 39/6 39/11 39/20 40/9
40/15 40/18 43/14 47/9 51/25 53/13
58/21 59/1 61/13 65/22 67/3 67/25
69/18 70/20
somebody [5] 11/7 11/23 50/12 68/18
71/5
somehow [6] 15/10 16/24 32/4 46/2
55/10 68/12
someone [3] 6/22 58/3 68/17
something [29] 5/12 7/1 8/25 10/7 16/19
17/17 18/5 22/15 26/19 28/13 33/23
35/10 36/21 39/11 40/20 40/21 41/1
42/9 43/11 49/16 49/23 50/2 53/12 57/6
58/14 64/10 68/19 68/24 69/15
sometime [3] 29/19 35/8 45/12
sometimes [6] 50/11 50/12 55/24 55/25
56/17 57/8
somewhat [1] 65/9
somewhere [2] 52/12 69/16
son [1] 54/12
sorry [12] 3/10 4/4 14/5 14/5 14/22 16/6
22/21 25/25 29/4 49/5 53/1 56/7
sort [15] 4/21 13/14 15/10 15/14 16/17
18/1 23/7 23/10 39/5 46/17 46/18 66/14
68/11 69/6 70/20
sought [7] 38/8 38/25 42/3 47/6 67/16
67/18 68/10
sounds [2] 44/10 46/23
South [1] 1/14
SOUTHERN [1] 1/2
speak [2] 49/10 56/10
speaking [1] 44/20
specific [1] 70/13
specifically [3] 13/24 67/14 70/5
spectrum [1] 46/20
speculating [2] 18/4 18/6
spend [2] 3/25 46/16
spoken [2] 40/5 40/6
square [1] 45/22
squarely [1] 9/14
squeeze [1] 67/6
stage [5] 41/16 42/17 42/18 43/10 48/21
stand [3] 6/13 8/7 11/15
standard [2] 4/22 44/1
standing [2] 20/14 23/3
standpoint [1] 33/21
start [2] 3/3 4/1
started [1] 54/24
starting [1] 4/16
state [3] 44/3 58/13 69/6
stated [1] 24/22
statement [18] 9/4 10/22 11/19 12/11
19/21 20/18 20/24 21/2 21/6 21/8 21/11
25/16 40/2 42/7 47/5 56/17 61/18 66/10
statements [4] 17/7 17/14 21/2 64/17
states [7] 1/1 1/4 1/11 2/3 55/4 64/6
69/16
stay [1] 68/21
staying [1] 20/22
STENOTYPE [1] 1/24
step [5] 9/19 38/24 39/4 52/10 66/12
sticky [1] 13/23
still [1] 46/11

stock [1] 37/22
stopped [1] 10/11
straight [2] 54/21 54/22
stranger [1] 63/5
strategic [6] 17/18 18/20 32/22 53/13
54/16 57/14
strategies [2] 70/2 70/4
strategy [9] 4/22 6/11 15/4 15/7 15/9
17/20 17/24 19/3 22/23
Street [2] 1/14 1/18
strengths [1] 52/20
Strickland [2] 4/23 59/16
strikes [1] 3/5
strong [3] 37/8 57/4 63/23
stronger [5] 39/1 39/3 44/6 52/7 52/9
stuck [2] 53/18 53/18
submit [5] 3/1 3/10 3/11 24/16 61/24
submitted [1] 17/11
submitting [4] 4/3 4/4 4/5 4/8
substantive [1] 25/1
substantively [1] 22/9
successfully [1] 17/10
such [4] 13/8 18/24 24/19 33/11
sufficiency [1] 4/10
sufficient [1] 24/10
suggest [1] 56/13
suggested [2] 45/13 60/2
suggesting [5] 29/9 36/15 44/14 46/18
46/22
suggestion [1] 55/12
summarize [1] 23/24
supplement [1] 26/1
supplemental [4] 3/16 66/10 67/10 71/4
support [1] 4/10
suppose [2] 26/16 40/15
supposed [2] 16/23 23/24
Supreme [1] 37/3
sure [11] 10/25 29/3 29/18 30/5 32/15
32/23 39/2 45/4 46/9 48/18 61/14 62/11
67/14
sustained [1] 5/6
swords [1] 50/21
sworn [1] 40/2
system [2] 37/5 63/5

**T**

table [6] 14/2 14/6 14/7 63/25 64/4
65/11
tactical [2] 24/20 27/4
tactically [1] 42/15
take [8] 16/2 39/21 46/8 52/23 57/18
58/11 61/17 71/3
taken [1] 51/16
takes [1] 54/10
talk [18] 2/23 4/19 5/11 25/22 33/5
38/20 40/15 40/20 40/22 41/4 41/21
43/20 43/21 43/23 45/13 49/16 56/21
57/16
talked [4] 11/6 25/24 42/1 57/11
talking [14] 4/1 6/3 15/25 20/1 20/17
28/19 32/20 34/18 34/25 35/14 42/13
49/18 55/17 67/16
targets [2] 34/12 34/13
technically [1] 26/22
tell [7] 22/1 27/19 33/5 45/7 47/23 48/20
58/4

# T

**telling [2]** 22/14 61/25
**tells [1]** 31/2
**terms [5]** 16/4 29/13 40/12 69/14 69/23
**testified [6]** 9/17 25/12 27/18 27/22
57/25 58/9
**testifies [1]** 48/6
**testify [7]** 16/9 18/18 26/12 48/2 55/16
58/1 62/24
**testifying [1]** 26/4
**testimony [15]** 12/22 18/3 25/7 30/2
30/7 30/11 32/4 32/6 33/19 34/22 36/2
40/3 64/12 64/15 65/11
**texture [2]** 51/20 67/2
**than [18]** 2/17 3/12 5/16 6/15 12/17 29/7
32/8 38/2 38/3 38/24 50/17 52/14 54/23
61/18 62/7 63/24 67/3 67/13
**thank [8]** 4/20 7/7 24/3 53/22 68/3 68/4
71/10 71/11
**that [563]**
**that's [87]**
**their [19]** 14/19 17/20 23/4 23/6 28/2
30/12 30/20 30/21 31/14 36/6 40/2 46/4
46/13 50/21 53/17 54/16 54/22 60/10
66/7
**them [15]** 3/18 13/5 15/13 22/14 25/3
26/19 26/24 30/17 37/16 40/7 54/19
58/16 61/5 66/5 66/6
**themselves [1]** 60/9
**then [54]** 2/7 2/18 3/4 3/25 4/12 4/16 5/2
5/13 5/15 5/19 6/10 6/14 8/4 9/19 10/20
10/24 12/11 13/5 13/13 14/24 16/15
16/20 17/4 17/14 17/20 18/19 19/23
21/10 25/18 26/6 27/23 27/23 28/17
28/23 29/25 36/5 42/1 42/2 42/10 42/13
42/15 43/12 44/21 48/9 50/2 50/25
52/11 53/13 55/17 55/17 60/3 68/2 69/2
70/13
**theoretically [1]** 48/4
**theory [12]** 13/16 15/16 16/23 25/3 28/2
30/12 30/16 30/18 30/21 36/11 43/16
43/17
**there [99]**
**there's [35]** 5/20 9/7 9/11 10/4 11/23
12/21 14/1 18/16 18/17 19/15 19/19
20/11 26/13 30/1 30/22 31/1 32/21
35/20 36/10 40/1 42/7 42/15 44/8 47/16
47/17 52/22 52/24 52/25 61/14 63/25
64/4 65/22 66/22 69/9 69/9
**therefore [2]** 5/25 20/20
**these [15]** 10/18 12/14 15/8 17/4 18/4
26/18 44/3 47/19 55/19 58/6 62/5 62/24
65/19 68/20 70/22
**they [123]**
**they'll [2]** 50/13 50/15
**they're [18]** 6/9 8/25 12/12 14/10 22/1
27/5 35/19 42/4 42/19 50/15 50/15
54/20 54/21 59/23 60/7 61/12 61/12
64/10
**they've [1]** 45/16
**thing [4]** 18/1 60/11 60/23 60/24
**things [6]** 18/4 21/9 22/3 25/1 62/24
66/15
**think [73]**
**thinking [4]** 5/14 8/24 35/9 69/6

**this [145]**
**those [18]** 3/17 13/21 13/25 17/19 24/5
25/1 26/21 26/23 40/15 46/18 50/21
61/20 64/17 66/24 67/19 67/22 70/3
70/13
**though [9]** 10/8 21/6 29/16 38/19 58/5
60/11 62/3 65/5 70/14
**thought [14]** 2/16 7/13 11/15 11/16
11/17 13/4 25/2 28/18 28/20 39/15 43/9
49/6 58/19 59/1
**thoughts [1]** 17/19
**three [3]** 2/19 3/12 4/5 21/18 58/11
**through [8]** 4/16 6/11 6/11 6/11 29/5
59/7 62/4 70/22
**throughout [2]** 26/14 48/11
**throw [1]** 44/25
**Thursday [1]** 1/7
**ticket [1]** 3/21
**tied [2]** 15/7 15/8
**ties [1]** 13/13
**time [25]** 4/1 9/8 11/11 12/10 14/12 17/8
20/6 20/12 21/22 21/22 25/16 34/9
37/12 37/25 46/16 49/17 53/17 54/1
55/23 56/16 60/20 62/11 64/3 67/25
69/2
**timeline [1]** 50/1
**times [3]** 14/17 54/3 56/17
**timing [1]** 30/21
**to many [1]** 48/18
**today [3]** 61/10 61/23 64/12
**toddler [1]** 5/14
**together [1]** 31/18
**token [1]** 12/23
**told [12]** 5/22 6/4 10/9 11/4 13/5 13/9
14/8 43/18 47/9 49/11 62/7 63/9
**tone [1]** 15/17
**Tony [1]** 27/20
**too [10]** 23/4 41/17 42/21 46/16 47/11
50/2 57/17 58/19 69/9 69/24
**took [5]** 14/14 36/11 37/18 39/4 52/9
**total [1]** 53/6
**totally [3]** 42/9 49/7 49/9
**touch [2]** 3/17 13/14
**touching [1]** 40/18
**toward [1]** 52/10
**towards [1]** 21/9
**trade [1]** 37/23
**transcript [2]** 1/10 72/3
**TRANSCRIPTION [1]** 1/24
**traveled [2]** 22/12 22/13
**trial [40]** 4/22 5/19 6/11 8/14 8/15 8/16
15/17 17/12 18/25 21/20 22/3 24/23
25/24 26/14 29/25 32/23 33/13 35/17
41/14 45/1 46/13 46/15 46/21 46/22
48/11 48/13 49/9 50/14 54/11 54/17
55/7 57/2 59/4 60/9 61/17 62/6 62/7
62/7 63/22 69/7
**tried [3]** 28/4 38/4 58/8
**trigger [2]** 9/6 57/20
**trouble [1]** 52/18
**true [11]** 14/21 25/4 37/7 53/25 55/14
59/12 62/10 62/1 65/2/1 63/15 64/17
**trump [1]** 70/7
**truthfully [1]** 59/14
**try [9]** 17/10 30/19 37/17 37/18 40/9
53/6 63/23 65/18 66/18

**trying [6]** 10/13 14/17 32/18 47/24 53/15
60/25
**TV [3]** 33/10 33/18 33/23
**two [6]** 2/19 3/12 4/2 4/5 14/14 24/18
**type [1]** 26/10
**typical [1]** 56/23
**typically [1]** 56/20

# U

**U.S [4]** 2/9 17/8 54/3 54/24
**Un [1]** 26/10
**Un-refutable [1]** 26/10
**under [7]** 19/4 43/13 44/3 59/16 65/3
66/24 67/24
**undercut [1]** 19/11
**undermining [1]** 4/13
**underneath [1]** 55/16
**understand [7]** 12/4 24/2 33/16 36/20
37/21 53/5 67/1
**understanding [2]** 3/15 8/20
**unfulfilled [1]** 17/1
**unimaginable [1]** 38/16
**unique [1]** 50/18
**UNITED [7]** 1/1 1/4 1/11 1/13 2/3 64/6
69/16
**United States [3]** 2/3 64/6 69/16
**unknown [1]** 34/8
**unless [7]** 5/8 10/12 11/22 21/13 48/3
58/1 58/14
**unpublished [1]** 64/5
**unquestionably [1]** 37/1
**unquestioned [1]** 32/9
**unquote [3]** 18/18 52/3 61/18
**unscramble [1]** 31/21
**unsworn [2]** 47/20 64/17
**until [6]** 13/5 31/18 37/15 42/20 42/20
43/18
**unusual [2]** 50/11 56/4
**up [32]** 6/8 10/25 12/3 17/4 20/8 20/14
23/11 26/20 29/3 29/18 30/12 30/20
31/19 32/9 36/5 36/11 38/21 43/15
44/13 46/1 46/4 46/25 54/3 54/8 54/21
54/22 57/5 60/2 61/17 62/6 70/18 71/3
**upon [2]** 17/22 50/25
**upsets [1]** 44/20
**upsetting [1]** 46/21
**us [11]** 13/9 13/9 13/11 16/21 16/22
42/18 43/1 47/13 54/10 58/4 58/14
**use [5]** 17/10 28/1 55/11 56/20 66/19
**used [11]** 6/19 6/19 13/18 13/19 14/7
14/7 14/9 15/13 37/6 50/6 54/23

# V

**vanishingly [2]** 38/14 38/15
**various [2]** 65/1 70/2
**vehicle [3]** 14/14 35/6 35/8
**verbal [1]** 55/21
**verdict [1]** 44/20
**versus [2]** 2/4 64/6
**very [24]** 8/9 9/8 13/23 21/16 22/4 23/19
23/20 26/20 32/24 33/12 37/10 37/11
37/11 39/16 39/18 40/11 42/5 50/12
54/23 58/21 63/23 63/24 64/20 65/19
**victim [1]** 24/25
**violent [2]** 17/25 22/2
**virtually [1]** 38/3

## V

virtue **[1]**  36/4

## W

wait **[3]**  10/8 60/7 68/5
waited **[1]**  43/18
waiting **[2]**  42/20 57/5
walked **[1]**  47/10
walking **[1]**  37/10
walks **[1]**  42/20
want **[31]**  2/21 2/23 4/19 6/7 6/8 21/14
22/7 23/2 24/7 24/14 37/18 41/4 47/10
47/12 49/12 50/24 53/3 54/22 55/11
55/25 57/16 60/8 62/20 63/11 63/19
64/2 64/19 69/4 69/18 69/23 71/2
wanted **[8]**  28/1 30/23 31/15 31/16 34/4
34/9 41/6 55/4
wants **[4]**  3/1 33/14 34/3 54/18
was **[203]**
wasn't **[24]**  7/5 8/3 8/5 8/6 9/9 10/8 10/9
11/4 27/6 30/20 32/10 34/14 35/17
36/12 37/15 38/23 39/6 49/7 49/9 52/14
52/15 52/15 52/21 58/7
way **[26]**  3/25 8/5 15/12 19/4 28/3 28/5
32/5 35/5 36/15 37/2 38/15 38/18 44/8
44/10 48/11 49/21 60/17 62/5 62/6
63/11 64/18 66/4 66/11 66/16 68/14
70/7
way and **[1]**  28/3
ways **[2]**  14/14 45/3
we **[95]**
we'll **[8]**  3/20 9/19 9/24 17/4 23/15 56/18
67/3 67/24
we're **[28]**  10/12 10/19 10/23 11/14
14/17 15/20 15/21 16/18 20/17 20/19
21/1 26/23 26/24 29/3 34/18 35/14
38/24 39/15 41/5 43/1 43/2 43/5 47/3
49/18 57/4 59/9 67/7 68/1
we've **[1]**  3/4
weaker **[2]**  39/1 52/14
weakness **[3]**  52/17 52/20 54/19
well **[68]**  3/3 3/21 3/24 7/11 7/12 8/19
10/8 11/1 11/3 11/10 13/7 14/25 16/3
20/3 22/3 22/23 24/9 25/15 26/2 26/9
26/14 26/16 28/20 30/8 31/20 33/2 36/8
36/10 36/22 39/13 39/15 39/24 39/25
40/18 40/19 42/2 42/11 42/19 43/14
44/10 44/17 45/9 45/20 46/11 46/16
46/24 47/14 48/1 48/2 48/8 48/12 49/4
50/1 50/6 51/9 51/17 53/2 53/16 59/6
60/24 61/16 62/2 62/11 62/16 65/5
66/17 67/4 70/15
well-known **[1]**  26/14
went **[2]**  23/4 48/13
were **[24]**  5/4 6/5 6/5 12/16 13/2 15/8
17/16 18/17 26/3 26/3 26/6 26/13 31/15
31/17 34/13 36/3 40/6 41/14 45/5 48/17
54/25 57/19 59/6 70/4
what **[143]**
what's **[5]**  7/11 33/19 40/12 56/23 63/12
whatever **[8]**  2/25 28/21 30/7 54/12
63/25 66/14 71/1 71/8
when **[27]**  5/4 8/23 9/15 14/19 20/14
20/18 28/3 28/6 29/19 36/5 41/21 42/5
43/12 44/7 45/21 49/19 50/20 54/24

54/24 56/14 62/17 62/25 64/4 64/25
66/23 67/22 70/23
where **[40]**  13/7 17/9 18/8 19/9 19/18
19/22 28/23 29/3 37/7 37/25 38/14
40/24 45/1 45/12 48/5 51/14 52/15 53/1
54/4 54/7 54/13 56/10 56/25 58/8 58/11
58/13 58/22 59/15 61/22 63/16 63/24
66/7 67/14 68/22 69/7 69/14 69/17 70/9
70/17 70/25
whereabouts **[1]**  13/20
Wherever **[1]**  36/1
whether **[28]**  2/21 17/18 17/25 18/15
27/3 30/6 30/6 31/3 35/19 44/4 45/12
45/23 47/8 49/2 49/10 49/15 52/11
61/11 61/21 61/23 65/2 65/5 65/14
66/22 66/23 67/9 67/20 68/12
which **[29]**  3/5 3/8 4/2 4/5 12/16 13/14
13/22 15/19 15/19 16/21 23/24 26/20
27/6 27/14 29/7 36/7 37/11 45/3 45/15
47/20 50/7 50/25 55/19 61/16 61/19
63/21 64/10 67/11 68/2
while **[1]**  40/22
who **[20]**  5/15 11/23 18/3 18/17 19/17
20/11 21/25 22/5 25/9 25/12 27/23
33/24 43/7 47/7 52/23 57/19 58/9 59/10
60/13 62/11
whoever **[2]**  18/4 30/4
whole **[2]**  15/17 17/2
why **[30]**  3/3 4/1 9/18 34/22 35/4 35/21
36/23 37/12 37/21 43/11 45/13 47/20
48/18 48/21 52/1 52/6 52/8 54/15 54/25
56/3 57/1 57/3 60/2 60/16 64/13 66/12
67/1 67/23 68/6 70/15
wicket **[1]**  13/23
WILKINSON **[16]**  1/13 2/9 9/12 17/3
24/14 40/7 41/12 43/7 45/12 48/20
64/13 64/20 65/12 66/2 71/3 71/5
Wilkinson's **[2]**  64/22 70/2
will **[13]**  5/1 5/1 6/10 6/22 6/25 6/25 9/23
10/5 26/1 50/12 54/2 68/8 70/2
willing **[3]**  55/11 62/23 62/24
willingness **[1]**  62/19
Wilson **[5]**  15/11 15/12 30/12 31/16
55/15
wish **[1]**  36/1
without **[7]**  13/15 15/13 15/16 29/21
39/25 43/2 48/8
witness **[14]**  12/12 14/19 16/5 19/5
19/10 20/5 26/11 30/14 30/16 31/6
32/24 57/5 59/2 62/6
witnesses **[3]**  11/7 17/23 20/5
won't **[2]**  43/3 68/7
wonder **[1]**  62/7
word **[5]**  10/6 10/23 17/10 50/6 55/12
words **[14]**  6/21 10/19 12/14 17/13
20/19 21/1 23/15 26/11 33/22 40/6
40/11 40/15 56/20 66/19
work **[3]**  29/2 44/2 60/5
worked **[5]**  17/15 18/14 21/23 21/23
21/24
working **[3]**  12/25 21/23 22/1
works **[1]**  68/19
would **[102]**
wouldn't **[19]**  6/1 6/23 9/8 29/16 31/24
37/22 39/25 41/25 45/22 45/22 46/8
47/15 49/10 57/21 60/17 63/6 63/17

64/14 70/14
Wow **[1]**  49/21
wrestle **[1]**  66/25
write **[2]**  3/10 67/5
written **[2]**  55/22 68/7
wrong **[3]**  7/11 7/13 23/13

## Y

yeah **[11]**  27/7 28/16 35/2 40/8 49/25
50/8 56/25 60/19 61/7 65/23 69/22
year **[2]**  49/15 54/11
years **[6]**  43/22 46/21 54/7 54/9 63/25
66/13
Yep **[1]**  49/22
yes **[27]**  3/6 3/23 4/14 7/18 9/25 12/23
15/9 19/12 23/9 23/9 25/17 25/20 27/17
27/22 28/22 28/25 30/15 34/17 34/20
40/20 46/7 46/7 48/14 57/10 63/20
65/21 71/6
yet **[4]**  3/18 43/7 65/15 67/20
you **[236]**
you'd **[1]**  53/16
you're **[54]**  2/15 4/1 4/4 4/5 4/8 5/9 6/21
10/12 11/11 11/13 11/22 13/9 13/10
13/11 13/12 13/24 15/25 16/22 17/13
20/7 21/20 21/21 21/25 22/2 23/16
23/25 29/1 30/24 37/10 37/24 38/9
39/10 40/24 40/24 41/1 41/10 42/6
44/13 44/17 44/21 45/2 46/21 46/24
47/3 51/2 53/4 56/14 64/3 65/6 65/17
69/13 70/8 70/12 70/23
you've **[5]**  2/22 32/3 44/4 57/1 65/9
young **[1]**  21/23
your **[84]**
yourselves **[1]**  2/6