**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| *Plaintiff,* | ) **Case No. 03-cr-00457-PJM** |
| | ) |
| **v.** | ) |
| | ) |
| **KENNETH JAMAL LIGHTY,** | ) |
| | ) |
| *Defendant.* | ) |

**SUPPLEMENTAL BRIEF IN SUPPORT OF PREVIOUSLY FILED MOTION TO
SUPPLEMENT AMENDED MOTION FOR RELIEF UNDER 28 U.S.C. § 2255
SEEKING TO VACATE PETITIONER'S THREE CONVICTIONS
UNDER 18 U.S.C. § 924(c) AND PETITIONER'S DEATH SENTENCE**

In light of the United States Supreme Court's recent decision in *United States v. Davis*, 139

S. Ct. 2319 (2019), the Fourth Circuit's recent decision in *United States v. Walker*, No. 15-4301,

2019 WL 3756052 (4th Cir. Aug. 9, 2019), and other recent developments in the law, Kenneth

Lighty hereby supplements his June 24, 2016 Motion to Supplement Amended Motion for Relief

Under 28 U.S.C. § 2255 ("Motion to Supplement"), which remains pending. That motion seeks to

vacate Mr. Lighty's convictions on Counts 3, 4, and 5 of the indictment under 18 U.S.C. § 924(c)

and, correspondingly, to vacate the death sentence imposed under 18 U.S.C. § 1201(a)(1). *See* ECF

No. 530.

**INTRODUCTION**

Mr. Lighty was convicted of three counts of use of a firearm during a crime of violence

under 18 U.S.C. § 924(c)(1)(A). The predicate "crime of violence" offenses charged for Counts 3

and 5 were kidnapping under 18 U.S.C. § 1201(a) and conspiracy to commit kidnapping under 18

U.S.C. § 1201(c), while the sole predicate "crime of violence" offense charged for Count 4 was conspiracy to commit kidnapping. *See* ECF No. 1 at 4-6; 10/20/05 Tr. 58-63.

As previously explained in the Motion to Supplement, neither kidnapping nor conspiracy to commit kidnapping qualifies as a "crime of violence" under Section 924(c)(1)(A). *See* ECF No. 530 at 5-17. Neither offense meets the definition of "crime of violence" under what is known as the "force" clause of Section 924(c)(3)(A) because neither "has as an element the use, attempted use, or threatened use of physical force against the person or property of another[.]" 18 U.S.C. § 924(c)(3)(A). And because *Davis* held that the alternative "residual" clause in Section 924(c)(3)(B) is unconstitutionally vague, neither offense can qualify as a crime of violence under that clause either. Accordingly, all three of Mr. Lighty's convictions under Section 924(c)(1)(A) must be vacated.

With Mr. Lighty's convictions under Section 924(c)(1)(A) vacated, his sentence of death under 18 U.S.C. § 1201 must also be vacated, and he must be granted a new sentencing hearing. As the Motion to Supplement explains, the Constitution requires resentencing where there is even a *possibility* that a sentence—particularly a death sentence—is informed by a conviction that is subsequently invalidated. *See* ECF No. 530 at 17-22 (discussing *Johnson v. Mississippi*, 486 U.S. 578 (1988), and *United States v. Tucker*, 404 U.S. 443 (1972)). Here, given what the jury heard and had to deliberate over during the guilt phase, and what this Court actually instructed the jury to consider in deciding the question of punishment, such a possibility unquestionably exists. *Id.* That conclusion is reinforced by the "sentencing package doctrine," under which a defendant must be resentenced when a conviction that informs his sentence is later invalidated. *See, e.g., United States v. Ventura*, 864 F.3d 301, 309 (4th Cir. 2017) ("reassert[ing] [the Fourth Circuit's] adoption of the sentencing package doctrine").

2

## ARGUMENT

**I.      Mr. Lighty's Three Convictions Under 18 U.S.C. § 924(c) Must Be Vacated Because Neither Kidnapping Nor Conspiracy to Commit Kidnapping—the Predicate Offenses Charged in Counts 3, 4, and 5 of the Indictment—Qualifies as a "Crime of Violence."**

Counts 3, 4, and 5 of the indictment charged violations of 18 U.S.C. § 924(c)(1)(A) for using a firearm in furtherance of a crime of violence. In Counts 3 and 5, the Government charged kidnapping (under 18 U.S.C. 1201(a)(1)) and conspiracy to commit kidnapping (under 18 U.S.C. § 1201(c)) as predicate "crimes of violence." *See* ECF No. 1 at 4-6. In Count 4, conspiracy to commit kidnapping was the only predicate "crime of violence" charged.  *See* ECF No. 1 at 4-6.

When this Court instructed the jury, it suggested that both kidnapping and conspiracy to commit kidnapping were charged as the predicates for each Section 924(c) count.[1]  10/20/05 Tr. 59-61. The Court then expressly told the jury that both kidnapping and conspiracy to commit kidnapping qualify as crimes of violence. The Court explained:

> The first element that the government has to prove beyond a reasonable doubt on each of Counts Three, Four and Five is that each defendant committed a crime of violence for which he might be prosecuted in a court of the United States and the defendants are charged in Count One with kidnapping and Count Two with conspiracy to commit kidnapping, and I instruct you that both of these are crimes of violence.

10/20/05 Tr. 63.

Contrary to the Court's instruction, neither kidnapping nor conspiracy to commit kidnapping are crimes of violence under Section 924(c). More specifically, after the Supreme

---

[1] While the Court read Count 5 to the jury, it erroneously identified it as Count 4. *See* 10/20/05 Tr. 60. As a result, the Court gave two instructions on Count 4—one that correctly identified conspiracy to commit kidnapping as the predicate offense, and another that erroneously identified both kidnapping and conspiracy to commit kidnapping as the predicate offenses. *See* 10/20/05 Tr. 60-61. The Court's mistake, coupled with its reiteration that "the elements for Counts Three, Four and Five. . . . [are] the same[,]" likely left the jury with the misimpression that Count 4, like Counts 3 and 5, charged both kidnapping and conspiracy to commit kidnapping as predicate offenses. *See* 10/20/05 Tr. 61.

Court's decision in *Davis*, the Fourth Circuit's decision in *Walker*, and a number of other decisions, neither kidnapping nor conspiracy to commit kidnapping qualifies as a crime of violence under either of the two alternative clauses defining "crime of violence" in Section 924(c)(3)—*i.e.*, the "residual clause" in Section 924(c)(3)(B) and the "force clause" in Section 923(c)(3)(A).

> **A.    Neither Kidnapping Nor Conspiracy to Commit Kidnapping Qualifies as a Crime of Violence under the Residual Clause in Section 924(c)(3)(B) Because the Supreme Court Invalidated that Clause as Unconstitutionally Vague in *Davis*.**

In *Davis*, the Supreme Court held that the residual clause in "Section 924(c)(3)(B) is unconstitutionally vague." *Davis*, 139 S. Ct. at 2336. Accordingly, *Davis* conclusively vindicates the argument made in the Motion to Supplement that the crimes of kidnapping and conspiracy to commit kidnapping cannot support Mr. Lighty's convictions on Counts 3, 4 or 5 under the residual clause. *See* ECF No. 530 at 5-13.

> **B.    Consistent with the Statutory Text and the Government's Concessions About It, Recent Decisions Uniformly Establish that Neither Kidnapping Nor Conspiracy to Commit Kidnapping Is a Crime of Violence Under the Force Clause of Section 924(c)(3)(A).**

Because *Davis* invalidated the residual clause, an offense must meet the definition of "crime of violence" in the force clause of Section 924(c)(3)(A) in order to qualify as a crime of violence under Section 924(c)(1)(A). Section 924(c)(3)(A) defines "crime of violence" as an offense that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another[.]" 18 U.S.C. § 924(c)(3)(A). To decide whether an offense is a crime of violence under this clause, a court must use the "categorical approach." *See* ECF No. 530 at 14 (citing *United States v. Fuertes*, 805 F.3d 485, 498 (4th Cir. 2015)); *see also United States v. Simms*, 914 F.3d 229, 233 (4th Cir. 2019) (en banc) ("To determine whether an offense is a crime of violence under [§ 924(c)(3)(A)], courts use an inquiry known as the 'categorical' approach.").

The categorical approach requires courts to look only to the elements found in the statutory definition of an offense, not at the facts of any particular case, to decide whether an offense is a crime of violence. *Descamps v. United States*, 570 U.S. 254, 261 (2013). Under the categorical approach, an offense is considered a crime of violence under the force clause only if all possible means of committing the offense fit within the definition of "crime of violence." *See* ECF No. 530 at 14. Put differently, if non-violent or non-forceful conduct is sufficient to satisfy the elements of an offense, that offense is not categorically a crime of violence under the force clause. *See* ECF No. 530 at 14-15 (citing *Fuertes*, 805 F.3d at 498).

Using the required categorical approach, neither kidnapping nor conspiracy to commit kidnapping meets the definition of crime of violence under the force clause.

### 1. Kidnapping Does Not Qualify as a Crime of Violence Under the Force Clause.

The Fourth Circuit's decision in *United States v. Walker* earlier this month conclusively vindicates Mr. Lighty's argument in the Motion to Supplement, *see* ECF No. 530 at 13-17, that, because kidnapping under 18 U.S.C. § 1201(a) "may be committed without violence, [it] clearly does not categorically qualify as a crime of violence under the force clause." *Walker*, 2019 WL 3756052, at *3.

In reaching this conclusion, the Fourth Circuit joined every other court that has examined the issue—as well as repeated concessions by the Government—in the three-plus years since Mr. Lighty filed his Motion to Supplement. *See United States v. Hopper*, 723 Fed. Appx 645, 646 (10th Cir. 2018) ("The parties concede and we agree that kidnapping under § 1201(a), Mr. Hopper's predicate crime of violence, does not fit within the elements clause because it can be committed by 'inveigling,' which does not involve force;" citing Tenth Circuit Criminal Pattern Jury Instructions § 2.55 ("To 'inveigle' a person means to lure, or entice, or lead the person astray by

false representations or promises, or other deceitful means.")); *United States v. Jenkins*, 849 F.3d 390, 393-94 (7th Cir. 2017) ("[T]he Government does not argue that the first element – unlawfully seizing, confining, inveigling, decoying, kidnapping, abducting or carrying away – requires the use of force. . . . [W]e find that kidnapping is not a crime of violence under the Force Clause."), *certiorari granted and judgment vacated on other grounds*, 138 S. Ct. 1980 (2018); *United States v. Taylor*, 848 F.3d 476 (1st Cir. 2017) ("The government admits that kidnapping cannot hold weight" as a crime of violence under the force clause); *United States v. Autrey*, 263 F. Supp. 3d 582, 591 (E.D. Va. 2017) ("[T]he government concedes that the first element [of kidnapping under 18 U.S.C. § 1201(a)] may be accomplished without force."). Notably, earlier this month, the Government also conceded before *this* Court that kidnapping does not qualify as a crime of violence under the force clause. *See* Government's Response to Emergency Supplemental Motion to Vacate Conviction under 28 U.S.C. § 2255 in *United States v. Alexander Martin,* Criminal No. PJM 02-178, Civil No. PJM 16- 1669, at 3 (Aug. 5, 2019) (attached as **Exhibit 1)** ("The government concedes that some means of committing this crime, such as inveigling, do not involve the use, attempted use, or threatened use of physical force against the person or property of another that is necessary to qualify as a 'crime of violence' under § 924(c)(3)(A).").

To the extent the convictions on Counts 3 and 5 rest on kidnapping as the predicate "crime of violence" under Section 924(c)'s force clause, they are invalid and must be vacated because kidnapping does not, in fact, qualify as a crime of violence. The conviction in Count 4 may not rest on kidnapping as the predicate crime of violence for the same reason. Additionally, the conviction in Count 4 may not rest on kidnapping as the predicate because, unlike Counts 3 and 5, it does not even charge kidnapping as a predicate, so allowing the conviction in Count 4 to stand with kidnapping as the predicate would violate Mr. Lighty's Fifth and Sixth Amendment rights.

*See* U.S. Const., Amdt. V ("No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury"); *Stirone v. United States*, 361 U.S. 212, 215-19 (1960) (variance between indictment and proof upon which trial court instructed jury it could convict deprived defendant of Fifth Amendment right to be tried only on charges presented in an indictment returned by a grand jury); *United States v. Randall*, 171 F.3d 195 (4th Cir. 1999) (variance between Section 924(c) predicate charged and Section 924(c) predicate argued by the government and instructed by the court violated defendant's Fifth Amendment rights); U.S. Const. Amdt. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation . . ."); *Russell v. United States*, 369 U.S. 749, 761, 763-65 (1962) (conviction based on allegations not specified in indictment violates Sixth Amendment right to notice sufficient to permit defendant to prepare a defense).

## 2. Conspiracy to Commit Kidnapping Does Not Qualify as a Crime of Violence Under the Force Clause.

The conspiracy provision of Section 1201 states: "If two or more persons conspire to violate this section and one or more of such persons do any overt act to effect the object of the conspiracy, each shall be punished by imprisonment for any term of years or for life." 18 U.S.C. § 1201(c). As the Court instructed the jury at the guilt phase, this language requires the Government to prove four elements beyond a reasonable doubt:

> First, that two or more persons entered into the unlawful agreement charged in the indict [sic]; Second that each defendant knowingly and willfully became a member of the conspiracy; Third, that one of the members of the conspiracy knowingly committed at least one of the overt acts charged in the indictment; and Fourth, that the overt acts which you find to have been committed was or were committed to further some object of the conspiracy.

10/20/05 Tr. 48.

7

None of these elements categorically requires the use, attempted use, or threatened use of physical force against the person or property of another. The first and second elements merely require a knowing and willful agreement, not actual, attempted or threatened force. *See, e.g.*, *Simms*, 914 F.3d at 233-34 (holding that merely agreeing with another to commit an offense "does not invariably require the actual, attempted, or threatened use of physical force."). The third and fourth elements only require an overt act, which, for two independent reasons, also does not require actual, attempted or threatened force. To begin, as explained above and in more detail in the Motion to Supplement, kidnapping itself does not categorically require actual, attempted or threatened force, so an overt act committed in furtherance of a conspiracy to kidnap cannot either. Further, an overt act may be committed without the use of any force at all, even if the object of the conspiracy is a crime of violence—that is, an overt act may be committed "through non-violent 'preparation' to engage in violent acts." *United States v. Simmons*, No. 2:16-cr-130,018 WL 6012368, at *4 (E.D. Va. Nov. 16, 2018) (finding that a RICO conspiracy was not a crime of violence under the force clause, and would not be even if the RICO statute required the commission of an overt act); *see also Royer v. United States*, 324 F. Supp. 3d 719, 737 (E.D. Va. Aug. 2, 2018) ("Because no more than an agreement to engage in the relevant conduct and the commission of a single overt act is required to establish a violation of the predicate offense . . . it is possible for a defendant to commit the predicate offense without in any way 'portending' the future use of force."). Inasmuch as none of the elements of conspiracy to commit kidnapping requires the use, attempted use, or threatened use of physical force, that offense is not a crime of violence under Section 924(c)(3)(A).

Courts have repeatedly reached the conclusion that conspiracy to commit another offense is not a crime of violence under the force clause. In its *en banc* decision in *Simms*, the Fourth

Circuit held—and the Government *conceded*—that conspiracy to commit Hobbs Act robbery is not a crime of violence under the force clause because a mere agreement to violate the Hobbs Act does not require actual, attempted or threatened force. *Simms*, 914 F.3d at 233. The court explained:

> Simms's offense—conspiracy to commit Hobbs Act robbery—does not categorically qualify as a crime of violence under the elements-based categorical approach, as the United States now concedes. This is so because to convict a defendant of this offense, the Government must prove only that the defendant agreed with another to commit actions that, if realized, would violate the Hobbs Act. Such an agreement does not invariably require the actual, attempted, or threatened use of physical force.

*Id.* at 233-34 (internal citations omitted); *see also United States v. Davis*, 903 F.3d 483, 485 (5th Cir. 2018) (conspiracy to commit Hobbs Act robbery is not a crime of violence under the force clause), *aff'd in part*, *vacated in part*, *United States v. Davis*, 139 S. Ct. 2319 (2019); *United States v. Edmundson*, 153 F. Supp. 3d 857, 859-61 (D. Md. 2015) (same); *United States v. Smith*, No. 2:11-cr-00058-JAD-CWH, 2016 WL 2901661, at *5 (D. Nev. May 18, 2016) (same); *United States v. Luong*, No. 2:99-00433 WBS, 2016 WL 1588495, at *3 (E.D. Cal. Apr. 20, 2016) (same); *United States v. Baires-Reyes*, 191 F. Supp. 3d 1046, 1050 (N.D. Cal. 2016) (same); *Benitez v. United States*, No. 16-cv-23974-UU, 2017 WL 2271504, at *4 (S.D. Fla. Apr. 6, 2017) (same); *United States v. Hunter*, No. 2:12-cr-132-JAD-CWH-1, 2017 WL 3159985, at *5 (D. Nev. July 25, 2017) (same); *United States v. Smith*, 215 F. Supp. 3d 1026, 1034 (D. Nev. 2016) (same); *Duhart v. United States*, No. 16-61499, 2016 WL 4720424, at *6 (S.D. Fla. Sept. 9, 2016) (same), *rev'd on other grounds*, 752 Fed. Appx. 954 (11th Cir. 2019); *United States v. Johnson*, No. 1:11-CR-00140 (D. Mont. May 7, 2018) (same); *Toussaint v. United States*, No. 4:12-CR-00407-CW-1 (N.D. Cal. May 11, 2018) (same); *Simmons*, No. 2:16-cr-130,018 WL 6012368, at *4 (holding that conspiracy to violate the RICO statute is not a crime of violence under the force clause);

9

*Alvarado v. United States*, No. CV 16-4411-GW, 2016 WL 6302517, at \*9-11 (C.D. Cal. Oct. 14, 2016) (same); *United States v. Shumilo*, No. CR 09-939-GW-51, 2016 WL 6302524, at \*5-7 (C.D. Cal. Oct. 24, 2016) (same).

Because Section 924(c)'s force clause may not be used to support a Section 924(c) conviction where the predicate "crime of violence" is conspiracy to commit kidnapping, the Court must vacate Mr. Lighty's conviction on Count 4, which charged conspiracy as the lone predicate offense. Further, to the extent the convictions on Counts 3 and 5 rest on conspiracy to kidnap as the predicate "crime of violence" under the force clause, they, too, are invalid and must be vacated.

**II.    Mr. Lighty's Sentence of Death under 18 U.S.C. § 1201 Must Be Vacated Because There Is a Possibility that At Least One Juror Considered Mr. Lighty's Unconstitutional Section 924(c) Convictions in Voting for Death.**

**A.    The Eighth Amendment and the Due Process Clause Require Mr. Lighty to Receive a New Sentencing Hearing.**

As explained in the Motion to Supplement, the Supreme Court has held that resentencing is required in a non-capital case where the original sentence is informed by a conviction that is subsequently invalidated. *United States v. Tucker*, 404 U.S. 443 (1972) (discussed in ECF No. 530 at 18). Sixteen years later, the Supreme Court similarly held that where "there is a possibility" that an invalid conviction has informed a death sentence, the Eighth Amendment requires resentencing. *Johnson v. Mississippi,* 486 U.S. at 583 (discussed in ECF No. 530 at 17-22). The *Johnson* court emphasized that allowing for this possibility is inconsistent with the Eighth Amendment's "special need for reliability in the determination that death is the appropriate punishment." *Id*. at 584 (internal quotations and citations omitted). The Motion to Supplement discusses a number of other cases in which resentencing was required because of the possibility that, in determining the original sentence, a judge or jury considered a subsequently invalidated conviction. *See* ECF No. 530 at 18-19, 21-22 (collecting cases).

10

The "possibility" standard means that resentencing is required unless it can be established that the sentencer did *not* consider the invalid conviction in determining the sentence. *Id.* at 18-19 (collecting cases). This standard applies with special force in capital cases given the heightened need for reliability imposed by the Eighth Amendment. *Id.* at 22 (citing *Mills v. Maryland*, 486 U.S. 367, 383-84 (1988)). Importantly, under the possibility standard, resentencing is required when there is a possibility that an invalid conviction influenced even a single juror to recommend death. *Johnson*, 486 U.S. at 586; *Kubat v. Thieret*, 867 F.2d 351, 373 (7th Cir. 1989) (finding a violation of petitioner's Eighth and Fourteenth Amendment rights based on the "substantial possibility that one or more" jurors was influenced by an erroneous jury instruction); *cf. Wiggins v. Smith*, 539 U.S. 510, 537 (2003) (recognizing that, to satisfy the prejudice requirement for a claim of ineffective effective assistance of counsel, a petitioner must show "a reasonable probability that at least one juror would have struck a different balance.") (citations omitted); *Buck v. Davis*, 137 S. Ct. 759, 776 (2017) (same).[2]

Here, as in *Johnson, Tucker* and the other cases discussed in the Motion to Supplement, there is unquestionably a possibility that Mr. Lighty's three unconstitutional convictions under Section 924(c) influenced at least one juror to recommend death. The Motion to Supplement explains why, *see* ECF No. 530 at 19-21, but it bears repeating here.

---

[2] Like *Johnson*, *Wiggins*, *Buck* and other ineffective assistance of counsel cases require resentencing where a constitutional error may have affected a single juror's decision to recommend death. Notably, though, the legal standard for establishing prejudice in the reliance-on-an-invalid-conviction context under *Johnson* is less stringent than the standard for establishing prejudice in the ineffective assistance of counsel context. Under *Johnson*, as explained above, a capital defendant need only show a *possibility* that an invalid conviction affected at least one juror's decision to recommend death, whereas a capital defendant claiming ineffective assistance must show a *reasonable probability* that counsel's deficient performance did so. "A 'reasonable probability' [for the purposes of an ineffective assistance claim] is a higher standard than *Johnson's* 'possibility.'" *Powell v. Kelly*, 531 F. Supp. 2d 695, 732 n.40 (E.D. Va. 2008).

For one thing, during the guilt phase, the jury heard all of the evidence the Government introduced, and all of the arguments the Government made, in support of each count in the indictment, including the three Section 924(c) counts. *See, e.g.,* 9/29/05 Tr. 44-45 (Gov't opening) ("Now, the last three charges are all based on the guns in this case. . . . It is enough to show under the law that guns were used in the course of this conspiracy in the way that they are charged in Counts III through IV of the indictment."); 10/20/05 Tr. 44 (Gov't closing) ("There was a use of a gun in abducting Eric Hayes, there was a use of a gun in attempting to abduct Antwone Forest [sic], and there was the use of gun [sic] in murdering Eric Hayes. . . . [Defendants] are guilty on all three of those gun counts[.]"). Then, when the jury undertook its guilt phase deliberations, it was presented with a verdict form that contained numerous questions on the three Section 924(c) counts, and it answered those questions and returned a guilty verdict on all three counts. *See* **Exhibit 2** (guilt phase verdict form). It would be entirely speculative—indeed, counterintuitive— to conclude that the jury set aside and disregarded its own guilt phase deliberations and verdict form, as well as the guilt phase evidence introduced and arguments made in support of the Section 924(c) counts, when it sought to make the decision between life and death during the penalty phase. *See Johnson,* 486 U.S. at 586 (even without the prosecutor's argument to consider the invalid conviction, "there would be a possibility that the jury's belief that petitioner had been convicted of a prior felony would be decisive in the choice between a life and a death sentence") (internal citation and quotations omitted); *Wren v. United States*, 540 F.2d 643, 644 (4th Cir. 1975) ("In short, to terminate further inquiry, the district judge must be able to say either from recollection or reconstruction that had he known at the time of sentencing that the earlier convictions were invalid, he would have nevertheless imposed the same sentence."); *Bourgeois v. Whitley*, 784 F.2d 718, 721 (5th Cir. 1986) (resentencing required "unless it can be ascertained from the record that a trial

court's sentence on a valid conviction was not affected" by the invalid conviction); *cf. Mills*, 486 U.S. at 384 ("The possibility that petitioner's jury conducted its task improperly certainly is great enough to require resentencing."). The Government's guilt phase arguments and the jury's guilt phase deliberations and verdict thus raise the impermissible "possibility" that Mr. Lighty's invalid Section 924(c) convictions influenced at least one juror's death recommendation.

The Court's instructions to the jury turned that possibility—which, again, is all that is required—into a probability. In its penalty phase instructions, the Court actually directed the jury to consider the "materially inaccurate" evidence of Mr. Lighty's Section 924(c) convictions. *See* ECF No. 530 at 20-21. It told the jury that "[i]n determining the issue of punishment for the defendant," the jury was "bound" by its guilt phase "verdict," "in which [it] found the defendant guilty beyond a reasonable doubt," 11/8/05 Tr.  38; that each juror should independently consider "the remaining issue of punishment" only "after full consideration of the evidence with your fellow members of the jury," *id.* at 38; that the jury should consider all of the evidence it heard during the guilt phase in deciding the existence of any proportionality factor and in weighing aggravating and mitigating factors, *id.* at 6-7; and that the jury should "make a reasoned moral judgment based on all of the evidence before [it] as to whether the death penalty is justified as punishment for the defendant." *Id.* at 37.

Furthermore, while the Court asked the jury in its penalty phase instructions to determine *whether* Mr. Lighty had committed an "act of violence" in deciding the fourth proportionality factor, *Id.* at 17, 20-22, it had already instructed the jury, at the guilt phase, that both kidnapping and conspiracy to commit kidnapping *are* "crimes of violence." *See* 10/20/05 Tr. 63. As explained in the Motion to Supplement, that guilt phase instruction was an impermissible directed verdict on the penalty phase question of whether Mr. Lighty committed an act of violence, and further shows

13

that Mr. Lighty's invalid Section 924(c) convictions affected the jury's sentencing decision. *See* ECF No. 530 at 20-21.

In light of what the jury heard and deliberated over during the guilt phase, and what this Court instructed the jury to consider in deciding the question of punishment, there is indisputably a possibility that Mr. Lighty's invalid Section 924(c) convictions affected at least one juror's decision to recommend death. To conclude otherwise—that is, to conclude that the jury "undoubtedly" would have delivered the same verdict in the absence of those unconstitutional convictions—would entail rank speculation and thus would be unconstitutionally "callous." *Tucker*, 404 U.S. at 449 n.8. That is especially so given that this is a capital case necessitating heightened reliability in sentencing. *Johnson,* 486 U.S. at 584. Under *Tucker, Johnson* and related cases, the invalidation of Mr. Lighty's Section 924(c) convictions necessitates a new sentencing hearing.

B.     **The Sentencing Package Doctrine Reinforces the Conclusion that Mr. Lighty Must Receive a New Sentencing Hearing.**

When one count informing a multi-count sentence is invalidated after a successful challenge under 28 U.S.C. § 2255, the court is required to "vacate and set the judgment aside[.]" 28 U.S.C. § 2255(b). The court must then "discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." *Id.* Under what is known as "the sentencing package doctrine," the only appropriate option when faced with the invalidation of one count, but less than all counts, of a multi-count conviction is to order a new sentencing hearing. *See Davis*, 139 S. Ct. at 2336 ("As this Court has noted, when a defendant's § 924(c) conviction is invalidated, courts of appeals routinely vacate the defendant's entire sentence on all counts so that the district court may increase the sentences for any remaining counts if such an increase is

14

warranted.") (internal citation and quotations omitted); *Ventura*, 864 F.3d at 309 ("reassert[ing] [the Fourth Circuit's] adoption of the sentencing package doctrine").

The sentencing package doctrine recognizes that "a criminal sentence is a package of sanctions that the district court utilizes to effectuate its sentencing intent." *Pepper v. United States*, 562 U.S. 476, 507 (2011) (quoting *United States v. Stinson*, 97 F.3d 466, 469 (11th Cir. 1996) (per curium)). Under this doctrine, "an attack on one count [of a multiple-count sentence] is an attack on the 'bottom line' sentence and warrants resentencing on all counts." *Gardiner v. United States*, 114 F.3d 734, 736-37 (8th Cir. 1997); *see also Ventura*, 864 F.3d at 309 (holding that the district court properly resentenced the defendant after the invalidation of a Section 924(c) conviction). Accordingly, "when an 'interdependent' component of an aggregate sentence is vacated, '[r]esentencing on all counts is warranted," and "courts 'unbundle' the multicount sentencing package and resentence the defendant *de novo*." *United States v. Nelson*, No. 1:09-CR-211, 2017 WL 4648145, at *7 (M.D. Pa. Oct. 17, 2017) (quoting *United States v. Ciavarella*, 716 F.3d 705, 734 (3d Cir. 2013)). That is now what happens as a matter of course, including in the Fourth Circuit, when a Section 924(c) conviction is invalidated and other counts of conviction are affirmed. *See, e.g., Davis*, 139 S. Ct. at 2336; *Ventura*, 864 F.3d at 309; *Walker*, 2019 WL 3756052, at *3; *United States v. Mathis*, No. 16-4633, 2019 WL 3437626, at *17 (4th Cir. July 31, 2019); *United States v. Jackson*, No. 15-3693, 2019 WL 3423363, at *2 (7th Cir. July 30, 2019). Earlier this month, in a case before this Court, the Government conceded that this is the proper course of action. *See* **Ex. 1,** Government's Response to Emergency Supplemental Motion to Vacate Conviction Under 28 U.S.C. § 2255 in *United States v. Martin,* at 5 (requesting resentencing on the remaining count of conviction following invalidation of Section 2255 petitioner's Section 924(c) conviction).

15

Sentencing packaging doctrine cases—and, in particular, cases that have required resentencing following the invalidation of Section 924(c) convictions—confirm that the proper result in this case is a new sentencing hearing. The sentencing package doctrine acknowledges that a criminal sentence is a holistic determination that accounts for all of the evidence presented and each offense of conviction. *Ventura*, 864 F.3d at 309 ("The sentencing package doctrine accounts for the holistic approach that a district court should employ when sentencing a defendant convicted of multiple offenses."); *United States v. Brown*, 879 F.3d 1231, 1239 (11th Cir. 2018) ("If there is a chance that the erroneous sentence on one count of conviction influenced the sentencing judge's decisions on other counts, then merely excising the mistaken sentence for one count won't put the defendant in the same position as if no error had been made."). The jury's decision on life or death in a capital case is similarly holistic. Just as a judge considers multiple convictions to fashion a complete sentence, the jury in a capital case considers, interdependently, all of the evidence before it, and each conviction returned in the guilt phase, to determine whether death is an appropriate sentence. In fact, that is what this Court instructed the jury to do here. *See supra*. The situations are thus closely related: the possibility, recognized by the sentencing package doctrine, that an invalid Section 924(c) conviction affected a judge's sentencing decision is no different than the possibility, explained above, that Mr. Lighty's invalid Section 924(c) convictions affected the decision of at least one juror in deciding whether Mr. Lighty should live or die. If anything, the possibility here is fraught with even greater risk of legal mischief because, as noted, "[t]he fundamental respect for humanity underlying the Eighth Amendment's prohibition against cruel and unusual punishment gives rise to a special need for reliability in the determination that death is the appropriate punishment in any capital case." *Johnson*, 486 U.S. at 584 (internal citation and

16

quotations omitted); *see also Deck v. Missouri*, 544 U.S. 622, 632 (2005) ("The Court has stressed the 'acute need,' for reliable decisionmaking when the death penalty is at issue.").

The upshot is that, if invalidation of a Section 924(c) conviction requires full resentencing for a non-capital defendant sentenced by a judge, then so too must the invalidation of Mr. Lighty's three Section 924(c) convictions require resentencing for him, a capital defendant sentenced by a jury. Indeed, it would be utterly anomalous for the law to require resentencing in non-capital cases in this situation, but not in capital cases, where the Constitution demands even greater scrupulousness. The sentencing package doctrine thus reinforces the correctness of the result that *Johnson, Tucker* and their progeny compel here: a new sentencing hearing based on the possibility that Mr. Lighty's three unconstitutional convictions under Section 924(c) influenced at least one juror's decision to recommend death.

## CONCLUSION

For the foregoing reasons, as well as those set forth in the Motion to Supplement, Mr. Lighty's Section 924(c) convictions and death sentence should be vacated, and he should receive a new sentencing hearing.


Date:   August 23, 2019

Respectfully submitted,

_____/s/_____                    _____/s/_____
Julie Brain                                      Seth A. Rosenthal
Juliebrain1@yahoo.com                            (D. Md. Bar No. 10780)
Attorney at Law                                  SARosenthal@Venable.com
916 S. 2nd Street                                VENABLE LLP
Philadelphia, PA 19106                           600 Massachusetts Avenue, NW
(267) 639-0417                                   Washington, DC 20001
                                                 (202) 344-4741


_____/s/_____
Stephen L. Marley
Stephen_Marley@fd.org
Office of the Federal Public Defender
800 N. King Street
Wilmington, DE 19801
(302) 573-6010

*Counsel for Kenneth Jamal Lighty*