**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)**

|  |  |  |
|---|---|---|
| | ) | |
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 03-CR-00457-PJM** |
| | ) | |
| **KENNETH JAMAL LIGHTY** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**PETITIONER KENNETH LIGHTY'S MOTION FOR AN EVIDENTIARY
HEARING ON HIS AMENDED MOTION TO VACATE, SET ASIDE,
OR CORRECT SENTENCE AND FOR NEW TRIAL UNDER 18 U.S.C. § 2255
AND SUPPORTING MEMORANDUM OF LAW**

Petitioner Kenneth Jamal Lighty respectfully moves for an evidentiary hearing on Claims

II, IV, VI, VIII and IX of his Amended Motion to Vacate, Set Aside, or Correct Sentence and for

New Trial under 28 U.S.C. § 2255 ("Section 2255 Motion"). *See* ECF No. 451. The claims on

which an evidentiary hearing is required are fleshed out and explained at length in Mr. Lighty's

Brief in Support of the Section 2255 Motion ("Reply"), which is also being filed today. The

justifications for an evidentiary hearing on those claims are set forth below.

### INTRODUCTION

Several of the claims in Mr. Lighty's Section 2255 Motion rely on facts outside the trial

record. The claims that rely on those non-record facts include, necessarily, his claims of ineffective

assistance of counsel at the guilt phase (Claim II), at the penalty phase (Claim VI), and on direct

appeal (Claim VIII, which incorporates Claim III regarding the violation of Mr. Lighty's right to

a fair and impartial jury), as well as certain claims of prosecutorial misconduct alleging the non-

1

disclosure of exculpatory evidence (Claim IV) and his claim regarding the cumulative effect of the errors made at trial (Claim IX). The ineffectiveness claims rely not only on testimony from trial and appellate counsel regarding the absence of strategic reasons for certain alleged deficiencies in their performance, but also on the voluminous non-record evidence that was reasonably available to them and that they unreasonably failed to investigate and present to the jury. Similarly, the claims alleging the non-disclosure of exculpatory evidence rely on non-record evidence that the Government suppressed and that post-conviction counsel has obtained, in part, through its own investigation.

## ARGUMENT

**I.    28 U.S.C. § 2255(b) establishes a strong presumption in favor of evidentiary hearings, particularly in Section 2255 proceedings addressing claims of ineffective assistance of counsel.**

Under the plain text of Section 2255(b), there is a strong presumption in favor of holding an evidentiary hearing in a Section 2255 proceeding: "Unless the motion and the files and the records of the case *conclusively* show that the prisoner is entitled to *no* relief, the court *shall* . . . grant a prompt hearing thereon . . ." (emphasis added).

Congress intended the standard for obtaining an evidentiary hearing in a Section 2255 proceeding to be a liberal one. Prior to the passage of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), the Supreme Court's decision in *Townsend v. Sain*, 372 U.S. 293, 312 (1963), established the standard for granting evidentiary hearings in federal court in both Section 2254 and Section 2255 proceedings: "Where the facts are in dispute, the federal court in habeas corpus must hold an evidentiary hearing if the habeas applicant did not receive a full and fair evidentiary hearing in a state court, either at the time of the trial or in a collateral proceeding." (emphasis added). When Congress passed the AEDPA, it made revisions to both Section 2255 and

2

Section 2254, but as to the standard governing evidentiary hearings, those revisions differed. For Section 2254 proceedings concerning state court convictions, Congress modified the *Townsend* standard and severely limited a federal district court's discretion to grant an evidentiary hearing. *See* 28 U.S.C. § 2254(e). By contrast, Congress placed no such limitation on evidentiary hearings in Section 2255 proceedings concerning federal convictions. Comparing the text of Section 2254(e) with the text of Section 2255(b) makes this clear. As a district court in South Dakota has observed, "[a]lthough the AEDPA modified, to some extent, the *Townsend* standard for obtaining evidentiary hearings in 28 U.S.C. § 2254 cases, Congress made no parallel changes in § 2255 practice and evidently chose to leave intact the *Townsend* standard and to create a discrepancy between the right to a hearing in § 2254 and § 2255 cases." *Stead v. United States*, 67 F. Supp. 2d 1064, 1074 n.5 (D.S.D. 1999).

The liberal standard governing the availability of evidentiary hearings in Section 2255 proceedings makes sense. For one thing, Section 2255 proceedings present none of the federalism concerns that arise when federal courts review criminal convictions and sentences imposed by state courts. Additionally, in Section 2254 proceedings, a habeas petitioner already has had an opportunity for a post-conviction evidentiary hearing in state court. For a Section 2255 petitioner, his first and *only* opportunity for an evidentiary hearing is in Section 2255 proceedings. And as the Supreme Court has recognized, a hearing in Section 2255 proceedings will usually be necessary because the claim most often litigated in such proceedings is ineffective assistance of counsel—a claim that ordinarily cannot be resolved on the trial record because it relies on evidence that is outside the trial record. In *Massaro v. United States*, the Supreme Court explained:

> In light of the way our system has developed, in most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective-assistance. When an ineffective-assistance claim is brought on direct appeal, appellate counsel

3

and the court must proceed on a trial record not developed precisely for the object of litigating or preserving the claim and thus often incomplete or inadequate for this purpose. Under *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984), a defendant claiming ineffective counsel must show that counsel's actions were not supported by a reasonable strategy and that the error was prejudicial. The evidence introduced at trial, however, will be devoted to issues of guilt or innocence, and the resulting record in many cases will not disclose the facts necessary to decide either prong of the *Strickland* analysis. If the alleged error is one of commission, the record may reflect the action taken by counsel but not the reasons for it. The appellate court may have no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive or was taken because the counsel's alternatives were even worse. See *Guinan, supra*, at 473 (Easterbrook, J., concurring) ("No matter how odd or deficient trial counsel's performance may seem, that lawyer may have had a reason for acting as he did. . . . Or it may turn out that counsel's overall performance was sufficient despite a glaring omission . . ."). The trial record may contain no evidence of alleged errors of omission, much less the reasons underlying them. And evidence of alleged conflicts of interest might be found only in attorney-client correspondence or other documents that, in the typical criminal trial, are not introduced. *See, e.g., Billy-Eko*, 8 F.3d at 114. Without additional factual development, moreover, an appellate court may not be able to ascertain whether the alleged error was prejudicial.

Under the rule we adopt today, ineffective-assistance claims ordinarily will be litigated in the first instance in the district court, the forum best suited to developing the facts necessary to determining the adequacy of representation during an entire trial. The court may take testimony from witnesses for the defendant and the prosecution and from the counsel alleged to have rendered the deficient performance. See, e.g., *Griffin, supra*, at 1109 (In a § 2255 proceeding, the defendant "has a full opportunity to prove facts establishing ineffectiveness of counsel, the Government has a full opportunity to present evidence to the contrary, the district court hears spoken words we can see only in print and sees expressions

4

we will never see, and a factual record bearing precisely on the issue is created");
*Beaulieu v. United States*, 930 F.2d 805 (CA10 1991) (*partially rev'd on other grounds United States v. Galloway, supra*). In addition, the § 2255 motion often will be ruled upon by the same district judge who presided at trial. The judge, having observed the earlier trial, should have an advantageous perspective for determining the effectiveness of counsel's conduct and whether any deficiencies were prejudicial.

*Massaro v. United States,* 538 U.S. 500, 504-506 (2003).

Thus, the Supreme Court has made clear that Section 2255 claims that rely on development of facts outside the trial record ordinarily must receive an evidentiary hearing. That is consistent with the plain language of Section 2255(b), which *requires* an evidentiary unless the motion and accompanying evidence *conclusively* establish that the petitioner is entitled to *no* relief.

II.    **As demonstrated in the Reply, an evidentiary hearing is required on Mr. Lighty's claims because those claims, together with the supporting evidence, do not "conclusively show that [Mr. Lighty] is entitled to no relief."**

In his 2255 Motion, as amplified in the Reply, which is also being filed today, Mr. Lighty has made a number of claims that require precisely the type of evidentiary hearing that *Massaro* envisions, because they depend on the development of evidence outside the trial record. These include extensive claims of ineffective assistance of counsel and a claim concerning the Government's failure to disclose exculpatory evidence.

The arguments and supporting evidence included in the Reply show that Mr. Lighty has established the following in support of these claims:

(1) There was substantial available evidence, including facts and expert opinion, regarding Mr. Lighty's family history and influences, the real, diagnosable trauma he suffered in his formative years, his cognitive deficits, and the neuroscience establishing that 19 year-olds are still teenagers who lack the fully formed capacity to make reasoned, non-

5

impulsive decisions, assess risks, and appreciate the consequences of their actions; trial counsel failed to investigate and present that evidence; trial counsel's failure was not strategic and fell below an objective standard of reasonableness, especially given their decision to focus their plea to spare Mr. Lighty's life, in part, on his difficult upbringing; and trial counsel's failures were prejudicial, as they allowed the Government to successfully, but inaccurately, portray Mr. Lighty as an irredeemable violent criminal who did not deserve to live.

(2) There was substantial available evidence demonstrating that Tony Mathis, not Mr. Lighty, shot and killed Eric Hayes; trial counsel failed to investigate that evidence and present it at either the guilt or penalty phase; trial counsel's failure was not strategic and fell below an objective standard of reasonableness, especially given their decision to focus their guilt phase defense, and much of their plea to spare Mr. Lighty's life, on Mathis' culpability; and trial counsel's failure was prejudicial, because if the jury actually had heard the untapped evidence of Mathis' culpability, there is a reasonable probability that at least one juror would have voted to acquit or that at least one juror would have voted for life.

(3) There was substantial available evidence that would have mitigated the extraordinarily harmful impact of "the Afton Street incident" (the uncharged January 30, 2002 homicide of Antoine Newbill on Afton Street) on trial counsel's plea to spare Mr. Lighty's life; trial counsel failed to recognize, investigate and present that evidence; trial counsel's failure was not strategic and fell below and objective standard of reasonableness; and trial counsel's failure was prejudicial, because if the jury had heard the available, compelling counter-narrative to the Government's grim portrayal of the

Afton Street incident, there is a reasonable probability that at least one juror would have voted for life.

(4) With no strategic reason for doing so, trial counsel unreasonably failed to object to repeated, egregious, unconstitutional arguments in the Government's penalty phase closing and rebuttal, which led the jury to disregard all of the mitigating evidence regarding Mr. Lighty's troubled upbringing and, ultimately, to return a death verdict.

(5) Trial counsel committed a number of other errors affecting the penalty phase, none of which were rooted in strategy, including but not limited to their failure to object to unconstitutional victim impact testimony from Mr. Hayes' father, their failure to object to witness testimony suggesting a life without parole sentence did not mean Mr. Lighty might not serve life without parole if so sentenced, and their failure to object to the admission of unconstitutional hearsay evidence.

(6) The cumulative effect of all of trial counsel's errors at the penalty phase (*see* Section I in the Reply) was prejudicial in that, if trial counsel had not made all of them, there is a reasonable probability that at least one juror would have voted for life.

(7) The cumulative effect of all of trial counsel's errors at the guilt phase—including not only their failure to investigate and present evidence of Mathis' culpability, but also, *e.g.*, their failure to object to and remediate the Government's misconduct, their failure to argue the proper grounds for excluding the Afton Street incident, and their failure to object to the admission of evidence of an alleged robbery by Mr. Lighty (*see* Section II in the Reply)—was prejudicial in that, if trial counsel had not made all of them, there is a reasonable probability that at least one juror would have voted to acquit.

(8) Appellate counsel made no strategic decision to forgo on direct appeal meritorious claims regarding the composition of Mr. Lighty's jury, including a claim that one juror unfairly biased in favor of death was seated over trial counsel's for-cause challenge, a claim that two unbiased jurors were improperly excused for expressing non-disqualifying reservations about imposing the death penalty except in appropriate circumstances, and a claim that the Court improperly advised one juror that any death sentence would be reviewed by an appellate court.

(9) The Government failed to disclose evidence of the informant history of key prosecution witness Charles Whitley (*see* Section IV.A. in the Reply); that evidence—including all matters in which Whitley cooperated, the information he provided in each matter, the reliability or lack of reliability of the information he provided, and the benefits he received, was promised, or expected in each matter—would have been favorable to the defense; and the non-disclosure of that evidence undermined confidence in the guilty verdict or, alternatively, the sentence.

A hearing is needed to develop all of this evidence and to further develop any additional evidence in support of Mr. Lighty's claims. In particular, a hearing is needed to present the testimony all of the witnesses who have given sworn declarations that support Mr. Lighty's claims, who can testify about the contents and significance of various documents that trial counsel either neglected or failed to discover, and who are otherwise required and would need to be subpoenaed to develop the claims. The required witnesses include, among others: Mr. Lighty's trial and appellate counsel, who have sworn that they had no strategic reason for failing to investigate or present many of the facts and claims raised in the 2255 Motion and no strategic reason for failing to make certain meritorious objections to the Government's evidence and arguments; numerous

8

witnesses, including both fact and expert witnesses, who could have provided powerful mitigating evidence about Mr. Lighty's family history, background, cognitive abilities, youth, and the traumatic effect of the extreme adversity he experienced during his formative years; witnesses who could have established either directly or circumstantially that Tony Mathis was responsible for shooting Mr. Hayes; witnesses who could have painted a compelling, mitigating counter-narrative to the Government's grim portrayal of the Afton Street incident; and witnesses who can testify to Charles Whitley's history as a police informant at the time of Mr. Lighty's trial.

A hearing is also needed not only to present the documents appended to the Reply and related testimony, but any additional documents relevant to Mr. Lighty's claims, including documents that need to be subpoenaed (*e.g.,* documents reflecting Whitley's informant history).

All of this evidence from witnesses and documents, coupled with the attendant legal claims, does not "conclusively show that [Mr. Lighty] is entitled to no relief"—far from it. 28 U.SC. § 2255(b). To the contrary, as explained at length in the Reply, they make a powerful case that Mr. Lighty *is* entitled to relief. Therefore, Section 2255(b) requires an evidentiary hearing. This is especially so insofar as Mr. Lighty has presented colorable claims of ineffectiveness whose resolution rests on credibility determinations. *Massaro*, 538 U.S. at 504-06; *United States v. Blondeau*, 480 F. App'x 241, 242 (4th Cir. 2012) (citing *United States v. Witherspoon*, 231 F.3d 923, 925-27 (4th Cir. 2000)) ("An evidentiary hearing in open court is required when a movant presents a colorable Sixth Amendment claim showing disputed facts beyond the record or when a credibility determination is necessary.").

### CONCLUSION

For the foregoing reasons, as well as those set forth in the Reply, also being filed today, Mr. Lighty should be granted an evidentiary hearing on all unresolved claims in his 2255 Motion.

9

**Dated: October 11, 2019**

Respectfully submitted,

_____/s/_____                    _____/s/_____
Julie Brain                                   Seth A. Rosenthal
Juliebrain1@yahoo.com                         (D. Md. Bar No. 10780)
Attorney at Law                               SARosenthal@Venable.com
916 S. 2nd Street                             VENABLE LLP
Philadelphia, PA 19106                        600 Massachusetts Avenue, NW
(267) 639-0417                                Washington, DC 20001
                                              (202) 344-4741


_____/s/_____
Tiffani Hurst
Tiffani_Hurst@fd.org
Office of the Federal Public Defender
800 N. King Street
Wilmington, DE 19801
(302) 573-6010

*Counsel for Kenneth Jamal Lighty*