**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) |
| v. | ) Case No. 03-cr-00457-PJM |
| | ) |
| KENNETH JAMAL LIGHTY, | ) |
| | ) |
| *Defendant*. | ) |

**REPLY IN SUPPORT OF PETITIONER'S AMENDED MOTION FOR RELIEF UNDER
28 U.S.C. § 2255 SEEKING TO VACATE PETITIONER'S THREE CONVICTIONS
UNDER 18 U.S.C. § 924(c) AND DEATH SENTENCE**

**INTRODUCTION**

The government concedes that Mr. Lighty's conviction on Count Four must be vacated because its predicate, conspiracy to kidnap, does not qualify as a crime of violence under Section 924(c)'s force clause. However, the government continues to defend Mr. Lighty's convictions on Counts Three and Five, contending that one of the predicates for those counts, kidnapping resulting in death, is a crime of violence, even if the other predicate, conspiracy to kidnap, is not.

The government's argument is fatally flawed. For two independent reasons, kidnapping resulting in death does not qualify as a "crime of violence" under Section 924(c)'s force clause. First, under the required categorical approach—which the government ignores—the elements of kidnapping resulting in death do not require the use, attempted use or threatened use of force. Second, the "resulting in death" element of kidnapping resulting in death does not require proof of the heightened *mens rea* necessary to qualify the offense as a crime of violence.

Additionally, the convictions on Counts Three and Five are invalid even if kidnapping resulting in death were a crime of violence. Those counts charged alternative predicates—

conspiracy to kidnap and kidnapping resulting in death—and the verdicts on those counts were general verdicts. It is thus impossible to exclude the possibility that some or all jurors found, as the sole predicate, conspiracy to kidnap, which is not a crime of violence under the force clause.

The invalidation of Mr. Lighty's convictions and sentences on Counts Three, Four and Five requires the reversal of Mr. Lighty's death sentence and a new sentencing hearing. Under the plain terms of Section 2255, the invalidation of Mr. Lighty's Section 924(c) convictions and sentences obligates the Court to either "correct" Mr. Lighty's total sentence or "resentence" him on the remaining counts. Because it is impossible to conclude that the jury's vote for death was wholly unaffected by their own consideration of the invalid Section 924(c) counts—being instructed on them, deliberating over them, and returning verdicts on them—a re-sentencing on the remaining counts is necessary. *See Johnson v. Mississippi,* 486 U.S. 578 (1988); ECF Nos. 530 at 17-22 & 608 at 10-18. That is especially so given the penalty phase instructions the jury received, which informed the jury that they were bound by their guilt phase verdict and had to make a reasoned moral judgment on punishment based on all the evidence before them.

The government ignores *Johnson* and downplays the impact of the three invalid convictions. In fact, the government analyzes the impact of just one invalid conviction and thus waives any argument on the impact of three. Assuming only one invalid conviction, the government advocates a sentence "correction," rather than a full re-sentencing. But a sentence "correction" under Section 2255 is merely a technical, mechanical exercise that entails no reassessment of the appropriateness of the original sentence. In this case—a death penalty case in which the need for reliable decision-making is acute—a reassessment is essential, at least as essential as the re-sentencing customarily required in non-capital "sentencing package" cases. Because of the spillover effect that the jury's verdicts on Counts Three, Four and Five naturally

2

had on their subsequent penalty phase deliberations, merely excising the convictions and sentences on those counts will not satisfy the purpose of Section 2255, which is to put Mr. Lighty in the same position he would have been at sentencing had the Section 924(c) charges never been brought.

ARGUMENT

**I.      Mr. Lighty's convictions on Counts Three and Five are invalid and must be vacated.**

**A.      The convictions on Counts Three and Five must be vacated because kidnapping resulting in death is not a crime of violence.**

To qualify as a crime of violence under Section 924(c)'s force clause, an offense must satisfy two requirements. It must have as an element the use, attempted use, or threatened use of force. And it must require that such use, attempt or threat be intentional or knowing; reckless or negligent conduct is not enough. The offense of kidnapping resulting in death, like the offense of kidnapping *simpliciter*, fails to satisfy either requirement.

**1.      Kidnapping resulting in death does not qualify as a crime of violence because it does not categorically require the use, attempted use or threatened use of force.**

In the wake of *United States v. Davis,* as explained in Mr. Lighty's supplemental brief, a predicate "crime of violence" supporting a Section 924(c) conviction must have "as an element the use, attempted use, or threatened use of physical force against the person or property of another[.]" 18 U.S.C. § 924(c)(3)(A). To determine whether an offense is a crime of violence under Section 924(c)(3)(A), courts must use the "categorical approach." *United States v. Simms*, 914 F.3d 229, 233 (4th Cir. 2019) (*en banc*). The categorical approach requires courts to look only to the statutory elements of an offense, not at the facts of a particular case. *Id.* "When a statute defines an offense in a way that allows for both violent and nonviolent means of commission, that offense is not 'categorically' a crime of violence under the force clause." *Id.*

3

The Fourth Circuit held in *United States v. Walker* that kidnapping under 18 U.S.C. § 1201(a) is not a crime of violence under the force clause because it "may be committed without violence," and thus "clearly does not categorically qualify as a crime of violence under the force clause[.]" *United States v. Walker,* 934 F.3d 375, 379 (4th Cir. 2019). The same is true of kidnapping resulting in death. Like kidnapping, kidnapping resulting in death does not require— *i.e.*, have "as an element"—the use, attempted use, or threatened use of physical force. As the Fourth Circuit observed in *United States v. Torres-Miguel*, "a crime may *result* in death or serious injury without involving the *use* of physical force[.]" *United States v. Torres-Miguel,* 701 F.3d 165, 168 (4th Cir. 2012) (emphasis in original). While the Fourth Circuit has acknowledged that a different aspect of *Miguel-Torres* was implicitly abrogated by the Supreme Court's subsequent decision in *United States v. Castleman*, 572 U.S. 157 (2014), it has reaffirmed this particular holding from *Miguel-Torres* in at least five subsequent decisions. *See United States v. Allred*, 942 F.3d 641, 653 (4th Cir. 2019) (explaining that, although *Castleman* abrogated one aspect of *Torres-Miguel*, it "did not, however, 'abrogate the causation aspect of *Torres-Miguel* that a crime may *result* in death or serious injury without involving the *use* of physical force.'") (quoting *United States v. Covington*, 880 F.3d 129, 134 n.4 (4th Cir. 2018)); *United States v. Battle*, 927 F.3d 160, 166 (4th Cir. 2019) ("It is true that a crime 'may result in' bodily injury without involving the use of force[.]"); *United States v. Middleton*, 883 F.3d 485, 491 (4th Cir. 2018) ("a crime may *result* in death or serious injury without involving the *use* of physical force") (quoting *Torres-Miguel*, 701 F.3d at 168); *Covington*, 880 F.3d at 134 n.4 (same); *United States v. McNeal*, 818 F.3d 141, 156 n.10 (4th Cir. 2016) (same).

An examination of the offense of kidnapping "resulting in death" shows why the Fourth Circuit's repeated pronouncements are correct. There are any number of realistic scenarios in

4

which a defendant could be convicted of kidnapping resulting in death without using, attempting to use, or threatening to use force. If a father whose parental rights have been terminated abducts his child without force from the custodial parent in the District of Columbia and then, after crossing over into Maryland, drives recklessly and gets into a car accident that results in the child's death, he is guilty of kidnapping resulting in death without using, attempting to use, or threatening to use force. If a passenger gets into a taxi cab in Maryland and dies when she jumps from the cab in Virginia after realizing the driver is abducting her and taking her far away from her requested destination, the driver is similarly guilty of kidnapping resulting in death, even though he neither used, attempted to use nor threatened to use force. If a man lures a child into a car from a school playground in Virginia, takes the child to a remote location in Maryland and keeps her there for several days before she suddenly dies because, unknown to the man, she is diabetic and has not received her insulin, the man is guilty of kidnapping resulting in death—again, despite not having used, attempted to use, or threatened to use force. These are just a few of many realistic scenarios demonstrating that, under the requisite categorical approach, kidnapping resulting in death does not qualify as a crime of violence.

A recent decision from the District of Idaho confirms this conclusion. In *Duncan v. United States*, Nos. 2:17-cv-00091-EJL, 2:07-cr-00023-EJL, 2019 WL 6053010, at *3 (D. Idaho Nov. 15, 2019), which included a Section 924(c) charge predicated in part on capital kidnapping resulting in death, the court held that it was "bound by the appellate courts' strained findings that in the categorical approach's artificial view, the crime of kidnapping can be committed without using physical force [citations omitted]. The same holds true for the crime of kidnapping resulting in death. As such, neither of the kidnapping charges in Counts One or Two are categorically crimes of violence under § 924(c)(3)(A)."

The government's argument that kidnapping resulting in death remains a crime of violence after *Walker* ignores all of this. To begin, the government refuses to acknowledge that the categorical approach is required here, instead focusing on the facts of the case, which the categorical approach forbids. *See* ECF No. 631 at 10-11. The government also ignores *Torres-Miguel* and subsequent circuit precedent expressly establishing that a crime "resulting in death" does not qualify as a crime of violence because it may be committed without using force. Further, the government ignores the recent ruling in *Duncan*, and even more revealing, it cites no contrary authority establishing that kidnapping resulting in death—or ***any*** crime "resulting in" death— qualifies as a crime of violence under Section 924(c)'s force clause. In fact, there is no such authority.

What the government contends is that "Congress's use of the term 'results' requires a causal connection between the kidnapping and the death" and that "[e]stablishing that connection will virtually always require proof that intentional or reckless force capable of causing physical pain or injury was used during the course of the commission of the offense." ECF No. 631 at 9. This argument fails on its face: crimes that "*virtually always* require proof [of] intentional or reckless force capable of causing physical pain or injury" do not, *by definition*, qualify as crimes of violence under the force clause because they do not *categorically* require proof of such force. The government's use of the phrase "virtually always" verifies that the government is flouting the categorical approach. (As explained in the next section, the government's acknowledgment that kidnapping resulting in death permits proof of *reckless* conduct also shows that kidnapping resulting in death is not a crime of violence and that the government's position violates the categorical approach.)

The government's argument gets even weaker as it progresses. The government attempts to compare this case, which involves the Section 924(c) predicate of kidnapping resulting in death, with cases that involve Section 924(c) predicates of second-degree retaliatory murder, assault with intent to murder, and murder. *See* ECF No. 631 at 10 (citing *In re Irby,* 858 F.3d 231 (4th Cir. 2017), *United States v. Battle*, 927 F.3d 160, 165-66 (4th Cir. 2019), and *United States v. Moreno-Augilar*, 198 F.3 548, 554, (D.Md. 2016)). None of those predicates includes a "resulting in death" element. To the contrary, all of them require the *intentional* or *knowing* causation of death or injury—and, therefore, all of them always (not "virtually always") require the use of physical force. *Id.*

Because kidnapping resulting in death does not have as an element the use, attempted use or threatened use of force, it does not qualify as a crime of violence under the force clause. For that reason alone, Counts Three and Five should be vacated.

> **2.      Kidnapping resulting in death does not qualify as a crime of violence because it does not require proof of the heightened *mens rea* necessary to qualify as a crime of violence.**

For an offense to qualify as a crime of violence under Section 924(c)'s force clause, it must require proof that the defendant *intentionally or knowingly* used, attempted to use, or threatened to use physical force. *See United States v. McNeal*, 818 F.3d 141, 154-55 (4th Cir. 2016) ("[T]o qualify as a crime of violence, an offense must require either specific intent or knowledge with respect to the use, threatened use, or attempted use of physical force."). By contrast, crimes that can be committed recklessly or negligently cannot qualify as crimes of violence. *See Middleton*, 883 F.3d at 498; *United States v. Hodge*, 902 F.3d 420, 427 (4th Cir. 2018) (quoting *Middleton* for the proposition that the force clause of the Armed Career Criminal Act "requires a higher degree of *mens rea* than recklessness."); *United States v. Clarke*, 171 F. Supp. 3d 449, 456 (D. Md. 2016)

("Defendant is undoubtedly correct that § 924(c) imposes a *mens rea* requirement of at least knowing as opposed to negligent or reckless misconduct.") (citing *Garcia v. Gonzales*, 455 F.3d 465, 468 (4th Cir. 2006)).

Kidnapping resulting in death cannot be considered a crime of violence because it does not require proof of the heightened *mens rea* necessary to qualify as a crime of violence. Proving that a death results from a kidnapping requires proof that the victim died as a result of the kidnapping, not that the defendant intentionally or knowingly killed the victim. *See United States v. Barraza*, 576 F.3d 798, 807 (8th Cir. 2009) ("The statute does not require that deaths result from voluntary and intentional conduct, only that 'the death of any person results' in the course of the kidnapping.") (quoting 18 U.S.C. § 1201(a)); *United States v. Mayhew*, 380 F. Supp. 2d 936, 959 (S.D. Ohio 2005) ("The Court finds that 18 U.S.C. § 1201, which states 'if the death of any person results, shall be punished by death or life imprisonment' does not require that the government prove mens rea.  The language simply contains no indication that such proof is necessary."); *Fulks v. United States*, 875 F. Supp. 2d 535, 588 (D. S.C. 2010) ("Count Two, charging [k]idnapping resulting in death, has no mens rea requirement[.]"). Thus, a jury could return a guilty verdict on a kidnapping resulted in death charge even if the defendant caused the victim's death recklessly or negligently. *Barraza*, 576 F.3d at 807; *Mayhew*, 380 F. Supp. 2d at 959. The government itself recognizes this possibility, asserting that the offense of kidnapping resulting in death "will virtually always require proof that intentional *or reckless* force capable of causing physical pain or injury was used during the course of the commission of the offense." ECF No. 631 at 9 (emphasis added). It is precisely this possibility that disqualifies kidnapping resulting in death as a crime of violence under Section 924(c)(3)(A).

The government counters that the charges in Counts Three and Five remain crimes of violence because the jury found that Mr. Lighty intentionally killed Mr. Hayes. *See* ECF No. 631 at 10. Again, however, this argument flouts the categorical approach, which prohibits consideration of the facts of a particular case. As the Supreme Court has explained, "[u]nder the categorical approach, a court assesses whether a crime qualifies as a violent felony, 'in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion.'" *United States v. Johnson*, 135 S. Ct. 2551, 2557 (2015) (quoting *Begay v. United States*, 553 U.S. 137, 141 (2008)). Here, the law "defines" the crime of kidnapping resulting in death through elements that do not require proof of the heightened *mens rea* necessary to qualify as a crime of violence.

Because the crime of kidnapping resulting in death does not require proof that the defendant acted with "specific intent or knowledge with respect to the use, threatened use, or attempted use of physical force," *McNeal*, 818 F.3d at 154-55, it does not qualify as a crime of violence under Section 924(c)'s force clause. For this reason, too, Counts Three and Five must be vacated.

**B.    Even if kidnapping resulting in death qualifies as a crime of violence, the convictions on the Section 924(c) charges in Counts Three and Five must be vacated because the jury returned general verdicts on those counts, and one of the alternative predicate offenses in those counts was conspiracy to kidnap, which the government concedes is not a crime of violence.**

Counts Three and Five each charged two predicate offenses: kidnapping resulting in death under 18 U.S.C. § 1201(a) and conspiracy to commit kidnapping under 18 U.S.C. § 1201(c). *See* ECF No. 1 at 4, 6. As explained above, kidnapping resulting in death does not qualify as a crime of violence, and, as the government has conceded, conspiracy to commit kidnapping is not a crime of violence either. But even if this Court were to find that kidnapping resulting in death is a crime

9

of violence, the convictions on Counts Three and Five still must be vacated because it is impossible for the Court to conclude that those convictions did not rest on the predicate that is not a crime of violence, conspiracy to kidnap.

Where multiple predicate "crimes of violence" are charged, and it is impossible to determine which one supported a Section 924(c) conviction, courts must vacate the conviction if one of the predicates does not qualify as a crime of violence. In *In re Gomez*, 830 F.3d 1225 (11th Cir. 2016), the jury returned a general verdict convicting the defendant of a Section 924(c) offense that included four different predicate offenses: two drug trafficking crimes; conspiracy to commit Hobbs Act robbery; and attempted Hobbs Act robbery. *Id.* at 1226-27. Because the verdict was general, the court explained:

> [W]e can't know what, if anything, the jury found with regard to Gomez's connection to a gun and these crimes. That is because the jurors had multiple crimes to consider in a single count, so they could have convicted Gomez of the § 924(c) offense without reaching unanimous agreement on during which crime it was that Gomez possessed the firearm. Or, they could have unanimously agreed that he possessed a firearm at some point during the Hobbs Act conspiracy, but not during the drug trafficking crime. Either way, a general verdict of guilty does not reveal any unanimous finding by the jury that the defendant was guilty of conspiring to carry a firearm during one of the potential predicate offenses, all of the predicate offenses, or guilty of conspiring during some and not others.

*Id.* at 1227. The court proceeded to grant the defendant's application for leave to file a successive habeas challenge because, *inter alia*, one of the predicate offenses, Hobbs Act conspiracy, did not qualify as a crime of violence. *Id.* at 1228 ("Since the jury may have found that Gomez only 'possessed' a firearm during his Hobbs Act conspiracy offense, we . . . grant his application."). *In re Gomez* thus teaches that, unless a court can definitively conclude that a valid predicate, and not an invalid one, served as the basis for a Section 924(c) conviction, the conviction cannot stand.

Fourth Circuit law is consistent with *Gomez,* requiring that when the record fails to conclusively establish which of two alternative crimes served as the basis for a Section 924(c)

10

conviction, the court must assume the jury found the least serious of the two. *See United States v. Chapman*, 666 F.3d 220, 227 (4th Cir. 2012); *United States v. Vann*, 660 F.3d 771, 774 (4th Cir. 2011) (*en banc*); *United States v. McCall*, 2019 WL 4675762, at *6-7 (E.D. Va. Sept. 25, 2019).

Here, it is impossible to conclude that every juror relied on kidnapping resulting in death, rather than conspiracy to commit kidnapping, as the predicate offense that supported the convictions on Counts Three and Five. The Court's jury instructions and the verdict form fail to identify which predicate served as the basis for those convictions; both made clear that the jury could find Mr. Lighty guilty on Counts Three and Five based on *either* kidnapping *or* conspiracy to commit kidnapping. The Court instructed the jury that:

> The first element that the government has to prove beyond a reasonable doubt on each of Counts Three, Four and Five is that each defendant committed a crime of violence for which he might be prosecuted in a court of the United States and the defendants are charged in Court One with kidnapping and Count Two with conspiracy to commit kidnapping, and I instruct you that both of these are crimes of violence.
>
> However, it's up to you to determine whether the government has proven beyond a reasonable doubt that the defendant committed *either or both* the crimes of kidnapping and conspiracy to commit kidnapping.

10/20/05 Tr. at 63 (emphasis added). Consistent with these instructions, the verdict form listed the possible predicate crimes charged in Counts Three and Five in the disjunctive and did not ask the jury to specify which predicate or predicates it unanimously found. The verdicts on Counts Three and Five were, therefore, general verdicts. *See* ECF No. 608-2 (Verdict Form) at 2-3.[1]

---

[1] Count Three asked the jury, "How do you find the defendant, Kenneth Jamal Lighty, as to Count Three (use of a firearm to abduct Eric Larry Hayes in furtherance of the crimes charged Counts One *or* Two) or [sic] not guilty?" Count Five asked, "How do you find the defendant, Kenneth Jamal Lighty, as to Count Five (use of a weapon to shoot Eric Larry Hayes in furtherance of the crimes charged Counts One *or* Two), guilty or not guilty?" ECF No. 608-2 (Verdict Form) at 2-3 (emphasis added).

11

Because the jury's "general verdict of guilty does not reveal any unanimous finding," *In re Gomez*, 830 F.3d at 1227, it is possible that not all jurors found that Mr. Lighty possessed a firearm during and in relation to the crime of kidnapping resulting in death, and that some or all of them instead found the predicate of conspiracy to commit kidnapping, which the government concedes is not a crime of violence. For that reason, even if kidnapping resulting in death were a crime of violence—it is not, *see supra*—the convictions on Counts Three and Five must be vacated.

**II.     The invalidation of the convictions and sentences on Counts Three, Four and Five requires Mr. Lighty's entire sentence to be vacated and entitles Mr. Lighty to a new sentencing hearing.**

Under the express terms of 18 U.S.C. § 2255(b), the invalidation of Mr. Lighty's three Section 924(c) convictions presents the Court with two options: "resentence" him or "correct" his sentence. *See United States v. Hadden,* 475 F.3d 652, 661, 667 (4th Cir. 2007) ("the end result of a successful § 2255 proceeding must be the vacatur of the prisoner's unlawful sentence (and perhaps one or more of his convictions) and one of the following: (1) the prisoner's release, (2) the grant of a future new trial to the prisoner, (3) a new sentence, be it imposed by (a) a resentencing or (b) a corrected sentence."). The government concedes this. Although it contends that only one conviction is invalid, rather than three, it acknowledges, as it must, that the invalidation of that conviction renders the original judgment unlawful and, therefore, that Mr. Lighty is entitled to a remedy of either a full "resentencing" on all remaining counts of conviction or a sentence "correction" under Section 2255(b). *See* ECF No. 631 at 15-16.

A sentence correction is an "arithmetical, technical or mechanical" exercise that entails no "reevaluation of the appropriateness of [the defendant's] original sentence." *United States v. Flack,* 941 F.3d 238, 241 (6th Cir. 2019); *see also United States v. Palmer,* 854 F.3d 39, 47-48 (D.C. Cir. 2017); Fed. R. Crim P. 35 (sentence correction is limited to corrections of "arithmetical, technical,

or other clear error"). A resentencing, by contrast, requires such a re-evaluation. In a non-death case, that re-evaluation necessarily entails a trial court revisiting the 18 U.S.C. § 3553(a) factors. *Flack,* 941 F.3d at 241; *Palmer,* 854 F.3d at 47. In a death case, it necessarily entails a jury revisiting the life/death determination under 18 U.S.C. §§ 3591 – 3593 in the first instance. Here, the Court has discretion whether either to order a new sentencing or merely correct Mr. Lighty's sentence as a remedy for Mr. Lighty's meritorious challenge to his unlawful Section 924(c) convictions. *See Hadden*, 475 F.3d at 667-69. But the remedy the Court chooses must satisfy the purpose of Section 2255, which is to "place the defendant in exactly the *same* position he would have been had there been no error in the first instance." *United States v. Louthian*, 771 Fed. Appx. 208, 209 (4th Cir. 2019) (quoting *Hadden*, 475 F.3d at 665) (emphasis in original).

The government argues that a mere sentence correction is the appropriate remedy, asserting that the Court may resolve the issue of the invalidity of the conviction on Count Four by eliminating the sentence on that count and "correcting" Mr. Lighty's overall sentence accordingly. *See* ECF No. 631 at 15-17. The government has not made any argument about the appropriate remedy for the invalidation of all three Section 924(c) convictions and, therefore, has waived that argument. *See United States v. Hall*, 858 F.3d 254, 280 n.8 (4th Cir. 2017) (government waives argument by failing to raise the argument in its brief). If the Court invalidates all three convictions, it should therefore grant Mr. Lighty's request for a resentencing.

If the Court finds that the government has not waived that argument, and if the government is presumed to assert that a mere sentence correction is the appropriate remedy for the invalidation of all three Section 924(c) convictions, its position is at odds with the purpose of Section 2255: a mere sentence correction will not put Mr. Lighty in "exactly the *same* position he would have been" at sentencing had there been no error. That is because it is impossible to conclude with any

confidence that the jury was wholly unaffected in its life-or-death determination by its guilt phase instructions, deliberations and verdicts regarding the three illicit Section 924(c) counts. It would therefore be inappropriate for the district court to step into the shoes of the jury and draw that conclusion by way of a mere "correction" of Mr. Lighty's sentence.

The only remedy that will put Mr. Lighty in the same position he would have been had there been no illicit Section 924(c) charges is a re-sentencing on the non-invalidated counts of conviction, Counts One and Two. That is especially so because in this case, a death penalty case, the need for "reliable decisionmaking" in sentencing is "acute." *Deck v. Missouri*, 544 U.S. 622, 632 (2005). Indeed, in a *non*-capital case, under the sentencing package doctrine, the need for scrupulously reliable sentencing customarily results in full re-sentencing, rather than sentence correction, in the wake of the invalidation of a Section 924(c) conviction, so it is unfathomable that the same result would not obtain in a capital case like Mr. Lighty's.[2]

**A.** **The government's putative contention that the invalid Section 924(c) convictions and antecedent deliberations did not influence the jury's vote for death defies reason.**

To determine which Section 2255 remedy is appropriate requires determining whether there is a possibility that Mr. Lighty's three unlawful convictions affected the decision of at least one juror to sentence Mr. Lighty to death. *See* ECF Nos. 608 at 10-14 & 530 at 14-17; *Johnson,* 486 U.S. at 586. If there is any chance of such influence, the "arithmetical, technical, or mechanical" exercise of sentence "correction" cannot possibly put Mr. Lighty in exactly the same

---

[2] Mr. Lighty contends that a resentencing is required because of the possibility that the jury's sentencing determination was influenced by three invalid Section 924(c) convictions. If, however, the Court accepts the government's position and finds that only the conviction on Count Four is invalid, Mr. Lighty contends, in the alternative, that a full resentencing is required because, for the same reasons set forth in this brief and his opening and supplemental briefs, *see* ECF Nos. 530 at 17-22 & 608 at 10-18, there is a possibility that the invalid conviction on Count Four alone influenced the jury's vote for death.

position he would have been had there been no illicit Section 924(c) charges. *Id.*; *United States v. Brown,* 879 F.3d 1231, 1239 (11th Cir. 2018) ("If there is a chance the erroneous sentence on one count of conviction influenced the sentencing judge's decisions on other counts, then merely excising the mistaken sentence for one count won't put the defendant in the same position as if no error had been made."). Put differently, to sustain Mr. Lighty's death sentence and simply "correct" his total sentence by excising the sentences for the invalid convictions, there must be no possibility—*zero*—that the jury's deliberations and verdicts on the illicit Section 924(c) charges influenced the decision of one juror to vote for death.

The government obscures its analysis of the question of possible influence by evaluating the potential impact of only one invalid conviction on the jury's deliberations, rather than three. Moreover, the government declines to acknowledge *Johnson v. Mississippi*, much less grapple with it, including its vital admonition that allowing invalid convictions to contaminate capital sentencing decisions undermines "the special need for reliability in the determination that death is the appropriate punishment." *Id.* at 584.

Given the impact of *three* invalid convictions on the jury's decision (not just one), as well as the Eighth Amendment's demand for heightened reliability in capital sentencing proceedings, re-sentencing on the remaining counts of conviction is required. As explained in both the opening and supplemental briefs, there is plainly a possibility—and more likely a probability—that Mr. Lighty's Section 924(c) convictions infected the jury's decision-making at the penalty phase and influenced at least one juror to vote for death. *See* ECF Nos. 608 at 10-14 & 530 at 17-22. The Section 924(c) counts comprised three of the five counts in the indictment and warranted the jury's careful attention during guilt phase deliberations. The jury was presented with the three invalid charges, was instructed on them and told (incorrectly, we now know) that each one was predicated

on two "crimes of violence" apiece, 10/20/05 Tr.  63, deliberated over them, answered verdict form questions about them, and returned verdicts on them. It defies reason to conclude that every single juror set aside all of this when they considered the question of Mr. Lighty's sentence. *See* ECF No. 608 at 12-13; *Johnson,* 486 U.S. at 586 (even without the prosecutor's argument to consider the invalid conviction, "there would be a possibility that the jury's belief that petitioner had been convicted of a prior felony would be decisive in the choice between a life and a death sentence") (internal citation and quotations omitted).

The likelihood that the unlawful charges and convictions contaminated the jury's sentencing decision was only aggravated by the penalty phase instructions. The Court told the jury that "[i]n determining the issue of punishment for the defendant," they were "bound" by their guilt phase "verdict," "in which they found the defendant guilty beyond a reasonable doubt;" that they should independently consider "the remaining issue of punishment" only "after full consideration of the evidence with your fellow members of the jury;" that they should consider all of the evidence they heard during the guilt phase in deciding the existence of any proportionality factor and in weighing aggravating and mitigating factors; and that they should "make a reasoned moral judgment based on all of the evidence before them as to whether the death penalty is justified as punishment for the defendant." ECF No. 608 at 13 (citing 11/8/05 Tr. at 6-7, 37, 38); ECF No. 530 at 20-21. Particularly with these instructions, the likelihood that the jury's deliberations and verdicts on Counts Three, Four and Five spilled over to infect the jury's penalty phase decision-making is palpable.

Put another way, consider what would have transpired if there were no error—that is, if the three unlawful Section 924(c) charges were never in the case because they are not, in fact, crimes. The jury would not have considered or returned verdicts on the three charges and would have

16

considered only two counts (Counts One and Two), rather than five counts. Moreover, the jury

only would have been instructed on two counts and would not have received instructions on the

three additional counts—firearms offenses that were expressly characterized as being predicated

on "crimes of violence." In that situation, without invalid charges, instructions and verdicts on

three of five counts, it likely would have been easier to persuade at least one juror that Mr. Lighty

was not among the "worst of the worst" and thus at least possible that one juror would not have

voted for death.[3] Because of that possibility, the only appropriate remedy under Section 2255(b)—

the only remedy that puts Mr. Lighty in the same position he would have been had the invalid

charges and convictions never been in the case—is a full resentencing on the counts that have not

been invalidated, Counts One and Two.

---

[3] Although the facts adduced by the government in this case are grim, there are numerous other federal cases in which jurors returned life without parole sentences on far more shocking facts, including cases involving the murder by arson of six people, including four children, in retaliation against a federal informant, *United States v. Steven Northington*, E.D. Pa. No. 2:07-CR-00550-RBS, the murder of a family of four and rape-murder of the defendant's daughter, *United States v. Steven Green*, W.D. Ky. No. 5:06-CR-00019-TBR, the murder of a family of three and the dumping of the child victim in a swamp, *United States v. Chevie Kehoe*, E.D.Ar. No. 97-243, the murders of 20 different people, *United States v. Alexis Candelario-Santana*, D.P.R. No. 3:09-CR-00427-JAF, the repeated torture and beating death of a five year old child, *United States v. Naeem Williams*, D. Hi. No. 06-00079, the kidnapping, beating, sexual abuse and partial decapitation murder of a 16 year old potential witness in a drug case, *United States v. Larry Lujan*, D.N.M. No. 05-924, the murder of six people by a Mafia contract killer, including several victims who were tortured, chopped up and buried in a deserted marsh, *United States v. Thomas Pitera*, E.D.N.Y. No. 90-0424 (RR); the terrorist bombings of two embassies in Africa, resulting in the death of 224 people and injury to over 5,000, *United States v. Mohamed Rashed Daoud Al-'Owhali*, S.D.N.Y, No. S6-98-cr-1023; ordering the murders of four different victims by a drug kingpin, *United States v. Tommy Edelin*, D.D.C. No. 98-264, the murder of a family of three, *United States v. Ealy*, 363 F.3d 292, 295 (4th Cir. 2004), alien smuggling resulting in the death of 19 people, *United States v. Tyrone Williams*, S.D. Tx. No. 03-CR-221, and conspiracy to commit the terrorist attacks of 9/11, *United States v. Zacarias Moussaoui*, E.D. Va. No. 01-CR-455. Given that juries returned life without parole sentences in these cases, it is entirely possible that what tipped the scales in favor of death for at least one juror in this case was that Mr. Lighty was charged and convicted of five crimes, not two, and that three of the crimes were firearms crimes characterized in jury instructions as having been committed during "crimes of violence."

The government asserts that its focus on Mr. Lighty's culpability for Mr. Hayes' death and the Court's other penalty phase instructions were sufficient to keep the invalid conviction on Count Four from influencing the jury's sentencing decision. *See* ECF No. 631 at 11-14. Yet, as noted, the jury returned three invalid Section 924(c) convictions, not just one, and these were on three of the five counts they considered in total—more than half—so the possibility of prejudice was far more pronounced than the government suggests.

Further, the fact that the government's case for death naturally focused on its contentions about Mr. Lighty's role in the Hayes murder hardly obviates the influence that the invalid convictions had on the jury's vote for death. The government's contention about Mr. Lighty's role in the crime is what made him death-*eligible*, as the jury determined when it found the existence of the four charged "proportionality" factors under 18 U.S.C. § 3591(a)(2). But to conclude that Mr. Lighty belonged to the narrow category of offenders who are "the most deserving of execution," *Atkins v. Virginia*, 536 U.S. 304, 319 (2002), the jury had to consider additional facts, *see* 18 U.S.C. § 3593—or put differently, had to "make a reasoned moral judgment based on all of the evidence before them," as the Court instructed. 11/8/05 Tr. 38. It was this holistic judgment that the three invalid Section 924(c) convictions contaminated. Indeed, because it was the jurors in *this* case who *themselves* had just deliberated over the illicit charges and returned the invalid convictions, the chances that those convictions affected the jury's sentencing determination were even greater than in *Johnson* and similar cases, where the invalid convictions came from a prior case in which the jurors did not personally participate.

The instructions the government cites were also insufficient to eliminate the taint of the invalid convictions. The government focuses heavily on the Court's instructions on the statutory proportionality factors. *See* ECF No. 631 at 11-12, 13-14. But the proportionality factors are the

18

"eligibility" or "gateway" factors that, when found, made Mr. Lighty death-eligible. The instructions on those factors did not apply to the jury's *subsequent* determination of whether the death penalty was ultimately warranted, *see* 18 U.S.C. § 3593—that is, whether this case and this defendant were among the narrow class of death-eligible cases and offenders that are particularly deserving of death. *See, e.g., Roper v. Simmons*, 543 U.S. 551, 568 (2005) ("Capital punishment must be limited to those offenders who commit 'a narrow category of the most serious crimes' and whose extreme culpability makes them 'the most deserving of execution.'") (quoting *Atkins*, 536 U.S. at 319). Therefore, the government's point that, based on the Court's proportionality factor instructions, the Section 924(c) convictions had no bearing on the jury's consideration of the proportionality factors is irrelevant. What matters is whether, *after* moving past the threshold determination of death eligibility based on the proportionality factors, there is a possibility that at least one juror was influenced by the invalid 924(c) convictions. At that point, given the jury's own verdicts on the 924(c) counts and the previously described penalty phase instructions, such a possibility undoubtedly exists.[4] The jury could not help but be swayed by three illicit verdicts that they had returned themselves. That would have been the case even if the jury had been expressly instructed not to consider the Section 924(c) convictions in their sentencing deliberations, which they were not (*see supra*). *See Simmons v. South Carolina*, 512 U.S. 154, 170-71 (1994) ("While juries ordinarily are presumed to follow the court's instructions, we have recognized that in some circumstances 'the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the

---

[4] Moreover, as explained in the supplemental opening brief, the Court essentially directed a verdict on one of the proportionality factors by earlier instructing that kidnapping and conspiracy to kidnap are crimes of violence, so the instructions even infected consideration of the proportionality factors. *See* ECF No. 608 at 13-14.

jury system cannot be ignored.'") (internal citation omitted) (quoting *Bruton v. United States*, 391 U.S. 123, 135 (1968)).

The government has an extremely tough row to hoe to sustain its position. For a merely "arithmetical, mechanical, or technical" sentence correction to put Mr. Lighty in "exactly the same position" he would have been at sentencing had the jury not deliberated over and returned verdicts on the three invalid charges, there must be *no* possibility that those deliberations and verdicts spilled over into penalty phase deliberations and influenced at least one juror to vote for death. *See Brown,* 879 F.3d at 1239. Because such a possibility naturally exists, a mere sentence correction is an inappropriate remedy for Mr. Lighty's meritorious habeas claim. Resentencing on the remaining counts of conviction is required.

**B.      The sentencing package doctrine confirms that a mere sentence correction is a legally deficient, inadequate remedy for Mr. Lighty's meritorious claim.**

As explained in Mr. Lighty's supplemental opening brief, the sentencing package doctrine confirms the necessity of re-sentencing. *See* ECF No. 608 at 14-17. Contrary to the government's suggestion, *see* ECF No. 631 at 17, Mr. Lighty does not argue that the sentencing package doctrine itself should be applied. Rather, Mr. Lighty contends that what the sentencing package doctrine requires is closely analogous to what is required here.

A judge's determination of the appropriate sentence in a multi-count conviction case and the jury's life-or-death decision in a capital case are both holistic endeavors. *See* ECF No. 608 at 14-17; *compare United States v. Ventura*, 864 F.3d 301, 309 (4th Cir. 2017) ("The sentencing package doctrine accounts for the holistic approach that a district court should employ when sentencing a defendant convicted of multiple offenses.") *with* 11/8/05 Tr. 37 (instruction to Mr. Lighty's jury to "make a reasoned moral judgment based on all of the evidence before you as to whether the death penalty is justified as a punishment for the defendant"). Thus, just as the

sentencing package doctrine recognizes that "merely excising the mistaken sentence for one count won't put the defendant in the same position as if no error had been made," *Brown*, 879 F.3d at 1239, merely excising Mr. Lighty's invalid Section 924(c) convictions will not put him in the same position as if the jury had never considered and returned them. But putting him in the same position is what the habeas corpus statute requires. *See Louthian*, 771 Fed. Appx. at 209 (citing *Hadden*, 475 F.3d at 665).

In fact, in this case, full resentencing is even more essential and more appropriate than in the typical non-capital sentencing package context. As previously explained, *see* ECF No. 608 at 16-17, that is because "[t]he fundamental respect for humanity underlying the Eighth Amendment's prohibition against cruel and unusual punishment gives rise to a special need for reliability in the determination that death is the appropriate punishment in any capital case." *Johnson*, 486 U.S. at 584 (internal citation and quotations omitted); *see also Deck*, 544 U.S. at 632 (2005). But there is another reason: in this case, a death penalty case, a jury, rather than a judge, drove the sentencing determination.

When a Section 924(c) conviction is invalidated in a non-capital case, the sentencing package doctrine applies as a matter of course to require full resentencing. *See* ECF No. 608 at 15 (collecting cases). That is so even though the district court itself imposed the original sentence and arguably could "correct" that total sentence, without resentencing, based on its presumptive knowledge of whether and how the invalidated conviction influenced the sentence. By contrast, in a capital case, the district court has no knowledge of whether the invalidated conviction affected a death sentence: the jury, not the court, made the critical sentencing determination. Inasmuch as the sentencing package doctrine prophylactically obligates a district court to conduct a resentencing as a matter of course in the wake of the invalidation of one Section 924(c) conviction, even though

the district court itself determined the entire original sentence, it would be anomalous and illogical for a district court simply to correct a sentence, without a new sentencing hearing, in the wake of the invalidation of *three* Section 924(c) convictions in a *death penalty case* in which *the jury*, not the district court, determined the critical component of the original sentence.

    **C.**    **Harmless error analysis is inapposite for, and has no place in, the determination of which Section 2255 remedy to impose for a vacated judgment.**

Near the end of its discussion on the effect of the invalid conviction on Count Four, the government suggests that the Court should apply the harmless error standard of *Brecht v. Abrahamson,* 507 U.S. 619, 637-38 (1993), to determine which remedy—re-sentencing or sentence correction—to impose for Mr. Lighty's meritorious Section 2255 claim. *See* ECF No. 631 at 14-15. That is manifestly incorrect. Harmless error analysis is used to determine **whether** a remedy is required for a violation of law, not **which** remedy is appropriate once it has been determined that a conviction and sentence must be vacated. Here, as the government itself concedes, the law *has been* violated, at least one of Mr. Lighty's convictions and sentences *must be* vacated and, as a result, the judgment *must be* set aside. There is no longer any error to review for harmlessness. The sole remaining question under the express terms of Section 2255(b) is which remedy to impose: resentencing on the remaining convictions or sentence correction. For all of the reasons explained above, Mr. Lighty must be resentenced.

**CONCLUSION**

For the foregoing reasons, as well as those set forth in Mr. Lighty's prior briefing, *see* ECF Nos. 530 & 608, the convictions and sentences on Counts Three, Four and Five should be vacated, Mr. Lighty's judgment should be vacated and set aside, and Mr. Lighty should be granted a resentencing on the remaining counts of conviction.

22

DATE:  January 10, 2019

Respectfully submitted,


_____/s/_____                    _____/s/_____
Julie Brain                                    Seth A. Rosenthal
Juliebrain1@yahoo.com                          (D. Md. Bar No. 10780)
Attorney at Law                                SARosenthal@Venable.com
916 S. 2nd Street                              VENABLE LLP
Philadelphia, PA 19106                         600 Massachusetts Avenue, NW
(267) 639-0417                                 Washington, DC 20001
                                               (202) 344-4741



_____/s/_____
Tiffani Hurst
Tiffani_Hurst@fd.org
Office of the Federal Public Defender
800 N. King Street
Wilmington, DE 19801
(302) 573-6010

*Counsel for Kenneth Jamal Lighty*

23