**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Plaintiff*, | ) | Case No. 03-cr-00457-PJM |
| | ) | |
| v. | ) | |
| | ) | |
| KENNETH JAMAL LIGHTY, | ) | |
| | ) | |
| | ) | |
| *Defendant*. | | |

**REPLY IN SUPPORT OF PETITIONER'S MOTION FOR AN EVIDENTIARY
HEARING ON HIS AMENDED MOTION TO VACATE, SET ASIDE, OR CORRECT
SENTENCE AND FOR NEW TRIAL UNDER 18 U.S.C. § 2255**

According to the ECF docket entry, the government has filed an opposition to Mr. Lighty's Motion for an Evidentiary Hearing. *See* ECF No. 640. Contrary to the ECF entry, however, the title of the government's submission is "Government's Response to Petitioner's *'Merits Brief.'*" And that is how the government's submission reads. It responds point by point to the arguments Mr. Lighty makes in his Merits Brief (ECF No. 621), rather than the arguments in his Motion for an Evidentiary Hearing (ECF No. 622).

That said, the government makes only a limited number of arguments that it did not previously make in its responsive pleading in these proceedings (ECF No. 597). For most of its arguments, it simply cross-references that responsive pleading. This brief does not respond further to those arguments. For those arguments, Mr. Lighty rests on the opposing evidence and law in his Merits Brief (ECF No. 621). This brief is limited to responding to the government's new arguments, all of which address, in some way, the new, non-record evidence that Mr. Lighty presents in his Merits Brief. By addressing such new, non-record evidence, the government's

1

arguments necessarily implicate Mr. Lighty's request for an evidentiary hearing, which hinges on the need for the Court to make credibility and materiality determinations that cannot be made without sizing up that evidence. For that reason, this brief is styled as a reply on the Motion for an Evidentiary Hearing. However, it simultaneously responds to the government's new arguments regarding the merits of Mr. Lighty's claims and explains why an evidentiary hearing is required.[1]

---

[1]     The government takes issue with the idea that ECF No. 621 is a "merits brief," rather than a reply brief, arguing that Mr. Lighty filed his merits brief back in 2012 (ECF No. 451). But the government ignores the fact that, under the Section 2255 Rules, the amended petition Mr. Lighty filed in 2012 was in the nature of a complaint, not a merits brief (how else to explain why the Rules contemplate discovery *after* the filing of the initial motion?). The government also ignores the fact that the parties agreed, and the Court initially ordered, that this litigation would proceed on the assumption that ECF No. 451 was in the nature of a complaint, not a merits brief. In particular, under the Court's initial scheduling order, Mr. Lighty was to file a merits brief, *i.e.*, a "memorandum of law"—not a reply brief—following the disposition of his motion for discovery; the government was to file an opposition; and Mr. Lighty was to file a reply. *See* ECF Nos. 448, 448-1 at 2, & 449 at 2. Although the deadlines have changed, the parties have proceeded under precisely the same framework. And consistent with this framework, when the parties were corresponding to devise the current schedule, *see* ECF No. 629 (approving proposed schedule in ECF No. 628), Mr. Lighty's counsel expressly asked the government whether it wished to file an opposition to Mr. Lighty's Merits Brief (ECF No. 621) separate and apart from an opposition to his Motion for Evidentiary Hearing (ECF No. 622). *See* **Exhibit 1** (10/21/19 – 10/25/19 emails among counsel). The government demurred. Rather than responding to Mr. Lighty's invitation, the government went ahead and filed a proposed schedule that did *not* include further submissions related to Mr. Lighty's Merits Brief; as relevant here, it only included submissions related to his Motion for Evidentiary Hearing. *See* ECF No. 628. Thus, after declining counsel's invitation to file an opposition to Mr. Lighty's Merits Brief and indicating that it was only going to file an opposition to Mr. Lighty's Motion for an Evidentiary Hearing, the government has proceeded to file what is, by its very title, an opposition to the Merits Brief.

Although the government declined Mr. Lighty's invitation to file an opposition to his Merits Brief, Mr. Lighty does not object to the government making arguments in opposition to the Merits Brief in its latest submission. But Mr. Lighty certainly takes issue with the government's suggestion that Mr. Lighty may not respond any further. The government says, "For the most part, there should be no added 'Reply' to its own 'Merits Brief' because the arguments are now fully briefed in three rounds of briefing (Defendants' Amended Motion, Government's Response, Merits Brief)." ECF No. 640 at 1. But there have not, in fact, been "three rounds of briefing." There was an amended petition, which effectively served as a complaint under the Section 2255 Rules. *See* ECF No. 451. There was a responsive pleading, filed after the Court denied Mr. Lighty's requests for discovery. *See* ECF No. 597. There was a Merits Brief, *i.e.*, a memorandum of law with supporting evidence. *See* ECF No. 620. And now there is the government's opposition to the

**INTRODUCTION**

In its Response, the government tacitly acknowledges that Mr. Lighty's Merits Brief raises numerous issues of fact based on new evidence that is outside the trial record. These issues include whether the witnesses who offer such non-record evidence are credible and whether such non-record evidence would have been material to the outcome of the penalty phase or guilt phase of Mr. Lighty's trial. The government blithely contends that the Court can resolve all of these factual issues on the papers alone. Thus, the government argues that the Court should, among other things: (1) fully discount, on the papers alone, the combined impact of new fact and expert evidence about Mr. Lighty's family history, the trauma Mr. Lighty suffered as a child, and the incomplete brain development of 19-year-olds; (2) reject outright the proffered testimony of witnesses who can establish directly or circumstantially that Tony Mathis shot and killed Eric Hayes without ever even hearing that testimony; (3) accept at face value the government's bald assertion about what a case agent purportedly told the government about the extent of star witness Charles Whitley's undisclosed cooperation in other cases; (4) ignore the proffered mitigating evidence regarding the uncharged Newbill homicide; and (5) automatically disbelieve the sworn declarations of trial and appellate counsel that their failures were not "strategic" without entertaining their live testimony.

Tellingly, the government does not cite a single case to support its position. That is because the law for Section 2255 proceedings uniformly cuts the other way. *See* ECF No. 622 at 2-5. Section 2255(b) provides that "unless the motion and the files and the records of the case conclusively show that [Mr. Lighty] is entitled to no relief," the Court *must* hold a hearing. And decisional law is abundantly clear that where, as here, the Court must assess new non-record

---

Merits Brief. *See* ECF No. 640. Mr. Lighty is, therefore, well within his rights to respond to the government's arguments, consistent with what this Court's scheduling orders—which the parties drafted and agreed to—have provided from the very beginning. *See* ECF No. 449.

evidence for its credibility and its materiality to the outcome, "the motion and the files and the records in the case" cannot "conclusively" show that the petitioner must lose. To the contrary, to assess credibility and materiality in Section 2255 proceedings, the Court must see and hear the evidence live. *See, e.g., Massaro v. United States,* 538 U.S. 504-06 (2003) (Section 2255 ineffective assistance claims should be resolved through live evidence); *United States v. White*, 366 F.3d 291, 302 (4th Cir. 2004) ("When, as here, the factual allegations relate[] primarily to purported occurrences outside the courtroom and upon which the record could, therefore, cast no real light, and where the ultimate resolution rests on a credibility determination, an evidentiary hearing is especially warranted"); *United States v. Witherspoon*, 231 F.3d 923 (4th Cir. 2000) (reversing and remanding for an evidentiary hearing where an ineffectiveness claim turned on trial counsel's credibility); *United States v. O'Quinn*, 166 Fed. Appx. 697 (4th Cir. 2006) (same); *United States v. Blondeau*, 480 Fed. Appx. 241 (4th Cir. 2012) (same); *United States v. Barrett*, 797 F.3d 1207 (10th Cir. 2015) (reversing and remanding for an evidentiary hearing on petitioner's claim that his trial counsel was ineffective for failing to investigate and present mitigating evidence of the petitioner's family history and mental health); *Allen v. United States*, No. 4:07CV000027 ERW, 2011 U.S. Dist. LEXIS 49851, at *110 (E.D. Mo. May 10) ("Given that Allen has made the necessary threshold allegations with respect to the deficient performance prong, the Court finds that it would be improper to attempt to conduct the required 'probing and fact-specific' prejudice inquiry without the benefit of an evidentiary hearing … especially given the inability to make credibility determinations."); *Earp v. Ornoski*, 431 F.3d 1158, 1171 (9th Cir. 2005) (requiring evidentiary hearing to make, *inter alia*, a prejudice determination on petitioner's prosecutorial misconduct claim); *Baugh v. Horton*, No. 19-10032, 2020 WL 555242, at *5 (E.D. Mich. Feb. 4) (granting an evidentiary hearing to make materiality determination on *Brady* claim).

None of Mr. Lighty's claims that rely on evidence outside the trial record can be resolved without a hearing. A hearing will permit the Court to judge the credibility of numerous new witnesses and assess whether the new evidence Mr. Lighty offers would have had a probable effect on the jury's sentencing decision or guilty verdict.

## ARGUMENT

I.     **Mr. Lighty Is Entitled to an Evidentiary Hearing on His Claim that Trial Counsel Rendered Ineffective Assistance at the Penalty Phase.**

   **A. Trial counsel unreasonably failed to investigate and present mitigating evidence about Mr. Lighty's background.**

In its Response, ECF No. 640 at 3-5, the government completely ignores the compelling and persuasive evidence from mental health professionals that is set forth in the Merits Brief and that trial counsel unreasonably failed to obtain or present. ECF No. 621 at 66-93, It ignores the undisputed evidence that Mr. Lighty was exposed to chronic psychological trauma, in the form of both neglect and abuse, throughout his childhood and that this exposure had significant adverse effects on his development and his psychological functioning as an adolescent. ECF No. 621-177 (Report of Dr. Victoria Reynolds, Ph.D.) It ignores the undisputed evidence that counsel could have presented the testimony of neuropsychologist Dr. Michael O'Connell, who evaluated Mr. Lighty prior to trial and found that he suffers from learning disabilities and memory impairments as well as symptoms of depression and anxiety. ECF No. 621 at 88-89 (quoting ECF No. 621-178 (Declaration of Julie Brain)). And it ignores the compelling scientific evidence that the brain of a 19 year-old—Mr. Lighty's age at the time of the offense—is not fully developed, functions with deficits in critical thinking and impulse control, and will not fully mature until several years later. ECF No. 621-179 (Declaration of Dr. Lawrence Steinberg, Ph.D.). Coupled with new, related evidence from lay witnesses about Mr. Lighty's childhood and adolescent privations, *see, e.g.,* ECF No. 621-27 (Declaration of George Lighty, Jr.); ECF No. 621-28 (Declaration of Randy

5

Lighty, Sr.),[2] the evidence from these experts is the ***heart*** of the mitigation case that trial counsel failed to investigate or present—and the government simply elides it. Mr. Lighty is entitled to an evidentiary hearing in order to present this evidence and enable the Court to assess the prejudice that he suffered due to trial counsel's failures. ECF No. 622.

Instead of engaging with the heart of the mitigation case presented in the Merits Brief, the government concentrates its attack on a single aspect of the mitigation evidence that trial counsel neglected: a full social history of Mr. Lighty's family. But even that limited attack flounders. The government claims that the type of detailed, multigenerational social history investigation outlined in the Merits Brief is unnecessary, unfair to the community and the victims (a puzzling assertion upon which the government does not elaborate), and comprised of "mind-numbing detail" that is "difficult to get through." ECF No. 640 at 3-4. However, the Court may not assume that Mr. Lighty's jury would have taken such a jaded, cynical and uninformed view of Mr. Lighty's life story. "The assessment of prejudice should proceed on the assumption that the decisionmaker is reasonably, conscientiously, and impartially applying the standards that govern the decision. It should not depend on the idiosyncrasies of the particular decisionmaker, such as unusual propensities toward harshness or leniency." *Strickland v. Washington*, 466 U.S. 668, 695 (1984).

---

[2] *See also* ECF No. 621-14 (Declaration of Gertrude Fears); ECF No. 621-15 (Declaration of Nancy Westfield); ECF No. 621-29 (Declaration of Suzette Ward); ECF No. 621-75 (Declaration of Charmaine Cain); ECF No. 621-80 (Declaration of Donna Kingsbury); ECF No. 621-81 (Declaration of Keisha Hooks); ECF No. 621-85 (Declaration of Gerald Anderson); ECF No. 621-137 (Declaration of Jacqueline Ruth); ECF No. 621-141 (Declaration of Jubarlo Thompson); ECF No. 621-142 (Declaration of Paulette Bentford); ECF No. 621-146 (Declaration of Montoria Freeland); ECF No. 621-165 (Declaration of Jackie Simons McLeod); ECF No. 621-166 (Declaration of William Payton); ECF No. 621-172 (Declaration of Kathy McMullen); ECF No. 621-173 (Declaration of Kirsten Simpkins); ECF No. 621-174 (Declaration of Margot Brown); ECF No. 621-175 (Declaration of Phyllis Joseph).

In fact, investigating a capital defendant's multi-generational social history is a vital part of the constitutionally mandated standard of care for the investigation and presentation of mitigating evidence under prevailing professional norms. Under Guideline 10.7.A. of the American Bar Association's *Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases*, 31 Hofstra L. Rev. 913 (2003) ("ABA Guidelines"), counsel have an obligation to conduct a thorough and independent investigation of issues relating to penalty. This obligation includes the duty to investigate the client's "[f]amily and social history including . . . family history of mental illness, cognitive impairments, substance abuse, or domestic violence." *Id.* Comm. at 1022. *See also* ABA Supplementary Guideline 10.11.B of the *Supplementary Guidelines for the Mitigation Function of Defense Teams in Death Penalty Cases*, 36 Hofstra L. Rev. 677 (2008) ("Supplementary Guidelines") ("The defense team must conduct an ongoing, exhaustive and independent investigation . . . [including into the client's] multi-generational family history, genetic disorders and vulnerabilities, as well as multi-generational patterns of behavior"). This is so because, as in this case, "[a] multi-generational investigation extending as far as possible vertically and horizontally frequently discloses significant patterns of family dysfunction and may help establish or strengthen a diagnosis or underscore the hereditary nature of a particular impairment." ABA Guideline 10.7.A. Comm. at 1025.

As numerous commentators have elaborated, a multi-generational investigation is required because it may produce evidence relevant to a range of different mitigating factors. As suggested by the Commentary to ABA Guideline 10.7.A., a thorough family history investigation will uncover the presence of any medical or mental disorders that have a genetic component. Sean D. O'Brien, *When Life Depends on it: Supplementary Guidelines for the Mitigation Function of Defense Teams in Capital Cases*, 36 Hofstra L. Rev. 693, 724 (2008) ("It has long been recognized

that a competent mitigation investigation has to include the family history going back at least three generations, and must document genetic history, patterns, and effects of familial medical conditions.") (citing Daniel J. Wattendorf & Donald W. Hadley, *Family History: The Three-Generation Pedigree*, 72 Am. Fam. Physician 441, 447 (2005)). A family history of psychiatric illness is highly pertinent to the question of whether the client himself has such a condition. *See* John H. Blume & Pamela Blume Leonard, *Capital Cases: Principles of Developing and Presenting Mental Health Evidence in Criminal Cases*, Champion 63, 64 (November 2000) ("In our experience, it is common to find evidence of mental illness dating back several generations. The investigative net necessarily widens when interviews or documents reveal that earlier generations or members of the larger family have exhibited signs of mental disorder. Continue to expand the investigation exhaustively so long as you find family members who have documented mental health issues.").

A family history of psychiatric illness not only informs whether a client may have a similar diagnosis; it also sheds light on his increased vulnerability to poorer life outcomes when, like Mr. Lighty, he is exposed to trauma. *See* Kathleen Wayland, *The Importance of Recognizing Trauma Throughout Capital Mitigation Investigations and Presentations*, 36 Hofstra L. Rev. 923, 935-36 (2008) (noting that a family history of psychiatric vulnerability is one of three factors most predictive of development of Posttraumatic Stress Disorder following exposure to trauma) (citing Chris Brewin et al., *Meta-Analysis of Risk Factors for Posttraumatic Stress Disorder in Trauma-Exposed Adults*, 68 J. Consulting & Clinical Psychol. 748, 753 (2000) and Emily J. Ozer et al., *Predictors of Posttraumatic Stress Disorder and Symptoms in Adults: A Meta-Analysis*, 129 Psychol. Bull, 52, 68 (2003)).

Another factor that predicts development of Posttraumatic Stress Disorder in response to trauma is the absence of social support, particularly among individuals who have been traumatized in childhood as the result of caregiver abuse or neglect. *Id.* at 939. A parent who is disabled due to the effects of psychological trauma in his or her own life is significantly less able to raise a child in a way that provides adequate support, and so the legacy of trauma can be passed on from generation to generation. ECF No. 621-177 (Report of Dr. Victoria Reynolds, Ph.D.) at ¶ 41 ("The intergenerational transmission of trauma is complex and various in its pathways. The variety of ways in which trauma and its impacts get repeated across generations, however, is a robust and empirically recognized phenomenon in the field of psychological trauma."). So can the experience of domestic violence, substance abuse and lack of financial, educational and occupational opportunity. *Id.* at ¶ 45 ("Without significant intervention and trauma-informed treatment, the impacts of . . . familial and cultural traumas [particularly early deaths, addiction and exposure to violence] are borne not just by those who directly experience them, but by subsequent generations of children and grandchildren.").  And where, as here, the client's cognitive functioning is at issue, a thorough family history investigation can once again produce important corroborating information.  *Id.* at ¶ 44-45 ("Studies show that intergenerational trauma transmission affects not only parenting behavior, but the neurobiology and genetics of subsequent generations of children born to parents with significant histories of trauma[.] . . . Kenny's life trajectory cannot be fully understood without placing his development within generations of family trauma and dysfunction, particularly as a result of early deaths, addiction and exposure to violence.").

The courts have not been slow to recognize the relevance and importance of multi-generational family history investigation for adequately developing an effective case in mitigation. For example, in *Johnson v. Bagley*, 544 F.3d 592, 605 (6th Cir. 2008), the Sixth Circuit found that

trial counsel rendered ineffective assistance at the penalty phase of the defendant's trial in part because "if the attorneys had conducted a competent investigation and given [their mental health expert] a more complete picture of Johnson's background . . . [the expert] could have described the cycles of generational abusive and neglectful parenting that repeat the same behaviors and lead to the same outcomes." (internal citations and alterations omitted). Two years earlier, the same court reached a similar conclusion, relying in part on expert testimony adduced in post-conviction proceedings that the defendant was "the product of four generations of alcoholism and physical abuse and emotional abuse." *Poindexter v. Mitchell*, 454 F.3d 564, 579 (6th Cir. 2006).

As far back as 1997, the Ninth Circuit reversed a death sentence where trial counsel failed to present evidence including that the defendant "was born into a family plagued by generations of mental illness and domestic abuse. Both of Bloom's grandfathers physically abused their wives and Bloom, Sr. was subject to physical abuse from his father. Bloom's paternal grandfather was hospitalized for episodes described as nervous breakdowns." *Bloom v. Calderon*, 132 F.3d 1267, 1273 (9th Cir. 1997). And in 2018, the Eighth Circuit affirmed on procedural grounds the district court's grant of sentencing relief based on ineffective assistance at the penalty phase. *See Barnett v. Roper*, 904 F.3d 623, 627 (8th Cir. 2018). The lower court's ruling was based in part on trial counsel's failure to investigate and present evidence regarding "Barnett's biological mother, her family, and the environmental and genetic factors that affected his development." *Id.* The state did not appeal the merits of that ruling. *Id.* at 627.

In this case, a minimally adequate multi-generational social history investigation would have revealed an abundance of evidence that would have supported and corroborated the testimony of a psychological trauma expert such as Dr. Victoria Reynolds; would have supported and reinforced the evidence of neuropsychological impairment revealed by Dr. O'Connell's

10

evaluation; would have corroborated the testimony of lay witnesses; and would have humanized and contextualized the experiences of both the lay witnesses and Mr. Lighty himself. Yet trial counsel failed to conduct that investigation.

Without reference to a single piece of evidence, the government avers that trial counsel's thin, uncompelling and at times affirmatively damaging mitigation presentation was in fact "streamlined and strategic." ECF No. 640 at 4. That naked assertion does not withstand even mild scrutiny. First, it is impossible for counsel in a capital case to make a strategic decision not to present evidence that he does not know exists. "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003); *Andrus v. Texas*, 590 U.S. ___, No. 18-9674, Slip op. at 8 (June 15, 2020) (per curiam) ("Counsel in a death penalty case has 'a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary'") (quoting *Wiggins*, 539 U.S. at 521).

As demonstrated in the Merits Brief, and as will be proven at the required evidentiary hearing, trial counsel never uncovered a fraction of the evidence that Mr. Lighty has presented here. The reason for that result was neglect and inattention fueled by counsel's unreasonable assessment of the necessity and urgency of a thorough mitigation investigation; it was by no means the product of a valid strategic decision to terminate the investigation. Along with his Merits Brief, Mr. Lighty submitted the Declaration of Jeffrey O'Toole, his lead trial attorney. ECF No. 621-3 (Declaration of Jeffrey B. O'Toole). The Declaration addresses a number of specific topics and also provides general information regarding Mr. O'Toole's previous capital experience, his approach to Mr. Lighty's case and his professional and personal commitments during the life of the case. *Id*. In particular, Mr. O'Toole explains a number of reasons why the mitigation

investigation was delayed, truncated and inadequate, including the fact that the circumstances of the case and discussions with colleagues and government counsel led him to seriously underestimate the likelihood that Mr. Lighty would actually face the death penalty until long after his initial appointment. ECF No. 621 at 18-19; ECF 621-3 (Declaration of Jeffrey B. O'Toole) at ¶ 3 (underestimating the possibility that this case would be authorized as a capital case and, even after it was, that Mr. Lighty faced a serious risk of receiving a death sentence), ¶ 6 (overlooking the importance of Mr. Lighty's youth to the case in mitigation), ¶ 7 (overlooking the availability of expert testimony regarding the continuing development of a 19-year old's brain).

The government contends that Mr. O'Toole's admissions are "ridiculous" and "simply cannot be credited." ECF No. 640 at 3. To the contrary, Mr. O'Toole's admissions are amply supported by the record. He did not engage co-counsel until over five months after his appointment to the case, despite the fact that Mr. Lighty had a statutory right to the appointment of two attorneys to prepare his case from the outset. See 18 U.S.C. § 3005. Mr. O'Toole failed to retain a mitigation specialist to begin the constitutionally required investigation into Mr. Lighty's background and social history until October 25, 2004, a full year after he had begun representing Mr. Lighty and after the Attorney General had already decided to authorize the government to seek the death penalty. ECF No. 621 at 18-19. Thus, Mr. O'Toole had no mitigating evidence assembled to present to the Attorney General during the authorization process to try to dissuade him from seeking death, as is customary in federal capital prosecutions, and made no attempt to influence the decision. And, even after she was eventually appointed, the mitigation specialist conducted virtually no work on the case until less than seven months before trial. *Id*. This dereliction of duty is entirely consistent with a reasonably experienced capital defense attorney who unreasonably concluded that Mr. Lighty's life was in no danger and who relied upon that mistaken assumption

until it was too late to conduct an adequate mitigation investigation. Mr. O'Toole's admission is far from "ridiculous."

Moreover, presenting "'a succession of witnesses . . . whose principal purpose was to state that they loved Mr. Lighty and intended to remain in contact with him'" might not be "a constitutionally infirm representation,'" as the government asserts, ECF No. 640 at 4-5, if, after a thorough investigation, that is all counsel has available to him. However, if counsel misses compelling evidence that was available to him by the exercise of reasonable diligence, he renders ineffective assistance no matter what he presents. *See, e.g., Sears v. Upton*, 561 U.S. 945, 946 (2010) (reversing denial of ineffective assistance claim where "counsel did present *some* mitigation evidence during Sears' penalty phase—but not the significant mitigation evidence a constitutionally adequate investigation would have uncovered," noting "that a theory might be reasonable, in the abstract, does not obviate the need to analyze whether counsel's failure to conduct an adequate mitigation investigation before arriving at this particular theory prejudiced" defendant) (emphasis in original); *Rompilla v. Beard*, 545 U.S. 374 (2005) (finding ineffective assistance where, although counsel interviewed defendant and his family members, consulted with three mental health experts and presented five witnesses, counsel failed to obtain file on defendant's prior conviction that contained significant mitigating evidence never uncovered); *see also Johnson v. Bagley*, 544 F.3d 592, 602 (6th Cir. 2008) ("[A]n unreasonably truncated mitigation investigation is not cured simply because some steps were taken prior to the penalty-phase hearing and because some evidence was placed before the jury."); *Walbey v. Quarterman*, 309 Fed. Appx. 795, 802 (5th Cir. 2009) (per curiam) ("*Williams* [*v. Taylor*, 529 U.S. 362 (2000)] thus stands for the proposition that counsel can be prejudicially ineffective even if some of the available mitigation evidence is presented and even if there is psychiatric testimony."). The

13

benchmark for a constitutionally adequate investigation and presentation of mitigating evidence is whether counsel uncovered and presented the most compelling evidence reasonably available to them to persuade the jurors to impose a sentence of less than death. In Mr. Lighty's case, trial counsel manifestly did not.

As with the government's unsupported position that the Court should reject all of the new, non-record mitigation evidence presented in the Merits Brief, the government's position that the Court should discredit Mr. O'Toole's sworn representations requires a hearing to determine his credibility. As the case law uniformly provides, the Court cannot do this, and thus cannot adjudicate Mr. Lighty's claim of ineffectiveness at the penalty phase, on the paper record alone. *See* Introduction, *supra* (citing, inter alia, *White*, 366 F.3d 291, 302 (4th Cir. 2004) ("When, as here, the factual allegations relate[] primarily to purported occurrences outside the courtroom and upon which the record could, therefore, cast no real light, and where the ultimate resolution rests on a credibility determination, an evidentiary hearing is especially warranted")).

### B. Trial counsel unreasonably failed to adequately investigate and present evidence that Tony Mathis—not Mr. Lighty—shot and killed Eric Hayes.

As explained in Mr. Lighty's Merits Brief, the entire basis for the government's quest for the death penalty for Mr. Lighty, and not for any of his co-defendants, was its theory that Mr. Lighty shot and killed Eric Hayes. ECF No. 621 at 96-97 (citing, *e.g.*, 11/1/05 Tr. 106-07 (Gov't penalty phase opening)). As a result, one of trial counsel's central arguments during the penalty phase was that Tony Mathis, not Mr. Lighty, was responsible for shooting and killing Mr. Hayes. *Id.* at 97-98 (citing, *e.g.*, 11/1/05 Tr. 118-19 (defense penalty phase opening); 11/8/05 Tr. 89-94, 103 (defense penalty phase closing)). But trial counsel's penalty phase presentation in support of that argument was unreasonably and prejudicially inadequate. *Id.* at 97-99, 114-17. There was

14

considerable evidence establishing Mathis' culpability that defense counsel either failed to investigate or failed to bring to the jury's attention. *Id.* at 96-117.

In its Response, the government contends that *all* of this extensive, mutually corroborating evidence showing that Mathis shot and killed Mr. Hayes is patently incredible and, accordingly, does not warrant a hearing. ECF No. 640 at 5-13. In support of this contention, the government recites a long list of "key undisputed facts." *Id.* at 5-8. There are several glaring flaws in this approach. For one thing, several facts the government lists are not undisputed.[3] Moreover, apart from the contested testimony of Charles Whitley and Ebony Miller, none of the government's facts, disputed or not, establishes that Mr. Lighty shot Mr. Hayes, even though that is the fact that all the evidence set forth in the Merits Brief squarely places in dispute. Most importantly, without citing any contrary authority, the government completely ignores the Supreme Court and Fourth Circuit precedent cited above, which require an evidentiary hearing in a Section 2255 proceeding when the petitioner presents new, non-record evidence that requires determinations regarding witness credibility and materiality.

*Mathis' separate confessions to Holder, Mitchell and Taylor.* The government first asserts that the Court should summarily reject the sworn declarations of three new witnesses—Ovidra Holder, Urenzo Mitchell, and Darrien Taylor—to whom Mathis confessed the shooting of Mr. Hayes. ECF No. 640 at 9-11. But a Section 2255 court is prohibited from making credibility determinations about such witnesses based on the papers alone. Instead, it must give the petitioner a chance to present the new witnesses' testimony in open court at an evidentiary hearing. *Massaro*, 538 U.S. at 506; *Blondeau*, 480 Fed. Appx. at 242. Indeed, in a federal case, unlike in a state case

---

[3] For example, the government's claim that "Lighty forced Hayes into the trunk of the Lincoln" is not "undisputed." ECF No. 640 at 6.

on federal habeas corpus review, a Section 2255 hearing is the *only* chance a convicted prisoner has to present such evidence.

The government weakly counters that the Court need not hear from Holder, Mitchell or Taylor because, on Mr. Lighty's motion for new trial, the Court, affirmed by the Fourth Circuit, previously rejected the testimony of JM, another witness who implicated Mathis (2/23/09 Tr. 84), and also rejected the testimony of an investigator to whom Whitley had implicated Mathis and recanted his trial testimony inculpating Mr. Lighty (2/23/09 Tr. 35-46). ECF No. 640 at 9-10. This argument is self-evidently specious. JM and Whitley (through the investigator) were different witnesses with different accounts than the accounts of Holder, Mitchell and Taylor. What's more, the Court's treatment of JM's account and Whitley's recantation actually undermines the government's argument, because the Court heard live testimony from both JM and the investigator before it determined that JM and Whitley's recantation lacked credibility.

The government also argues that the Court can summarily reject the accounts of Holder, Mitchell and Taylor because they are inadmissible. This argument is equally meritless.

The government first suggests these accounts fail to meet the standard for admission of "recantation" evidence. ECF No. 640 at 9. But these accounts are not recantations. None of these witnesses testified at trial, so none of them is "recanting" anything.

The government next contends the accounts are inadmissible hearsay. *Id.* at 11. But the hearsay rules do not apply during the penalty phase of a capital trial—under both the federal death penalty statute and the Constitution—so even if Mathis' confessions to each of the three witnesses were hearsay, they would have been admitted. *See* 18 U.S.C. § 3593(c) ("Information is admissible regardless of its admissibility under the rules governing admission of evidence at criminal trials except that information may be excluded if its probative value is outweighed by the danger of

16

creating unfair prejudice, confusing the issues, or misleading the jury."); *Green v. Georgia*, 442 U.S. 95 (1979) (per curiam) (vacating death sentence because the trial court's exclusion, as hearsay, of a third party's confession to the murder during the sentencing phase of a capital trial violated due process); *Chambers v. Mississippi*, 410 U.S. 284, 298-303 (1973) (reversing conviction because of exclusion of third party's confessions under hearsay rules); *Cudjo v. Ayers*, 698 F.3d 752 (9th Cir. 2012) (granting habeas relief under § 2254 because the trial court had excluded, during the guilt phase, the testimony of a third-party witness to whom the petitioner's brother had confessed); *Chaney v. Brown*, 730 F.2d 1334, 1351-53 (10th Cir. 1984) (vacating petitioner's death sentence after finding a *Brady* violation and holding that the withheld FBI reports, which "support[ed] inferences that . . . [the petitioner] may not have personally killed the victims," would have been admissible during the penalty phase "under constitutional requirements[.]"); *State v. Barts*, 362 S.E.2d 235, 240-41(N.C. 1987) (vacating death sentence where the court excluded as hearsay during the sentencing phase a third party's statement that the defendant's cousin had confessed to the murder and provided a detailed account of his involvement); *State v. Phillips*, 940 S.W.2d 512, 517-18 (Mo. 1997) (en banc) (vacating death sentence where the state had withheld, in violation of *Brady*, a statement from a third party that the defendant's son had told him that he and the defendant had killed the victim together, but that he, not the defendant, had disposed of the body, and finding that although the statement would have been hearsay, it would have been admissible during the sentencing phase as a matter of due process); *cf. Sears*, 561 U.S. at 951 ("[T]he fact that some of such [unpresented mitigation]

17

evidence may have been 'hearsay' does not necessarily undermine its value—or its admissibility—for penalty phase purposes.").[4]

Because Mr. Lighty's claim of ineffectiveness at the penalty phase partly turns on the credibility of Holder, Mitchell and Taylor, the Court may not reject their testimony without hearing from them or without hearing from trial counsel regarding their failure to investigate and present that evidence. *Blondeau*, 480 Fed. Appx. at 242.

*Tamika Hampton's testimony inculpating Mathis.* The government next argues that the Court may summarily reject Tamika Hampton's damning testimony about Mathis. But the government mischaracterizes one key fact to which Hampton would testify and ignores all the others.

First, the government contends the Court knew Hampton would testify that, within weeks of Mr. Hayes' murder, she saw Mathis with a gun that resembled the gun the government claimed was the murder weapon. ECF No. 640 at 11. But that is not what the government told the Court when it objected to the admission of Hampton's testimony. Instead, the government twice told the Court that Hampton only saw Mathis with the gun prior to the birth of their child and thus should exclude Hampton's observations about the gun as too remote. 10/19/05 Tr. 7 ("Her recollection

_____

[4] In any event, Mathis' confessions would have been admissible as statements against penal interest under Federal Rule of Evidence 804(b)(3). That rule provides that a hearsay statement is admissible if: (1) it is provided by an unavailable declarant; (2) it would have exposed the declarant to civil or criminal liability; and (3) its trustworthiness (as opposed to the credibility of the declarant) is "supported by corroborating circumstances." *United States v. Dargan*, 738 F.3d 643, 649 (4th Cir. 2013); *Fenn v. United States*, 175 F. Supp. 3d 602, 611-12 (E.D. Va. 2016). Here, for each proffered confession, the first two criteria are easily satisfied; the third is satisfied because, under the six-factor test used in the Fourth Circuit, *see United States v. Bumpass*, 60 F.3d 1099, 1102 (4th Cir. 1995), Mathis made the same confession repeatedly to confidants under trustworthy circumstances, *see Chambers*, 410 U.S. at 300-01, or alternatively, inasmuch as the Court is required to assume that the witnesses are telling the truth, the Court first must hear from them before determining whether the statements are trustworthy. *Fenn*, 175 F. Supp. 3d at 611-12.

concerning Mr. Mathis, having seen him with a gun again, it's prior to the birth of the child, December 21st of 2001."); 10/19/05 Tr. 14 ("But more importantly she said that it was sometime before the birth of her child, which happened on December 21st of 2001."). As Mr. Lighty explains in the Merits Brief, trial counsel knew or should have known that the government's representations were not true: Hampton told the grand jury she had seen Mathis with the gun both before and after their daughter was born. ECF No. 621 at 104-06.

Moreover, Hampton's statement that she saw Mathis with a gun resembling the murder weapon was only a small fraction of the favorable testimony she would have provided. ECF No. 621 at 107-11. Notably, the government does not acknowledge, much less address, any of the additional facts Hampton would have told the jury about Mathis. As explained in the Merits Brief, Hampton would have testified, among other things, that Mathis was violent; that he had harmed and even killed several people; that he was friends with Mr. Lighty's co-defendants but not with Mr. Lighty; and that he routinely wore clothing that matched what Antoine Forrest said Mr. Hayes' assailant wore, and what Latasha Massey said Mathis wore, on the night of Mr. Hayes' murder. *Id.* The government's silence on all of these facts is a tacit admission that the Court must hear from Hampton before determining both her credibility and the materiality of her testimony, and must also hear from trial counsel regarding their failure to obtain Hampton's testimony.

*Bobby Arnold's testimony about Lorenzo Wilson's confession.* The same is true for the proffered testimony of Bobby Arnold, who has averred that his friend, Lorenzo Wilson, Mr. Lighty's co-defendant, made a statement to him that was consistent with the statement Wilson made to the FBI, which was introduced at the penalty phase. ECF No. 621 at 111-12. The government nakedly asserts that trial counsel's decision not to call Arnold was "clearly a strategic

call."[5] ECF No. 640 at 11. In fact, Mr. O'Toole swears that he "cannot explain why we failed to call Bobby Arnold at the penalty phase." ECF No. 621-3 (Declaration of Jeffrey B. O'Toole) at ¶ 8. The Court may not decide whether Mr. O'Toole made a strategic decision not to call Arnold without hearing from him. *United States v. Alexander*, 655 Fed. Appx. 392, 394 (6th Cir. 2016) (declining to decide a defendant's ineffective assistance of counsel claim on direct appeal because, "[w]ithout an evidentiary hearing, we have 'no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive or was taken because the counsel's alternatives were even worse.'") (quoting *Massaro*, 538 U.S. at 505).

*William Welch's excluded testimony about a different gun.* The government also disputes that the expert testimony trial counsel was barred from eliciting from William Welch due to their failure to timely disclose it would have corroborated the other evidence implicating Mathis as the shooter. ECF No. 640 at 12-13. While the government reiterates its theory that Mr. Lighty shot Mr. Hayes three times with the same gun, it says nothing about the salience of the excluded testimony regarding Welch's physical testing of the lead alloy bullet fired into the back of Mr. Hayes' head, which would have established conclusively that that bullet could not have been fired from the same gun as the other two bullets. ECF No. 621 at 113. And although the government says that Michael Davis' testimony counters the conclusion, supported by Welch, that Mathis shot Mr. Hayes on Keating Street, Davis' testimony actually *supports* that conclusion. Davis testified unequivocally that he heard two shots, not three, meaning that the third bullet recovered from Mr.

---

[5] As support for this assertion, the government argues that Arnold's testimony "would likely have flopped[]" because "according to Arnold, Wilson said Flood shot the victim 'in the woods,'" and "[t]here is no evidence of a 'woods' shooting." ECF No. 640 at 11. The government is wrong: Mr. Hayes' body was, in fact, recovered from a wooded area. *See, e.g.,* 10/20/05 Tr. 26 (Gov't closing) (discussing the shell casings that were found near Mr. Hayes' body on Hillcrest Parkway and telling the jury, "The woods were very dense that night").

Hayes had to have been fired both elsewhere and beforehand, 9/30/05 Tr. 19-20, 44—a conclusion bolstered further by the evidence that only two shell casings (not three), both matching the other bullets recovered from Mr. Hayes, were found near Mr. Hayes' body on Hillcrest Parkway. *Id.* at 78-81; 10/12/05 Tr. 134-45; 10/20/05 Tr. 24, 26 (Gov't closing).

Trial counsel's failure to properly notify the government of Welch's key excluded testimony regarding his physical testing of the ballistics evidence was objectively unreasonable and constitutionally deficient. The Court must hear from trial counsel regarding their failure to properly notify the government.

*Cumulative effect.* Finally, the government completely ignores the cumulative prejudicial effect of trial counsel's unreasonable failures to obtain and present the foregoing, mutually corroborating evidence demonstrating that Mathis shot Mr. Hayes. ECF No. 621 at 115-16. The Court is obligated to consider such cumulative effect. *Id.* at 190-92 (citing authority). And the only way to do so is to conduct a hearing to assess the credibility and materiality of all the evidence inculpating Mathis that trial counsel neglected. *Detrich v. Ryan*, 740 F.3d 1237, 1246-47 (9th Cir. 2013) ("To determine prejudice, it is often necessary to authorize discovery and conduct an evidentiary hearing to assess the effect of the attorney's deficient performance."); *United States v. Early*, No. 7:08CR00041-03, 2012 U.S. Dist. LEXIS 43841, at *4 (W.D. Va. March 29) (granting an evidentiary hearing and recognizing that "the conduct of such hearing will provide a more complete record upon which the court can evaluate the prejudice prong").

### C. Trial counsel unreasonably failed to object to repeated prosecutorial misconduct in the government's closing arguments at the penalty phase.

Mr. Lighty has detailed the numerous instances of improper argument made by the government during the penalty phase closings to which trial counsel unreasonably and prejudicially failed to object, in violation of Mr. Lighty's constitutional rights. ECF No. 621 at

21

117-143. The government opens its response to this aspect of Mr. Lighty's penalty phase ineffectiveness claim by quoting from the opinion of the Fourth Circuit in *United States v. Runyon*, 707 F.3d 475 (4th Cir. 2013). However, the quoted language actually *supports* Mr. Lighty's point that, while there is a great range and scope of permissible closing argument available to the government, "there are some lines that prosecutors may not cross" and "courts should not hesitate to condemn those prosecutorial comments that truly offend constitutional norms." ECF No. 640 at 14 (quoting *Runyon*, 707 F.3d at 507).[6] Each of the instances of misconduct discussed in the Merits Brief crosses a line that prosecutors may not cross, and none can be dismissed as "'minor infelicities'" that courts may overlook and condone. ECF No. 640 at 14 (quoting *United States v. Johnson*. 587 F.3d 625, 632-33 (4th Cir. 2009)).

The government then avers that Mr. Lighty has failed to cite case law holding that arguments demanding a nexus between particular mitigating evidence and the crime of conviction are improper. *Id.* Perhaps because such arguments are so obviously unconstitutional, habeas counsel have uncovered only a limited number of opinions in cases in which they were made. Nevertheless, in his Merits Brief, Mr. Lighty cited well-established Supreme Court precedent for the proposition that such arguments are clear misstatements of Eighth Amendment law. ECF No. 621 at 121-22. The Merits Brief went on to discuss five opinions from a variety of jurisdictions holding that arguments urging the jury to disregard mitigating evidence that lacks a direct nexus to the crime are improper and violate Eighth Amendment. *Id.* at 122-29.

There is also, of course, abundant authority for the more general proposition that prosecutors may not urge the jury to ignore any legitimate mitigating factor. *See, e.g., United*

---

[6] The government also quotes from *Runyon*, 707 F.3d at 492. ECF No. 640 at 13. However, the language quoted there addresses the defendant's arguments regarding the scope of admissible aggravating evidence and has nothing to do with closing argument. *Id.* at 491-92.

*States v. Rodriguez*, 581 F.3d 775, 800-801 (8th Cir. 2009) ("A prosecutor errs by directing the jury to ignore a proposed mitigating factor."); *Sinesterra v. United States*, 600 F.3d 900, 909 (8th Cir. 2010) ("To ensure the reliability of  the determination that death was the appropriate punishment, a prosecutor may not argue that [meaningful] consideration [of potentially relevant mitigating evidence] is forbidden") (citation omitted); *DePew v. Anderson*, 311 F.3d 742, 749 (6th Cir. 2002) (granting habeas relief and ordering resentencing from state death sentence, where prosecution's inadmissible, inflammatory, and misleading comments "were designed to keep the jury from properly considering and weighing the mitigating evidence offered by the defendant"); *Pierce v. Thaler*, 604 F.3d 197, 211 (5th Cir. 2010) ("By essentially instructing the venire members that 'youth isn't relevant,' the [prosecutor's] comments may have undermined the jury's ability to give mitigating effect to evidence of [defendant's] youth"); *Ferrell v. State*, 29 So. 3d 959, 987 (Fla. 2010) (affirming reversal of death sentence based, in part, upon conclusion that prosecutor erroneously and, therefore, improperly argued that age mitigating factor could only apply to someone younger than defendant).

The government denies violating this principle, claiming that it only argued the "significance of the purported mitigation," which it says was "not mitigating." ECF No. 640 at 14. The record, however, shows the truth. After dismissing Mr. Lighty's case in mitigation for lack of a direct connection to the crime—twice in its initial closing argument and three more times in rebuttal, ECF No. 621 at 118-21—the government delivered the coup de grâce:

> That's what the [defense mitigation] comes down to. Feel sorry for him because he had some rough times in his childhood. Not that it had anything to do with why he acted that way on January 3rd, 2002, but to feel sympathy, **which the law prohibits you from doing**, whether its sympathy for Mr. Lighty or sympathy for the Hayes family.

11/8/05 Tr. at 130-31 (emphasis added). Is it reasonably likely that, based on all of these arguments, the jury felt that it was precluded from considering Mr. Lighty's mitigating evidence? Yes, unquestionably, for the reasons set forth in the Merits Brief. ECF No. 621 at 124-29. It follows that trial counsel's failure to object to these repeated improprieties constituted ineffective assistance.

The government's contention that the jury simply "did not consider [Mr. Lighty's] background to be particularly 'mitigating,'" ECF 640 at 14, is also belied by the record. The verdict form shows that the jury identified three mitigating factors: All life has value; the effect of a death sentence on Mr. Lighty's grandmother; and poor defense. ECF No. 621 at 129. The jury certainly did not consider those factors to be "particularly mitigating," as they sentenced Mr. Lighty to death in spite of them. With respect to every single one of Mr. Lighty's other mitigating factors, however, not even one juror found that they existed. They completely disregarded those factors, just as the government told them they were required by law to do. The Eighth Amendment cannot tolerate this result.

The government's remaining arguments are similarly unavailing. The cases it cites for the proposition that it did not engage in misconduct are irrelevant. ECF No. 640 at 15-16 (citing *Jackson v. United States*, 638 F. Supp. 2d 514 (W.D.N.C. 2009), *United States v. Oken*, 220 F.3d 269, 270 (4th Cir. 2000), and *Drew v. Collins*, 964 F.2d 411, 419 (5th Cir. 1992)). All three cases involve the government's use of pejorative labels to describe the defendant. Mr. Lighty is not making anything like that kind of argument here.

The government's claim that each of the improper arguments cited by Mr. Lighty "were supported by the evidence," ECF No. 640 at 16, is also incorrect. For instance, while it is the case that there was evidence introduced "that the victim was transported in a trunk alive" before he was

killed, *id.*, there was no evidence whatsoever of what he was thinking during that period; the government's imagined soliloquy regarding his thoughts was baseless speculation, not to mention an improper appeal to the jury to put themselves in the victim's shoes and imagine how he might have been suffering. *See* ECF No. 621 at 131-34.

Similarly, while there was evidence presented regarding "the heavy weight the victim's family felt because of the crime," ECF No. 640 at 16, there was none regarding the sentence they wished the jury to impose on Mr. Lighty. ECF No. 621 at 129-31. And, of course, the government's repeated misstatements of the law, violations of Mr. Lighty's Sixth and Eighth Amendment rights to go to trial and present mitigation, improper and speculative references to Mr. Lighty's life in prison, and attempts to inflame the emotions of the jury were not "supported by the evidence," nor would they have been permissible had they been so. *See* ECF No. 621 at 129-140.

Finally, the government's argument that the Fourth Circuit has already "reviewed the entirety of the government's closing argument during direct appeal," ECF No. 640 at 16, is manifestly incorrect. Appellate courts review and decide the claims that the parties ask them to review and decide; they do not consider claims *sua sponte.* Except for the government's unconstitutional argument that the Hayes family wanted the death penalty, none of the improprieties cited in the Merits Brief were raised on direct appeal because trial counsel did not object to them and thus failed to preserve the claims.

### D. Trial counsel unreasonably failed to investigate and present considerable available evidence to mitigate the impact of the Newbill homicide.

For the most part, the government ignores the facts that would have mitigated the prejudicial impact of the government's penalty phase presentation of the Afton Street shooting. Instead, the government simply reiterates its position that Mr. Lighty was involved in the incident. ECF No. 640 at 17. That misses the point. The facts Mr. Lighty identifies in the Merits Brief would

have shown that the government's portrayal of the incident, which was intended to depict Mr. Lighty as a super predator willing to kill over a mere insult, was demonstrably false and unfairly prejudicial. Because this portrayal was central to the government's case for death, any reasonable trial counsel would have investigated and presented evidence to mitigate its impact. ECF No. 621 at 156-57 (collecting cases); *see also Andrus*, 590 U.S. ___, No. 18-9674, Slip op. at 9 ("[C]ounsel failed adequately to investigate the State's aggravating evidence, thereby forgoing critical opportunities to rebut the case in aggravation.").

The government does attempt to refute two facts on which Mr. Lighty relies. But even that limited effort falls short. First, the government argues that Mr. Lighty does not cite any evidence in support of his contention that Marlon Hines did not see anyone with guns during the argument between Lorenzo Wilson and Antonio Johnson the day before the Afton Street incident. *Id.* at 17. To the contrary, Mr. Lighty cites testimony from Hines himself. Hines was asked whether the individuals who were arguing were "doing anything with their hands," and he answered, "Not really, just kind of like, 'Naw, naw, naw,' you know, not really like—kind of like cutting a person off or whatever[.]" ECF No. 621 at 147. Hines said nothing about wielding guns.

Second, the government argues that the fact that shots were fired at Mr. Lighty on Afton Street is not mitigating. ECF No. 640 at 17. But that fact, especially together with the other facts trial counsel failed to discover, would have shown that the government's narrative was false: the incident was not a one-sided drive-by shooting spurred by a verbal slight; rather, it was preceded by Johnson shooting at Mr. Lighty and his friends the night before and was the culmination of an ongoing feud between two groups.

A hearing is required on the new evidence of the Afton Street incident, which trial counsel failed to investigate and present. Without a hearing, the Court will be incapable of making the

required determinations of both the prejudicial impact of trial counsel's failures and the veracity of trial counsel's representations about them. *Detrich*, 740 F.3d at 1246-47; *Early*, 2012 U.S. Dist. LEXIS 43841, at *4.

## II.   Mr. Lighty Is Entitled to an Evidentiary Hearing on His Claim That Trial Counsel Rendered Ineffective Assistance at the Guilt Phase.

Mr. Lighty alleges that several of trial counsel's guilt phase failures that turn on new, non-record evidence spilled over to the penalty phase and resulted in ineffective assistance during that phase, as well. These include the failure to investigate and present evidence regarding Mathis, the failure to investigate and present evidence of the Afton Street shooting, and the failure to call Anthony Leftwich to rebut the testimony of Ebony Miller. ECF No. 621 at 96-117 (Claim I.B.), 143-58 (Claim I.D.), 166-67 (Claim I.E.2.). Because each of these failures requires an evidentiary hearing on Mr. Lighty's penalty phase ineffectiveness claim, they naturally require a hearing on Mr. Lighty's guilt phase ineffectiveness claim for the same reasons. *Id.* at 198-99, 202, 207-08. The new, non-record evidence that will be presented regarding such failures, coupled with the record-based evidence of trial counsel's other guilt phase failures, will show that the cumulative effect of all of trial counsel's guilt phase failures resulted in prejudice to Mr. Lighty during the guilt phase. *Id.* at 219-20.

## III.   Mr. Lighty Is Entitled to an Evidentiary Hearing on His Claim That Appellate Counsel Rendered Ineffective Assistance on Direct Appeal.

The government argues that this Court has already ruled on Mr. Lighty's jury selection claims and that he has simply "re-formatt[ed]" those claims as claims of ineffective assistance of appellate counsel. ECF No. 640 at 23. That is not true. This Court's previous opinion (ECF No. 538), which the government cites, addressed Mr. Lighty's claim that trial and appellate counsel were ineffective for failing to make *J.E.B.*/*Batson* claims. Mr. Lighty's claims of ineffective

assistance of appellate counsel presently before this Court are entirely distinct. They do not allege *J.E.B./Batson* violations. Rather, they allege that appellate counsel was ineffective for failing to argue that the Court seated a juror who was not qualified to serve because of his clear predisposition in favor of the death penalty, failed to remove two jurors who were qualified to serve because they were not irretrievably opposed to the death penalty, and improperly instructed one seated juror about the availability of appeals to Mr. Lighty. ECF No. 621 at 221-54.

Mr. Lighty has raised a viable, previously unaddressed claim that he received ineffective assistance on direct appeal because appellate counsel failed to make these arguments. That claim is supported by appellate counsel's sworn representation that his failure to raise these arguments was not strategic. ECF No. 621-208 (Declaration of Donald P. Salzman) at ¶ 7. This Court must hold an evidentiary hearing to receive testimony from appellate counsel regarding that representation. *Alexander*, 655 Fed. Appx. at 394 ("Without an evidentiary hearing, we have 'no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive or was taken because the counsel's alternatives were even worse.'") (quoting *Massaro*, 538 U.S. at 505).

**IV.     Mr. Lighty Is Entitled to an Evidentiary Hearing on His Claim That the Government Engaged in Prosecutorial Misconduct.**

*Brady claim for suppression of Whitley's cooperation history.* As explained in the Motion for Evidentiary Hearing, Mr. Lighty is entitled to a hearing to prove his claim that the government engaged in prosecutorial misconduct by withholding evidence of Charles Whitley's history of cooperation with law enforcement. ECF No. 622 at 8. The government responds with wholly untested assertions from Detective Chaney, unsupported by even an affidavit, that Whitley's cooperation in other matters was limited to his assistance in this case. ECF No. 640 at 24. However, that assertion is directly contradicted by the plain language of the probable cause affidavit in which

Detective Chaney revealed Mr. Whitley's history of cooperation. To reiterate, in that affidavit, submitted in the Afton Street shooting case, Detective Chaney said Whitley "previously provided detailed information regarding other ***crimes*** of violence and narcotics trafficking." ECF No. 621-199 at 2 (emphasis added). Detective Chaney referred to "other ***crimes*** of violence"—plural—not just one other crime of violence, as the government suggests. Detective Chaney also referred to "***narcotics trafficking***," which this case does not involve. So, either the government is misrepresenting and understating Whitley's history of cooperation in its Response, or Detective Chaney was misrepresenting and overstating Whitley's history of cooperation in his sworn affidavit to a judicial officer in Prince George's County.

This unresolved contradiction only underscores the need for an evidentiary hearing. Mr. Lighty is entitled to receive any files Detective Chaney, Prince George's County or the government has reflecting Whitley's cooperation in other cases, to question him on the contents of those files, and test his recollections. In the absence of a hearing, it is simply impossible for the Court to conclusively determine whether, in light of Detective Chaney's June 20, 2003 probable cause affidavit, information about Whitley's history of cooperation meets *Brady*'s requirements—that is, whether it was suppressed, favorable to Mr. Lighty, and material. ECF No. 621 at 256-59 (citing cases); *Juniper v. Zook*, 876 F.3d 551, 573 (4th Cir. 2017) ("[I]n light of the conflicting and unresolved facts bearing on the materiality of the Roberts materials—the district court should not have disposed of [a § 2254] Petitioner's *Brady* claim without holding an evidentiary hearing").

That said, two things are for certain. First, the government has effectively conceded the accuracy of trial counsel's sworn representation that the government never turned over Detective Chaney's affidavit or any other information regarding Whitley's history of cooperation. ECF No. 621-3 (Declaration of Jeffrey B. O'Toole) at ¶ 10. In its opposition, the government asserts that it

29

may have disclosed the affidavit to trial counsel and that, if so, it would supplement its brief with that information. ECF No. 640 at 25. Because the government has not supplemented its brief, it is now clear that the government suppressed the evidence.

Second, there is no question that, if Whitley's history of cooperation extends beyond this case, as the plain text of his affidavit shows, then the evidence the government suppressed satisfies *Brady*'s favorability requirement. In the Merits Brief, Mr. Lighty cites a number of cases, including cases from the Supreme Court and the Fourth Circuit, that clearly establish the favorability of evidence regarding the cooperation history of a government witness. ECF No. 621 at 257-58 (citing cases). Between the filing of the Merits Brief and now, this Court, consistent with that authority, also granted habeas relief based, in part, on the State of Maryland's suppression of precisely such evidence in *Horner v. Shearin*. *See* No. JKB-12-2582, 2020 WL 571674, at *11 (D. Md. Feb. 5) (granting habeas relief and holding that "[w]ithout a doubt" a prosecution witness's cooperation history "was impeachment evidence that should have been disclosed to [petitioner's] counsel before his trial.").

In sum, Mr. Lighty's *Brady* claim requires a hearing. Resolving the claim without a hearing is impossible because, without hearing testimony, the Court will be incapable of determining exactly what evidence the government suppressed and, as a result, whether that evidence is material, *i.e.*, whether its suppression undermines confidence in the verdict. *Juniper*, 876 F.3d at 573.

*Due process claim for presenting conflicting motive theories regarding the Afton Street shooting.* Mr. Lighty contends that the government improperly presented a theory of the motive for the Afton Street incident that flatly contradicted the theory it presented during co-defendant Lorenzo Wilson's trial. ECF No. 621 at 260-61. The government responds by saying "it is

commonsense the government would focus on the respective roles of each [Wilson and Lighty] when presented at their own respective trials[.]" ECF No. 640 at 25. That mischaracterizes Mr. Lighty's claim and completely misrepresents the trial record in each case. In Wilson's trial, the government portrayed Wilson as the instigator of the dispute that led to the Afton Street shooting; then, at Mr. Lighty's trial, the government flipped its narrative and instead accused Mr. Lighty of initiating the dispute. ECF No. 621 at 260-61. As explained in the Merits Brief, the government's presentation of those two contradictory theories violated Mr. Lighty's right to due process. *Id.*

*Eighth Amendment claim for intentionally informing the jury that Mr. Hayes' family wanted them to return a verdict of death.* Mr. Lighty contends that the government knowingly and intentionally violated the Eighth Amendment by informing the jury during closing argument at the penalty phase that the Hayes family wanted them to sentence him to death rather than to life without possibility of release. ECF No. 621 at 264-68. In his Merits Brief, Mr. Lighty states that an evidentiary hearing would be required in order to adjudicate the question of the government's intention if the government disputes the fact that its statements were deliberate and intentional. *Id.* at 268. In its Response, ECF No. 640 at 23-27, the government ignores this claim entirely, and so does not dispute the intentionality of its actions. The need for an evidentiary hearing is thus obviated and, for the reasons stated in the Merits Brief, Mr. Lighty's sentence of death must be vacated.

## CONCLUSION

For the foregoing reasons, as well as those set forth in the Motion for an Evidentiary Hearing and the Merits Brief, Mr. Lighty should be granted an evidentiary hearing on all unresolved claims in his § 2255 Motion and should have his conviction and death sentence vacated.

31

Dated: June 22, 2020                              Respectfully submitted,


/s/ Julie Brain
Julie Brain
JulieBrain1@yahoo.com
Attorney at Law
916 S. 2nd Street
Philadelphia, PA 19147
267-639-0417

/s/ Tiffani Hurst
Tiffani Hurst
Tiffani_Hurst@fd.org
Office of the Federal Public Defender
800 King Street, Suite 200
Wilmington, DE 19801
302-573-6010

/s/ Seth Rosenthal
Seth A. Rosenthal (D. Md. Bar No. 10780)
SARosenthal@Venable.com
VENABLE LLP
600 Massachusetts Avenue, NW
Washington, DC 20001
202-344-4741

*Counsel for Kenneth Jamal Lighty*