IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | Criminal No. PJM 03-457 |
| | * | |
| JAMES EVERETT FLOOD, II | * | Civil No. PJM 11-3563 |
| | * | |
| Defendant | * | |
| | * | |
| | ******* | |

## GOVERNMENT'S RESPONSE TO PETITIONER'S
## MOTION UNDER 28 U.S.C. § 2255 TO VACATE SENTENCE

The Petitioner and two others kidnapped and shot Eric Hayes to death in an undeveloped

lot in Prince George's County.  Hayes had been forced into the trunk of their vehicle in

Washington, D.C., driven to Maryland, forcibly removed, and fatally shot in his face, head, hand,

and leg while begging for his life.  The Petitioner now seeks to vacate his sentence under 28

U.S.C. § 2255 (ECF Nos. 527, 528, 662) because he maintains that kidnapping resulting in

death—one of the five counts for which he was convicted for his participation in Hayes'

killing—is not a crime of violence that sustains Counts Three and Five.  The Government

concedes this point, consistent with its position in *United States v. Ross*, No. 18-2800, 2022 WL

4103064 (8th Cir. Sept. 7, 2022).  However, no resentencing should occur even if the Court were

to vacate Counts Three and Five because the Court is bound by the Petitioner's conviction as to

Count One, which requires at least a life sentence.  Further, the Court should decline to hold a

resentencing under the concurrent sentencing doctrine as to Count Two, as it would have no

impact on the Petitioner's overall sentence and afford the Petitioner no actual relief.

## BACKGROUND

On January 3, 2002, at approximately 8:15 p.m., Eric Hayes and a friend were sitting in

an apartment building stairwell in the vicinity of the 3200 block of Eighth Street, S.E., in Washington, D.C., when the Petitioner and two others drove in the alley in a dark blue Lincoln.[1] Two individuals got out of the Lincoln and asked about buying some marijuana cigarettes laced with PCP.  Hayes left the building and went into the alley to conduct the drug sale.  The friend went to check on Hayes a few minutes later and saw the driver holding Hayes at gunpoint.  The front passenger got out of the Lincoln with a revolver and approached the friend, who knocked the revolver out of the passenger's hand and fled to a nearby apartment building to notify Hayes' cousins.  Meanwhile, Hayes was forced into the trunk of the Lincoln.

The Petitioner, Lighty, and another individual Lorenzo Wilson drove to Keating Street in the Hillcrest Heights area of Prince George's County, Maryland, approximately 3.7 miles from the abduction scene with a travel time of seven minutes and 15 seconds.  At approximately 8:30 p.m., a homeowner saw the Lincoln stopped next to an undeveloped lot by his residence, where the front passenger and the rear right passenger forcibly removed Hayes from the rear passenger seat.  The homeowner saw Hayes shot several times while he knelt, begging for his life.  Both men reentered the Lincoln and drove away as the homeowner called 911.  Prince George's County Police arrived at 8:53 p.m., and Hayes was pronounced dead at the scene.  An autopsy revealed that Hayes suffered multiple fatal gunshot wounds at close range to his face and head, as well as additional gunshot wounds to his hand and leg.

Shortly after Hayes was killed, Wilson called his girlfriend on the Petitioner's cell phone to pick them up.  The girlfriend drove to Iverson Street in Hillcrest Heights, approximately 1.7 miles from the murder scene, with a travel time of three minutes and 53 seconds, and picked up all three individuals.  She drove them to Keating Street, near the location of the killing, where

---

[1] These facts are drawn from the Government's previous filing in this case.  (*See* ECF No. 409.)

they checked the street for blood.  They got back in the girlfriend's vehicle, and the girlfriend

dropped the Petitioner and Lighty off in Hillcrest Heights and returned to her home with Wilson.

The girlfriend saw Wilson had Hayes' pager and tennis shoes.

In February of 2002, a month after the killing, the Petitioner asked his girlfriend to take

the Lincoln to North Carolina.  The Petitioner retrieved the Lincoln from a house on Iverson

Place, and the Petitioner's girlfriend followed him to North Carolina, where the Petitioner gave

the Lincoln to his parents.  The Petitioner lied to a grand jury about the whereabouts of the

Lincoln, and instructed his uncle to lie about the same.  Law enforcement later located the

Lincoln at the home of an innocent buyer.  Through DNA testing, law enforcement found Hayes'

blood on the rear passenger side floor rug, and fibers from the passenger and trunk components

matched Hayes' clothing.

### A.      Indictment and Conviction

On October 8, 2003, a federal grand jury indicted the Petitioner on charges that included:

- On or about January 3, 2002, in the State and District of Maryland, and in the District of Columbia, JAMES EVERETT FLOOD III [et al.] did knowingly, willfully, and unlawfully seize, confine, kidnap, abduct, and carry away Eric Larry Hayes II and hold him for a reason which was of benefit to the defendants, and while so holding him, did transport Eric Larry Hayes II in interstate commerce, to wit: from the District of Columbia to the State of Maryland, and said kidnapping resulted in the death of Eric Larry Hayes II. ("Count One")

- On or about January 3, 2002, in the State and District of Maryland, and in the District of Columbia, JAMES EVERETT FLOOD III [et al.] did knowingly and unlawfully combine, conspire and agree to violate Title 18, United States Code, Section 1201(a)(1), specifically to seize, confine, kidnap, abduct, and carry away a person for a reason which was of benefit to the defendants and, while so holding him, to cause the transportation of a person in interstate commerce. ("Count Two")

- On or about January 3, 2002, in the State and District of Maryland, and in the District of Columbia, JAMES EVERETT FLOOD III [et al.] did knowingly use

and carry a firearm during and in relation to a crime of violence for which they may be prosecuted in a court of the United States, to wit: the forcible placing of Eric Larry Hayes II at gunpoint into the vehicle during and in relation to the initial seizure of Eric Larry Hayes II in the District of Columbia, in violation of Title 18, United States Code, Section 1201(a), as charged in Count One of this Indictment, and the conspiracy to kidnap, in violation of Title 18, United States Code, Section 1201(c), as charged in Count Two, which are incorporated by reference herein. ("Count Three")

- On or about January 3, 2002, in the State and District of Maryland, and in the District of Columbia, JAMES EVERETT FLOOD III [et al.] did knowingly use and carry a firearm during and in relation to a crime of violence for which they may be prosecuted in a court of the United States, to wit: the shooting of Eric Larry Hayes II during and in relation to the kidnapping, in violation of Title 18, United States Code, Section 1201(a), as charged in Count One of this Indictment, and the conspiracy to kidnap, in violation of Title 18, United States Code, Section 1201(c), as charged in Count Two, which are incorporated by reference herein. ("Count Five")

(ECF No. 1 at 1-2, 4, 6.)

The Petitioner and his co-defendant Lighty went to trial before the Honorable Peter J. Messitte beginning September 6, 2005. Argument concluded and Judge Messitte instructed the jury on October 20, 2005. During his instructions, Judge Messitte said that if the jury found the Petitioner guilty of kidnapping, "you will be required to determine whether the government has proven beyond a reasonable doubt that the kidnapping resulted in the death of the victim, Eric Larry Hayes, II. The government must prove that Mr. Hayes is dead and that his death resulted from the willful and intentional conduct of the defendant during the kidnapping." (Oct. 20, 2005 Tr. 572-73.) He also explained that Counts Three and Five charge "that the defendants used and carried a firearm during the commission of a crime of violence," namely, "a specified crime of violence which are charged in other specified counts of the indictment." (Oct. 20, 2005 Tr. 57,

60.)[2]  Judge Messitte told the jury that if they find that the government failed to prove "the underlying count of the crime of violence," then "you don't get to the next so-called 924(c) offense . . . You only consider the Section 924 offense if you first find the defendant guilty of the underlying crime of violence that's specified." (Oct. 20, 2005 Tr. 60-61.)  He explained that the first element for Counts Three and Five is that each defendant committed "a crime of violence for which he might be prosecuted in a court of the United States," and that the defendants "are charged in Count One with kidnapping and Count Two with conspiracy to commit kidnapping, and I instruct you that both of these crimes are crimes of violence." (Oct. 20, 2005 Tr. 61-62; *see also id.* at 72.)  Judge Messitte then said, "However, it's up to you to determine whether the government has proven beyond a reasonable doubt that a defendant committed either or both the crimes of kidnapping and conspiracy to commit kidnapping." (Oct. 20, 2005 Tr. 62.)

Jurors were given a tape recording of Judge Messitte's instructions, along with written instructions and a verdict sheet. (Oct. 20, 2005 Tr. 14-15.)  None of the parties objected to the Court's articulation of Counts Three and Five and the relevant legal standards for those counts. (*See generally* Oct. 20, 2005 Tr. 73-80.)  The jury later sent a note observing seemingly contradictory phrases in Jury Instruction 50—"The defendant would be guilty if a co-conspirator used or carried a gun"—and Jury Instruction 52—"We must find that the defendant carried or used a firearm knowingly"—and explaining that Counts Three, Four, and Five used the phrase "knowingly using and carrying a firearm;" the jury then wrote, "Which standard should apply?" (Oct. 21, 2005 Tr. 4.)  The Court and the parties conferred, unsure whether the jury was asking two separate questions about co-conspirator liability and the applicable standard for "knowingly

---

[2] Judge Messitte also said that Count Three "charges use and carrying a firearm and the forcible placing of Eric Larry Hayes into a vehicle during his kidnapping" and that Count Five "charges the shooting of Eric Larry Hayes in Maryland." (Oct. 20, 2005 Tr. 57-58.)

using and carrying a firearm" (*see id.* at 4-9), before deciding to tell the jury that "Instruction 52

should read defendant or co-conspirator throughout" (*see id.* at 9), and to answer subsequent

questions about Counts Three, Four, and Five if the jury needed additional clarification.  (*See id.*

at 9-10.)  The jury did not ask further questions.  (*Id.* at 10-11.)

The jury returned a verdict on October 21, 2005.  (*See* ECF No. 608-2.)  As indicated by

the verdict sheet and as stated in court, the jury unanimously found the Petitioner guilty as to

Count One—the federal kidnapping count—and that that "the kidnapping result[ed] in the death

of Eric Hayes II."  (*Id.* at 2; *see also* Oct. 21, 2005 Tr. at 11-16.)  The jury also found the

Petitioner guilty as to Count Two—the federal kidnapping conspiracy count—and guilty as to

Counts Three and Five, which were described as "use of a weapon to abduct Eric Larry Hayes in

furtherance of the crimes charged Counts One or Two," and "use of a weapon to shoot Eric Larry

Hayes in furtherance of the crimes charged Counts One or Two," respectively.  (ECF No. 608-2

at 3-4; *see also* Oct. 21, 2005 Tr. at 12-16.)

### B.      Post-Conviction History

The Government refers the Court to its previous response to the Petitioner's § 2255

Motion, which describes the procedural history for his case through May 29, 2012.  (ECF No.

409); *see also United States v. Lighty*, 616 F.3d 321, 336 (4th Cir. 2010).  Since then, the

Petitioner filed a reply to the Government's response (ECF No. 417), as well as supplemental

§ 2255 Motions on May 10, 2016 (ECF No. 527) and May 19, 2016.  (ECF No. 528.)  On

January 23, 2018, the Court denied all of the Petitioner's claims except his *Johnson* claims,

explaining that the issue giving rise to the Petitioner's *Johnson* claims was pending before the

Supreme Court and the Fourth Circuit.  (ECF Nos. 578, 579.)

On September 27, 2022, the Petitioner filed a Motion to Adopt his co-defendant Lighty's

filings with respect to his *Johnson* claims.  (ECF No. 662.)  Lighty previously filed a supplement

to his § 2255 Motion on June 24, 2016 (ECF No. 530), as well as a second supplement on

August 23, 2019, which both raised *Johnson* claims.  (ECF No. 608.)  The Government

responded to these supplemental Motions on December 10, 2019 (ECF No. 631), and Lighty

filed a reply on January 10, 2020.  (ECF No. 636.)  Lighty and the Petitioner also filed Notices of

supplemental authority regarding *Johnson*-related decisions.  (ECF Nos. 649, 662.)

## LEGAL STANDARD

Collateral relief under 28 U.S.C. § 2255 is strictly circumscribed.  The grounds for relief

under § 2255 are narrower than those for relief on direct appeal.  A motion under 28 U.S.C. §

2255 allows a prisoner in federal custody to challenge the legality of a federal sentence on four

grounds: (1) the sentence was imposed in violation of the Constitution or laws of the United

States; (2) the sentencing court lacked jurisdiction; (3) the sentence exceeded the maximum

authorized by law; or (4) the sentence is otherwise subject to collateral attack.  *See* 28 U.S.C. §

2255.  When seeking relief under § 2255, a defendant bears the burden of proving his or her

grounds for collateral relief by a preponderance of the evidence.  *Miller v. United States*, 261

F.2d 546, 547 (4th Cir. 1958); *United States v. Rogers*, 2013 WL 5740476, at 2 (D. Md. Oct. 22,

2013).

## DISCUSSION

Under federal law, a person who uses or carries a firearm "during and in relation to any

crime of violence" or who "possesses a firearm" in "furtherance of any such crime" is subject to

conviction for the underlying crime of violence as well as for the firearm offense.  *See* 18 U.S.C.

§ 924(c)(1)(A).  A crime of violence is defined in 18 U.S.C. § 924(c)(3) as "an offense that is a

felony" and:

(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

Subsection (A) of 18 U.S.C. § 924(c)(3) is commonly referred to as the "force clause" or "elements clause," while subsection (B) is referred to as the "residual clause."

The Petitioner filed his supplemental Motions in 2016, pursuant to the Supreme Court's ruling in *Johnson v. United States*, 576 U.S. 591 (2015).  In *Johnson*, the Supreme Court ruled that the residual clause of the Armed Career Criminal Act's definition for violent felony, at 18 U.S.C. § 924(e)(2)(B)(ii), was unconstitutionally vague.  *Id.*  Then in 2019, the Supreme Court issued its decision in *United States v. Davis*, 139 S. Ct. 2319 (2019), ruling that the "residual clause" definition of a crime of violence in 18 U.S.C. § 924(c)(3)(B) was unconstitutionally vague.  *Id.*, 139 S. Ct. at 2334.  Accordingly, for an offense to qualify as a crime of violence under Section 924(c), it must meet the definition set forth in subsection (A), the "force clause."

## I.    Predicate Offense

The Petitioner argues that his Section 924(c) convictions are predicated on "kidnapping" and "conspiracy to commit kidnapping" (ECF No. 527 at 2; ECF No. 528 at 2), and that the Court must assume that his conviction is only based on conspiracy because "the charging document did not exclude conspiracy as the basis for the § 924(c) conviction, and conspiracy is the most innocent conduct encompassed" in Counts Three and Five.  (ECF No. 528 at 2 n.1.)[3] This is incorrect as a matter of law.

---

[3] Similarly, Lighty argues that "the verdicts on those counts were general verdicts," so it is "impossible to exclude the possibility that some or all jurors found, as the sole predicate, conspiracy to kidnap, which is not a crime of violence under the force clause."  (ECF No. 636 at 1-2, 9-12.)

Ambiguity as to the predicate alone is not enough to assume a conviction was based on the lesser predicate offense. *See United States v. Crawley*, 2 F.4th 257 (4th Cir 2021); *United States v. Ali*, 991 F.3d 561 (4th Cir. 2021); *United States v. Said*, 26 F.4th 653 (2022). Instead, a petitioner must show "more than a reasonable possibility" that the jury found him guilty under Section 924(c) based only on an invalid predicate. *Said*, 26 F.4th at 661–62. There is no evidence in the record that the jury based their Section 924(c) convictions "only on the [kidnapping] conspiracy charge." *United States v. Bell*, No. CR 07-160-PJM-1, 2022 WL 7091432, at *2 (D. Md. Oct. 12, 2022). The Petitioner was convicted on Counts Three and Five for "use of a weapon . . . in furtherance of the crimes charged Counts One or Two." Use of "or" makes clear that the Petitioner's conviction rests on both kidnapping resulting in death (Count One) and kidnapping conspiracy (Count Two). The fact that the jury convicted the Petitioner of kidnapping resulting in death strongly also suggests that it relied, at least partially, on that offense for the Section 924(c) convictions. *See Said*, 26 F.4th at 659 (holding that "a § 924(c) conviction may stand even if the jury based its verdict on an invalid predicate, so long as the jury also relied on a valid predicate" (citing *United States v. Hare*, 820 F.3d 93, 106 (4th Cir. 2016); *Crawley*, 2 F.4th at 263)).

## II.     Kidnapping Resulting in Death

The Petitioner argues that kidnapping resulting in death and kidnapping conspiracy cannot serve as predicate offenses for a Section 924(c) conviction. (ECF No. 527 at 2; ECF No. 528 at 2.) The Government previously conceded in response to Lighty that kidnapping conspiracy does not qualify as a predicate offense for a Section 924(c) conviction, and that Count Four should be vacated. (ECF No. 631 at 7.) The Government now concedes that kidnapping

resulting in death also does not qualify as a predicate offense, adhering to its position in *United States v. Ross*, 2022 WL 4103064.

The federal kidnapping statute provides that "[w]hoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward . . . when . . . the person is willfully transported in interstate . . . shall be punished by imprisonment for any term of years or for life and, if the death of any person results, shall be punished by death or life imprisonment." 18 U.S.C. § 1201(a). Because this provision carries an enhanced penalty, "death or life imprisonment," it is properly understood as an aggravated offense that is divisible from typical kidnapping. *See Burrage v. United States*, 571 U.S. 204, 210 (2014) ("Because the 'death results' [penalty] enhancement [in 21 U.S.C. § 841(b)] increased the minimum and maximum sentences to which Burrage was exposed, it is an element that must be submitted to the jury and found beyond a reasonable doubt."); *see also Mathis v. United States*, 136 S. Ct. 2243, 2256 (2016).

Courts use a modified categorical approach for divisible offenses to determine "which element played a part in the defendant's conviction." *United States v. Runyon*, 994 F.3d 192,200–01 (4th Cir. 2021) (quoting *Descamps v. United States*, 570 U.S. 254, 260 (2013). "Under this approach, the court may look to the terms of the relevant charging document, jury instructions, plea agreement, plea colloquy, and the like." *Runyon*, 994 F.3d at 201; *see also Roof*, 10 F.4th at 314 (explaining that a court analyzing a divisible statute is permitted to "to consult a limited set of record documents (such as the indictment, jury instructions, or plea agreement) for the sole purpose of determining what crime, with what elements, a defendant was convicted of" (quoting *Allred*, 942 F.3d at 648)). Here, the indictment charges the Petitioner under Count One with kidnapping that "resulted in the death" of the victim; Judge Messitte

instructed the jury to find that under Count One, the Petitioner's kidnapping "resulted in [his]

death;" and the verdict sheet shows that the jury unanimously found the Petitioner guilty as to

Count One and that "the kidnapping result[ed] in the [victim's] death." Thus, the Petitioner was

clearly convicted of kidnapping resulting in death.

The Petitioner maintains that this offense—kidnapping resulting in death—is not a crime

of violence that can support a Section 924(c) conviction. Courts use the categorical approach to

determine whether an offense constitutes a crime of violence under Section 924(c), "ask[ing]

whether the most innocent conduct that the law criminalizes requires proof of the use, attempted

use, or threatened use of force sufficient to satisfy the [elements] clause." *United States v. Roof*,

10 F.4th 314, 398 (4th Cir. 2021) (quoting *United States v. Allred*, 942 F.3d 641, 648 (4th Cir.

2019)) (internal quotation marks and citation omitted). If the answer is yes, then the offense

"categorically" qualifies as a crime of violence. *Id.* But if the "statute defines an offense in a

way that allows for both violent and nonviolent means of commission," then that predicate

"offense is not 'categorically' a crime of violence under the [force] clause." *United States v.*

*Simms*, 914 F.3d 229, 233 (4th Cir. 2019).

### A.  Causation

Congress's use of the term "results"—"if the death of any person results, [the defendant]

shall be punished by death or life imprisonment," 18 U.S.C. § 1201(a)—requires a causal

connection between the kidnapping and the death. It would not be sufficient, for example, to

show that the victim happened to die of natural causes during the course of a kidnapping. *See,*

*e.g.*, *Burrage*, 571 U.S. at 214 ("a phrase such as 'results from' imposes a requirement of but-for

causation"); *see also Roof*, 10 F.4th 314, 400 (4th Cir. 2021) (explaining that the "death results"

element "imposes a requirement of actual causality, i.e. but-for causation" (internal quotation

marks omitted)); *Marlowe v. Warden, FCI Hazelton*, 6 F.4th 562, 567 (4th Cir. 2021) (explaining

that the "death results" element "requires a showing of but-for causation" (citing *Burrage*, 571

U.S. at 218-19)).

Simply put, it is "hard to imagine conduct that can cause another to die that does not

involve physical force against the body of the person killed." *In re Irby*, 858 F.3d 231, 236 (4th

Cir. 2017) (internal quotation marks omitted and alteration in original).[4] "[U]nlawfully killing

another human being requires the use of force capable of causing physical pain or injury to

another person." *Id.* (internal quotation marks omitted); *see also United States v. Parrish*, 767 F.

App'x 440, 443 (4th Cir. 2019). "[S]o long as an offender's use of physical force, whether direct

or indirect, could cause a violent result, the force used categorically is violent" for Section 924(c)

purposes. *Mathis*, 932 F.3d at 265; *see also United States v. Castleman*, 572 U.S. 157, 170-71

(2014) (explaining that "physical force is simply force exerted by and through" human action

and that a person need not "directly" touch his victim to exert "physical force").[5]

The Petitioner imagines scenarios where a defendant commits kidnapping resulting in

death without any application of "physical force" within the meaning of Section 924(c)(3)(A).

(*See* ECF No. 636 at 4-5.)  He cites no cases where the Government prosecuted such conduct

---

[4] While the Fourth Circuit has had the opportunity to apply a categorical analysis to the federal
kidnapping statute in *United States v. Walker*, 934 F.3d 375 (4th Cir. 2019), its discussion does not
apply to the facts of this case because *Walker* did not involve kidnapping resulting in death.  Moreover,
the Fourth Circuit's analysis turned on whether a kidnapping victim could be "held" without violence;
*Irby* instructs that it is "difficult to imagine" that an act resulting in death does not involve physical force
against the person killed.

[5] The Petitioner repeatedly cites—and accuses the government of "ignoring"—an abrogated Fourth
Circuit case, *United States v. Torres-Miguel*, 701 F.3d 165 (4th Cir. 2012), for the proposition that a
crime "may result" in death without "involving the use" of physical force.  (*See* ECF No. 636 at 4, 6.)
But *Torres-Miguel* was about a California criminal statute prohibiting certain kinds of willful threats.
*Id.* at 166 (citing Cal. Penal Code § 422(a)).  Here we have a completely different crime under a
completely different criminal regime—a federal criminal statute that prohibits kidnapping resulting in
death.  In any event, *Torres-Miguel* is dead letter.  *See United States v. Castleman*, 572 U.S. 157 (2014).

under Section 1201(a), nor can he—these are precisely the kind of "Alice in Wonderland"

fantasies that have no place in crime of violence jurisprudence.  *See United States v. Taylor*, 213

L. Ed. 2d 349, 142 S. Ct. 2015, 2026 (2022) (Thomas, J., dissenting).  The Supreme Court and

this Circuit have repeatedly cautioned against using "legal imagination" beyond what the plain

text unambiguously covers to treat an offense as categorically overbroad.  *Moncrieffe v. Holder*,

569 U.S. 184, 191 (2013) (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007)); *see

also United States v. Croft*, 987 F.3d 93, 98 (4th Cir. 2021) (explaining that courts need not

"conjure up fanciful fact patterns in an attempt to find some nonviolent manner in which a crime

can be committed" (quoting *United States v. Salmons*, 873 F.3d 446, 451 (4th Cir. 2017)).  There

must be "a realistic probability, not a theoretical possibility, that the [government] would apply

its statute to conduct that falls outside the generic definition of a crime."  *Id.* (quoting *Gonzales

v. Duenas-Alvarez*, 549 U.S. 183, 184 (2007)).

Kidnapping resulting in death is generally charged where the conduct is particularly

egregious.  For example, in *United States v. Higgs*, the defendants were charged with this

aggravated form of kidnapping when they drove three women to the Patuxent National Wildlife

Refuge after a date resulted in a verbal altercation, and ruthlessly shot all three to death.  *See

United States v. Higgs*, 353 F.3d 281, 290 (4th Cir. 2003).  In another case, the defendant

strangled a pregnant woman to death and cut her near-term fetus from her body to kidnap the

baby.  *See United States v. Montgomery*, 635 F.3d 1074 (8th Cir. 2011); *see also United States v.

McGowan*, 768 F. App'x 873, 874 (10th Cir. 2019) (defendant kidnapped his girlfriend's five-

year-old child and, after a lengthy police chase, crashed his car into a construction barricade,

where authorities found that he had already shot and killed the child).

Despite this reasoning, the government conceded in *United States v. Ross*, 2022 WL 4103064, that kidnapping resulting in death is not categorically a crime of violence under Section 924(c) after *Borden v. United States*, 141 S. Ct. 1817, 1821-22 (2021) (plurality opinion) (finding that offenses that require "only a *mens rea* of recklessness—a less culpable mental state than purpose or knowledge," did not satisfy the force clause of the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(b)(i)). *See Ross*, 2022 WL 4103064. The government's concession in *Ross* was made after it consulted with the Department of Justice's Office of the Solicitor General ("OSG"). Here, the Government similarly concedes that kidnaping resulting in death is not categorically a crime of violence under Section 924(c) because it is bound by OSG's legal position.

### B.     *Mens Rea*

The Petitioner contends that *Borden v. United States*, 141 S. Ct. 1817, forecloses any argument that kidnapping resulting in death can serve as a 924(c) predicate offense. (*See* ECF No. 649.) As noted above, *Borden* was not a case about 924(c) predicate offenses. The Supreme Court held in *Borden* that crimes with a *mens rea* of "recklessness" cannot qualify as a "violent felony" under the Armed Career Criminal Act ("ACCA"), because they "do not require, as ACCA does, the active employment of force against another person." *See Borden*, 141 S. Ct. at 1834.

The Fourth Circuit has interpreted *Borden* to mean that "if the *mens rea* element can, as a matter of law, be satisfied with a mental state of recklessness or negligence, the offense is not a crime of violence." *United States v. Manley*, 52 F.4th 143 (4th Cir. 2022) (citing *Borden*, 141 S. Ct. at 1821-22, 25 (plurality opinion) and *Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004)). But if the elements of the crime "demand[ ]" that the person have "direct[ed] his action at, or target[ed],

14

another individual," the action is more purposeful and satisfies the *mens rea* requirement

necessary for an offense to qualify as a crime of violence. *Id.* (quoting *Borden*, 141 S. Ct. at

1825 (plurality opinion)).

Satisfying the elements of the federal kidnapping statute "necessarily implies an unlawful

physical or mental restraint for an appreciable period against the person's will and with a willful

intent so to confine the victim." *United States v. Murillo*, 826 F.3d 152, 160 (4th Cir. 2016)

(quoting *United States v. Lentz*, 383 F.3d 191, 201 (4th Cir. 2004)).  Federal kidnapping requires

"an intent to restrain [the victim's] movements contrary to her wishes." *Lentz*, 383 F.3d at 201

(quoting *Chatwin v. United States*, 326 U.S. 455, 460 (1946)); *see also United States v. Wills*,

346 F.3d 476, 493 (4th Cir. 2003) ("To hold means to detain, seize, or confine a person in some

manner against that person's will.").

Nevertheless, the Government concedes as it did in *United States v. Ross*, 2022 WL

4103064, that kidnapping resulting in death is not a crime of violence.  As explained previously,

the government conceded this issue in *Ross* after it consulted with OSG.  The Government

similarly concedes here because it is bound by OSG's legal position.

**III.     Resentencing**

The Petitioner was convicted on five counts—kidnapping resulting in death, kidnapping

conspiracy, and three 924(c) counts subject to his latest habeas petition.  Even if the Court were

to grant relief as to the Petitioner's 924(c) convictions, his convictions for kidnapping resulting

in death and kidnapping conspiracy remain.  Federal kidnapping law mandates death or life

imprisonment "if the death of any person results" from the charged kidnapping.  18 U.S.C.

§ 1201(a).  In other words, a convicted kidnapper whose actions resulted in his victim's death

must be sentenced to life in prison—if not death—regardless of any sentence imposed by

15

additional 924(c) convictions.  The Petitioner will serve a life sentence even if his 924(c)

convictions were vacated.

Resentencing the Petitioner is also unnecessary for essentially the same reason.  The

concurrent sentence doctrine "authorizes a court to leave the validity of one concurrent sentence

unreviewed when another is valid and carries the same or greater duration of punishment so long

as there is no substantial possibility that the unreviewed sentence will adversely affect the

defendant."  *United States v. Charles*, 932 F.3d 153, 155 (4th Cir. 2019).[6]  This doctrine also

gives a district court the discretion, in the interest of judicial economy, to forgo review when

correction of a sentencing error will not affect a defendant's overall sentence.  *Id*. at 158-59.  The

doctrine "may appropriately be applied when the alleged error is associated only with counts for

which concurrent sentences are imposed and the other sentences are unassailable."  *Jones v.*

*Zimmerman*, 805 F.2d 1125, 1128 (3d Cir. 1986).  "The purpose of the doctrine is to conserve

judicial resources when there is nothing to be gained from their expenditure . . . ."  *United States*

*v. Benton*, 24 F.4th 309, 315 (4th Cir. 2022).  Because federal kidnapping law requires the

Petitioner to serve at least a life sentence, and the Petitioner does not challenge this aspect of his

---

[6] The concurrent sentence doctrine applies to consecutive sentences, like those the Petitioner faces for his 924(c) convictions.  *See, e.g.*, *Al‑'Owhali v. United States*, 36 F.4th 461, 466-67 (2d Cir. 2022) ("When a prisoner challenges a sentence to run consecutively to an unchallenged life sentence, even a complete vacatur of the challenged sentence will not 'reduce the time he is required to serve' in prison . . . Whether the challenged sentence runs consecutively or concurrently to the unchallenged life sentence 'is a distinction without a difference.'"); *Duka v. United States*, 27 F.4th 189, 195 (3d Cir. 2022) (rejecting argument that the application of the doctrine was improper as the challenged sentences were to run consecutively to—rather than concurrently with—their unchallenged life sentences); *Kassir v. United States*, 3 F.4th 556, 569 (2d Cir. 2021) ("Kassir's challenge to his 18 U.S.C. § 842(p) conviction, even if successful, offers him no reasonable prospect of a shorter time in custody.  He will remain in prison on dual life sentences for conspiring to kill people"); *Ruiz v. United States*, 990 F.3d 1025, 1033 (7th Cir. 2021) (applying the concurrent sentence doctrine to decline review of sentence where defendant was subject to seven consecutive life sentences); *Oslund v. United States*, 944 F.3d 743, 746 (8th Cir. 2019) (finding no error in district court's application of the concurrent sentence doctrine given an unchallenged consecutive life sentence).

sentence, he cannot show that any correction will affect his overall sentence.  Resentencing would waste judicial resources to arrive at the same result.[7]

Notably, the Fourth Circuit summarily denied a motion for certificate of appealability in a similar death penalty case where the government argued that under the concurrent sentence doctrine the granting of the petition would not afford the defendant any meaningful relief.  *See In re: Dustin John Higgs*, No. 20-2 (4th Cir. Feb. 6, 2020).  In that case, the movant also challenged his Section 924(c) convictions based in part on kidnapping resulting in death.  *Id.*

### CONCLUSION

The Government respectfully requests that this Court DENY the Petitioner's Motion.


Respectfully submitted,

Erek L. Barron
United States Attorney


By:       _____/s/_____
          Joshua A. Rosenthal
          Special Assistant United States Attorney


          _____/s/_____
          Jason Medinger
          Assistant United States Attorney

---

[7] One caveat to the concurrent sentencing doctrine is that it should not be applied "where the defendant may suffer adverse collateral consequences if the sentence is left unreviewed." *Benton*, 24 F.4th at 315 (finding its application would deprive Benton of any benefit from a First Step Act sentence reduction). No such concern exists here.  The Petitioner is not eligible for a First Step Act reduction because he has no convictions for distribution of cocaine base under 21 U.S.C. § 841.  There is also "no substantial possibility that the unreviewed conviction will adversely affect the defendant's right to parole . . . ." *Charles*, 932 F.3d at 159.

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned certifies that on December 1, 2022, a copy of the foregoing response

and proposed order was filed to the CM-ECF system of the United States District Court for the

District of Maryland for electronic delivery to all counsel of record.


_____/s/_____
Joshua A. Rosenthal
Special Assistant United States Attorney
