**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NO. PJM-03-0457 |
| | * | |
| KENNETH LIGHTY, | * | CIVIL NO. PJM-12-3065 |
| | * | |
| Petitioner | * | |
| | * | |

...oOo...

**GOVERNMENT'S SUPPLEMENTAL RESPONSE TO SUPPLEMENTAL**
**MOTION TO VACATE UNDER 28 U.S.C. § 2255**

The United States of America, by undersigned counsel, respectfully submits the following

supplemental response in opposition to Petitioner's Supplemental Motion to Vacate under 28

U.S.C. § 2255 (ECF No. 607, 608, 636).

Lighty and two others kidnapped and shot Eric Hayes to death in an undeveloped lot in

Prince George's County.  Hayes had been forced into the trunk of their vehicle in Washington,

D.C., driven to Maryland, forcibly removed, and fatally shot in his face, head, hand, and leg while

begging for his life.  Lighty now seeks to vacate his sentence under 28 U.S.C. § 2255 because he

maintains that kidnapping resulting in death—two of the five counts for which he was convicted

for his participation in Hayes' killing—is not a crime of violence that sustains Counts Three and

Five.  The Government concedes this point, consistent with its position in *United States v. Ross*,

No. 18-2800, 2022 WL 4103064 (8th Cir. Sept. 7, 2022).  However, no resentencing should occur

even if the Court were to vacate Counts Three, Four,[1] and Five, because this Court is bound by the

jury's sentencing verdict as to Count One.  Further, the Court should decline to hold a resentencing

---

[1] The government has already conceded that Count Four – brandishing a firearm in furtherance of the kidnapping of Antoine Forrest – is no longer a crime of violence for purposes of 18 U.S.C. § 924(c).  *See* ECF No. 631.

under the concurrent sentencing doctrine as to Count Two, as it would have no impact on Lighty's overall sentence and afford Lighty no actual relief.

## LEGAL STANDARD

Collateral relief under 28 U.S.C. § 2255 is strictly circumscribed.  The grounds for relief under § 2255 are narrower than those for relief on direct appeal.  A motion under 28 U.S.C. § 2255 allows a prisoner in federal custody to challenge the legality of a federal sentence on four grounds: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the sentencing court lacked jurisdiction; (3) the sentence exceeded the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack.  *See* 28 U.S.C. § 2255.  When seeking relief under § 2255, a defendant bears the burden of proving his or her grounds for collateral relief by a preponderance of the evidence.  *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958); *United States v. Rogers*, 2013 WL 5740476, at 2 (D. Md. Oct. 22, 2013).

## ANALYSIS

Section 924(c) prohibits using or carrying a firearm "during and in relation to," or possessing a firearm "in furtherance of," any federal "crime of violence or drug trafficking crime." 18 U.S.C. § 924(c)(1)(A).  Section 924(c)(3) defines a crime of violence as "an offense that is a felony" and:

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3).  Subsection (A) of 18 U.S.C. § 924(c)(3) is commonly referred to as the "force clause" or "elements clause," while subsection (B) is referred to as the "residual clause."

Lighty filed his supplemental Motion in 2016, pursuant to the Supreme Court's ruling in *Johnson v. United States*, 576 U.S. 591 (2015). In *Johnson*, the Supreme Court ruled that the residual clause of the Armed Career Criminal Act's definition for violent felony, at 18 U.S.C. § 924(e)(2)(B)(ii), was unconstitutionally vague. *Id.* In 2019, the Supreme Court issued its decision in *United States v. Davis*, 139 S. Ct. 2319 (2019), ruling that the "residual clause" definition of a crime of violence in 18 U.S.C. § 924(c)(3)(B) was unconstitutionally vague. *Davis*, 139 S. Ct. at 2334. Accordingly, for an offense to qualify as a crime of violence under § 924(c), it must meet the definition set forth in subsection (A), the "force clause."

Lighty argues that his Section 924(c) convictions are predicated on "kidnapping" and "conspiracy to commit kidnapping" and that the Court must assume that his conviction is only based on conspiracy because "the verdicts on those counts were general verdicts," so it is "impossible to exclude the possibility that some or all jurors found, as the sole predicate, conspiracy to kidnap, which is not a crime of violence under the force clause." ECF No. 636 at 1-2, 9-12. This is incorrect as a matter of law.

Ambiguity as to the predicate alone is not enough to assume a conviction was based on the lesser predicate offense. *See United States v. Crawley*, 2 F.4th 257 (4th Cir 2021); *United States v. Ali*, 991 F.3d 561 (4th Cir. 2021); *United States v. Said*, 26 F.4th 653 (2022). Instead, a petitioner must show "more than a reasonable possibility" that the jury found him guilty under Section 924(c) based only on an invalid predicate. *Said*, 26 F.4th at 661–62. There is no evidence in the record that the jury based their Section 924(c) convictions "only on the [kidnapping] conspiracy charge." *United States v. Bell*, No. CR 07-160-PJM-1, 2022 WL 7091432, at *2 (D. Md. Oct. 12, 2022).

Lighty was convicted in Count Three for "use of a firearm to abduct Eric Larry Hayes in furtherance of the crimes charged [in] Counts One or Two." Verdict Form at 2. Lighty was

convicted in Count Five for "use of a firearm to shoot Eric Larry Hayes in furtherance of the crimes charged [in] Counts One or Two." *Id.* at 3. Use of "or" makes clear that Lighty's conviction rests on both kidnapping resulting in death (Count One) and kidnapping conspiracy (Count Two). The fact that the jury convicted Lighty of kidnapping resulting in death strongly also suggests that it relied, at least partially, on that offense for the § 924(c) convictions. *See Said*, 26 F.4th at 659 (holding that "a § 924(c) conviction may stand even if the jury based its verdict on an invalid predicate, so long as the jury also relied on a valid predicate") (citing *United States v. Hare*, 820 F.3d 93, 106 (4th Cir. 2016); *Crawley*, 2 F.4th at 263)).

## I.     Kidnapping Resulting in Death

Lighty argues that kidnapping resulting in death and kidnapping conspiracy cannot serve as predicate offenses for a § 924(c) conviction. ECF No. 607 at 3; ECF No. 608 at 2. The government previously conceded that kidnapping conspiracy does not qualify as a predicate offense for a § 924(c) conviction, and that Count Four should be vacated. ECF No. 631 at 7. The government now concedes that kidnapping resulting in death also does not qualify as a predicate offense, adhering to its position in *United States v. Ross*, 2022 WL 4103064.

The federal kidnapping statute provides that "[w]hoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward . . . when . . . the person is willfully transported in interstate . . . shall be punished by imprisonment for any term of years or for life and, if the death of any person results, shall be punished by death or life imprisonment." 18 U.S.C. § 1201(a). Because this provision carries an enhanced penalty, "death or life imprisonment," it is properly understood as an aggravated offense that is divisible from typical kidnapping. *See Burrage v. United States*, 571 U.S. 204, 210 (2014) ("Because the 'death results' [penalty] enhancement [in 21 U.S.C. § 841(b)] increased the minimum and maximum

sentences to which Burrage was exposed, it is an element that must be submitted to the jury and found beyond a reasonable doubt."); *see also Mathis v. United States*, 136 S. Ct. 2243, 2256 (2016).

Courts use a modified categorical approach for divisible offenses to determine "which element played a part in the defendant's conviction." *United States v. Runyon*, 994 F.3d 192,200–01 (4th Cir. 2021) (quoting *Descamps v. United States*, 570 U.S. 254, 260 (2013). "Under this approach, the court may look to the terms of the relevant charging document, jury instructions, plea agreement, plea colloquy, and the like." *Runyon*, 994 F.3d at 201; *see also Roof*, 10 F.4th at 314 (explaining that a court analyzing a divisible statute is permitted to "to consult a limited set of record documents (such as the indictment, jury instructions, or plea agreement) for the sole purpose of determining what crime, with what elements, a defendant was convicted of" (quoting *Allred*, 942 F.3d at 648)). Here, the indictment charges Lighty under Count One with kidnapping that "resulted in the death" of the victim, and the verdict sheet shows that the jury unanimously found Lighty guilty as to Count One and that "the kidnapping result[ed] in the [victim's] death." Thus, Lighty was clearly convicted of kidnapping resulting in death.

Lighty maintains that this offense—kidnapping resulting in death—is not a crime of violence that can support a § 924(c) conviction. Courts use the categorical approach to determine whether an offense constitutes a crime of violence under § 924(c), "ask[ing] whether the most innocent conduct that the law criminalizes requires proof of the use, attempted use, or threatened use of force sufficient to satisfy the [elements] clause." *United States v. Roof*, 10 F.4th 314, 398 (4th Cir. 2021) (quoting *United States v. Allred*, 942 F.3d 641, 648 (4th Cir. 2019)) (internal quotation marks and citation omitted). If the answer is yes, then the offense "categorically" qualifies as a crime of violence. *Id.* But if the "statute defines an offense in a way that allows for

both violent and nonviolent means of commission," then that predicate "offense is not 'categorically' a crime of violence under the [force] clause." *United States v. Simms*, 914 F.3d 229, 233 (4th Cir. 2019).

### A. Causation

Congress's use of the term "results"—"if the death of any person results, [the defendant] shall be punished by death or life imprisonment," 18 U.S.C. § 1201(a)—requires a causal connection between the kidnapping and the death. It would not be sufficient, for example, to show that the victim happened to die of natural causes during the course of a kidnapping. *See, e.g.*, *Burrage*, 571 U.S. at 214 ("a phrase such as 'results from' imposes a requirement of but-for causation"); *see also Roof*, 10 F.4th 314, 400 (4th Cir. 2021) (explaining that the "death results" element "imposes a requirement of actual causality, i.e. but-for causation" (internal quotation marks omitted)); *Marlowe v. Warden, FCI Hazelton*, 6 F.4th 562, 567 (4th Cir. 2021) (explaining that the "death results" element "requires a showing of but-for causation" (citing *Burrage*, 571 U.S. at 218-19)).

Simply put, it is "hard to imagine conduct that can cause another to die that does not involve physical force against the body of the person killed." *In re Irby*, 858 F.3d 231, 236 (4th Cir. 2017) (internal quotation marks omitted and alteration in original).[2] "[U]nlawfully killing another human being requires the use of force capable of causing physical pain or injury to another person." *Id.* (internal quotation marks omitted); *see also United States v. Parrish*, 767 F. App'x 440, 443

---

[2]      While the Fourth Circuit has had the opportunity to apply a categorical analysis to the federal kidnapping statute in *United States v. Walker*, 934 F.3d 375 (4th Cir. 2019), its discussion does not apply to the facts of this case because *Walker* did not involve kidnapping resulting in death. Moreover, the Fourth Circuit's analysis turned on whether a kidnapping victim could be "held" without violence; *Irby* instructs that it is "difficult to imagine" that an act resulting in death does not involve physical force against the person killed.

(4th Cir. 2019).  "[S]o long as an offender's use of physical force, whether direct or indirect, could cause a violent result, the force used categorically is violent" for § 924(c) purposes.  *Mathis*, 932 F.3d at 265; *see also United States v. Castleman*, 572 U.S. 157, 170-71 (2014) (explaining that "physical force is simply force exerted by and through" human action and that a person need not "directly" touch his victim to exert "physical force").[3]

Lighty imagines scenarios where a defendant commits kidnapping resulting in death without any application of "physical force" within the meaning of § 924(c)(3)(A).  *See* ECF No. 636 at 4-5.  He cites no cases where the Government prosecuted such conduct under § 1201(a), nor can he—these are precisely the kind of "Alice in Wonderland" fantasies that have no place in crime of violence jurisprudence.  *See United States v. Taylor*, 213 L. Ed. 2d 349, 142 S. Ct. 2015, 2026 (2022) (Thomas, J., dissenting).  The Supreme Court and this Circuit have repeatedly cautioned against using "legal imagination" beyond what the plain text unambiguously covers to treat an offense as categorically overbroad.  *Moncrieffe v. Holder*, 569 U.S. 184, 191 (2013) (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007)); *see also United States v. Croft*, 987 F.3d 93, 98 (4th Cir. 2021) (explaining that courts need not "conjure up fanciful fact patterns in an attempt to find some nonviolent manner in which a crime can be committed" (quoting *United States v. Salmons*, 873 F.3d 446, 451 (4th Cir. 2017)).  There must be "a realistic probability, not a theoretical possibility, that the [government] would apply its statute to conduct that falls outside

---

[3]      Lighty repeatedly cites—and accuses the government of "ignoring"—an abrogated Fourth Circuit case, *United States v. Torres-Miguel*, 701 F.3d 165 (4th Cir. 2012), for the proposition that a crime "may result" in death without "involving the use" of physical force.  *See* ECF No. 636 at 4, 6.  But *Torres-Miguel* was about a California criminal statute prohibiting certain kinds of willful threats.  *Id.* at 166 (citing Cal. Penal Code § 422(a)).  Here we have a completely different crime under a completely different criminal regime—a federal criminal statute that prohibits kidnapping resulting in death.  In any event, *Torres-Miguel* is dead letter.  *See United States v. Castleman*, 572 U.S. 157 (2014).

the generic definition of a crime." *Id.* (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 184 (2007)).

Kidnapping resulting in death is generally charged where the conduct is particularly egregious. For example, in *United States v. Higgs*, the defendants were charged with the same aggravated form of kidnapping when they drove three women to the Patuxent National Wildlife Refuge after a date resulted in a verbal altercation, and ruthlessly shot all three to death. *See United States v. Higgs*, 353 F.3d 281, 290 (4th Cir. 2003). In another case, the defendant strangled a pregnant woman to death and cut her near-term fetus from her body to kidnap the baby. *See United States v. Montgomery*, 635 F.3d 1074 (8th Cir. 2011); *see also United States v. McGowan*, 768 F. App'x 873, 874 (10th Cir. 2019) (defendant kidnapped his girlfriend's five-year-old child and, after a lengthy police chase, crashed his car into a construction barricade, where authorities found that he had already shot and killed the child).

Despite this reasoning, the government conceded in *United States v. Ross*, 2022 WL 4103064, that kidnapping resulting in death is not categorically a crime of violence under § 924(c) after *Borden v. United States*, 141 S. Ct. 1817, 1821-22 (2021) (plurality opinion) (finding that offenses that require "only a *mens rea* of recklessness—a less culpable mental state than purpose or knowledge," did not satisfy the force clause of the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(b)(i)). *See Ross*, 2022 WL 4103064. The government's concession in *Ross* was made after it consulted with the Department of Justice's Office of the Solicitor General ("OSG"). Here, the government similarly concedes that kidnaping resulting in death is not categorically a crime of violence under § 924(c) because it is bound by OSG's legal position.

### B.     *Mens Rea*

LIghty contends that *Borden v. United States*, 141 S. Ct. 1817, forecloses any argument that kidnapping resulting in death can serve as a § 924(c) predicate offense.  *See* ECF No. 649.  As noted above, *Borden* was not a case about § 924(c) predicate offenses.  The Supreme Court held in *Borden* that crimes with a *mens rea* of "recklessness" cannot qualify as a "violent felony" under the Armed Career Criminal Act ("ACCA"), because they "do not require, as ACCA does, the active employment of force against another person."  *See Borden*, 141 S. Ct. at 1834.

The Fourth Circuit has interpreted *Borden* to mean that "if the *mens rea* element can, as a matter of law, be satisfied with a mental state of recklessness or negligence, the offense is not a crime of violence."  *United States v. Manley*, 52 F.4th 143 (4th Cir. 2022) (citing *Borden*, 141 S. Ct. at 1821-22, 25 (plurality opinion) and *Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004)).  But if the elements of the crime "demand[ ]" that the person have "direct[ed] his action at, or target[ed], another individual," the action is more purposeful and satisfies the *mens rea* requirement necessary for an offense to qualify as a crime of violence.  *Id.* (quoting *Borden*, 141 S. Ct. at 1825 (plurality opinion)).

Satisfying the elements of the federal kidnapping statute "necessarily implies an unlawful physical or mental restraint for an appreciable period against the person's will and with a willful intent so to confine the victim."  *United States v. Murillo*, 826 F.3d 152, 160 (4th Cir. 2016) (quoting *United States v. Lentz*, 383 F.3d 191, 201 (4th Cir. 2004)).  Federal kidnapping requires "an intent to restrain [the victim's] movements contrary to her wishes."  *Lentz*, 383 F.3d at 201 (quoting *Chatwin v. United States*, 326 U.S. 455, 460 (1946)); *see also United States v. Wills*, 346 F.3d 476, 493 (4th Cir. 2003) ("To hold means to detain, seize, or confine a person in some manner against that person's will.").

Nevertheless, the Government concedes as it did in *United States v. Ross*, 2022 WL 4103064, that kidnapping resulting in death is not a crime of violence.  As explained previously, the government conceded this issue in *Ross* after it consulted with OSG.  The Government similarly concedes here because it is bound by OSG's legal position.

## II.     Resentencing is unnecessary.

Any relief granted as to Counts Three, Four, and Five warrants no additional relief on Lighty's other counts of conviction.  Lighty was sentenced to death as to Count One and life as to Count Two, concurrently.  This court was statutorily required to impose the death sentence once it was recommended by the jury.  18 U.S.C. § 3594 ("Upon a recommendation under section 3593(e) that the defendant should be sentenced to death or life imprisonment without possibility of release, the court shall sentence the defendant accordingly.").  As such there is no basis to conclude that resentencing will afford Lighty any meaningful relief.

### A.  This Court is bound by the jury's sentencing verdict as to Count One.

Congress incorporated the right to a jury into the Federal Death Penalty Act ("FDPA") by requiring a penalty-phase hearing after a defendant has been convicted of a capital offense before the same jury that convicted him.  18 U.S.C. §§ 3591(a), 3593(b).  During this hearing, the jury must find: (1) that the defendant is death eligible; (2) the existence of any aggravating factor "beyond a reasonable doubt;" and, (3) any mitigating factor "by a preponderance of the information."  18 U.S.C. § 3593(c).  To render a defendant eligible for the death penalty, the government must prove beyond a reasonable doubt one of four mental states, also known as statutory intent factors, provided in § 3591(a)(2) and at least one of sixteen statutory aggravating factors provided in § 3592(c).  *United States v. Bourgeois*, 423 F.3d 501, 506–07 (5th Cir. 2005).

After hearing the evidence, the jury is required to return a special verdict detailing its

findings and recommending "by unanimous vote . . . whether the defendant shall be sentenced to death, to life imprisonment without possibility of release, or some other lesser sentence."  18 U.S.C. § 3593(e).  The district court is then bound to sentence the defendant according to the jury's verdict.  18 U.S.C. § 3594

Such a proceeding is "comparable to a trial."  *Arizona v. Rumsey*, 467 U.S. 203, 209 (1984) (citing *Bullington v. Missouri*, 451 U.S. 430, 438 (1981)).  A jury's unanimous sentencing verdict cannot be overturned at sentencing.  *See*, *e.g.*, *United States v. Roof*, 10 F.4th 314, 358 (4th Cir. 2021), *cert. denied*, 2022 WL 6572117 (U.S. Oct. 11, 2022) ("The FDPA provides that the jury shall recommend by unanimous vote whether death is appropriate, 18 U.S.C. § 3593(e), and "[u]pon a recommendation . . . the court *shall* sentence the defendant accordingly.") (quoting § 3594) (emphasis in original); *Jones v. United States*, 527 U.S. 373, 380-81 (1999) (stating that the court has discretion to sentence to a term of years only when the jury fails to reach a unanimous verdict of death or life imprisonment); *United States v. Lighty*, 616 F.3d 321, 367 (4th Cir. 2010) (same); *United States v. Caro*, 597 F.3d 608, 632 (4th Cir. 2010) (same); *United States v. Jackson*, 327 F.3d 273, 286 (4th Cir. 2003) (same); *United States v. Ostrander*, 411 F.3d 684, 687–88 (6th Cir. 2005) (finding the court had no discretion to deviate from jury's recommendation of a life sentence); *In re United States*, 197 F.3d 310, 311 (8th Cir. 1999) (factfinder makes ultimate choice of sentence.  "If the recommendation is 'death or life imprisonment without possibility of release, the court shall sentence the defendant accordingly.'") (quoting 18 U.S.C. § 3594.).  The FDPA does not afford a trial judge a […] font of unbridled discretion."  *United States v. Martinez*, 2021 WL 1784614, at *3 (E.D. Va. May 5, 2021).

The Court therefore has no authority to discard the jury's verdict in the context of a resentencing arising from a collateral challenge of an entirely separate conviction.  Rather, a jury

would have to be impaneled, but only where "reconsideration of the sentence under this section is necessary." 18 U.S.C. § 3593(b)(2)(D). Lighty has not shown reconsideration is necessary here. Lighty's challenge to his § 924(c) convictions in no way implicates the weighing of aggravating and mitigating factors contemplated by § 3593. Nor does it invoke any factors requiring a remand by a court of appeals:

> (A) the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor;
>
> (B) the admissible evidence and information adduced does not support the special finding of the existence of the required aggravating factor; or
>
> (C) the proceedings involved any other legal error requiring reversal of the sentence that was properly preserved for appeal under the rules of criminal procedure,

18 U.S.C. § 3595(c)(2). "A sentence of death can be vacated only upon a 'finding' that passion, prejudice, or an arbitrary factor most likely influenced the sentence." *United States v. Lawrence*, 735 F.3d 385, 421 (6th Cir. 2013) (citing *United States v. Lighty*, 616 F.3d 321, 369 (4th Cir. 2010). Moreover, "[t]he court of appeals shall not reverse or vacate a sentence of death on account of any error which can be harmless. . ." 18 U.S.C. § 3595(c)(2).

Accordingly, this Court should not revisit Lighty's sentences on his remaining counts of conviction. The Court should simply vacate the § 924(c) convictions at Counts Three, Four, and Five, and their accompanying sentences.[4]

Resentencing Lighty is also unnecessary for essentially the same reason.

---

[4]     The government further reasserts its position, as stated in its initial response (ECF No. 631 at 11-15) to Lighty's motion, and incorporates that part of its response herein, that the jury's deliberations as to Lighty's death sentence were not informed by the § 924(c) charges, and therefore Lighty's argument in that respect does not entitle him a resentencing as to any non-vacated counts.

**B.   The concurrent sentence doctrine should be applied here.**

The concurrent sentence doctrine "authorizes a court to leave the validity of one concurrent sentence unreviewed when another is valid and carries the same or greater duration of punishment so long as there is no substantial possibility that the unreviewed sentence will adversely affect the defendant." *United States v. Charles*, 932 F.3d 153, 155 (4th Cir. 2019).[5]  This doctrine also gives a district court the discretion, in the interest of judicial economy, to forgo review when correction of a sentencing error will not affect a defendant's overall sentence. *Id*. at 158-59.  The doctrine "may appropriately be applied when the alleged error is associated only with counts for which concurrent sentences are imposed and the other sentences are unassailable." *Jones v. Zimmerman*, 805 F.2d 1125, 1128 (3d Cir. 1986).  "The purpose of the doctrine is to conserve judicial resources when there is nothing to be gained from their expenditure . . . ." *United States v. Benton*, 24 F.4th 309, 315 (4th Cir. 2022).

Lighty has not and cannot make that showing here.  Regardless of what happens to his § 924(c) convictions, the defendant is still facing a death sentence as to Count One.  As discussed

---

[5]      The concurrent sentence doctrine applies to consecutive sentences, like those Lighty faces for his § 924(c) convictions. *See*, *e.g.*, *Al - 'Owhali v. United States*, 36 F.4th 461, 466-67 (2d Cir. 2022) ("When a prisoner challenges a sentence to run consecutively to an unchallenged life sentence, even a complete vacatur of the challenged sentence will not 'reduce the time he is required to serve' in prison . . . Whether the challenged sentence runs consecutively or concurrently to the unchallenged life sentence 'is a distinction without a difference.'"); *Duka v. United States*, 27 F.4th 189, 195 (3d Cir. 2022) (rejecting argument that the application of the doctrine was improper as the challenged sentences were to run consecutively to—rather than concurrently with—their unchallenged life sentences); *Kassir v. United States*, 3 F.4th 556, 569 (2d Cir. 2021) ("Kassir's challenge to his 18 U.S.C. § 842(p) conviction, even if successful, offers him no reasonable prospect of a shorter time in custody.  He will remain in prison on dual life sentences for conspiring to kill people"); *Ruiz v. United States*, 990 F.3d 1025, 1033 (7th Cir. 2021) (applying the concurrent sentence doctrine to decline review of sentence where defendant was subject to seven consecutive life sentences); *Oslund v. United States*, 944 F.3d 743, 746 (8th Cir. 2019) (finding no error in district court's application of the concurrent sentence doctrine given an unchallenged consecutive life sentence).

above, there is no basis to disturb that sentence.  Indeed, the death sentence will be and must be carried out before the sentences associated with the § 924(c) convictions can be served.  There is simply no meaningful relief that the district court can afford by resentencing Lighty, unless and until he mounts a successful attack on that sentence.  Resentencing would waste judicial resources to arrive at the same result.[6]

Notably, the Fourth Circuit summarily denied a motion for certificate of appealability in a similar death penalty case where the government argued that under the concurrent sentence doctrine the granting of the petition would not afford the defendant any meaningful relief.  *See In re: Dustin John Higgs*, No. 20-2 (4th Cir. Feb. 6, 2020).  In that case, Higgs was also challenging § 924(c) convictions based in part on kidnapping resulting in death.  *Id*.

## CONCLUSION

The Government respectfully requests that this Court DENY the Petitioner's Motion.

Respectfully submitted,

Erek L. Barron
United States Attorney

By:     _____/s/_____
Ellen E. Nazmy
Assistant United States Attorney

---

[6]     One caveat to the concurrent sentencing doctrine is that it should not be applied "where the defendant may suffer adverse collateral consequences if the sentence is left unreviewed." *Benton*, 24 F.4th at 315 (finding its application would deprive Benton of any benefit from a First Step Act sentence reduction).  No such concern exists here.  Lighty is not eligible for a First Step Act reduction because he has no convictions for distribution of cocaine base under 21 U.S.C. § 841. There is also "no substantial possibility that the unreviewed conviction will adversely affect the defendant's right to parole . . . ." *Charles*, 932 F.3d at 159.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on December 5, 2022, a copy of the foregoing a copy of the foregoing opposition was caused to be delivered via the CM/ECF system to Seth Rosenthal, Esq., and Julie Brain, Esq., counsel for the Defendant, and all other registered CM/ECF users.

By:   _____/s/_____
      Ellen E. Nazmy